Rajan O. Dhungana (SBN: 297794)
  rdhungana@fedpractice.com
Eric S. Montalvo (*Pro Hac Vice* Motion
  Forthcoming)
  emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
1750 K Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## (Eastern Division)

| | |
|---|---|
| HEREDIA BOXING MANAGEMENT, INC.; & MOSES HEREDIA, | Case No.: 20-cv-2618 |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| MTK GLOBAL SPORTS MANAGEMENT, LLC; GOLDEN BOY PRODUCTIONS, INC.; VGC, LLP; PAUL D. GIBSON; and DANIEL KINAHAN, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Heredia Boxing Management, Inc. ("HBM"), and Mr. Moses Heredia ("M. Heredia") (collectively, "Plaintiffs") bring this Complaint against the Defendants MTK Global Sports Management, LLC ("MTK"), Golden Boy Promotions, Inc. ("GBP"), VGC, LLP ("VGC"), Mr. Paul D. Gibson ("Mr.

COMPLAINT - 1

Gibson"), and Mr. Daniel Kinahan ("Mr. Kinahan") (collectively, "Defendants") and alleges, based on knowledge as to themselves and their own acts and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.  This dispute arises from Defendant's (1) violation of Racketeering Influenced and Corrupt Organization (RICO) Act 18 U.S.C. § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income; (2) violation of RICO 18 U.S.C. § 1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise; (3) violation of RICO 18 U.S.C. § 1962(c) – Conducting the Affairs of an Enterprise; (4) violation of RICO 18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise; (5) tortious interference with boxer-manager contract between the Plaintiffs and boxer, Mr. Joseph "JoJo" Diaz, Jr. ("Mr. Diaz") (6) tortious interference with promotion-manager contract between Plaintiffs and GBP, (7) inducing breach of boxer-manager contract between the Plaintiffs and Mr. Diaz, (8) intentional interference with prospective economic relations, and (9) tortious interference with boxer-manager contract between the Plaintiffs and boxer, Mr. Luis Feliciano ("Mr. Feliciano").

2.  Mr. M. Heredia is a duly licensed boxing manager and owns HBM.

3.  HBM manages Mr. Joseph "JoJo" Diaz, Jr., pursuant to a boxer-manager agreement dated February 23, 2017. Mr. Diaz is a professional south paw boxer of Mexican decent and is the current IBF super featherweight title holder.

4.  Mr. Diaz established a relationship with the Mr. M. Heredia as an amateur fighter prior to his qualification for the 2012 Summer Olympics which has continued until present day.

5.  GBP holds the current promotional agreement for Mr. Diaz which was executed on March 22, 2017.

6.      MTK, a Dubai, UAE, and British based company, holds itself out as the "biggest force in business of boxing" in its capacity as a boxing management and promotional company.

7.      MTK was co-founded and is in part owned and controlled by Mr. Daniel Kinahan, a noted member of Ireland's notorious Kinahan Cartel, also known as the Kinahan Organized Crime Group ("KOCG") by law enforcement officials.

8.      During August, 2020, MTK signed a management contract with Mr. Diaz unbeknownst to HBM. HBM became aware of the signing though social media.

9.      MTK's management contract with Mr. Diaz was entered into in violation of California law, federal law, and in complete disregard for the established and lawful management contract Mr. Diaz recognized by the State of California with Mr. M. Heredia.

10.     All attempts to resolve this matter with MTK have been met with hostility.

11.     VGC, LLC, a law firm, has been acting as an agent for MTK to perpetrate its tortious and unlawful activities and is on full notice of their illegality.

12.     GBP has also colluded with VGC and MTK to facilitate agreements despite being placed on full notice that neither VGC, nor MTK have lawful authority to conduct and/or engage in the management of Mr. Diaz through either contract or proper licensure.

## PARTIES

13.     Plaintiff Heredia Boxing Management, Inc., is a California corporation with its principal place of business at 2120 Foothill Blvd., Suite 107, La Verne, CA 91750.

COMPLAINT - 3

14.     Plaintiff Moses Heredia is an individual residing in San Bernardino County, California.

15.     Defendant MTK Global Sports Management, LLC, is a Dubai, UAE business entity with license number 785135 and having its registered office at PO Box 454833, Al Barsha Post Office, Dubai, United Arab Emirates. MTK Global Sports Management, LTD, is a wholly owned subsidiary of MTK Global Sports Management, LLC operating out of the United Kingdom with its principal place of business at 20-22 Wenlock Road, London, United Kingdom, N1 7GU. MTK stands for "Mack the Knife." MTK recently changed its name to Global Promotion Management LTD in the United Kingdom. However, MTK still is operating and doing business as "MTK Global." *See* https://mtkglobal.com/.

16.     Defendant Golden Boy Promotions, Inc., is a California corporation with its principal place of business at 626 Wilshire Blvd, Suite 350, Los Angeles, CA 90017.

17.     Defendant VGC, LLP is a New York limited liability partnership with a principal place of business at 1515 7th St, No 106, Santa Monica, CA 90401-2605. VGC, LLP also has a principal place of business at 396 Degraw Street, Suite 1, Brooklyn, New York 11231. Mr. James L. Greeley is a principal at VGC, LLP and upon information and belief resides in Los Angeles County, California. Mr. Alexander R. Safyan is a litigation partner at VGC, LLP and upon information and belief resides in Los Angeles County, California. The other members of VGC, LLP, upon information and belief, are domiciled in either Napa County, California or Kings County, New York.

18.     Defendant Paul D. Gibson is MTK's Chief Strategy Officer and an individual residing in Alicante, Valencian Community, Spain.

