Rajan O. Dhungana (SBN: 297794)
    rdhungana@fedpractice.com
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905

Eric S. Montalvo (*Pro Hac Vice*)
    emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, DC 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Eastern Division)

| | |
|---|---|
| MOSES HEREDIA,<br><br>        Plaintiff,<br>vs.<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; and DANIEL KINAHAN,<br><br>        Defendants. | Case No.: 5:20-cv-02618-JWH-KKx<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT - 1

Plaintiff Mr. Moses Heredia ("Mr. Heredia" or "Plaintiff") brings this Complaint against the Defendants MTK Global Sports Management, LLC ("MTK"), MTK Global USA, LLC ("MTK USA"), Golden Boy Promotions, Inc. ("GBP" or "Golden Boy"), Mr. Paul D. Gibson ("Mr. Gibson"), and Mr. Daniel Kinahan ("Mr. Kinahan") (collectively, "Defendants") and alleges, based on knowledge as to himself and his own acts and on information and belief as to all other matters, as follows:

## FACTS AND NATURE OF THE CASE

1.     This dispute arises from Defendant's (1) violation of Racketeering Influenced and Corrupt Organization (RICO) Act 18 U.S.C. § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income; (2) violation of RICO 18 U.S.C. § 1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise; (3) violation of RICO 18 U.S.C. § 1962(c) – Conducting the Affairs of an Enterprise; (4) violation of RICO 18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise; (5) tortious interference with Boxer-Manager Contract between Mr. Heredia and boxer, Mr. Joseph "JoJo" Diaz, Jr. ("Mr. Diaz") (6) tortious interference with promotion-manager contract between Mr. Heredia and GBP, (7) inducing breach of Boxer-Manager Contract between the Mr. Heredia and Mr. Diaz, (8) intentional interference with prospective economic relations, (9) negligent interference with prospective economic relations, (10) tortious interference with Boxer-Manager contract between the Mr. Heredia and boxer, Mr. Luis Feliciano ("Mr. Feliciano"), and (11) breach of implied covenant of good faith and fair dealing concerning the promotion-manager contract between Mr. Heredia and GBP.

2.     Mr. Moses Heredia is a duly licensed boxing manager.

3.     Mr. Joseph "JoJo" Diaz, Jr. is a professional south paw boxer of Mexican decent and was the IBF super featherweight champion. A title he lost after failing to make weight for the bout on February 13, 2021. He is currently

interim WBC lightweight world champion after his bout on July 9, 2021.

4.      Mr. Diaz is represented by VGC, LLP, a law firm. VGC, LLP is also acting in concert with MTK / MTK USA to manage Mr. Diaz's professional boxing career.

5.      GBP is a properly registered and licensed boxing promotion company operating within the State of California. GBP and Mr. Heredia have done business with each other for nearly ten years.

6.      MTK, a Dubai, UAE, and British based company, holds itself out as the "biggest force in business of boxing" in its capacity as a boxing management and promotional company. Mr. Gibson works for MTK.

7.      MTK USA is a Delaware based limited liability company and upon information and belief is a subsidiary of MTK. More information concerning the nature of MTK USA's relationship with MTK will be known after a reasonable opportunity for further investigation or discovery.

8.      MTK was co-founded and is in part owned and controlled by Mr. Daniel Kinahan, a noted member of Ireland's notorious Kinahan Cartel, also known as the Kinahan Organized Crime Group ("KOCG") by law enforcement officials. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

9.      Mr. Heredia managed Mr. Diaz, pursuant to a Boxer-Manager Contract, ID No. M-2017-0006, dated February 23, 2017. This contact was properly executed on the two-page preapproved from in the presence of Mr. Larry Ervin, a representative of the California State Athletic Commission ("Commission"), and later endorsed by Commission after review on February 24, 2017. This contract was originally set to expire on February 22, 2022. However, the actions of the Defendants in this case caused the relationship between Mr. Heredia and Mr. Diaz to sour and become irreparable. Mr. Heredia learned that Mr.

Diaz had signed an agreement with MTK / MTK USA. This document is titled as a "business advisory agreement," however, MTK / MTK USA and its employees and agents with the assistance of VGC, LLP provided management services to Mr. Diaz, arranged two professional boxing bouts sanctioned by GBP, and caused Mr. Diaz to stop communicating with Mr. Heredia. The long-standing relationship between Mr. Heredia and Mr. Diaz ended on August 4, 2020 when that agreement was signed.

10.     Mr. Heredia asked for that agreement. Mr. Diaz, his counsel, VGC, LLP, nor MTK / MTK USA provided the agreement to Mr. Heredia or his counsel. Mr. Heredia moved for arbitration pursuant to the language of the Boxer-Manager Contract. After some delay, the arbitration was held on June 10, 2021. The Executive Officer of the Commission found the parties could not resolve their differences during the arbitration. In the arbitration decision the Executive Director canceled the Boxer-Manager Contract effective July 10, 2021.

**Background**

11.     Mr. Heredia has known Mr. Diaz since he competed as an amateur boxer prior to his qualification for the 2012 Summer Olympics. After Mr. Diaz completed in the 2012 summer Olympic Games in London, he became a professional boxer. Mr. Heredia managed Mr. Diaz's boxing career for almost a decade. During this time, Mr. Heredia brought Mr. Diaz three world championship bouts and negotiated the 2017promotion agreement with GBP.

12.     The Promotion Agreement Term Sheet with GBP was signed on March 22, 2017. The promotion agreement is valid for five years and expires on March 21, 2022. In the terms of the promotion agreement negotiated by Mr. Heredia, Mr. Diaz received a $150,000 signing bonus and two bouts shortly after the signing of the agreement with purses of $150,000 and $200,000. The Executive Director of the Commission stated in his decision that this promotion agreement was "lucrative" for Mr. Diaz. The promotion agreement also contained a net

SECOND AMENDED COMPLAINT - 4

proceeds clause should Mr. Diaz be the "A" side of a main event bout on Pay-Per-View (PPV).

13.     The promotion agreement contains a no assignment clause for the boxer among other provisions which states: "Neither the benefits nor the duties of Boxer [Mr. Diaz] under this Agreement may be assigned or transferred for any reason." The promotion agreement also requires Mr. Diaz to list his representatives, if any. Mr. Diaz listed Moses Heredia and Ralph Heredia, Moses brother, as his representatives.

14.     Mr. Diaz fought ten bouts pursuant to the Boxer-Manager Contract dated February 23, 2017 and his promotion agreement dated March 22, 2017. There were no issues with the relationship for over three years. However, after MTK / MTK USA induced the breach of the agreement, Mr. Diaz breached the Boxer-Manager Contract language for the tenth bout on February 13, 2021 by not gaining the permission of his boxing manager, Mr. Heredia, and as he failed to pay the 18% management fee to Mr. Heredia. Mr. Diaz breached the Boxer-Manager Contract again on July 9, 2021 by not gaining the permission of his boxing manager, Mr. Heredia, and as he failed to pay the 18% management fee to Mr. Heredia. These breaches by Mr. Diaz have been addressed in the arbitration at the Commission that occurred on June 10, 2021.

15.     The bouts on February 13, 2021 and July 9, 2021 were negotiated in part by MTK / MTK USA and their employees and agents and VGC, LLP. MTK, MTK USA, Mr. Kinahan, Mr. Gibson nor VGC, LLP possess the proper licensure to perform either management or promotional services in California. MTK, Mr. Kinahan, Mr. Gibson nor VGC, LLP hold no authority to perform management functions in the State of California. Further, U.S. law prohibits one company from providing both management and promotion services. *See* 15 U.S.C. § 6308.

16.     "Manager" under California law, in relevant part:

"means any person who does any of the following: (a) By contract,

SECOND AMENDED COMPLAINT - 5

agreement, or other arrangement with any person, undertakes or has undertaken to represent in any way the interest of any professional boxer, or martial arts fighter in procuring, or with respect to the arrangement or conduct of, any professional contest in which boxer or fighter is to participate as a contestant; (b) Directs or controls the professional boxing or martial arts activities of any professional boxer or martial arts fighter ... ," Cal. Bus. & Prof. Code § 18628.

17.     On August 4, 2020, MTK USA signed what is titled and purported to be a business advisory agreement with Mr. Diaz unbeknownst to Mr. Heredia. Plaintiff became aware of the signing though a text message sent by Mr. Diaz to Mr. Ralph Heredia, Plaintiff's brother, on August 9, 2020 and later through press releases and social media on August 12, 2020. Mr. Diaz texted Ralph Heredia on August 9, 2020 stating: "I signed an advisory deal with MTK, it's being Announced tomorrow. I'm doing this for my career and feel like it's the best choice. It's time for a change. [flexed arm emoji]." Thereafter Plaintiff and Ralph Heredia called Mr. Diaz, but Mr. Diaz did not respond and stopped communicating with Mr. Heredia.

