David S. Harris (Bar No. 255557)
   david@hawxhurstllp.com
DAVID S. HARRIS, P.C.
6520 Platt Avenue #683
West Hills, California 91307
Telephone: (747) 444-0780

Attorneys for Defendant
MTK Global Sports Management, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| MOSES HEREDIA,<br><br>    Plaintiff,<br><br>v.<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; AND DANIEL KINAHAN,<br><br>    Defendants. | Case No. 5:20-cv-02618-JWH (KKx)<br><br>**DEFENDANT MTK GLOBAL SPORTS MANAGEMENT, LLC'S MEMORANUDM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO SET ASIDE DEFAULT**<br><br>**[**Notice of Motion and Motion, Declaration of Quentin Richard Reynolds, Declaration of Michael V. Mancini, Declaration of David S. Harris, and Proposed Order filed concurrently herewith]<br><br>Date: April 8, 2022<br>Time: 9:00 a.m.<br>Judge: Hon. John W. Holcomb |

# TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Relevant Factual and Procedural Background ........................................................... 3

Argument ..................................................................................................................... 6

    A. Service Was Not Effective ................................................................................ 7

    B. The Other "Good Cause" Factors All Weigh in Favor of Setting Aside the
       Default ............................................................................................................. 10

         1. MTK Global Did Not Engage in Culpable Conduct ........................... 10

         2. MTK Global Has Meritorious Defenses .............................................. 12

         3. Mr. Heredia Will Not Be Prejudiced .................................................... 14

Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

Haynes v. Bank of America,
  2009 WL 10680849 (C.D. Cal. Aug. 5, 2009) .................................................. 6, 9

O'Connor v. State of Nev.,
  27 F.3d 357 (9th Cir. 1994) ................................................................................. 7

Peterson v. Highland Music, Inc.,
  140 F.3d 1313 (9th Cir. 1998) ............................................................................. 1

S.E.C. v. Ross,
  504 F.3d 1130, 1149 (9th Cir. 2007) ................................................................... 1

Smallwood v. Allied Pickfords, LLC,
  2009 WL 3247180 (S.D. Cal. Sept. 29, 2009) .................................................... 7

TCI Grp. Life Ins. Plan v. Knoebber,
  244 F.3d 961 (9th Cir. 2001) ............................................................................. 10

U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,
  615 F.3d 1085 (9th Cir. 2010) ......................................................... 7, 10, 12, 15

Vasquez-Robles v. CommoLoCo, Inc.,
  757 F.3d 1 (1st Cir. 2014) ................................................................................... 9

Willis v. Mullins,
  2005 WL 8147234 (E.D. Cal. 2005) ................................................................. 11

Yan v. General Pot, Inc.,
  78 F. Supp. 3d 997 (N.D. Cal. 2015) ..................................................... 6, 10, 14

## STATUTES

Fed. R. Civ. P. 4 .......................................................................................................... 7, 9

Fed. R. Civ. P. 55(c) ........................................................................................................ 6

**Introduction**

Specially appearing[1] defendant MTK Global Sports Management, LLC ("MTK Global") respectfully moves the Court to set aside the default that was entered against it on February 2, 2022. (See Default (Dkt. No. 65).) As the case law universally holds, entry of default is an extreme remedy that should only be used in extreme cases. This is not one of those cases.

As a threshold matter, this is not a case where the defendant has ignored proper service. To the contrary, plaintiff Moses Heredia—despite applying for default—still has not properly served MTK Global. Because MTK Global is located in the United Arab Emirates ("UAE"), Mr. Heredia must serve MTK Global in a manner that is consistent with UAE law. He has not done so. Mr. Heredia's efforts to serve MTK Global through publication were ineffective because, by his own admission, the law in the UAE does not permit such service when the entity being served has a physical address or email address (which MTK Global does); his efforts to serve MTK Global through a courier were ineffective because the summons was sent to the wrong address in the UAE; and although Mr. Heredia claims that the summons was emailed to MTK Global in October 2021, he has not submitted proof of those emails and MTK Global has no record of receiving them.

