David S. Harris (Bar No. 255557)
  david@harrislitigation.com
DAVID S. HARRIS, P.C.
6520 Platt Avenue #683
West Hills, California 91307
Telephone: (747) 444-0780

Attorneys for Defendant
MTK Global Sports Management, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| MOSES HEREDIA,<br><br>        Plaintiff,<br><br>  v.<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; AND DANIEL KINAHAN,<br><br>        Defendants. | Case No. 5:20-cv-02618-JWH (KKx)<br><br>**DEFENDANT MTK GLOBAL SPORTS MANAGEMENT, LLC'S REPLY IN SUPPORT OF ITS MOTION TO SET ASIDE DEFAULT**<br><br>Date:   April 22, 2022<br>Time:  9:00 a.m.<br>Judge: Hon. John W. Holcomb |

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

   A. MTK Global Was Not Properly Served ........................................................ 1

   B. The Good Cause Factors Weigh in Favor of Setting Aside the Default .......... 5

      1. MTK Global Is Not Culpable ................................................................. 5

      2. MTK Global Has Meritorious Defenses ................................................ 6

Conclusion ............................................................................................................. 9

# TABLE OF AUTHORITIES

## CASES

Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.,
 687 F.2d 182 (7th Cir. 1982) ............................................................................ 7

Gaboratory, Inc. v. Gaboratory, Int'l, Inc.,
 2008 WL 11406072 (C.D. Cal. Nov. 10, 2008) ............................................ 4, 8

Iglesia Ni Cristo v. Cayabyab,
 2020 WL 1531349 (N.D. Cal. Mar. 31, 2020) ................................................. 3

Mason v. Genisco Tech. Corp.,
 960 F.2d 849 (9th Cir. 1992) ............................................................................ 4

Peterson v. Highland Music, Inc.,
 140 F.3d 1313 (9th Cir. 1998) .......................................................................... 1

S.E.C. v. Ross,
 504 F.3d 1130 (9th Cir. 2007) .......................................................................... 1

TCI Grp. Life Ins. Plan v. Knoebber,
 244 F.3d 691 (9th Cir. 2001) ............................................................................ 6

U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,
 615 F.3d 1085 (9th Cir. 2010) .................................................................. 5, 8, 9

Vasquez-Robles v. CommoLoCo, Inc.,
 757 F.3d 1 (1st Cir. 2014) ................................................................................. 4

Yan v. General Pot, Inc.,
 78 F. Supp. 3d 997 (N.D. Cal. 2015) ................................................................ 5

## STATUTES

Fed. R. Evid. 901 ..................................................................................................... 3

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

## Introduction

Specially appearing[1] defendant MTK Global Sports Management, LLC's ("MTK Global") opening brief established good cause to set aside the default that was entered against it on February 2, 2022. Specifically, it showed that (1) plaintiff Moses Heredia did not properly serve the summons on MTK Global, and, even if he had, (2) this is not an extreme case in which the drastic remedy of default is justified; to the contrary, all of the relevant factors weigh in favor of setting aside the default. Mr. Heredia's opposition fails to overcome MTK Global's showing of good cause, and, as such, the default should be set aside.

## Argument

**A.   MTK Global Was Not Properly Served**

MTK Global's opening brief showed that all of Mr. Heredia's various attempts to serve the summons in this case were ineffective. (Br. at 7-9.) His efforts to serve MTK Global via publication were ineffective because, by his own admission, UAE law does not permit service by publication when the entity being served has a place of business, email, or postal address (all of which MTK Global *does* have); his efforts to serve MTK Global via courier were ineffective because the summons was delivered to the wrong company; and his efforts to serve MTK Global via email were ineffective because there is insufficient evidence showing that the emails were sent and *no* evidence showing that they were received. (Id.; see also Reynolds Decl. (Dkt. No. 71-2) ¶¶ 6-8).)

---

[1] MTK Global continues to appear specially because it has not been properly served with the summons in this case and seeks to preserve any and all arguments it may have regarding process, venue, and jurisdiction. See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1319 n.3 (9th Cir. 1998) (noting that a defendant may enter a special appearance); but see S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) (explaining that the Federal Rules eliminate the need for a defendant to enter a special appearance to preserve arguments regarding process, venue, or jurisdiction).

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

In his opposition, Mr. Heredia does not meaningfully dispute that his attempts at service via publication and courier were ineffective. While he includes a single throwaway sentence indicating that he "does not concede" the issue, he presents *no* argument as to (1) why service via publication was permissible under UAE law given the undisputed fact that MTK Global maintains a business, email, and postal address, or (2) how service via courier was effective given the undisputed fact that the summons was delivered to the wrong company. (Opp. at 3.) Mr. Heredia does not make these arguments because he cannot make them. His efforts to serve MTK Global via publication and courier simply were not effective—and he knows it. (See, e.g., id. (acknowledging, yet again, that service by publication is only permitted if the "entity to be served has no fixed address").)