19.     Defendant Daniel Kinahan is a co-founder and owner of MTK and an individual residing in Dubai, UAE.

20.     Each and every Defendant was the agent, servant, employee, joint venture, partner, subsidiary, and/or co-conspirator of each other Defendant, and in performing or failing to perform the acts alleged herein each Defendant was acting individually as well as through and in the foregoing alleged capacity within the course and scope of such agency, employment, joint venture, partnership, subsidiary, and/or conspiracy.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

22.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because substantial part of the events or omissions giving rise to the claim occurred in this district. Defendants MTK, Mr. Gibson, and Mr. Kinahan do substantial business in this judicial district, has substantial minimum contacts with this judicial district, and/or intentionally availed itself of the benefits and protections of California law through the promotion, sale, marketing, and provision of services in California; *See* 18 U.S.C. § 1965 ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."). Further, Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants VGC, and GBP are subject to personal jurisdiction in this judicial district and reside in this district.

## FACTS

23.     Under Federal law, the term boxing manager means a "person who receives compensation for service as an agent or representative of a boxer." *See* 15 U.S.C. § 6301. Under California law, the term boxing manager means, "any person who … undertakes … to represent in any way the interest of any professional boxer … ." Cal. Bus. & Prof. Code § 18628. California law provides a limited

exception for attorneys "whose participation in these activities is restricted to representing the legal interest of a professional boxer … as a client." *Id*. If an attorney goes beyond the representation of a legal interest then the attorney must be licensed as a manager. *Id*. A manger must be properly licensed within the State of California to execute his/her duties under the law. *See* Cal. Bus. & Prof. Code § 18642; 4 CCR § 216.

24.     Under Federal law, the term boxing promotor means "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. § 6301. Under California law, the term boxing promoter means "a corporation, partnership, association, individual, or other organization which conducts, holds, or gives a boxing or martial arts contest, match, or exhibition." Cal. Bus. & Prof. Code § 18622. Federal law creates a "firewall" between managers and promoters in order to protect the boxer. 15 U.S.C. § 6308. Like with a manager contract, promotors are required to have a license. Cal. Bus. & Prof. Code § 18641; *see also* 4 CCR § 213. A licensed promotor may do business with other licensed promotors. Cal. Bus. & Prof. Code § 18668.

25.     Violations of the Professional Boxing Safety Act of 1996 (PBSA), as amended by the Muhammad Ali Boxing Reform Act of 2000 ("Ali Act") carry with it civil and criminal penalties. *See generally* 15 U.S.C. § 6309.

## HBM

26.     Mr. M. Heredia is a properly licensed manager in California. HBM is properly incorporated in California. Mr. M. Heredia properly executed a boxer-manager contract between Mr. Diaz and himself to perform the duties of manager between February 23, 2017 and February 22, 2022. This contact was properly executed in the presence of Mr. Larry Ervin, a representative of the California State Athletic Commission ("Commission"), and later endorsed by Commission after review.

**MTK, Mr. Kinahan, and Mr. Gibson**

27.     MTK is a management and promotional company. MTK is part owned and operated by Mr. Daniel Kinahan who is a member of criminal organization known to law enforcement officials as the KOCG. MTK, Mr. Kinahan, and, Mr. Gibson do not possess a proper license to perform either management or promotional services in California. MTK, Mr. Kinahan, and, Mr. Gibson hold no authority to perform management functions in the State of California.

28.     MTK is not licensed in California to be a boxing manager or a boxing promoter. MTK also provides both manager services and promotion services, which are prohibited under the Ali Act firewall provisions. *See* 15 U.S.C. § 6308.

**VGC**

29.     VGC is a law firm. No individual in VGC is licensed to perform boxing management functions in the State of California. *See* Cal. Bus. & Prof. Code § 18628; *see generally* 15 U.S.C. §§ 6301-6313. VGC, on behalf of MTK and at their direction, has conspired with GBP to serve as Mr. Diaz's managers to negotiate and secure a title defense for Mr. Diaz with full knowledge and disregard for Mr. Diaz's contractual obligations and without compliance with any of the laws or regulations, that provide the authority to do so and collectively remain subject to both criminal and civil consequences for these alleged violations.

**GBP**

30.     GBP is a properly registered and licensed promotional company operating within the State of California. GBP and Mr. M. Heredia and HBM have done business with each other for nearly ten years. Notwithstanding their long business relationship and GBP's knowledge of MTK's violations of the law, GBP has negotiated with MTK as if MTK was the manager of Mr. Diaz in violation of the Ali Act for its own financial gain.

COMPLAINT - 7

31.     GBP has also begun contacting L.F., managed by Plaintiffs notwithstanding being placed on notice of the ongoing interference. Plaintiffs previous told GBP not to circumvent their agreement and contact boxers managed by Plaintiffs directly. Mr. M. Heredia raised this concern with the CEO of GBP, Mr. Oscar De La Hoya, previously.

**Mr. Diaz and HBM**

32.     Mr. M. Heredia has known Mr. Diaz since he was an amateur boxer. After Mr. Diaz completed in the 2012 summer Olympic Games in London, he became a professional boxer. The Mr. M. Heredia managed Mr. Diaz's professional boxing career from its very beginning in 2012 until this present day. The current boxer manager agreement was signed on February 23, 2017 between Mr. Diaz and Mr. M. Heredia and is valid through February 22, 2022. Mr. Diaz and Mr. M. Heredia executed this contract in the presence of Mr. Larry Ervin an authorized representative of the Commission. The contract also received approval and acceptance from the Executive Officer Commission on February 24, 2017. Mr. Diaz has fought nine bouts under this contract including a bout on January 30, 2020 wherein he won the IBF super featherweight title.