18.     Per the terms of the MTK USA purported business advisory agreement, MTK USA advanced $100,000 to Mr. Diaz upon execution of the agreement. This advance is to be repaid to MTK USA in three installments of $33,333.33. Each installment is due after Mr. Diaz's next three bouts. The purported business advisory agreement states MTK USA is Mr. Diaz's sole and exclusive business advisor.

19.     Mr. Heredia asked Mr. Steve Bash to investigate this agreement. Mr. Bash is an attorney duly licensed in California that has assisted Mr. Heredia in the past. Mr. Bash got the phone number and called Mr. Robert Yalen, the CEO of MTK on or about August 13, 2020. Mr. Bash wanted to determine MTK and MTK USA's intention with this agreement. During the phone call, Mr. Yalen claimed not

to have knowledge of the MTK USA agreement with Mr. Diaz but stated he would inquire into it. However, Mr. Yalen is the signatory for MTK USA on the August 4, 2020 agreement and is quoted in a press release dated August 12, 2020 stating "We are honoured to welcome a boxing superstar in world champion JoJo Diaz to the team. His amazing record speaks for itself and he's one of the best pound for pound boxers in the world, so to have him sign with MTK Global is a massive statement of intent in terms of our expansion into America. He currently holds the IBF super-featherweight belt, and we're determined to help him build on that great success."

20.    On August 14, 2020, Mr. James Greeley of VGC, LLP, ("VGC") a law firm, reached out to Mr. Bash stating that Mr. Yalen asked him to get in touch. Mr. Greeley stated he represented Mr. Diaz. Thereafter they had a call to discuss MTK's intention. Mr. Bash requested a copy of the MTK USA agreement which was not provided. The MTK USA agreement was finally disclosed during the arbitration on June 10, 2021.

21.    Mr. Diaz signed the MTK USA purported business advisory agreement and ceased communication with Mr. Heredia he breached the Boxer-Manager Contract signed on February 23, 2017. Without the MTK USA agreement and no communication from Mr. Diaz, Mr. Heredia sought to confirm his rights under the Boxer-Manager Contract. The terms of the Boxer-Manager Contract require that any dispute be submitted for arbitration within two weeks after the origin of the dispute. In accordance with this provision, on August 20, 2020, Mr. Heredia filed an arbitration request with the Commission with respect to Mr. Diaz's breach of contract pursuant to the terms of the Boxer-Manager Contract and relevant statutory and regulatory provisions.

22.    The Boxer-Manager Contract states, in relevant part: "Boxer [Mr. Diaz] Agrees … that Boxer will not, during the term of this agreement, take or engage in any boxing contests, exhibitions or training exercises without first

having obtained the written permission of Manager [Mr. Heredia] to do so." The Commission accepted the arbitration request, however, due to COVID-19 the arbitration did not take place until June 10, 2021.

23.    On August 20, 2020 at around 8:00 pm, Mr. Greeley emailed Mr. Bash asking for a phone call. On August 21, 2020, Mr. Bash responded that Mr. Heredia requested not to have any further communications until the MTK USA agreement is provided. A few hours later, Mr. Greeley responded stating various claims against Mr. Heredia and requesting to see all offers from GBP. Shortly thereafter, Mr. Bash responded by providing the information from GBP. During this email exchange Mr. Greeley's rhetoric continued to increase. At some point after this email Mr. Greeley instructed GBP to communicate with him as Diaz's legal counsel—and not Mr. Heredia—and by September 14, 2020, Mr. Greeley instructed Mr. Bash to tell Mr. Heredia not to have any communications with Golden Boy that purport to be on Mr. Diaz's behalf. Shortly thereafter, on October 7, 2020, a complaint by Mr. Diaz was filed and litigation ensued. *See* Docket # 5:20-cv-02332-JWH-KK (C.D. Cal.).

24.    VGC, MTK's proxy and or surrogate, in coordination with or on behalf of MTK also stated in that lawsuit that Mr. Ralph Heredia is the manager of Mr. Diaz and that Mr. Moses Heredia was a "paper manager." VGC did so with full knowledge and disregard for Mr. Diaz's contractual obligations and without compliance with any of the laws or regulations that provide the authority to do so. VGC also abandoned this position during the arbitration on June 10, 2021 as memorialized by the decision of the arbitrator.

25.    VGC in coordination with MTK also began to negotiate upcoming bouts with GBP's counsel and directed GBP's counsel to speak to Mr. Paul Gibson from MTK to arrange bouts for Mr. Diaz. VGC directed counsel for GBP to work with MTK and Mr. Paul Gibson. On November 11, 2020, VGC sent an email discussing the terms of a bout between Mr. Diaz and his mandatory Russian

contender, among other things. In this email, VGC states, "I would suggest a call between the business teams at MTK and Golden Boy to discuss Mr. Diaz's future. Please let me know who the appropriate contact would be at Golden Boy. Paul Gibson would take the call on behalf of MTK." No individual in VGC or MTK is licensed to perform boxing management functions in the State of California. *See* Cal. Bus. & Prof. Code § 18628; *see generally* 15 U.S.C. §§ 6301-6313.

26.   VGC and MTK did this despite knowing that Mr. Diaz had a valid Boxer-Manager Contract with Mr. Heredia. More information concerning the nature of the interactions between VGC, MTK, and GBP will be known after a reasonable opportunity for further investigation or discovery.

27.   MTK and MTK USA's purported business advisory agreement with Mr. Diaz is seemingly only about business advisements. However, the actions of Mr. Gibson, MTK / MTK USA and VGC facts show this is a boxing management contract. Mr. Paul Gibson, an MTK employee directly negotiated the terms of a bout between Mr. Diaz and Mr. Shavkatdzhon Rakhimov on February 13, 2021. Further, Defendants negotiated for and arranged a second bout on July 9, 2021.

28.   The purse for the July 9, 2021 bout was set at $500,000 prior to the June 10, 2021 arbitration. At the arbitration, the Executive Director foreshadowed his upcoming decision and stated that Mr. Heredia will get 18% of this purse as management fees. However, after the arbitration, when the Defendants were on full notice of the Executive Director's intent, GBP in coordination with VGC and MTK / MTK USA presented an altered bout agreement to the Commission for a significantly lower amount than the $500,000 in an effort to reduce the amount of the payout to Heredia. The Commission rejected this attempt to interfere with the Boxer-Manager Contract and disapproved the altered bout agreement. In his decision on July 10, 2021, the Executive Director ordered GBP to withhold $90,000 from Mr. Diaz's purse.

29.   MTK and MTK USA's actions are definitional management services

as defined by Cal. Bus. & Prof. Code §18628 provided to Mr. Diaz in violation of the Boxer-Manager Contract dated February 23, 2017.

30.     All attempts to resolve this matter with MTK have been met with hostility.

**Golden Boy's Role**

31.     GBP did two things: 1) GBP worked with VGC and MTK / MTK USA to facilitate Mr. Diaz's bouts despite being placed on full notice that neither VGC, nor MTK / MTK USA have lawful authority to conduct and/or engage in the management of Mr. Diaz through either contract or proper licensure, and 2) GBP has engaged in a pattern and practice of soliciting fighters to come to GBP friendly managers and drive them away from Mr. Heredia.

*Golden Boy's Facilitation of MTK / MTK USA and VGC*

32.     GBP and Mr. Heredia have a long history. They have been working together for several years. Notwithstanding their long business relationship and GBP's knowledge of MTK's violations of the law, GBP has negotiated with MTK as if MTK was the manager of Mr. Diaz in violation of the Muhammad Ali Boxing Reform Act for its own financial gain.

33.     Mr. Gibson of MTK personally negotiated bouts between Mr. Diaz and another fighter which is in direct violation of the Boxer-Manager Contract between Mr. Diaz and Mr. Heredia.

34.     Through these negotiations, MTK and Mr. Diaz, advised by VGC, arranged for a bout on February 13, 2021 against Mr. Shavkatdzhon Rakhimov.

35.     The bout's payment structure was in accordance with the promotion agreement negotiated by Mr. Heredia. No deviation from the promotion agreement occurred. Because of MTK's involvement and their purported $100,000 advance to Mr. Diaz. Mr. Diaz was in a worse financial position.

36.     Prior to the February 13, 2021 bout, Mr. Diaz failed to make weight in his first and mandatory title defense. Because of the weight difference, Mr.