Even if MTK Global *had* been properly served (which it was not), this still would not be an appropriate case for entry of default. Default is *only* appropriate if (1) the defendant has engaged in culpable conduct, (2) the defendant has no

---

[1] MTK Global is appearing specially because it has not been properly served with the summons in this case and seeks to preserve any and all arguments it may have regarding process, venue, and jurisdiction. See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1319 n.3 (9th Cir. 1998) (noting that a defendant may enter a special appearance); but see S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) (explaining that the Federal Rules eliminate the need for a defendant to enter a special appearance to preserve arguments regarding process, venue, or jurisdiction).

- 1 -
MTK GLOBAL'S MEMO OF P&A IN SUPPORT OF MOTION TO SET ASIDE DEFAULT

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

meritorious defenses, or (3) the plaintiff would be prejudiced by setting aside the default.  None of these factors are applicable here.

MTK Global has not engaged in any culpable conduct; to the contrary, it is Mr. Heredia who has engaged in gamesmanship.  Mr. Heredia claims he served MTK Global in October 2021, but he did not file the proof of that purported service until January 2022.  He then promised the defendants that he would not seek entry of default against MTK Global while the parties were attempting to negotiate a global settlement, only to turn around and file an application for entry of default, without warning, notice, or explanation.  MTK Global promptly reached out to Mr. Heredia to resolve the default.  It proposed that the parties agree to stipulate to set aside the default in exchange for MTK Global agreeing to accept service of the summons—but Mr. Heredia refused (without explanation) to enter into such a stipulation.  In other words, he refused to agree to litigate the merits of his case.

There is a good reason that Mr. Heredia is attempting to avoid litigating the merits of his case—namely, he cannot win on the merits.  As shown below, MTK Global has meritorious defenses against each of Mr. Heredia's claims.  Indeed, each of his claims fail for the simple reason that they are factually false.  Mr. Heredia's RICO claims fail because, contrary to his wild allegations, MTK Global is not a front for a European drug cartel, does not engage in money laundering, and does not make money from the sale of illicit drugs; rather, MTK Global is a successful and well-respected boxing management and promotions company.  Similarly, Mr. Heredia's tortious interference and other related claims fail because MTK Global did not interfere with Mr. Heredia's business relationship; indeed, it is not even a party to the business advisory contract that Mr. Heredia identifies as the source of the interference.  Moreover, Mr. Heredia cannot recover any damages related to any of these claims because, by his own admission, these same damages were already the subject of arbitration proceedings held before the California Athletic Commission.  And these are just *some* of MTK Global's defenses.

Setting aside the default and allowing MTK Global to present these defenses would not prejudice Mr. Heredia in any way. After all, requiring a plaintiff to prove his case is not prejudicial. The Court should therefore find "good cause," grant this motion, and set aside the entry of default.

### Relevant Factual and Procedural Background

Mr. Heredia alleges that he is a boxing manager who used to manage the boxer Joseph Diaz, Jr. pursuant to a Boxer-Management Contract that was executed on February 23, 2017. (See SAC (Dkt. No. 42) ¶ 9.) On December 18, 2020, Mr. Heredia initiated this case against MTK Global and the other defendants. (Complaint (Dkt. No. 1).) Although the operative complaint's factual allegations are numerous and far reaching (even including allegations about European drug cartels), all of Mr. Heredia's claims boil down to an assertion that MTK Global and the other defendants interfered with Mr. Heredia's management relationship with Mr. Diaz, primarily by entering into a separate "business advisory contract" with Mr. Diaz. (See SAC (Dkt. No. 42) ¶ 9 (alleging that "[t]he long-standing relationship between Mr. Heredia and Mr. Diaz ended on August 4, 2020 when [the business advisory agreement] was signed").)

Defendant MTK Global USA, LLC ("MTK USA")—which is a distinct and separate legal entity from MTK Global[2]—was served with the summons in this matter and filed its answer on September 29, 2021. Counsel for MTK USA thereafter engaged in discussions with Mr. Heredia's counsel regarding potential settlement. (See Mancini Decl.)