Unable to argue that his attempts to serve MTK Global via publication and courier were effective, Mr. Heredia relies exclusively upon his purported service via email. (See id. at 3 ("Even if … MTK is correct that service was made to the wrong address … and service by publication … was not appropriate, Defendant MTK was still served by email three different times….").) But his attempts to serve MTK Global via email were also faulty.

First, Mr. Heredia has not presented sufficient evidence to show that he or his process server ever actually sent any emails transmitting the summons to MTK Global. As MTK Global noted in its opening brief, the process server's declaration claims that three emails were sent in October 2021, but it does not attach those emails as exhibits. (Br. at 9; see also Khairallah Decl. (Dkt. No. 62) ¶ 8.) Instead, the declaration attaches copies of two emails that appear to have been sent seven months earlier in March 2021, *before* the relevant summons was even issued. (See Khairallah Decl. (Dkt. No. 62) at Ex. A (March 2021 emails); App. for Entry of Default (Dkt. No. 63) at 1 ("summons was issued on August 5, 2021").)

In his opposition, Mr. Heredia tries to resolve this discrepancy by including copies of three emails that were purportedly sent in October 2021. (See Exhibits B,

C, D (Dkt. No. 76-2).) However, he does not attach these emails to a declaration or otherwise attempt to authenticate them in any way.[2] The emails are therefore inadmissible to prove service. See Fed. R. Evid. 901 (setting forth methods for authenticating evidence); see also Iglesia Ni Cristo v. Cayabyab, 2020 WL 1531349, at *4 (N.D. Cal. Mar. 31, 2020) ("To satisfy the requirement of authenticating … an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

Second, even if there were competent evidence showing that Mr. Heredia or his process server *sent* the emails in October 2021, there is no evidence that MTK Global ever actually *received* them. (See Opp. at 2 (framing the issue as whether MTK Global "*received* actual or constructive notice of the filing of the action").) To the contrary, all of the available evidence shows the opposite. In his declaration, MTK Global's Head of Global Operations, Quentin Richard Reynolds, states that he searched through the relevant email account (including its spam folder) and was unable to locate the emails. (Reynolds Decl. (Dkt. No. 71-2) ¶ 8.) To his credit, Mr. Heredia does not dispute the veracity of Mr. Reynolds' declaration and admits that it may be "correct." (Opp. at 4.)

Given (1) the discrepancies in the process server's declaration regarding when and what was emailed to MTK Global; (2) the lack of admissible evidence showing that the process server emailed MTK Global a copy of the summons in October 2021; and (3) the undisputed evidence showing that MTK Global never received any such emails, the Court can and should conclude that Mr. Heredia has failed to meet his burden of proving that he properly served MTK Global via email. See Vasquez-

---

[2] Mr. Heredia attaches as a separate exhibit the process server's declaration that was previously filed in November 2021. (See Ex. A (Dkt. No. 76-2).) But that declaration obviously cannot be used to authenticate emails that were not originally attached to it and that are just now being submitted to the Court for the first time.

DAVID S. HARRIS, P.C.
6520 PLATT AVENUE #683
WEST HILLS, CALIFORNIA 91307
(747) 444-0780

Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014) ("When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper."). Because Mr. Heredia's attempts to serve MTK Global via publication and courier were also improper, this means that MTK Global *has not been served with the summons in this case*.

Perhaps recognizing this, Mr. Heredia dedicates a substantial portion of his opposition to arguing that, even if MTK Global was not formally served with the summons, it was nevertheless informally made aware of this case (i.e., given "constructive notice").[3] (Opp. at 4-8.) But this argument misses the point. "It is axiomatic that a federal court does not have jurisdiction over a defendant if the defendant is not properly served" and, as such, "any default entered following defective service of process *must* be vacated." Gaboratory, Inc. v. Gaboratory, Int'l, Inc., 2008 WL 11406072, at *2 (C.D. Cal. Nov. 10, 2008) (emphasis added); see also Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process…. Hence, if [plaintiff] failed to serve [defendant] properly …, the default judgment is void."). In other words, because Mr. Heredia failed to serve