33.     Mr. M. Heredia has previously filed a request for arbitration with respect to the boxer-manager contract between Plaintiffs and Mr. Diaz with the Commission on or about August 20, 2020 in light of the interference precipitated by Defendants. The arbitration was accepted by the Commission. The Commission is currently scheduling the arbitration for sometime next year.

**Interference**

34.     MTK hired VGC to act as its agent in California securing Mr. Diaz's signature to the offending management contract and engage in direct negotiations with GBP at the direction and behest of MTK in full disregard for Mr. Diaz's contractual obligations and the federal and state laws governing the profession of

boxing. MTK and GBP have interfered to the point of scheduling a bout on or about February 13, 2021 between Mr. Diaz and his mandatory contender without any input from or communication with the Plaintiffs.

35.     VGC also facilitated several financial transactions between MTK, Mr. Diaz, and GBP to facilitate this unlawful undertaking.

### MTK and Organized Crime

36.     MTK runs an operation out of the Dubai Economic Zone, as discussed below, and is overseen by Mr. Daniel Kinahan who also resides in Dubai, UAE.

37.     MTK was co-founded by Mr. Daniel Kinahan. Mr. Daniel Kinahan is known as the head of Kinahan Organized Crime Group ("KOCG") in Ireland. The KOCG is allegedly responsible for several murders, drug trafficking, and money laundering. The KOCG is one of Europe's biggest drug cartels. Law enforcement experts believe that Mr. Daniel Kinahan started MTK to launder ill-gotten gains from drug trafficking. Mr. Daniel Kinahan is wanted for question by several law enforcement agencies due to the murderous activities of the KOCG. On or about September 16, 2018, the United States Customs and Border Protection (CBP) banned Mr. Kinahan and roughly 26 other members of the KOCG from entering America due to narco-terrorism concerns. *See e.g.* https://www.thetimes.co.uk/article/america-bans-the-kinahan-crime-family-r7bbbntll; https://www.thesun.ie/news/5456085/cartel-boss-daniel-kinahan-banned-us-placed-on-list-narco-terrorists/.

38.     In 2016, Mr. Kinahan fled Ireland to Dubai, UAE after a boxing match he promoted ended in violence at the Regency Hotel in Dublin, Ireland. During that boxing match, several masked gunmen fired AK-47s into the crowd, killed one person, and injured several more. This shooting is alleged to be a plot to kill Mr. Kinahan by a rival crime family. *See e.g.* https://www.ringtv.com/603461-buzz-and-scrutiny-build-regarding-mtk-global-and-daniel-kinahan/.

COMPLAINT - 9

39.     Mr. Daniel Kinahan is currently living in Dubai, UAE where he continues to arrange boxing matches and act in a management capacity to MTK. *See e.g.* https://www.insider.com/tyson-fury-splits-from-reputed-drugs-boss-daniel-kinahan-2020-6; https://www.sportscasting.com/what-we-know-about-tyson-furys-advisor-daniel-kinahan-a-suspected-1-1-billion-drug-lord/.

40.     MTK, through VGC, is interfering with HBM's promotion contract with GBP. GBP is a boxing promoter. In this role, they help arrange bouts between fighters. VGC is acting as Mr. Diaz's boxing manager by arranging the next fight between Mr. Diaz and a mandatory contender, Shavratdzhon Rakhimov with GBP. This fight just got scheduled for February 13, 2021 without input from or communication with Plaintiffs. Through emails obtained, VGC is directly performing a boxing management role through the negotiation of a title bout with GBP, has removed Mr. Diaz's actual managers (Plaintiffs) from the conversation with GBP, and has explicitly acknowledged they have been hired and funded by MTK.

41.     MTK is flooding the U.S. marketplace with illegal funds, not respecting US law through their interference with contract, violating the Ali Act firewall provisions, and not obtaining the required licensure. MTK has in the past few months signed over eight US boxers and several dozens across the globe. MTK states it is a global management and promotion company but are having boxers sign management agreements using the title "advisory" in an unguarded attempt to avoid legal scrutiny without basis in statutory law. However, in reality, MTK's agreements are management or promotion agreements based on the applicable definitions and MTK's conduct.

42.     MTK interfered by providing a financial inducement to Mr. Diaz. Upon information and belief, MTK provided a $100,000 advance on Mr. Diaz's next purse. This advance essentially caused Mr. Diaz to mortgage his future away,

which is why the Federal Government and the State of California created statutes and regulations to protect boxers. *George Foreman Associates, Ltd. v. Foreman*, 389 F.Supp 1308, 1314 (1974) ("The statutes and regulations indicate a clear purpose to safeguard boxers against the temptation to mortgage their futures in exchange for relatively meager present consideration.").

43.    GBP has disregarded its contractual obligations with respect to the 2017 promotional agreement. Further, GBP has contacted at least one other boxer managed by HBM, Luis Feliciano, on multiple occasions as recently as December 11, 2020 in violation and disregard of other agreements. This interference is a byproduct of MTK's trampling on Plaintiffs rights.

44.    MTK hired VGC to interfere with the boxing management contract between Mr. Diaz and Plaintiffs and the boxing promotional contract between Mr. Diaz, Plaintiffs, and GBP. Further MTK through VGC caused Mr. Diaz to breach his contracts with the Plaintiffs and his contract with GBP.

**FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS**

45.    The Racketeering Influenced and Corrupt Organizations (RICO) Act allows for a wronged plaintiff to sue in civil court for damages. *See* 18 U.S.C. § 1964.