SECOND AMENDED COMPLAINT - 10

Rakhimov was not required to fight Mr. Diaz. Mr. Gibson from MTK however negotiated directly with Mr. Rakhimov's managers and promoters to pay additional monies from Mr. Diaz's purse to have the fight occur. These negotiations are in direct violation of the Boxer-Manager Contract and violate the statutory and regulatory scheme enacted by the State of California. This also resulted in Mr. Diaz having to forfeit his champion status regardless of how the fight went. Further, Mr. Diaz had to pay fines to the Commission of $100,000 thereby reducing the purse from $500,000 to $400,000.

37.    Further, Mr. Diaz, advised and aided by Mr. James Greeley of VGC instructed GBP not to pay Mr. Heredia the 18% management fee per the Boxer-Manager Contract.

38.    GBP negotiated and worked with Mr. Paul Gibson and MTK for this bout and did not communicate with Mr. Heredia.

39.    Mr. Heredia and GBP have an oral agreement concerning disbursement of the manager fees. This agreement states that management fees are paid directly from the purse of a bout. After negotiating with Mr. Gibson and MTK, GBP did not follow oral agreement and prevented a $90,000.00 payment, or a $72,000.00 payment as reduced by the weight failure, due to Plaintiff.

40.    During the arbitration on June 10, 2021, the Executive Director of the Commission found that Mr. Diaz and Mr. Heredia's relationship was irreparably harmed. On July 10, 2021, the Executive Director through his decision canceled the remainder of the Boxer-Manager Contract due to the irreparable nature of the relationship. Mr. Heredia has been harmed by the early termination of this contract. The early termination would not have occurred if MTK and MTK USA did not induce the breach of the Boxer-Manager Contract and GBP did not facilitate or allow MTK, MTK USA, and Mr. Gibson to substitute as Mr. Diaz's managers.

*Golden Boy's Practice of Attempting to Solicit Fighters*

41.    GBP attempted to poach fighters from Mr. Heredia. Mr. Heredia

1   always negotiated hard to get the best possible deal for the boxers he manages.

2       42.    GBP failed to provide market rate bouts to the boxers managed by Mr.

3   Heredia or to not put boxers managed by Mr. Heredia in career advancing fights,

4   or on fight cards that would garner significant media attention. GBP deliberately

5   and intentionally frustrated the careers of fighters managed by Mr. Heredia by

6   failing to secure fights opportunities as required under the promotional agreements

7   for these fighters which caused damages to Mr. Heredia.

8       43.    GBP sandbagged fighters managed by Mr. Heredia. Then GBP would

9   solicit these fighters to leave Mr. Heredia and join another manager. GBP created a

10   contentious and conflicting relationship between Mr. Heredia and the boxers he

11   managed because they were not getting the fights they believed they deserved.

12   GBP used this rift to try and poach fighters and get them signed with managers that

13   are more favorable to GBP. More information concerning the nature of GBP's

14   actions concerning fighters managed by Mr. Heredia will be known after a

15   reasonable opportunity for further investigation or discovery.

16       44.    GBP did not want to give Mr. Diaz a shot at the super featherweight

17   title in a bout between Mr. Diaz and Mr. Tevin Farmer. Mr. Roberto Diaz from

18   GBP attempted to state that Mr. Heredia and his brother Ralph turned down a fight

19   with the Mr. Tevin Farmer. However, this was a complete falsity.

20       45.    In order to ensure that Mr. Diaz's interests were protected, Mr.

21   Heredia talked to representatives from Mr. Joseph Markowski of DAZN and Eddie

22   Hearn of Matchroom. He then sent an email including the representatives from

23   DAZN and Matchroom to Mr. Roberto Diaz from GBP and stated that Mr. Joseph

24   Diaz never turned down the Farmer fight.

25       46.    Only after this level of advocacy and showing that GBP did not want

26   this fight to occur, did the fight actually occur. GBP wanted to put up fighters from

27   other managers that did not negotiate as aggressively as Mr. Heredia.

28       47.    However, this was not the only incident of an attempt at poaching a

SECOND AMENDED COMPLAINT - 12

1   fighter or offering below market rate or lower-class fights to boxers managed by
2   GBP.

3     48. As stated above, Mr. Diaz and GBP have advertised bouts for Mr.
4   Diaz on February 13, 2021 and on July 9, 2021. This is yet another time MTK and
5   GBP have worked together and intentionally excluded Mr. Heredia—Mr. Diaz's
6   boxing manager.

7     49. GBP did this not just with Mr. Diaz. GBP did this with many the
8   fighters managed by Mr. Heredia to include Mr. Luis Feliciano.

9     50. In August 2019 through the spring of 2020, GBP employees,
10   including an individual name Mr. Ernie Gabon, approached Mr. Luis Feliciano.
11   These conversations were not about anything to do with the promotion agreement
12   between Mr. Feliciano and GBP. Rather they wanted to pry Mr. Feliciano away
13   from Mr. Heredia and have him sign with another manager that is more favorable
14   to GBP.

15     51. In response to this, Mr. Heredia spoke to Mr. Oscar De La Hoya, the
16   Chairman and CEO of GBP and Mr. Eric Gomez, President of GBP, and told him
17   to stop attempting to poach his fighters. Mr. De La Hoya and Mr. Eric Gomez who
18   assured them that it would not continue.

19     52. But it did. After MTK induced Mr. Diaz to breach his contract, GBP
20   believed the time was right to attempt to poach fighters from Mr. Heredia again.

21     53. Once again, GBP targeted Mr. Feliciano. In several communications
22   on November 17, Dec 1, Dec 11, and Dec 16, of 2020, Mr. Gabon of GBP, made
23   overtures to Mr. Feliciano and attempted to sow doubt in the mind of Mr. Feliciano
24   and encouraged him to leave Mr. Heredia. This not only interferes with the Boxer-
25   Manager Contract between Mr. Feliciano but also causes harm to Mr. Heredia in
26   other ways. Mr. Heredia is a third-party beneficiary to the promotion agreements
27   as his management fee is directly tied to the purses of the boxers he manages.

28     54. This is also within the context of a deliberate course of activity to

SECOND AMENDED COMPLAINT - 13

suppress Mr. Feliciano's opportunities, set him up for failure, and demand lower purse amounts without any business justification.

55.     The audio messages in November and December followed difficult negotiations that failed to secure an agreement.

56.     Promoters are to deal with the Manager and what GBP should have done is communicate with either Mr. Heredia or have GBP's counsel communicate with Mr. Heredia's counsel. The communications from Mr. Gabon to Mr. Feliciano directly are interference, particularly under the circumstances of the relationship between Mr. Diaz and the Mr. Heredia and the breach with MTK.

## PARTIES

57.     Plaintiff Moses Heredia is an individual residing in San Bernardino County, California.

58.     Defendant MTK Global Sports Management, LLC, is a Dubai, UAE business entity with license number 785135 and having its registered office at PO Box 454833, Al Barsha Post Office, Dubai, United Arab Emirates. MTK Global Sports Management, LTD, is a wholly owned subsidiary of MTK Global Sports Management, LLC operating out of the United Kingdom with its principal place of business at 20-22 Wenlock Road, London, England, N1 7GU. MTK stands for "Mack the Knife." MTK recently changed its name to Global Promotion Management LTD in the United Kingdom. However, MTK still is operating and doing business as "MTK Global." *See* https://mtkglobal.com/.

59.     Defendant MTK Global USA, LLC is a Delaware limited liability company, with a registered agent, Paracorp Incorporated, at 2140 S Dupont HWY, Camden, DE 19934.

60.     Defendant Golden Boy Promotions, Inc., is a California corporation with its principal place of business at 626 Wilshire Blvd, Suite 350, Los Angeles, CA 90017.

61.     Defendant Paul D. Gibson is MTK's Chief Strategy Officer and an

SECOND AMENDED COMPLAINT - 14

1  individual residing in Alicante, Valencian Community, Spain.

2       62.    Defendant Daniel Kinahan is a co-founder and owner of MTK and an

3  individual residing in Dubai, UAE.

4       63.    Each and every Defendant was the agent, servant, employee, joint

5  venture, partner, subsidiary, and/or co-conspirator of each other Defendant, and in

6  performing or failing to perform the acts alleged herein each Defendant was acting

7  individually as well as through and in the foregoing alleged capacity within the

8  course and scope of such agency, employment, joint venture, partnership,

9  subsidiary, and/or conspiracy.