The first substantive call between MTK USA and Mr. Heredia took place on December 29, 2021. (Mancini Decl. ¶ 2.) During that call, MTK USA's counsel spoke with Mr. Heredia's counsel regarding the posture of the case and the

---

[2] MTK USA licenses the MTK name from MTK Global. But the two are distinct and separate entities. (Reynolds Decl. ¶ 3.)

possibility of settling it.  (Id.)  They discussed and seemed to agree that if the case could be settled, then it would best be settled on a "global" basis[3] with each of the defendants participating in the settlement negotiations and eventual agreement.  (Id.)  MTK USA's counsel indicated that he did *not* represent MTK Global and could not speak on its behalf or bind it to any agreement.  (Id.)  However, it was clear (and Mr. Heredia's counsel seemed to understand and appreciate) that MTK USA's counsel would be in contact with MTK Global's representatives and would share information with them (including information about his discussions with Mr. Heredia's counsel) in order to further the global settlement discussions.  (Id.)

On January 12, 2022, Mr. Heredia filed a proof of service of summons purporting to show that he had served MTK Global *three months earlier* in October 2021.  (Service of Summons (Dkt. No. 62).)  This was the first time that either MTK Global or MTK USA learned that Mr. Heredia was claiming to have served MTK Global with the summons.  (Mancini Decl. ¶ 3; Reynolds Decl. ¶ 4.)

On January 20, 2022, MTK USA's counsel and Mr. Heredia's counsel spoke again about a potential global settlement.  (Id. at ¶ 4.)  During this call, Mr. Heredia's counsel asked MTK USA's counsel whether he should seek a default against MTK Global or hold off on doing so.  (Id.)  MTK Global's counsel indicated that a default would likely distract from or derail the settlement negotiations and make a global settlement more difficult to achieve.  (Id.)  Mr. Heredia's counsel indicated that he understood and wanted to have additional settlement discussions.  (Id.)  As such, he agreed that Mr. Heredia would wait to apply for entry of default until after the parties had further discussed settlement.  (Id.)  (MTK USA's counsel later shared the substance of this call with MTK Global's representatives.)  (Id.)

---

[3] The "global" settlement would include the settlement of both this and the related Diaz v. Heredia lawsuit (Case No. 5:20-cv-02332-JWH-KK), which is also pending before this Court.

- 4 -
MTK GLOBAL'S MEMO OF P&A IN SUPPORT OF MOTION TO SET ASIDE DEFAULT

As planned, on February 1, 2022, MTK USA's counsel sent an email to Mr. Heredia's counsel, seeking to schedule another call to further "discuss procedural and settlement posture." (Id. at ¶ 5.) Mr. Heredia's counsel did not promptly respond. (Id.) Instead, later that day, Mr. Heredia filed an application for entry of default against MTK Global (which surprised MTK USA's counsel). (Id. at ¶ 5.)

When MTK USA's counsel sent an email expressing his surprise at the filing of the application, Mr. Heredia's counsel acknowledged that there had been a "misunderstanding" and insisted that he had only agreed that Mr. Heredia would wait to seek entry of default *judgment* (not entry of default). (Id. at ¶¶ 6-7.)

MTK Global thereafter retained counsel, who promptly sought to meet and confer with Mr. Heredia regarding the entry of default. (Harris Decl. ¶¶ 2-5.) On February 11, 2022, MTK Global's counsel sent an email to Mr. Heredia's counsel, in which he explained that MTK had not been properly served and that, even if it had, it would still be appropriate to set aside the default under the circumstances of this case. (Harris Decl. ¶ 2; Feb. 11 Email (Harris Decl., Ex. A) at 5.) MTK Global's counsel suggested that, rather than waste the Court's and parties' limited resources on unnecessary motion practice challenging the default, the parties should simply stipulate to set aside the default. (Feb. 11 Email (Harris Decl., Ex. A) at 5.)

On February 17, 2022, MTK Global's and Mr. Heredia's counsel met and conferred by phone. (Harris Decl. ¶ 3.) During that call, MTK Global's counsel reiterated that there is a strong preference in the law for cases to be decided on the merits and also expressed his opinion that any motion to set aside the default would likely be successful, particularly given the circumstances of the case. (Id.) He suggested that it would be better for both the parties and the Court if the parties could simply reach an agreement to set aside the default. (Id.) The parties' counsel thereafter discussed entering into a stipulation under which (1) Mr. Heredia would agree to withdraw and/or set aside the default and (2) MTK Global would agree that

it had been properly served.  (Id.)  The call ended with counsel agreeing to speak to their respective clients about this proposed stipulation. (Id.)