---

[3] In arguing that MTK Global was on "constructive notice," Mr. Heredia's opposition (1) includes several pages of largely unsupported factual assertions, and (2) attaches hundreds of pages of unauthenticated documents, including newspaper articles, Wikipedia printouts, and even a document that appears to be a confidential settlement communication. (See, e.g., Opp. at 6 (claiming, without citation, what "Mr. Greely" has supposedly said or represented; see also Attachments (Dkt. No. 76-3) at Nos. 2 (email designated "Confidential Settlement Communication") 5 (Wikipedia page), 6-27 (articles).) None of this "evidence" is admissible or properly before the Court (and most of it appears to be irrelevant and aimed solely at smearing various individuals and/or companies). Moreover, there was no need for Mr. Heredia to "prove" that MTK Global was aware of this case. MTK Global acknowledged in its opening brief that it was aware of this case. It was also aware of Mr. Heredia's promise to refrain from filing an application for entry of default—a promise he later broke without notice. (See Reynolds Decl. (Dkt. No. 71-2) ¶ 5.)

MTK Global with the summons, the default must be set aside as a matter of law, regardless of whether MTK Global was on "constructive notice" or not.

### B. The Good Cause Factors Weigh in Favor of Setting Aside the Default

MTK Global's opening brief also showed that, even if MTK *were* properly served (which it was not), that still would not make this an appropriate case for entry of default.  See U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle (hereinafter "Mesle"), 615 F.3d 1085, 1091 (9th Cir. 2010) ("judgment by default is a drastic step appropriate only in extreme circumstances" (internal quotations omitted)).  To the contrary, all of the relevant good cause factors—culpability, meritorious defense, and prejudice—weigh in favor of setting aside the default.

In his opposition, Mr. Heredia does not dispute, and thereby admits, that he will not suffer any prejudice if the default is set aside.  The "prejudice" factor therefore weighs in favor of setting aside the default.  Mr. Heredia's only arguments are that the other two factors should be weighed in his favor because MTK Global supposedly (1) engaged in culpable conduct and (2) failed to set forth a meritorious defense.  But, as shown below, these arguments have no merit.

#### 1. MTK Global Is Not Culpable

Mr. Heredia's entire argument as to the "culpability" factor boils down to a claim that MTK Global is culpable simply because it "never answered" the complaint.  (Opp. at 2; see also id. at 4 ("MTK was properly served, did not answer, and is, therefore culpable.").)  However, the case law is unequivocal that a defendant's failure to answer the complaint is *not* sufficient, in and of itself, to establish culpability.  See Yan v. General Pot, Inc., 78 F. Supp. 3d 997, 1004 (N.D. Cal. 2015).  Indeed, even a defendant's *intentional* failure is not enough.  See, e.g., id. ("a movant cannot be treated as culpable simply for having made a conscious choice not to answer" (internal quotations omitted)).  Rather, "to treat a failure to answer as culpable, the [defendant] must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision-

making, or otherwise manipulate the legal process." Id. (internal quotations omitted); see also TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 697-98 (9th Cir. 2001) (reversed on unrelated grounds).  Mr. Heredia never articulates this standard, let alone attempts to meet it.  Nor could he.

As shown in its opening brief, MTK Global has acted and continues to act in good faith.  (Br. at 10-12.)  Because Mr. Heredia's efforts to serve MTK Global were ineffective, MTK Global did not know that Mr. Heredia was purporting to have served it with the summons until after he filed his proof of service of summon in January 2022 (three months after the purported service took place).  (Reynolds Decl. (Dkt. No. 71-2) ¶ 4.)  MTK Global was thereafter informed that Mr. Heredia had promised that he would *not* file any sort of application for default against MTK Global so that he could continue negotiating a potential settlement with MTK USA. (Id. at ¶ 5.)  After Mr. Heredia reneged on that promise and applied for default, MTK Global promptly secured counsel, who then promptly proposed a solution whereby MTK Global would accept service of the summons if Mr. Heredia agreed to set aside the default.  (Harris Decl. (Dkt. No. 71-4) ¶¶ 2-5.)  In other words, MTK Global agreed to litigate the case—no strings attached.  But Mr. Heredia rejected this proposal, apparently hoping that he could win without having to prove the merits of his claims.  (Id. at ¶ 5; see also Feb. 25 Email (Harris Decl., Ex. B) at 1.)

Simply put, there is no evidence (and Mr. Heredia certainly has not pointed to any) suggesting that MTK Global failed to answer the complaint in "bad faith" or with "an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process."  This factor—like the "prejudice" factor—therefore weighs in favor of setting aside the default.