46.    At all relevant times MTK received or obtained money, either directly or indirectly from a pattern of racketeering activity. MTK is associated with Mr. Daniel Kinahan and the Kinahan Organized Crime Group ("KOCG"). The KOCG is an association-in-fact that operates one of Europe's largest drug trafficking and money laundering networks according to several law enforcement agencies. Mr. Kinahan co-founded MTK with Matthew "Mack The Knife" Macklin. Mr. Kinahan co-founded MTK in an attempt to launder illicit proceeds from drug trafficking through a seemingly lawful business. However, this attempt failed in 2016 when during a boxing match promoted by Mr. Kinahan ended in violence as

COMPLAINT - 11

a rival crime family, believed to be the Hutch Family, began shooting the crowd. In the aftermath of that shooting and feeling the pressure from several law enforcement agencies, Mr. Kinahan fled from Ireland to Dubai, UAE and continued to operate MTK by creating the Dubai, UAE wing of MTK. In 2017, MTK made attempts on paper to sever the ties between MTK and Mr. Kinahan. However, recent reports—as recent as November 2020—still indicate that Mr. Kinahan is running MTK from Dubai, UAE. *See e.g.* https://www.belfasttelegraph.co.uk/news/northern-ireland/barry-mcguigan-in-warning-to-boxing-over-kinahan-grip-after-frampton-case-39750316.html.

47.   "Racketeering activity" is an act that violates certain statutes enumerated in 18 U.S.C. § 1961. An act of "racketeering activity" is also called a "predicate act." *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Drug trafficking and money laundering are both listed in 18 U.S.C. § 1961. Here, MTK received or obtained money, either directly or indirectly, from drug trafficking and money laundering through its association with Mr. Kinahan. Mr. Kinahan continues to arrange boxing matches that involve MTK fighters. These matches are steeped in money obtained from drug trafficking and money laundering. MTK then uses this money to attempt to bring in more fighters and arrange more fights so that more drug trafficking proceeds can be laundered through what appears to be a legitimate business. MTK's thirst for new boxers supports the KOCG's money laundering needs has brought MTK to the US market and to the interference with Mr. Diaz and HBM.

48.   A "pattern of racketeering activity" means that a defendant, such as MTK, committed at least two distinct predicate acts. Distinct does not have to mean different types. A pattern of racketeering activity must include related predicate acts. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Here, MTK has

COMPLAINT - 12

approached several US fighters and offered similar "marketing advisor" arrangements. MTK sometimes does this with the knowledge and consent of the fighters boxing manager. On other occasions, such as this current dispute, it is a hostile attempt to peel a boxer or sport fighter away from his or her managers. MTK holds Mr. Diaz out on its website as one of its boxers and has publically tweeted about an upcoming mandatory-title defense bout. This bout was arranged between VGC and GBP, both of whom have not included Mr. Diaz's manager, Mr. M. Heredia and HBM in the conversation.

49.    A pattern of racketeering activity also requires predicate acts showing "continuity." Continuity can be demonstrated in two ways. The first is "close-ended" continuity where the related predicate acts extend over a substantial period of time. The second is "open-ended" continuity where the related predicate acts do not occur over a substantial period of time but are likely to be repeated in the future. Here, MTK continues to involve itself in drug trafficking and money laundering through its associate with Mr. Kinahan. These acts are likely to be repeated in the future. MTK advertises on its website that it is one of the biggest forces in boxing and is encouraging children as young as 15 to sign up with them to get more and more boxers in their grasps to continue the money laundering operation. This also includes a drive to become a dominant player in the United States as MTK continues its expansion into the United States.

50.    MTK has participated as a principal in the pattern of racketeering activity. MTK either committed or aided, abetted, counseled, commanded, induced, or procured the commission of several predicate acts that form a pattern of racketeering activity. MTK also willfully caused the commission of two or more alleged predicate acts that make up the pattern of racketeering activity. MTK committed these predicate acts with intent or knowledge. MTK knows that Mr. Kinahan is involved in drug trafficking and money laundering and yet MTK still

associates with Mr. Kinahan and does business regularly with Mr. Kinahan. Further, MTK itself is engaged in predicate acts when it proved these illicit funds to VGC to file a lawsuit on behalf of Mr. Diaz and send threatening letters to GBP demanding they declare the 2017 promotion agreement null and void in a matter of hours.

51.    MTK uses the income or proceeds derived from the racketeering activity to acquire, maintain, or operate an enterprise. An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. Here, MTK has attempted to acquire an interest in Mr. Joseph Diaz, as a professional boxer. MTK provided Mr. Diaz $100,000 in an attempt to fraudulently induce him without proper licensure, contractual, or lawful authority. These funds are directly or indirectly derived from racketeering activity as described above. MTK receives funds directly or indirectly from Mr. Kinahan which are derived from racketeering activity such as drug trafficking and money laundering. MTK itself is laundering the illicit proceeds of the KOCG drug trafficking enterprise.

52.    MTK is engaged in interstate and foreign commence. They are a foreign business entity operating in the United States, namely California. MTK is using and abusing US law in an attempt to gain a foothold in a lucrative market to continue their money laundering operation.

53.    The acts of MTK have caused damage to Plaintiffs. MTK used racketeering income to injure Plaintiffs. To establish standing for a civil RICO claim, four factors must be satisfied: the Plaintiff must be (1) a "person" (2) who sustains injury (3) to his or her "business or property" (4) "by reason of" defendant's violation of 18 U.S.C. § 1962. Standing depends on injury from the "conduct constituting the violation," and each section of RICO has a different injury requirement. Injury under § 1962(a) must stem from the investment of racketeering income; injury under § 1962(b) must stem from the acquisition of an

interest on or control over an enterprise; injury under § 1962(c) must stem from the predicate acts; and injury under § 1962(d) generally stems from the overt acts committed in furtherance of the conspiracy. Plaintiffs have standing under all four sections of RICO as they are considered a "person" who has sustained an injury to his business by reason of the injuries described below.