10                          **JURISDICTION AND VENUE**

11       64.    This Court has subject matter jurisdiction over this action pursuant to

12  18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

13       65.    Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965

14  and 28 U.S.C. § 1391 because substantial part of the events or omissions giving

15  rise to the claim occurred in this district. Defendants MTK, Mr. Gibson, and Mr.

16  Kinahan do substantial business in this judicial district, has substantial minimum

17  contacts with this judicial district, and/or intentionally availed itself of the benefits

18  and protections of California law through the promotion, sale, marketing, and

19  provision of services in California; *See* 18 U.S.C. § 1965 ("Any civil action or

20  proceeding under this chapter against any person may be instituted in the district

21  court of the United States for any district in which such person resides, is found,

22  has an agent, or transacts his affairs."). Further, Venue is proper in this judicial

23  district pursuant to 28 U.S.C. § 1391 because Defendant GBP is subject to personal

24  jurisdiction in this judicial district and reside in this district.

25                        **FEDERAL AND CALIFORNIA LAW**

26       66.    Under Federal law, the term boxing manager means a "person who

27  receives compensation for service as an agent or representative of a boxer." *See* 15

28  U.S.C. § 6301. Under California law, the term boxing manager means, "any person

SECOND AMENDED COMPLAINT - 15

who … undertakes … to represent in any way the interest of any professional boxer … ." Cal. Bus. & Prof. Code § 18628. A manger must be properly licensed within the State of California to execute his/her duties under the law. *See* Cal. Bus. & Prof. Code § 18642; 4 CCR § 216.

67.     Under Federal law, the term boxing promoter means "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. § 6301. Under California law, the term boxing promoter means "a corporation, partnership, association, individual, or other organization which conducts, holds, or gives a boxing or martial arts contest, match, or exhibition." Cal. Bus. & Prof. Code § 18622. Federal law creates a "firewall" between managers and promoters in order to protect the boxer. 15 U.S.C. § 6308. Like with a manager contract, promoters are required to have a license. Cal. Bus. & Prof. Code § 18641; *see also* 4 CCR § 213. A licensed promoter may do business with other licensed promoters. Cal. Bus. & Prof. Code § 18668.

68.     Violations of the Professional Boxing Safety Act of 1996 (PBSA), as amended by the Muhammad Ali Boxing Reform Act of 2000 ("Ali Act") carry with it civil and criminal penalties. *See generally* 15 U.S.C. § 6309.The public policy behind the statutory scheme, *inter alia*, is to ensure transparency with respect to how a boxer receives income.

### INTERFERENCE

69.     MTK and MTK USA presented Mr. Diaz with an offending management agreement, titled as a purported business advisory agreement that was signed on or about August 4, 2020.

70.     MTK and/or its agents engaged in direct negotiations with GBP in full disregard for Mr. Diaz's contractual obligations and the federal and state laws governing the profession of boxing.

71.     MTK and GBP have interfered to the point of scheduling two bouts. One on February 13, 2021 between Mr. Diaz and his mandatory contender without

any input from or communication with or the consent of Mr. Heredia. The second bout occurred on July 9, 2021 between Mr. Diaz and Mr. Javier Fortuna. This bout was scheduled without involvement or the consent of Mr. Heredia.

72.     MTK, MTK USA, or VGC further advised or directed Mr. Diaz to direct GBP not to pay Mr. Heredia the contractual payment of 18%.

73.     GBP negotiated with Mr. Paul Gibson and MTK in creating the February 13, 2021 bout and did not communicate with Mr. Heredia.

74.     Further, due to Mr. Diaz's failure to make weight MTK and Mr. Gibson negotiated with the management/promotion team for Mr. Shavkatdzhon Rakhimov in order to keep the fight scheduled.

75.     GBP also aided and assisted with these negotiations and worked with MTK and Mr. Gibson as if they were Mr. Diaz's managers in complete disregard for Plaintiff's valid, enforceable, and exclusive management contract with Mr. Diaz.

76.     GBP negotiated with MTK and its employees and agents in creating the July 9, 2021 bout and did not communicate with Mr. Heredia.

77.     MTK runs an operation out of the Dubai Economic Zone, as discussed below, and is overseen by Mr. Daniel Kinahan who also resides in Dubai, UAE. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

78.     MTK and MTK USA are interfering with Plaintiff's boxer-manager contract between Mr. Heredia and Mr. Diaz and interfering with Plaintiff's promotion contract with GBP. Mr. Heredia is a third-party beneficiary of the promotion agreement. MTK is acting as Mr. Diaz's boxing manager and excluding Mr. Heredia. Mr. Heredia is listed as the representative for Mr. Diaz on the Golden Boy promotion agreement. MTK is directly negotiating with GBP, Mr. Diaz's boxing promoter. Both GBP and MTK are excluding Mr. Heredia from conversations and negotiations involving Mr. Diaz. VGC facilitated this by

coordinating between GBP and MTK regarding negotiations including direct negations which directly benefit MTK and GBP.

79.     MTK is flooding the U.S. marketplace for the purpose of cornering the professional boxing market in an identical approach taken in Europe, further exacerbated by disrespecting US law and tortuously interfering with contracts with impunity, violating the Ali Act firewall provisions, and not obtaining the required licensure or complying with the various statutory requirements associated the roles of manager and promoter. MTK has in the past few months signed over eight US boxers and several dozen across the globe. MTK states it is a global management and promotion company but is having boxers sign management agreements using the title "advisory" in an unguarded attempt to avoid legal scrutiny without basis in statutory law. However, MTK's agreements are management or promotion agreements based on the applicable definitions and MTK's conduct.

80.     MTK and MTK USA interfered by providing a financial inducement to Mr. Diaz. MTK provided a $100,000 advance to Mr. Diaz which is repayable over his next three bouts. This advance is essentially a loan to Mr. Diaz which impacts his future earnings and mortgages his future away, which is why the Federal Government and the State of California created statutes and regulations to protect boxers. *George Foreman Associates, Ltd. v. Foreman*, 389 F.Supp 1308, 1314 (1974) ("The statutes and regulations indicate a clear purpose to safeguard boxers against the temptation to mortgage their futures in exchange for relatively meager present consideration.").

81.     GBP has disregarded its contractual obligations with respect to the 2017 promotional agreement with respect to Plaintiff. Further, GBP has contacted at least one other boxer managed by Mr. Heredia, Luis Feliciano, on multiple occasions as recently as December 16, 2020 in violation and disregard of other agreements. This interference is a byproduct of MTK's trampling on Plaintiff's rights—something that GBP is allowing and attempting to profit from.

SECOND AMENDED COMPLAINT - 18

82.     This tortious and unlawful activities continue unto present day.  Diaz to include a bout on July 9, 2021 where Mr. Diaz fought Javier Fortuna.

83.     MTK, MTK USA, their agents, and GBP are openly and notoriously interfering with the boxing management contract between Mr. Diaz and Mr. Heredia and the boxing promotional contract between Mr. Diaz, Mr. Heredia, and GBP. Further, MTK and MTK USA caused Mr. Diaz to breach his Boxer-Manager contract with Mr. Heredia.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

84.     MTK was co-founded by Mr. Daniel Kinahan. Mr. Daniel Kinahan is known as the head of Kinahan Organized Crime Group ("KOCG") in Ireland. The KOCG is allegedly responsible for several murders, drug trafficking, and money laundering. The KOCG is one of Europe's biggest drug cartels. Law enforcement experts believe that Mr. Daniel Kinahan started MTK to launder ill-gotten gains from drug trafficking. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. Mr. Daniel Kinahan is wanted for questioning by several law enforcement agencies due to the murderous activities of the KOCG. On or about September 16, 2018, the United States Customs and Border Protection (CBP) banned Mr. Kinahan and roughly 26 other members of the KOCG from entering America due to narco-terrorism concerns. *See e.g.* https://www.thetimes.co.uk/article/america-bans-the-kinahan-crime-family-r7bbbntll; https://www.thesun.ie/news/5456085/cartel-boss-daniel-kinahan-banned-us-placed-on-list-narco-terrorists/.

85.     In 2016, Mr. Kinahan fled Ireland to Dubai, UAE after a boxing match he promoted ended in violence at the Regency Hotel in Dublin, Ireland. During that boxing match, several masked gunmen fired AK-47s into the crowd, killed one person, and injured several more. This shooting is alleged to be a plot to kill Mr. Kinahan by a rival crime family. *See e.g.* https://www.ringtv.com/603461-

SECOND AMENDED COMPLAINT - 19

buzz-and-scrutiny-build-regarding-mtk-global-and-daniel-kinahan/.