On February 18, 2022, MTK Global's counsel indicated that he was "almost certain that [his] client would agree to accept service of the complaint if [Mr. Heredia] agreed to set aside the default." (Harris Decl. ¶ 4; Feb. 18 Email (Harris Decl., Ex. A) at 2.)  But Mr. Heredia's counsel did not respond.  So, MTK Global's counsel sent a follow-up email on February 23, 2022 and another on February 24, 2022, asking whether Mr. Heredia would agree to the proposed stipulation.  (Harris Decl. ¶ 4; Feb. 23 and 24 Emails (Harris Decl., Ex. A) at 1-2.)

On February 24, 2022, Mr. Heredia's counsel sent an email apologizing for the delay and promising to provide an answer regarding the proposed stipulation by the next day.  (Harris Decl. ¶ 5; Feb. 24 Email (Harris Decl., Ex. A) at 1.)  Finally, on February 25, 2022, Mr. Heredia's counsel sent an email stating that Mr. Heredia "has declined the stipulation." (Harris Decl. ¶ 5; Feb. 25 Email (Harris Decl., Ex. B) at 1.)  No further explanation was given.

MTK Global now files this motion to set aside the default.

## Argument

Federal Rule of Civil Procedure 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).  "The district court has discretion to determine whether a party demonstrates 'good cause,'" and that "discretion is particularly broad where [the] party seeks to set aside an entry of default rather than a default judgment." Yan v. General Pot, Inc., 78 F. Supp. 3d 997, 1003-04 (N.D. Cal. 2015).

"When a defendant is not properly served, there is good cause to set aside the default." Haynes v. Bank of America, 2009 WL 10680849, at * 1 (C.D. Cal. Aug. 5, 2009). Even where a defendant is properly served, the court may find good cause to set aside the default where:  (1) the defendant did not engage in culpable conduct that led to the default; (2) the defendant has a meritorious defense; and (3) the

plaintiff would not be prejudiced by setting aside the default. See U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle (hereinafter "Mesle"), 615 F.3d 1085, 1091 (9th Cir. 2010).

"Crucially …, 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" Id. As such, "[w]here timely relief is sought from a default … and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default." O'Connor v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994) (internal quotations omitted).

Here, all of the relevant factors weigh in favor of setting aside the default. MTK Global therefore respectfully requests that the Court find "good cause," grant this motion, and set aside the default.

### A. Service Was Not Effective

MTK Global is located in Dubai, United Arab Emirates ("UAE"). (Reynolds Decl. ¶ 2.) "The UAE is not a party to the Hague Convention … and no other internationally agreed upon means of service exist between the United States and the UAE." Smallwood v. Allied Pickfords, LLC, 2009 WL 3247180, at *12 (S.D. Cal. Sept. 29, 2009). As such, service on MTK Global is governed by Federal Rule of Civil Procedure Rule 4(h), which states that a foreign corporation may be served in the same manner as a foreign individual under Rule 4(f), except that personal delivery is not permitted. See Fed. R. Civ. P. 4(h). Rule 4(f), in turn, specifies that a foreign corporation may be served "as prescribed by the foreign country's law for service," "as the foreign authority directs in response to a letter rogatory or letter of request," or by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f); see also Smallwood, 2009 WL 3247180, at *12 (same).

Here, Mr. Heredia purports to have served MTK Global as "prescribed by [the UAE's] law for service;" indeed, according to him, he served MTK Global in

three different ways, each of which was sufficient under UAE law. (See Khairallah Decl. (Dkt. No. 62) ¶¶ 6-8.) However, none of these supposed attempts at service were proper or effective.