### 2. MTK Global Has Meritorious Defenses

Mr. Heredia's arguments as to the "meritorious defense" factor are equally misguided.  As to his First, Second, Third, and Fourth Causes of Action (i.e., his RICO causes of action), Mr. Heredia claims that MTK Global has supposedly

proffered only a "general denial without specific facts." (Opp. at 9.) But this is not true. MTK Global's opening brief includes a declaration from its Head of Global Operations, Mr. Reynolds, stating in no uncertain terms that the company is not a front for a drug cartel and does not engage in drug trafficking or money laundering. (Reynolds Decl. (Dkt. No. 71-2) ¶ 10.) He then goes on to explain the actual nature of MTK Global's business—namely, boxer management, relations, training, and event promotions. (Id.) This is far more than a "general denial" and, if true, would defeat Mr. Heredia's RICO claims. Cf. Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc., 687 F.2d 182, 186 (7th Cir. 1982) ("[D]efendants gave not the slightest indication of any specific defense on the merits. They merely tendered a general denial which asserts that they are not liable to plaintiff."). Indeed, it is unclear what else Mr. Heredia believes MTK Global should have (or even could have) provided at this stage of the litigation to prove that it is *not* engaged in illegal activities, i.e., to prove a negative.

As to his Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action (i.e., his tortious and negligent interference and inducement of breach claims), Mr. Heredia claims that MTK Global has supposedly failed to proffer facts constituting a defense. (Opp. at 9-10.) But, again, this is not true. In its opening brief, MTK Global showed that these causes of action all stem from Mr. Heredia's allegation that the defendants improperly entered into a "business advisory contract" with the boxer Joseph Diaz, Jr., which supposedly had the effect of ending Mr. Diaz's relationship with Mr. Heredia. (See Br. at 13; see also SAC (Dkt. No. 42) ¶ 9 (alleging that "[t]he longstanding relationship between Mr. Heredia and Mr. Diaz ended on August 4, 2020 when [the business advisory contract] was signed").) However, as the declaration of MTK Global's Head of Operations, Mr. Reynolds, explains, MTK Global was not involved in or a party to the business advisory contract; rather, that contract was entered into between Mr. Diaz and MTK USA— an entirely separate legal entity. (Reynolds Decl. (Dkt. No. 71-2) ¶ 11.)

Mr. Heredia argues that "lack of privity of contract is not a defense" to tortious and negligent interference or inducement of breach. (Opp. at 9-10.) But this misses the point. MTK Global is not arguing that lack of privity is a defense as a matter of law to these types of causes of action. Rather, it is making a fact-based argument that it did not do what Mr. Heredia alleges it did. Again, Mr. Heredia is alleging that the defendants committed these torts specifically by entering into the business advisory contract with Mr. Diaz. The fact that MTK Global was not involved in or a party to the business advisory contract is therefore most certainly a defense in this case. See Mesle, 615 F.3d at 10094 ("All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense."). At a minimum, it raises the possibility that Mr. Heredia will not succeed at trial. This is all that is legally required for setting aside the default. See Gaboratory, Inc., 2008 WL 11406072, at *6 ("In evaluating whether a party in default has a meritorious defense, the court must ask 'whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'").

Finally, as to his alleged damages, Mr. Heredia argues that MTK Global's concerns about double recover are unfounded because his claims against MTK Global are supposedly "separate" from the claims he already arbitrated against Mr. Diaz. (Opp. at 10.) But this once again misses the point. The issue is not whether Mr. Heredia's claims are "separate," but whether there are any additional or different damages he can recover. As MTK Global's opening brief showed, Mr. Heredia's complaint seems to seek damages based solely on the theory that MTK Global and the other defendants (by entering into the business advisory contract) caused or induced Mr. Diaz to breach his contract with Mr. Heredia. (Br. at 13.) However, Mr. Diaz's alleged breaches (and the allegedly resulting damages) were already addressed in arbitration. (See SAC (Dkt. No. 43) ¶ 21.) Obviously, Mr. Heredia cannot seek the same damages in this case as he sought in arbitration (i.e.,

he cannot seek double recover), and his opposition fails to explain what other damages he believes exist.

As explained in MTK Global's opening brief, the "meritorious defense" factor imposes only a "minimal" burden.  <u>Mesle</u>, 615 F.3d at 1094.  MTK Global has more than met that burden here and, as such, this factor—like the "prejudice" and "culpability" factors—weighs in favor of setting aside the default.

### Conclusion

For all of these reasons, as well as the reasons set forth in its opening brief, MTK Global respectfully requests that the Court find good cause, grant its motion, and set aside the default entered against it.

DATED:  March 25, 2022          DAVID S. HARRIS, P.C.

By     */s/ David S. Harris*
       David S. Harris

       Attorneys for Defendant
       MTK Global Sports Management, LLC