**CAUSES OF ACTION**

**<u>FIRST CAUSE OF ACTION</u>**

**RICO § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income**

(Against MTK, Mr. Kinahan, and Mr. Gibson)

54.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

55.     MTK is an enterprise engaged in and whose activities affect interstate commerce. MTK is an international boxing management and promotion company and also engage in marketing boxing and other fighting sport events through television and the internet. MTK is operating in several markets to include this judicial district. MTK is associated with Mr. Kinahan and Mr. Gibson is MTK's chief strategy officer.

56.     MTK derived income, directly or indirectly, from a pattern of racketeering activity. Namely, through MTK's association with Mr. Kinahan and the KOCG, MTK has accepted income from drug trafficking and money laundering. Any investment by or through Mr. Kinahan necessarily is income derived, directly or indirectly, from drug trafficking and money laundering. Upon information and belief, these acts have occurred more than once, are related to one another, and are continuous under both the closed-end continuity theory and the open-ended continuity theory as the relationship between MTK and the KOCG has been established over time and is likely to be repeated into the future.

57.     MTK used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically, MTK was co-founded my Mr. Daniel Kinahan who is the reported leader of the KOCG in Ireland. The KOCG is known by several governments, including the United States Government of engaging in narco-terrorism, drug trafficking, and money laundering. MTK states that it has severed ties with Mr. Kinahan. However, while official ties on paper may have been severed, Mr. Kinahan is still influencing and controlling MTK. As recently as November 16, 2020 it is reported that MTK is still associated with Mr. Daniel Kinahan. MTK received income from Mr. Daniel Kinahan and the KOCG that was derived from a pattern of racketeering activity in an interstate enterprise. MTK then used this income derived from a pattern of racketeering activity to acquire an interest in Mr. Joseph "JoJo" Diaz, Jr, an individual. Enterprises may consist of individuals.

58.     The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

59.     MTK participated as a principle in the pattern of racketeering activity. With knowledge of the KOCG and Mr. Kinahan's drug trafficking and money laundering, MTK conspired with or aided and abetted the KOCG and Mr. Kinahan to allow MTK to be used a front for money laundering. MTK received income from the predicate acts, directly or indirectly, and then invested that income in the acquisition of an interest in Mr. Joseph Diaz, Jr, an enterprise, which is engaged in interstate and international commerce.

60.     As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property in that: Plaintiffs have an exclusive management boxer-manager contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiffs and Mr. Diaz and has

caused Mr. Diaz to stop communicating with Plaintiffs resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promotors.

61. WHEREFORE, Plaintiff requests that this Court enter judgment against the MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## SECOND CAUSE OF ACTION

## RICO § 1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise

### (Against MTK, Mr. Kinahan, and Mr. Gibson)

62. Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

63. MTK is an enterprise engaged in and whose activities affect interstate commerce.

64. MTK acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifically, on or about, August 12, 2020, MTK provided Mr. Joseph Diaz, Jr. with an advance of $100,000 in exchange signing for a "marketing advisory" agreement in violation of the current boxer-manager contract signed between Mr. Diaz and Plaintiffs. Mr. Diaz is an individual and individuals are considered "enterprises." The advance MTK provided Mr. Diaz was derived, directly or indirectly from the predicate acts of drug trafficking and money laundering as described above. MTK is associated with and conspires with Mr. Kinahan and the KOCG which is one of Europe's largest

drug trafficking cartels. MTK continues to maintain this interest in Mr. Diaz and recently tweeted about an upcoming mandatory title bout between Mr. Diaz and Shavratdzhon Rakhimov. A bout that was recently scheduled without input from or communication with Plaintiffs. Further, MTK holds out on its website that Mr. Diaz is one of "their" boxers.

65.     The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

66.     MTK has directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

67.     As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property in that: Plaintiffs have an exclusive management boxer-manager contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiffs and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiffs resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promotors.

68.     WHEREFORE, Plaintiff requests that this Court enter judgment against the MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

### THIRD CAUSE OF ACTION
### RICO § 1962(c) – Conduct the Affairs of the Enterprise

(Against MTK, Mr. Kinahan, and Mr. Gibson)

69.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

70.     MTK is an enterprise engaged in and whose activities affect interstate commerce.

71.     The Kinahan Organized Crime Group (KOCG) is an association-in-fact. *See Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). The KOCG is an enterprise engaged in and whose activities affect interstate commerce.

72.     The purported leader of the KOCG, Mr. Daniel Kinahan, co-founded MTK as a front business to launder illicit proceeds from drug trafficking. MTK and the KOCG have also formed an association-in-fact to further this scheme. The more boxers under MTK allows the KOCG to launder more money from drug trafficking.

73.     MTK is associated with or employed by the MTK/KOCG association-in-fact enterprise. MTK is associated with the KOCG as described above due to its relationship with Mr. Daniel Kinahan. VGC is being employed by MTK and indirectly employed by the MTK/KOCG association-in-fact enterprise. Mr. Gibson helps facilitate agreements to sign more boxers to MTK.

74.     MTK agreed to and did conduct and participate in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally and tortuously interfering with Plaintiffs boxer-manager contract. Specifically, MTK through its association with the KOCG has been using income derived, directly or indirectly, from KOCGs racketeering activities which include drug trafficking and money laundering. MTK used this income derived from the KOCG to provide Mr. Diaz an advance of $100,000 on his next bout. MTK did so to invest in or acquire an

interest in Mr. Diaz as a professional boxer as described above. MTK also benefits from these transactions as MTK receives additional money. State another way, MTK is allowed to re-invest the profits of the MTK/KOCG association-in-fact enterprise to continue to grow and expand. In doing so, MTK is becoming a large player in the boxing industry and destroying smaller family run operations like HBM.