86.     Mr. Daniel Kinahan is currently living in Dubai, UAE where he continues to arrange boxing matches and act in a management capacity to MTK. *See e.g.* https://www.insider.com/tyson-fury-splits-from-reputed-drugs-boss-daniel-kinahan-2020-6; https://www.sportscasting.com/what-we-know-about-tyson-furys-advisor-daniel-kinahan-a-suspected-1-1-billion-drug-lord/. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

87.     The Racketeering Influenced and Corrupt Organizations (RICO) Act allows for a wronged plaintiff to sue in civil court for damages. *See* 18 U.S.C. § 1964.

88.     At all relevant times MTK received or obtained money, either directly or indirectly from a pattern of racketeering activity. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery. MTK is associated with Mr. Daniel Kinahan and the Kinahan Organized Crime Group ("KOCG"). The KOCG is an association-in-fact that operates one of Europe's largest drug trafficking and money laundering networks according to several law enforcement agencies. Mr. Kinahan co-founded MTK with Matthew "Mack The Knife" Macklin. Mr. Kinahan co-founded MTK in an attempt to launder illicit proceeds from drug trafficking through a seemingly lawful business. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

89.     However, this attempt failed in 2016 when during a boxing match promoted by Mr. Kinahan ended in violence as a rival crime family, believed to be the Hutch Family, began shooting the crowd. In the aftermath of that shooting and feeling the pressure from several law enforcement agencies, Mr. Kinahan fled from Ireland to Dubai, UAE and continued to operate MTK by creating the Dubai, UAE

wing of MTK. In 2017, MTK made attempts on paper to sever the ties between MTK and Mr. Kinahan. However, recent reports—as recent as November 2020—still indicate that Mr. Kinahan is running MTK from Dubai, UAE. *See e.g.* https://www.belfasttelegraph.co.uk/news/northern-ireland/barry-mcguigan-in-warning-to-boxing-over-kinahan-grip-after-frampton-case-39750316.html. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

90.    "Racketeering activity" is an act that violates certain statutes enumerated in 18 U.S.C. § 1961. "Racketeering activity" is also called a "predicate act." *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Drug trafficking and money laundering are both listed in 18 U.S.C. § 1961. Here, MTK received or obtained money, either directly or indirectly, from drug trafficking and money laundering through its association with Mr. Kinahan. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery. Mr. Kinahan continues to arrange boxing matches that involve MTK fighters. These matches are steeped in money obtained from drug trafficking and money laundering. MTK then uses this money to attempt to bring in more fighters and arrange more fights so that more drug trafficking proceeds can be laundered through what appears to be a legitimate business. MTK's thirst for new boxers supports the KOCG's money laundering needs. This thirst has brought MTK to the US market and to the interference with Mr. Diaz and Plaintiff. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

91.    A "pattern of racketeering activity" means that a defendant, such as MTK, committed at least two distinct predicate acts. "Distinct" does not have to mean different types. A pattern of racketeering activity must include related predicate acts. Predicate acts are "related" to one another if they have the same or

similar purposes, results, participants, victims, or methods. Here, MTK has approached several US fighters and offered similar "marketing advisor" arrangements. More information concerning the nature of MTK's entry into the U.S. boxing market will be known after a reasonable opportunity for further investigation or discovery. MTK sometimes does this with the knowledge and consent of the fighters boxing manager. On other occasions, such as this current dispute, it is a hostile attempt to peel a boxer or sport fighter away from his or her managers. MTK holds Mr. Diaz out on its website as one of its boxers and has publicly tweeted about the February 13, 2021 mandatory-title defense bout. This bout was apparently arranged between MTK and GBP, both of whom have not included Mr. Diaz's manager, Mr. Heredia in the conversation.

92. A pattern of racketeering activity also requires predicate acts showing "continuity." Continuity can be demonstrated in two ways. The first is "close-ended" continuity where the related predicate acts extend over a substantial period of time. The second is "open-ended" continuity where the related predicate acts do not occur over a substantial period of time but are likely to be repeated in the future. Here, MTK continues to involve itself in drug trafficking and money laundering through its association with Mr. Kinahan. These acts are likely to be repeated in the future. MTK advertises on its website that it is one of the biggest forces in boxing and is encouraging children as young as 15 to sign up with them to get more and more boxers in their grasps to continue the money laundering operation. This also includes a drive to become a dominant player in the United States as MTK continues its expansion into the United States. More information concerning the nature of MTK's entry into the U.S. boxing market will be known after a reasonable opportunity for further investigation or discovery.

93. MTK has participated as a principal in the pattern of racketeering activity. MTK either committed or aided, abetted, counseled, commanded, induced, or procured the commission of several predicate acts that form a pattern

of racketeering activity. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery. MTK also willfully caused the commission of two or more alleged predicate acts that make up the pattern of racketeering activity. MTK committed these predicate acts with intent or knowledge. MTK knows that Mr. Kinahan is involved in drug trafficking and money laundering and yet MTK still associates with Mr. Kinahan and does business regularly with Mr. Kinahan. Further, MTK itself is engaged in predicate acts when it proved these illicit funds to Mr. Diaz.

94.     MTK uses the income or proceeds derived from the racketeering activity to acquire, maintain, or operate an enterprise. An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. Here, MTK has attempted to acquire an interest in Mr. Joseph Diaz, as a professional boxer. MTK provided Mr. Diaz $100,000 to induce him to breach his contract with Plaintiff without proper licensure, contractual, or lawful authority. These funds are directly or indirectly derived from racketeering activity as described above. MTK receives funds directly or indirectly from Mr. Kinahan which are derived from racketeering activity such as drug trafficking and money laundering. MTK itself is laundering the illicit proceeds of the KOCG drug trafficking enterprise. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

95.     MTK is engaged in interstate and foreign commence. They are a foreign business entity operating in the United States, namely California. MTK is using and abusing US law in an attempt to gain a foothold in a lucrative market to continue their money laundering operation. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

96.     The acts of MTK have caused damage to Plaintiff. MTK used racketeering income to injure Plaintiff. To establish standing for a civil RICO claim, four factors must be satisfied: the Plaintiff must be (1) a "person" (2) who sustains injury (3) to his or her "business or property" (4) "by reason of" defendant's violation of 18 U.S.C. § 1962. Standing depends on injury from the "conduct constituting the violation," and each section of RICO has a different injury requirement. Injury under § 1962(a) must stem from the investment of racketeering income; injury under § 1962(b) must stem from the acquisition of an interest on or control over an enterprise; injury under § 1962(c) must stem from the predicate acts; and injury under § 1962(d) generally stems from the overt acts committed in furtherance of the conspiracy. Plaintiff has standing under all four sections of RICO as they are considered a "person" who has sustained an injury to his business by reason of the injuries described below.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### RICO § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income

(Against MTK, Mr. Kinahan, and Mr. Gibson)

97.     Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

98.     MTK is an enterprise engaged in and whose activities affect interstate commerce. MTK is an international boxing management and promotion company and engages in marketing boxing and other fighting sport events through television and the internet. MTK is operating in several markets to include this judicial district. MTK is associated with Mr. Kinahan and Mr. Gibson is MTK's chief strategy officer. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

99.     MTK derived income, directly or indirectly, from a pattern of

racketeering activity. Namely, through MTK's association with Mr. Kinahan and the KOCG, MTK has accepted income from drug trafficking and money laundering. Any investment by or through Mr. Kinahan necessarily is income derived, directly or indirectly, from drug trafficking and money laundering. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. Upon information and belief, these acts have occurred more than once, are related to one another, and are continuous under both the closed-end continuity theory and the open-ended continuity theory as the relationship between MTK and the KOCG has been established over time and is likely to be repeated into the future.

100.   MTK used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically, MTK was co-founded my Mr. Daniel Kinahan who is the reported leader of the KOCG in Ireland. The KOCG is known by several governments, including the United States Government of engaging in narco-terrorism, drug trafficking, and money laundering. MTK states that it has severed ties with Mr. Kinahan. However, while official ties on paper may have been severed, Mr. Kinahan is still influencing and controlling MTK. As recently as November 16, 2020 it is reported that MTK is still associated with Mr. Daniel Kinahan. MTK received income from Mr. Daniel Kinahan and the KOCG that was derived from a pattern of racketeering activity in an interstate enterprise. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. MTK then used this income derived from a pattern of racketeering activity to acquire an interest in Mr. Joseph "JoJo" Diaz, Jr, an individual. Enterprises may consist of individuals.