First, Mr. Heredia claims that MTK Global was served via publication in two daily newspapers. (Id. at ¶ 8.) But Mr. Heredia (and, more specifically, his process server) admits that, under UAE law, service through publication is *only* permitted "if [the] person to be notified has no domicile, residence, place of business, fax, email, or postal address." (Id. at ¶ 7 (citing Article 8(4) of Federal Law No. (11) of 1992 Concerning Issuance of Civil Procedures Code).) Here, MTK Global *has* a place of business, email, and postal address in the UAE.[4] (Reynolds Decl. ¶ 6.) Therefore—according to Mr. Heredia and his process server—there was no basis under UAE law to serve MTK Global via publication. Moreover, while Mr. Heredia's process server states that the notice must be published in "*two* dailies" under UAE law, his declaration only attaches proof of one.[5] (See Khairallah Decl. (Dkt. No. 62) Ex. B.) For these reasons, the service was ineffective under UAE law and, as a result, also ineffective under Federal Rule of Civil Procedure 4(f)-(h).

Second, Mr. Heredia claims that MTK Global was served via a courier service, which supposedly delivered a copy of the summons to MTK Global on October 7, 2021. (Khairallah Decl. (Dkt. No. 62) at ¶ 8.) However, as far as MTK Global has been able to determine, the courier delivered the documents to the wrong address. MTK Global did *not* receive any copies of the summons at its registered office. (Reynolds Decl. ¶ 7.) Instead, it appears that Mr. Heredia served the papers on the MTK Global DMCC branch office, which (although it shares its name) *is not*

---

[4] This is not a secret to Mr. Heredia. To the contrary, he and his process server claim that they also served MTK Global at its physical address and via email.

[5] It is also worth noting that MTK Global did not see the published notice. (Reynolds Decl. ¶ 6.)

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

*legally connected to MTK Global*. (Id.)  Sending the initiating documents to this separate entity did not constitute proper service on MTK Global under UAE law or, as a result, under Federal Rule of Civil Procedure 4(f) and (h).

  Finally, Mr. Heredia claims that MTK Global was served via email. (Khairallah Decl. (Dkt. No. 62) at ¶ 8.)  According to the process server's declaration, he sent emails attaching the summons to the email address r.reynolds@mtkglobal.com on October 2, 3, and 10, 2021.  (Id.)  However, the declaration does *not* attach any of these supposed emails as exhibits.  Instead, it attaches *two* emails that appear to have been sent in *March* 2021—*five months before the summons was issued*.  (Cf. Id., Ex. A (March 2021 Emails) with App. for Entry of Default (Dkt. No. 63) at 1 ("The summons was issued on August 5, 2021").)

  Moreover, MTK Global has searched through the emails received at the r.reynolds@mtkglobal.com email address and has not been able to locate any evidence that copies of the summons were sent to that address in March 2021 *or* October 2021.  (Reynolds Decl. ¶ 8.)  Given (1) the discrepancies between the declaration and exhibits and (2) MTK Global's inability to locate any of the emails that were supposedly sent, it is more than fair to conclude that Mr. Heredia's purported attempts to serve the summons via email were ineffective too.  See Vasquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014) ("When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper.")

  In short, Mr. Heredia did not properly or effectively serve MTK Global under UAE law and therefore did not properly or effectively serve him under United States law.  See Fed. R. Civ. P. 4(f), (h).  On this basis alone, the Court can and should set aside the default.  See Haynes, 2009 WL 10680849, at * 1 (good cause exists to set aside a default whenever the defendant is not properly served).

**B.     The Other "Good Cause" Factors All Weigh in Favor of Setting Aside the Default**

Because service was not proper or effective, the Court need not consider the other three factors relevant to the "good cause" analysis. That being said, each of these factors also weighs in favor of setting aside the default.

**1.     MTK Global Did Not Engage in Culpable Conduct**

"The Ninth Circuit Court has 'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors [only] where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" Yan, 78 F. Supp. 3d at 1004 (quoting TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 961, 696 (9th Cir. 2001) (reversed on unrelated grounds)). "Thus, 'a defendant's conduct is culpable [only] if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" Id. "In this context, 'intentionally' means that 'a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with *bad faith*, such as an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process.'" Id. (emphasis added); see also Mesle, 615 F.3d at 1092-93. ("simple carelessness is not sufficient" for default).