75.    The MTK/KOCG association-in-fact enterprise also hired VGC with income derived from the KOCG enterprise to (1) file a lawsuit in Mr. Diaz's name to attempt to find the 2017 boxer-manager contract between Mr. Diaz and HBM unenforceable; and (2) send a demand letter to GBP seeking to have GBP declare its 2017 promotional agreement null and void within a matter of hours.

76.    MTK knows that the KOCG is involved in drug trafficking and money laundering.

77.    Pursuant to and in furtherance of their scheme, the MTK/KOCG association-in-fact committed multiple related acts of drug trafficking and money laundering.

78.    The acts of drug trafficking and money laundering set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

79.    MTK has directly and indirectly conducted and participated in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

> "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes

clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required."

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *See also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 (11th Cir. 2006) ("… a RICO defendant must 'conduct' or 'participate in' the affairs of some larger enterprise and not just its own affairs.").

80.     As a direct and proximate result of the MTK, Mr. Kinahan, and Mr. Gibson's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that: Plaintiffs have an exclusive management boxer-manager contract with Mr. Diaz. The conduct of the MTK/KOCG association-in-fact enterprise directly interferes with this contractual relationship. This inferenced has caused harm to the business relationship between Plaintiffs and Mr. Diaz, interfered with other boxing contracts, and has caused Mr. Diaz to stop communicating with Plaintiffs resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Boxers of Mexican ethnicity are currently the highest draw in the profession of boxing and a loss of a world champion Mexican boxer has wide ranging adverse impacts on the recruiting and retention efforts of HBM and their ability to negotiate with promotional companies which is further demonstrated by GBP's willingness to ignore its contractual standing despite several years of a professional relationship.

81.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

### FOURTH CAUSE OF ACTION

### RICO § 1962(d) – Conspiracy to Conduct the Affairs of the Enterprise

(Against MTK, Mr. Kinahan, and Mr. Gibson)

82.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

83.     As set forth above, the MTK agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c). Specifically MTK conspired with the KOCG association-in-fact enterprise to: (1) use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)); (2) acquire or maintain interests in the Mr. Diaz as a professional boxer through a pattern of racketeering activity (§ 1962(b)); and (3) conduct and participate in the conduct of the affairs of the MTK/KOCG association-in-fact enterprise through a pattern of racketeering activity (§ 1962(c)).

84.     MTK has intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the MTK/KOCG association-in-fact enterprise through a pattern of racketeering activity. MTK knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

85.     As direct and proximate result of the MTK's conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d),

Plaintiffs have been injured in their business and property in that: Plaintiffs have an exclusive management boxer-manager contract with Mr. Diaz. The conduct of the MTK/KOCG association-in-fact enterprise directly interferes with this contractual relationship. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiffs and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiffs resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promotors.

86.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## FIFTH CAUSE OF ACTION

### Tortious Interference with Contract – Boxer Manager Contract

(Against MTK and VGC)

87.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

88.     At all relevant times, an exclusive boxer-manager contract existed between Plaintiffs Mr. M. Heredia and HBM and a third party Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before the California State Athletic Commission and lasts for five years. This contract is valid and enforceable.

89.     VGC and MTK's conduct prevented performance or made the performance of this contract more expensive or difficult. VGC and MTK have directed Mr. Diaz not to communicate with the Plaintiffs as they attempt to arrange a mandatory title bout with GBP. VGC and MTK are "strangers" to this contract

and are liable in tort for their intentional interference. Their conduct includes directing Mr. Diaz not to communicate with Plaintiffs, engaging in a letter writing campaign demanding that Mr. Diaz be released from his contract with GBP with threats of litigation, and directing a social media campaign where Mr. Diaz proclaims he is no longer with the Plaintiffs due to them being "toxic" and that the Plaintiffs were "f***ing with" his money. These actions have caused Plaintiffs additional time and expenses to include hiring counsel to assert their rights. Plaintiffs cannot simply contact Mr. Diaz to arrange the next bout under the terms of the agreement. Based on the lack of interaction with Mr. Diaz, Plaintiffs have been required to close accounts opened for Mr. Diaz, communicate to other parties the current situation, and to incur expense on the loans and accounts Mr. Diaz had opened through the Plaintiffs. These actions have made it nearly impossible for the Plaintiffs to fulfill their obligations under the contract between Mr. Diaz and Plaintiffs.

90.     VGC and MTK intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. With VGC and MTK's encouragement, Mr. Joseph Diaz no longer communicates with the Plaintiff's concerning his boxing career. MTK claims to be a "marketing advisor" for Mr. Diaz, however, MTK does not communicate with the Plaintiffs in anyway. MTK's direction to Mr. Diaz has caused there to be no communication with his boxing managers even though a mandatory title bout is being worked between Mr. Diaz and GBP. VGC has stepped in as Mr. Diaz's manager. Plaintiffs note that neither MTK nor VGC are licensed or qualified as a boxing manager as required by California law. VGC and MTK want this disruption to occur as their ultimate goal is to have Mr. Diaz become one of their boxers. In order to do so, they must destroy, through whatever means they have available, the

valid and existing contracts between Plaintiffs and Mr. Diaz and contracts between Plaintiffs and GBP.

91.     The Plaintiffs have been harmed by the actions of VGC and MTK. Plaintiffs do not have oversight of the boxer they are managing. Plaintiffs are being smeared on social media and have lost business goodwill as others see their rights and contracts being trampled upon by VGC and MTK. Further, Plaintiff's relationship with other currently signed boxers has been hampered. Plaintiffs' business relationship with GBP has also been negatively affected.

92.     VGC and MTK's conduct were the substantial factors in causing Plaintiff's harm. But for the interference of VGC and MTK, Plaintiffs' contract with Mr. Diaz would not have been interfered with and harm would not have been caused. The conduct of VGC and MTK is the substantial factor in causing Plaintiff's harm. A "stranger" to a contract is not permitted to interfere with said contract.