101.   The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

SECOND AMENDED COMPLAINT - 25

102.   MTK participated as a principle in the pattern of racketeering activity. With knowledge of the KOCG and Mr. Kinahan's drug trafficking and money laundering, MTK conspired with or aided and abetted the KOCG and Mr. Kinahan to allow MTK to be used a front for money laundering. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. MTK received income from the predicate acts, directly or indirectly, and then invested that income in the acquisition of an interest in Mr. Joseph Diaz, Jr, an enterprise, which is engaged in interstate and international commerce.

103.   As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiff and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiff resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promoters.

104.   WHEREFORE, Plaintiff requests that this Court enter judgment against the MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## SECOND CAUSE OF ACTION

### RICO § 1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise

(Against MTK, Mr. Kinahan, and Mr. Gibson)

105.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

106.   MTK is an enterprise engaged in and whose activities affect interstate commerce.

107.   MTK acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifically, on or about, August 12, 2020, MTK provided Mr. Joseph Diaz, Jr. with an advance of $100,000 in exchange signing for a purported business advisory agreement in violation of the current boxer-manager contract signed between Mr. Diaz and Plaintiff. Mr. Diaz is an individual and individuals are considered "enterprises." The advance MTK provided Mr. Diaz was derived, directly or indirectly from the predicate acts of drug trafficking and money laundering as described above. MTK is associated with and conspires with Mr. Kinahan and the KOCG which is one of Europe's largest drug trafficking cartels. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. MTK continues to maintain this interest in Mr. Diaz and recently tweeted about a February 13, 2021 mandatory title bout between Mr. Diaz and Mr. Shavkatdzhon Rakhimov. This bout was scheduled without input from or communication with Plaintiff. Further, MTK holds out on its website that Mr. Diaz is one of "their" boxers.

108.   The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

109.   MTK has directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

110.   As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager

contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiff and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiff resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promoters.

111.   WHEREFORE, Plaintiff requests that this Court enter judgment against MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

### THIRD CAUSE OF ACTION
### RICO § 1962(c) – Conduct the Affairs of the Enterprise
(Against MTK, Mr. Kinahan, and Mr. Gibson)

112.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

113.   MTK is an enterprise engaged in and whose activities affect interstate commerce.

114.   The Kinahan Organized Crime Group (KOCG) is an association-in-fact. *See Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). The KOCG is an enterprise engaged in and whose activities affect interstate commerce.

115.   The purported leader of the KOCG, Mr. Daniel Kinahan, co-founded MTK as a front business to launder illicit proceeds from drug trafficking. MTK and the KOCG have also formed an association-in-fact to further this scheme. The more boxers under MTK allows the KOCG to launder more money from drug trafficking. More information concerning the nature of Mr. Kinahan's involvement

in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

116.   MTK is associated with or employed by the MTK/KOCG association-in-fact enterprise. MTK is associated with the KOCG as described above due to its relationship with Mr. Daniel Kinahan. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

117.   MTK agreed to and did conduct and participate in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally and tortuously interfering with Plaintiff's boxer-manager contract. Specifically, MTK through its association with the KOCG has been using income derived, directly or indirectly, from KOCGs racketeering activities which include drug trafficking and money laundering. MTK used this income derived from the KOCG to provide Mr. Diaz an advance of $100,000 on his next bout. MTK did so to invest in or acquire an interest in Mr. Diaz as a professional boxer as described above. MTK also benefits from these transactions as MTK receives additional money. Stated another way, MTK is allowed to re-invest the profits of the MTK/KOCG association-in-fact enterprise to continue to grow and expand. In doing so, MTK is becoming a large player in the boxing industry and destroying smaller family run operations like Plaintiff's.

118.   MTK knows that the KOCG is involved in drug trafficking and money laundering.

119.   Pursuant to and in furtherance of their scheme, the MTK/KOCG association-in-fact committed multiple related acts of drug trafficking and money laundering. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

120.   The acts of drug trafficking and money laundering set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

121.   MTK has directly and indirectly conducted and participated in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

> "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required."

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *See also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 (11th Cir. 2006) ("… a RICO defendant must 'conduct' or 'participate in' the affairs of some larger enterprise and not just its own affairs."). More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

122.   As a direct and proximate result of the MTK, Mr. Kinahan, and Mr. Gibson's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The conduct of the MTK/KOCG association-in-fact enterprise directly interferes with this contractual relationship. This interference has caused harm to the business relationship between Plaintiff and Mr. Diaz, interfered with other boxing contracts, and has caused Mr. Diaz to stop communicating with Plaintiff resulting in several

previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Boxers of Mexican ethnicity are currently the highest draw in the profession of boxing and a loss of a world champion Mexican boxer has wide ranging adverse impacts on the recruiting and retention efforts of Mr. Heredia and his ability to negotiate with promotional companies which is further demonstrated by GBP's willingness to ignore its contractual standing despite several years of a professional relationship.

123.   WHEREFORE, Plaintiff requests that this Court enter judgment against MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## FOURTH CAUSE OF ACTION

### RICO § 1962(d) – Conspiracy to Conduct the Affairs of the Enterprise
(Against MTK, Mr. Kinahan, and Mr. Gibson)

124.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

125.   As set forth above, the MTK agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c). Specifically MTK conspired with the KOCG association-in-fact enterprise to: (1) use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)); (2) acquire or maintain interests in the Mr. Diaz as a professional boxer through a pattern of racketeering activity (§ 1962(b)); and (3) conduct and participate in the conduct of the affairs of the MTK/KOCG association-in-fact enterprise through a pattern of racketeering activity (§ 1962(c)). More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

126.   MTK has intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an

interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the MTK/KOCG association-in-fact enterprise through a pattern of racketeering activity. MTK knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d). More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

127.   As direct and proximate result of the MTK's conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The conduct of the MTK/KOCG association-in-fact enterprise directly interferes with this contractual relationship. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiff and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiff resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promoters.

128.   WHEREFORE, Plaintiff requests that this Court enter judgment against MTK as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## FIFTH CAUSE OF ACTION

### Tortious Interference with Contract – Boxer Manager Contract

(Against MTK, MTK USA, Mr. Gibson, and GBP)

129.    Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

130.    At all relevant times, an exclusive boxer-manager contract existed between Mr. Heredia and Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before the California State Athletic Commission and would have lasted five years, but on July 10, 2021 was canceled by the Executive Director of the Commission.  During all relevant times this contract was valid and enforceable.

131.    MTK, MTK USA, and Mr. Gibson's conduct prevented performance or made the performance of this contract more expensive or difficult. Mr. Diaz did not to communicate with Mr. Heredia but instead enlisted MTK, MTK USA, and Mr. Gibson to arrange a mandatory title bout with GBP. This bout occurred on February 13, 2021. MTK, MTK USA, and Mr. Gibson are "strangers" to this contract and are liable in tort for their intentional interference. MTK, MTK USA, and Mr. Gibson's conduct includes directing a social media campaign where Mr. Diaz proclaims he is no longer with Mr. Heredia due to him being "toxic" and that he was "f***ing with" his money, arranging a title bout on February 13, 2021 intentionally excluding Mr. Heredia, and arranging another bout on July 9, 2021 intentionally excluding Mr. Heredia. Through this interference, Mr. Diaz did not make weight for the February 13, 2021 bout causing the purse of the bout to be fined by the Commission. This cost Mr. Diaz $100,000 and thereby reduced Plaintiff's management fee from $90,000 to $72,000. Further, because of this interference, Mr. Diaz was advised not to pay Mr. Heredia any of the 18% management fee. Mr. Diaz then lost his World Champion status that has the effect of reducing his prospects for future bouts. MTK, MTK USA, and Mr. Gibson also did not argue for the 70% net proceeds clause for PPV rights as listed in the promotion agreement with Golden Boy if Diaz is the "A" side of a main event bout

on PPV. DAZN is a network and is a PPV venue. This could have resulted in a higher purse for Mr. Diaz and additional management fees for Plaintiff.

132.   As this interference is continuing, MTK, MTK USA, and Mr. Gibson have intentionally excluded Plaintiff from the negotiations concerning the July 9, 2021 bout against Mr. Javier Fortuna.

133.   Additionally, these actions have caused Mr. Heredia to incur additional time and expenses to include hiring counsel to assert his rights. Due to the interference, Mr. Heredia cannot simply contact Mr. Diaz to arrange the next bout under the terms of the agreement as he did before the interference. Mr. Heredia cannot negotiate bouts or purse amounts for Mr. Diaz. These actions have made it nearly impossible for Mr. Heredia to fulfill their obligations under the contract between Mr. Diaz and Plaintiff.