Here, MTK Global did *not* "act[] with bad faith." Yan, 78 F. Supp. 3d at 1004. As shown above, Mr. Heredia's purported service of the summons in October 2021 was ineffective, both legally and practically. MTK Global did not see the published notice; the courier apparently delivered the summons to the wrong physical address; and there is no record of the process server having sent any emails to MTK Global attaching the summons. (Reynolds Decl. ¶¶ 6-8.) The first time MTK Global learned that Mr. Heredia was *purporting* to have served the summons was after he filed his proof of service of summons in January 2022 (more than three

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

months after the purported service).  (Reynolds Decl. ¶ 4.)  In other words, this is a recent development and MTK Global has not delayed in addressing it.

Moreover, after the proof of service of summons was filed, Mr. Heredia's counsel informed MTK USA's counsel that Mr. Heredia would agree to wait to file any sort of application for default so that the parties could further attempt to negotiate a global settlement.  (Mancini Decl. ¶ 4.)  Mr. Heredia's counsel made this representation *knowing* that MTK USA's counsel was in contact with MTK Global's representatives and would inform them of his agreement to refrain from seeking default.  (Id. at ¶ 2.)  Mr. Heredia's decision to renege on this promise and to "secretly" apply for entry of default was a surprise to everyone involved, including MTK Global.  (Reynolds Decl. ¶ 5); see Willis v. Mullins, 2005 WL 8147234, at * 4 (E.D. Cal. 2005) (agreeing that entering a "secret default" without giving courtesy notice to the other side is "disfavored," "culpable conduct," and "gotcha gamesmanship").

Even after Mr. Heredia secured a "secret default," MTK Global acted in good faith.  Its counsel promptly contacted Mr. Heredia's counsel to explain that MTK Global had not been properly served and to propose a stipulation by which (1) Mr. Heredia would agree to set aside the default in exchange for (2) MTK Global agreeing to accept service of the summons.  (Harris Decl. ¶¶ 2-5.)  In other words, MTK Global reached out to propose a solution that would enable Mr. Heredia to litigate the merits of his case (without needing to try, yet again, to properly serve the summons).  But Mr. Heredia rejected this solution *without explanation*.

In sum, MTK Global did not engage in "culpable conduct," i.e., it did not attempt to take advantage of Mr. Heredia, interfere with judicial decision-making, or otherwise manipulate the legal system.  If any party has engaged in "culpable conduct," it is Mr. Heredia, who is apparently trying to win this case based not on the merits, but on his faulty service of process and broken promise to refrain from seeking default.  Willis, 2005 WL 8147234, at *4 (holding that it was plaintiff's

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

counsel who engaged in culpable conduct by seeking default without notice). For these reasons, the "culpable conduct" factor weighs in favor of setting aside the default.

### 2. MTK Global Has Meritorious Defenses

A defendant seeking to set aside a default should present specific facts that would constitute a defense—but this burden "is not extraordinarily heavy." Mesle, 615 F.3d at 1094 (district court erred because it "did not take note of the minimal nature of the burden [defendant] was supposed to carry"). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation is true' is not to be determined by the court when it decides the motion to set aside the default." Id.

Mr. Heredia's claims against MTK Global in this case are (to put it mildly) far reaching. They include everything from the allegation that MTK Global is, in actuality, a front for one of Europe's largest drug cartels to the allegation that it is somehow responsible for Joseph Diaz failing to "make weight" for a boxing match. (See SAC (Dkt. No. 42) ¶ 90 ("MTK received or obtained money … from drug trafficking and money laundering"), ¶ 131 ("[t]hrough this interference, Mr. Diaz did not make weight for the February 13, 2021 bout").) Despite the breadth of these allegations, none of Mr. Heredia's claims have any merit and MTK Global has meritorious defenses against all of them.

Mr. Heredia's First, Second, Third, and Fourth Causes of Action (i.e., his RICO causes of action) all fail for a host of legal and factual reasons, including the most obvious one—namely, that MTK Global is not a front for a drug cartel and does not engage in drug trafficking or money laundering. (Reynolds Decl. ¶ 10.) Rather, MTK Global is a legitimate and well-respected company that specializes in boxer management, relations, training, and event promotions. (Id.)