## SIXTH CAUSE OF ACTION

## Tortious Interference with Contract – Promotor-Manager Contract

### (Against MTK and VGC)

93.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

94.     At all relevant times, there was a boxing promotion contract between Plaintiffs, Defendant GBP, and a third party Mr. Joseph Diaz, Jr. This contract was signed on March 22, 2017 and lasts for five years. This contract is valid and enforceable.

95.     VGC and MTK's conduct prevented performance or made the performance of this contract more expensive or difficult. VGC and MTK have directed Mr. Diaz not to communicate with the Plaintiffs as they attempt to arrange a mandatory title bout with GBP. VGC and MTK are "strangers" to this contract

and are liable in tort for their intentional interference. Their conduct includes directing Mr. Diaz not to communicate with Plaintiffs, engaging in a letter writing campaign demanding that Mr. Diaz be released from his contract with GBP with threats of litigation, and directing a social media campaign where Mr. Diaz proclaims he is no longer with the Plaintiffs due to them being "toxic" and that the Plaintiffs were "f***ing with" his money. These actions have caused Plaintiffs additional time and expenses to include hiring counsel to assert their rights. Plaintiffs cannot simply contact Mr. Diaz to arrange the next bout under the terms of the agreement. Based on the lack of interaction with Mr. Diaz, Plaintiffs have been required to close accounts opened for Mr. Diaz, communicate to other parties the current situation, and to incur expense on the loans and accounts Mr. Diaz had opened through the Plaintiffs. These actions have made it nearly impossible for the Plaintiffs to fulfill their obligations under the contract between Mr. Diaz and Plaintiffs.

96.    VGC and MTK intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. With VGC and MTK's encouragement, Mr. Joseph Diaz no longer communicates with the Plaintiff's concerning his boxing career. MTK claims to be a "marketing advisor" for Mr. Diaz, however, MTK does not communicate with the Plaintiffs in anyway. MTK does communicate with other boxing managers in similar arrangements. MTK's direction to Mr. Diaz has caused there to be no communication with his boxing managers even though a mandatory title bout is being worked between Mr. Diaz and GBP. VGC has stepped in as Mr. Diaz's manager. Plaintiffs note that neither MTK nor VGC are licensed or qualified as a boxing manager as required by California law. VGC and MTK want this disruption to occur as their ultimate goal is to have Mr. Diaz become one of their boxers. In order to do so, they must destroy, through whatever means they have available, the

valid and existing contracts between Plaintiffs and Mr. Diaz and contracts between Plaintiffs and GBP.

97.     The Plaintiffs have been harmed by the actions of VGC and MTK. Plaintiffs do not have oversight of the boxer they are managing. Plaintiffs are being smeared on social media and have lost business goodwill as others see their rights and contracts being trampled upon by VGC and MTK. Further, Plaintiff's relationship with other currently signed boxers has been hampered. Plaintiffs' business relationship with GBP has also been negatively affected.

98.     VGC and MTK's conduct were the substantial factors in causing Plaintiff's harm. But for the interference of VGC and MTK, Plaintiffs' contract with Mr. Diaz would not have been interfered with and harm would not have been caused. The conduct of VGC and MTK is the substantial factor in causing Plaintiff's harm. A "stranger" to a contract is not permitted to interfere with said contract.

**SEVENTH CAUSE OF ACTION**

**Inducing Breach of Contract – Boxer-Manager Contract**

(Against MTK and VGC)

99.     Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

100.    Defendants VGC and MTK intentionally caused Mr. Joseph Diaz, Jr. to breach his boxer-manager contract with the Plaintiffs.

101.    At all relevant times, there was a boxer-manager contract between Plaintiffs Mr. Moses Heredia and Heredia Boxing Management and a third party Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before the California State Athletic Commission and lasts for five years. This contract is valid and enforceable.

102.   VGC and MTK knew that this contract existed. VGC in emails and letters to GBP has unlawfully demanded that GBP declare the promotion contract null and void and declare Mr. Diaz a "free agent." Similarly in these emails and letters, VGC has referenced the contract between Mr. Diaz and the Plaintiffs and alleged it is not enforceable.

103.   VGC and MTK intended to cause Mr. Joseph Diaz, Jr. to breach the boxer-manager contract with Plaintiffs. VGC's actions are purposefully designed to have Mr. Diaz break his contract with Plaintiffs. The letters demanding such a breach of contract evince their intent. The intent of VGC and MTK is clear: they want to sign Mr. Diaz as a client and in order to do so must get him out of his current enforceable contracts. VGC and MTK are involved only to breach the contract between Plaintiffs and Mr. Diaz. In any case, Defendants VGC and MTK certainly knew that the interference and inducement of Mr. Diaz would result in a breach of contract.

104.   VGC and MTK conduct caused Mr. Joseph Diaz, Jr. to breach the boxer-manager contract with Plaintiffs. With VGC and MTK's encouragement, Mr. Joseph Diaz no longer communicates with the Plaintiffs concerning his boxing career. MTK claims to be a "marketing advisor" for Mr. Diaz, however, MTK does not communicate with the Plaintiffs in anyway. MTK does communicate with other boxing managers in similar arrangements. MTK's direction to Mr. Diaz has caused there to be no communication with his boxing managers even though a mandatory title bout is being worked between Mr. Diaz, through VGC, and GBP. VGC has stepped in as Mr. Diaz's manager. Plaintiffs note that VGC is not licensed or qualified as a boxing manager as required by California law.