134.   GBP's conduct prevented performance or made the performance of this contract more expensive or difficult. GBP negotiated directly with MTK, MTK USA, and Mr. Gibson instead of discussing this bout with Plaintiff. Prior to the bout on February 12, 2021, Mr. Diaz failed to make weight. This required communications between the Commission, Mr. Rakhimov's management team and promotion companies. GBP allowed MTK, MTK USA, and Mr. Gibson to handle these discussions and intentionally excluded Mr. Heredia, the exclusive manager for Mr. Diaz.

135.   MTK, MTK USA, and Mr. Gibson intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. Mr. Diaz no longer communicates with Mr. Heredia concerning his boxing career. MTK and MTK USA claim to be a "business" or "marketing advisor" for Mr. Diaz, however, MTK and MTK USA do not communicate with Mr. Heredia in anyway. MTK, MTK USA, and Mr. Gibson additionally are performing management roles under California and Federal law. MTK and MTK USA's involvement lead Mr. Diaz to direct GBP not to pay Mr.

Heredia the contractual amount owed under the Boxer-Manager Contract for the February 13, 2021 bout. MTK and MTK USA want this disruption to occur as their goal is to have Mr. Diaz become one of their boxers. In order to do so, they must destroy, through whatever means they have available, the valid and existing contract between Mr. Heredia and Mr. Diaz.

136.   The Plaintiff has been harmed by the actions of MTK, MTK USA, Mr. Gibson, and GBP. Plaintiff does not have oversight of the boxer he manages. Plaintiff is being smeared on social media and have lost business goodwill as others see their rights and contracts being trampled upon by MTK, MTK USA, Mr. Gibson, and GBP. Further, Plaintiff's relationship with other currently signed boxers has been hampered. Plaintiff's business relationship with GBP has also been negatively affected.

137.   MTK, MTK USA, and their agents to include Mr. Gibson and VGC, and GBP's conduct were the substantial factors in causing Plaintiff's harm. But for the interference of MTK, MTK USA, Mr. Gibson and GBP, Plaintiff's contract with Mr. Diaz would not have been interfered with and harm would not have been caused. The conduct of MTK, MTK USA, Mr. Gibson, and GBP is the substantial factor in causing Plaintiff's harm.

### SIXTH CAUSE OF ACTION

### Tortious Interference with Contract – Promoter-Manager Contract

(Against MTK and MTK USA)

138.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

139.   At all relevant times, there was a boxing promotion contract between Defendant GBP, and Mr. Joseph Diaz, Jr. Plaintiff also signed this agreement as a representative of Mr. Diaz and is a third-party beneficiary. This contract was signed on March 22, 2017 and lasts for five years. This contract is valid and enforceable. MTK and MTK USA's conduct and GBP's collusion prevented

performance or made the performance of this contract more expensive or difficult. Mr. Diaz does not to communicate with Mr. Heredia as MTK and MTK USA arranged a mandatory title bout with GBP on February 13, 2021 and another bout on July 9, 2021. MTK and MTK USA are "strangers" to this contract and are liable in tort for their intentional interference. MTK and MTK USA's conduct includes directing GBP not to communicate with Mr. Heredia, Mr. Diaz's boxing manager. These actions have caused Mr. Heredia additional time and expenses to include hiring counsel to assert their rights. Mr. Heredia cannot fulfill his role as Mr. Diaz's boxing representative and negotiate bouts on Mr. Diaz's behalf.

140.   MTK and MTK USA intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. Mr. Joseph Diaz no longer communicates with Mr. Heredia concerning his boxing career. MTK claims to be a "business" or "marketing advisor" for Mr. Diaz, however, MTK and MTK USA do not communicate with Mr. Heredia. Instead, MTK and MTK USA are performing management roles for Mr. Diaz and attempting to step into the shoes of Mr. Heredia as the boxer's representative under the promotion agreement. Plaintiff notes that MTK is not licensed or qualified as a boxing manager as required by California law. MTK and MTK USA's coordinated efforts lead Mr. Diaz to direct GBP not to pay Mr. Heredia the contractual amount owed under the Boxer-Manager Contract for the February 13, 2021 bout. MTK, MTK USA, and their agents want this disruption to occur as their goal is to have Mr. Diaz become one of their boxers. In order to do so, they must destroy, through whatever means they have available, the valid and existing contract between Mr. Diaz, GBP and Mr. Heredia.

141.   Mr. Heredia has been harmed by the actions of MTK and MTK USA. Mr. Heredia does not have oversight of the boxer they are managing. MTK and MTK USA have inserted themselves as the boxer's representative and have displaced Mr. Heredia. Further, Mr. Heredia's relationship with other currently

signed boxers has been hampered. Plaintiff's business relationship with GBP has also been negatively affected.

142.   MTK and MTK USA's conduct are the substantial factors in causing Plaintiff's harm. But for the interference of MTK and MTK USA, Plaintiff's role as Mr. Diaz's representative under the promotion contract would not have been interfered with and harm would not have been caused.

**SEVENTH CAUSE OF ACTION**

**Inducing Breach of Contract – Boxer-Manager Contract**

(Against MTK, MTK USA, and GBP)

143.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

144.   Defendants MTK and MTK USA intentionally caused Mr. Joseph Diaz, Jr. to breach his Boxer-Manager Contract with Mr. Heredia.

145.   At all relevant times, there was a Boxer-Manager Contract between Mr. Heredia and Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before the California State Athletic Commission and would have lasted five years, but on July 10, 2021 was canceled by the Executive Director of the Commission.  During all relevant times this contract was valid and enforceable. and lasts for five years. This contract is valid and enforceable.

146.   MTK, MTK USA, and GBP knew that this contract existed.

147.   MTK and MTK USA intended to cause Mr. Joseph Diaz, Jr. to breach the Boxer-Manager Contract by providing him a $100,000 advance and a purported business advisory agreement, which is, in essence and in practice, a management contract. Separately, GBP intended to cause Mr. Diaz to breach the Boxer-Manager Contract by negotiating with MTK and MTK USA instead of Mr. Heredia for upcoming bouts. MTK and MTK USA's actions are purposefully designed to have Mr. Diaz break his contract with Mr. Heredia. The intent of MTK and MTK USA is clear: they want to sign Mr. Diaz as a client and in order to do so

must get him out of his current enforceable contracts. MTK and MTK USA are involved only to breach the contract between Mr. Heredia and Mr. Diaz. In any case, MTK and MTK USA certainly knew that the interference and inducement of Mr. Diaz would result in a breach of contract. Separately, GBP continues to work with MTK and MTK USA and provides all the incentive to MTK, MTK USA, and Mr. Diaz to continue to breach the Boxer-Manager Contract.

148.   MTK, MTK USA, and GBP's conduct caused Mr. Joseph Diaz, Jr. to breach the Boxer-Manager Contract. With MTK and MTK USA's encouragement Mr. Joseph Diaz no longer communicates with Mr. Heredia concerning his boxing career. MTK and MTK USA claim to be a "marketing advisor" for Mr. Diaz, however, MTK and MTK USA does not communicate with Mr. Heredia in anyway. MTK and MTK USA do communicate with other boxing managers in similar arrangements. MTK and MTK USA's direction to Mr. Diaz has caused there to be no communication with Mr. Heredia to include communications concerning the bout that occurred on July 9, 2021.

149.   Mr. Heredia has been harmed by the actions of MTK, MTK USA, and GBP. Mr. Heredia does not have oversight of the boxer he manages and has not been paid the management fees per the contract. Mr. Heredia is being smeared on social media and has lost business goodwill as others see their rights and contracts being trampled upon by MTK and MTK USA. Further, Mr. Heredia's relationship with other currently signed boxers has been hampered. Mr. Heredia's business relationship with GBP has also been negatively affected by design.

150.   But for the inducement of Mr. Diaz by MTK and MTK USA, Mr. Diaz would not have breached his contract. If GBP did not condone this inducement, Mr. Diaz would not have been induced to breach. The conduct of MTK, MTK Global, and GBP are the substantial factors in causing Plaintiff's harm. A person is not justified in inducing a breach of contract simply because they are in competition with one of the parties to the contract and seeks to further

their own economic advantage at the expense of another.

## EIGHTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Relations

#### (Against MTK, MTK USA, and GBP)

151.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

152.   Defendants MTK, MTK USA, and GBP intentionally interfered with an economic relationship between Mr. Heredia and Mr. Joseph Diaz, Jr. that probably would have resulted in an economic benefit to Mr. Heredia. Namely, Mr. Heredia had a contract with Mr. Diaz for boxing management and due to the interference Defendants MTK, MTK USA, and GBP have impacted the future relationship between Mr. Diaz and Mr. Heredia.