Mr. Heredia's Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action (i.e., his tortious and negligent interference and inducement of breach claims) all fail for a host of legal and factual reasons as well, including, again, the most obvious one—namely, that MTK Global did not interfere in Mr. Heredia's relationship with Mr. Diaz. (Reynolds Decl. ¶ 11.) Indeed, although the complaint is purposely confusing on this point, MTK Global did not enter into the business advisory contract with Mr. Diaz that is at the heart of Mr. Heredia's interference-related allegations; that contract was entered into by MTK *USA*—a separate entity and a separate defendant in this case. (Id.)

Moreover, all of Mr. Heredia's claims against MTK Global fail because he has *no damages* to recover in this case. At base, his complaint seems to seek damages based on the theory that the defendants (including MTK Global) somehow caused or induced Mr. Diaz to breach the Boxer-Manager Contract he had with Mr. Heredia. However, as the complaint admits, these breaches were already addressed in the arbitration that Mr. Heredia initiated before the California State Athletic Commission. (See SAC (Dkt. No. 43) ¶ 21 ("on August 21, 2020, Mr. Heredia filed an arbitration request with the Commission with respect to Mr. Diaz's breach of contract"); see also id. at ¶ 14 ("[t]hese breaches by Mr. Diaz have been addressed in the arbitration … that occurred on June 10, 2021"). Mr. Heredia is not entitled to seek double recovery for those breaches, and it is unclear what else Mr. Heredia hopes to accomplish by way of this litigation.

Of course, the above does not and is not intended to represent an exhaustive list of MTK Global's defenses in this case. MTK Global is still assessing the complaint (and its myriad allegations), and it specifically reserves the right to raise additional defenses moving forward. However, even at this early stage of the litigation, it is plain that MTK Global has "meritorious defenses" that it should be permitted to advance in litigation. This factor weighs in favor of setting aside the default too.

### 3. Mr. Heredia Will Not Be Prejudiced

Setting aside the default against MTK would not prejudice Mr. Heredia in any way. "[P]rejudice requires more than a delay in the resolution of the case; rather, the standard is whether Plaintiff's ability to pursue his claim will be hindered." Yan, 78 F. Supp. 3d at 1005. "For a delay to be prejudicial, it must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusions." Id.

Here, Mr. Heredia cannot claim that the delay caused by setting aside the default will prejudice him. First, although the initial complaint was filed in December 2020, this case is still in its infancy. The first and only answer to the complaint was not filed until September 29, 2021, and, as far as MTK Global can determine, little has transpired since that time.

Second, Mr. Heredia has not evinced any sense of urgency in prosecuting his claims against MTK Global. By his own admission, he waited *ten months* to serve MTK Global; waited another *two months* to file the proof of service of summons; and then waited another month after that to move for entry of default. (See Compl. (Dkt. No. 1) at 1 (filed on December 18, 2020); App. for Entry of Default (Dkt. No. 63) at 1 (claiming that MTK Global was served on October 6, 2021).) There is no basis for Mr. Heredia to claim that the court needs to rush to judgment now. Yan, 78 F. Supp. 3d at 1005 ("the fact that a party may be denied a quick victory is not sufficient to deny relief from entry of default").)

The only impact that setting aside the default will have on Mr. Heredia is that he will be forced to litigate the merits of his claims. But "[b]eing forced to litigate on the merits cannot be considered prejudicial because a plaintiff would have had to do so anyway had there been no default." Id. Given that Mr. Heredia will not suffer any cognizable prejudice if the default is set aside, this factor weighs in favor of granting MTK Global's motion as well.

\* \* \*

In sum, all three of the relevant factors—culpable conduct, meritorious defense, and prejudice—weigh in favor of setting aside the default. This case does not present the sort of "extreme circumstances" that would warrant any other outcome. Mesle, 615 F.3d at 1091 (holding that it was error for the district court to deny defendant's motion to set aside the default where there was no finding of "extreme circumstances" warranting default judgment).

### Conclusion

MTK Global respectfully requests that the Court grant this motion and set aside the default entered against it.

DATED: March 8, 2022            DAVID S. HARRIS, P.C.

                                By   */s/ David S. Harris*
                                     David S. Harris

                                Attorneys for Defendant
                                MTK Global Sports Management, LLC