105.   The Plaintiffs have been harmed by the actions of VGC and MTK. Plaintiffs do not have oversight of the boxer they are managing. Plaintiffs are being smeared on social media and have lost business goodwill as others see their rights

and contracts being trampled upon by VGC and MTK. Further, Plaintiff's relationship with other currently signed boxers has been hampered. Plaintiffs' business relationship with GBP has also been negatively affected.

106.   But for the inducement of Mr. Diaz by VGC and MTK, Mr. Diaz would not have breached his contract. The conduct of VGC and MTK is the substantial factor in causing Plaintiff's harm. A person is not justified in inducing a breach of contract simply because they are in competition with one of the parties to the contract and seeks to further their own economic advantage at the expense of another.

## EIGHTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Relations

(Against MTK and VGC)

107.   Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

108.   Defendants VGC and MTK intentionally interfered with an economic relationship between Plaintiffs and Mr. Joseph Diaz, Jr. that probably would have resulted in an economic benefit to Plaintiffs. Namely, Plaintiffs had a contract with Mr. Diaz for boxing management and due to the interference Defendants have impacted the future relationship between Mr. Diaz and Plaintiffs.

109.   VGC and MTK knew of the relationship. VGC in emails and letters to GBP has unlawfully demanded that GBP declare the promotion contract null and void and declare Mr. Diaz a "free agent." Similarly in these emails and letters, VGC has referenced the contract/relationship between Mr. Diaz and the Plaintiffs. MTK did so without the knowledge or consent of Plaintiffs and did so with the intent of taking over as Mr. Diaz's manager. At all relevant times, Mr. Diaz was still under contract with Plaintiffs.

110.   VGC and MTK engaged in specific conduct aimed at interfering with the Plaintiffs business relationship with Mr. Diaz, to wit: directing Mr. Diaz not to communicate with Plaintiffs, attempting to insert themselves as the managers for Mr. Diaz, attempting to have GBP declare its contract with Mr. Diaz null and void, and engaging in a social media smear campaign of Plaintiffs.

111.   By engaging in this conduct, VGC and MTK intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

112.   The relationship has been disrupted and Mr. Diaz no longer communicates with Plaintiffs.

113.   Plaintiffs have been harmed by this interference.

114.   VGC and MTK's conduct was the substantial factor in causing Plaintiffs' harm. After Mr. Diaz became a world champion, MTK reached out to Mr. Diaz and offered him, upon information and belief, an advance of $100,000 on his next purse in exchange for Mr. Diaz signing a "marketing advisory" agreement.

## NINTH CAUSE OF ACTION

### Tortious Interference with Contract – Boxer-Manager Contract Luis Feliciano

(Against GBP)

115.   Plaintiffs incorporate by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

116.   At all relevant times, an exclusive boxer-manager contract existed between Plaintiffs and a third party Mr. Luis Feliciano. This contract was signed on March 23, 2017 before the California State Athletic Commission and lasts for five years. This contract is valid and enforceable.

117.   GBP's conduct prevented performance or made the performance of this contract more expensive or difficult. GBP has made several communications

to Mr. Feliciano through their employee Mr. Ernie Gabion. The communications started around January 2020. M. Heredia spoke to Mr. Gabion and stated not to contact Mr. Feliciano or any of his professional boxers directly and that any communications from GBP need to come to him, Mr. M. Heredia. In early March of 2020, Mr. M. Heredia reiterated this issue with Mr. Oscar De La Hoya, founder and CEO of GBP and Eric Gomez, President of GBP. Despite being under contract and despite these communications on December 1, December 8, and December 11, 2020, Mr. Gabion called and left messages for Mr. Feliciano. In the December 11, 2020 message Mr. Gabion discusses talking with high-ranking/c-suite GBP employees. These communications have caused Plaintiffs additional work and caused the performance of the contract to be more expensive and complicated. GBP is a "stranger" to the boxer-manager contract and are liable in tort for their intentional interference. These actions have caused Plaintiffs additional time and expenses to include hiring counsel to assert their rights. Plaintiffs used additional time and effort to stop the interference, to console their boxer and quash any negative thoughts so that Mr. Feliciano can focus on his boxing career.

118.   GBP intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. GBP's communications are intended to sow doubt in Mr. Feliciano and the management he receives from Plaintiffs. GBP wants this disruption to occur as their ultimate goal is to cause Mr. Feliciano to breach or not renew his management contract with Plaintiffs.

119.   The Plaintiffs have been harmed by the actions of GBP. Plaintiffs fulfill a firewall function between the promotor and the boxer which is being trampled upon. Plaintiff's relationship with Mr. Feliciano has been hampered.

120.   GBP's conduct is the substantial factors in causing Plaintiff's harm. But for the interference of GBP, Plaintiffs' contract with Mr. Feliciano would not

COMPLAINT - 31

have been interfered with and harm would not have been caused. The conduct of GBP is the substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and an award against Defendants as follows:

1.  For compensatory damages in an amount to be determined at trial;

2.  For treble damages in an amount to be determined at trial;

3.  For pre- and post-judgment interest at the maximum rate allowed by law;

4.  For recovery of reasonable attorneys' fees;

5.  For the costs of the suit; and

6.  For such other and further relief as the Court deems just and proper.

7.  Jury trial is demanded.


Dated: December 18, 2020                    Respectfully submitted,


                                            /s/ *Rajan O. Dhungana*
                                            Rajan O. Dhungana (SBN: 297794)
                                            Eric S. Montalvo (*Pro Hac Vice* Motion
                                            Forthcoming)
                                            FEDERAL PRACTICE GROUP
                                            1750 K Street, NW, Suite 900
                                            Washington, DC 20006
                                            Telephone: (202)862-4360
                                            rdhungana@fedpractice.com
                                            emontalvo@fedpractice.com

                                            *Attorneys for Plaintiffs*

COMPLAINT - 32