153.   MTK and MTK USA knew of the relationship between Mr. Heredia and Mr. Diaz and yet offered Mr. Diaz a $100,000 advance in order to cause him to breach his contract with Mr. Heredia. Separately, GBP knew of the existing relationship as evidenced by the near decade long business relationship GBP has with Mr. Heredia. This also has affected the prospective relationship between Mr. Diaz and Mr. Heredia. MTK and MTK USA did these acts without the knowledge or consent of Mr. Heredia and did so with the intent of taking over as Mr. Diaz's manager. At all relevant times, Mr. Diaz was still under contract with Mr. Heredia.

154.   MTK, MTK USA, and GBP engaged in specific conduct aimed at interfering with Mr. Heredia's business relationship with Mr. Diaz. MTK and MTK USA encouraged Mr. Diaz not to communicate Mr. Heredia, unlawfully inserted themselves as the managers for Mr. Diaz, and engaged in a social media smear campaign of Mr. Heredia. GBP has colluded with MTK and MTK USA and negotiated bouts directly with MTK and MTK USA instead of Mr. Diaz's boxing manager—Mr. Heredia.

155.   By engaging in this conduct, MTK, MTK USA, and GBP intended to

1  disrupt the relationship or knew that disruption of the relationship was certain or
2  substantially certain to occur.
3    156.   The relationship has been disrupted and Mr. Diaz no longer
4  communicates with or desires to be managed by Mr. Heredia.
5    157.   Mr. Heredia has been harmed by this interference.
6    158.   MTK, MTK USA, and GBP's conduct were the substantial factor in
7  causing Mr. Heredia's harm. After Mr. Diaz became a world champion, MTK and
8  MTK USA reached out to Mr. Diaz and offered him an advance of $100,000 in
9  exchange for Mr. Diaz signing a purported business advisory agreement. This act
10 caused the deterioration of the relationship between Mr. Diaz and Mr. Heredia and
11 effected and continues to affect the prospective relationship between the parties.
12 GBP continues to negotiate with MTK and MTK USA as evidenced by the July 9,
13 2021 bout.

## NINTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Relations

(Against MTK, MTK USA, and GBP)

17   159.   Plaintiff incorporates by reference and realleges each and every
18 allegation contained in the paragraphs above as though fully set forth herein.
19   160.   Mr. Heredia and GBP have an economic relationship that probably
20 would have resulted in an economic benefit to Mr. Heredia.
21   161.   GBP, MTK USA, and MTK know or should have known of the
22 relationship.
23   162.   GBP, MTK USA, and MTK know or should have known that this
24 relationship would be disrupted if they failed to act with reasonable care.
25   163.   GBP, MTK USA, and MTK failed to act with reasonable care.
26   164.   GBP, MTK USA, and MTK have engaged in wrongful conduct
27 through, *inter alia*, inducing breach of contract, tortious interference with contract,
28 violations of statutory authority with respect to boxing management.

165.    Mr. Heredia's relationship with Mr. Diaz and Mr. Feliciano have been disrupted by GBP, MTK USA, and MTK's actions.

166.    GBP, MTK USA, and MTK's wrongful conduct are a substantial factor in causing harm to Mr. Heredia.

167.    This wrongful conduct has resulted in financial harm to Mr. Heredia to include loss of management fees from Mr. Diaz and lost business opportunity and management fees relating to Mr. Feliciano.

## TENTH CAUSE OF ACTION

**Tortious Interference with Contract – Boxer-Manager Contract Luis Feliciano**

(Against GBP)

168.    Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

169.    At all relevant times, an exclusive boxer-manager contract existed between Plaintiff and a third-party Mr. Luis Feliciano. This contract was signed on March 23, 2017 before the California State Athletic Commission and lasts for five years. This contract is valid and enforceable.

170.    GBP's conduct prevented performance or made the performance of this contract more expensive or difficult. GBP has made several communications to Mr. Feliciano through their employee Mr. Ernie Gabion. The communications started around August 2019. Mr. Heredia spoke to Mr. Gabion and stated not to contact Mr. Feliciano or any of his professional boxers directly and that any communications from GBP need to come to him, Mr. Heredia. In early March of 2020, Mr. Heredia reiterated this issue with Mr. Oscar De La Hoya, founder and CEO of GBP and Eric Gomez, President of GBP. Despite being under contract and despite these communications, on December 1, December 8, December 11, and December 16, 2020, Mr. Gabion called and left messages for Mr. Feliciano. In the December 11, 2020 message Mr. Gabion discusses talking with high-ranking/c-

suite GBP employees, Robert Diaz and Eric Gomez. On December 16, 2020, Mr. Gabion related Mr. Feliciano's message to Mr. Robert Diaz, that communications where going through counsel, and that "I see you and Golden Boy lasting for a long time." Further he provided Mr. Robert Diaz's number to Mr. Feliciano in order to get Mr. Robert Diaz's "perspective." These communications have caused Mr. Heredia additional work and caused the performance of the contract to be more expensive and complicated. GBP is a "stranger" to the boxer-manager contract and are liable in tort for their intentional interference. These actions have caused Mr. Heredia additional time and expenses to include hiring counsel to assert his rights. Mr. Heredia used additional time and effort to stop the interference, to console their boxer and quash any negative thoughts so that Mr. Feliciano can focus on his boxing career.

171.   GBP intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. GBP's communications are intended to sow doubt in Mr. Feliciano and the management he receives from Mr. Heredia. GBP wants this disruption to occur as their goal is to cause Mr. Feliciano to breach or not renew his management contract with Mr. Heredia.

172.   Mr. Heredia has been harmed by the actions of GBP. Mr. Heredia fulfilled a firewall function between the promoter and the boxer which is being trampled upon. Mr. Heredia's relationship with Mr. Feliciano has been negatively affected.

173.   GBP's conduct is the substantial factors in causing Plaintiff's harm. But for the interference of GBP, Plaintiff's contract with Mr. Feliciano would not have been interfered with and harm would not have been caused. The conduct of GBP is the substantial factor in causing Plaintiff's harm.

## ELEVENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

(Against GBP)

174.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

175.   At all relevant times, there was a boxing promotion contract between Mr. Heredia, Defendant GBP, and a third-party Mr. Joseph Diaz, Jr. This contract was signed on March 22, 2017 and lasts for five years. This contract is valid and enforceable.

176.   Plaintiff did all, or substantially all the significant things that the contract required them to do. Namely, manage the boxing career of Mr. Diaz and act as his representatives.

177.   All conditions required for GBP's performance had occurred.

178.   GBP prevented Plaintiff from receiving a payment of $90,000 (or $72,000 as reduced due to the weight failure) from the bout on February 13, 2021. GBP and Mr. Heredia had an oral agreement that management fees are paid directly from the purse of a bout. This oral agreement concerning the promotion contract existed for the duration of this contract between Mr. Heredia and GBP.. Further, GBP undermined the contract by negotiating directly with Mr. Gibson and MTK instead of Mr. Heredia. GBP has discretionary power affecting Plaintiff. In this instance, GBP did not exercise that power in good faith. GBP unfairly frustrated Plaintiff's right to receive the benefits of the agreement made.

179.   By not following the customary way payments are conducted, GBP did not act fairly and in good faith.

180.   By not following the customary way payments are conducted, Plaintiff suffered harm by GBP conduct. Plaintiff has been deprived of $90,000.00 (or $72,000 as reduced due to the weight failure) since February 13, 2021.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and an award against Defendants as follows:

SECOND AMENDED COMPLAINT - 43

1.      For compensatory damages in an amount to be determined at trial;

2.      For treble damages in an amount to be determined at trial;

3.      For pre- and post-judgment interest at the maximum rate allowed by law;

4.      For recovery of reasonable attorneys' fees;

5.      For the costs of the suit; and

6.      For such other and further relief as the Court deems just and proper.

7.      Jury trial is demanded.


Dated: July 16, 2021                    Respectfully submitted,


                                        /s/ *Rajan O. Dhungana*
                                        Rajan O. Dhungana (SBN: 297794)
                                        FEDERAL PRACTICE GROUP
                                        14481 Aspen Street
                                        Hesperia, CA 92344
                                        Telephone: (310) 795-6905
                                        rdhungana@fedpractice.com

                                        /s/ *Eric S. Montalvo*
                                        Eric S. Montalvo (*Pro Hac Vice*)
                                        FEDERAL PRACTICE GROUP
                                        1750 K Street, N.W., Suite 900
                                        Washington, D.C. 20006
                                        Telephone: (202) 862-4360
                                        Fax: (888) 899-6053
                                        emontalvo@fedpractice.com

                                        *Attorneys for Plaintiff*