1   Rajan O. Dhungana (SBN: 297794)
2       rdhungana@fedpractice.com
3   FEDERAL PRACTICE GROUP
    14481 Aspen Street
3   Hesperia, CA 92344
4   Telephone: (310) 795-6905

5

6   Eric S. Montalvo (*Pro Hac Vice*)
        emontalvo@fedpractice.com
7   FEDERAL PRACTICE GROUP
8   1750 K Street, N.W., Suite 900
    Washington, DC 20006
9   Telephone: (202) 862-4360
10  Fax: (888) 899-6053

11

12              **UNITED STATES DISTRICT COURT**

13

14              **CENTRAL DISTRICT OF CALIFORNIA**

15                   **(Eastern Division)**

16

17  MOSES HEREDIA,                    | Case No.: 5:20-cv-02618-JWH-KKx

18          Plaintiff,                | ~~SECOND~~THIRD **AMENDED**
                                        **COMPLAINT**
19  vs.

20                                    | **DEMAND FOR JURY TRIAL**
    MTK GLOBAL SPORTS
21  MANAGEMENT, LLC; MTK GLOBAL
    USA, LLC; GOLDEN BOY
22  PROMOTIONS, INC.; PAUL D.
    GIBSON; and DANIEL KINAHAN,
23
24          Defendants.

25

26

27

28
                        ~~SECOND AMENDED~~
                             -1-
    THIRD AMENDED COMPLAINT—1

1

2       Plaintiff Mr. Moses Heredia ("Mr. Heredia" or "Plaintiff") brings this

3   Complaint against the Defendants MTK Global Sports Management, LLC

4   ("MTK"), MTK Global USA, LLC ("MTK USA"), Golden Boy Promotions, Inc.

5   ("GBP" or "Golden Boy"), Mr. Paul D. Gibson ("Mr. Gibson"), and Mr. Daniel

6   Kinahan ("Mr. Kinahan") (collectively, "Defendants") and alleges, based on

7   knowledge as to himself and his own acts and on information and belief as to all

8   other matters, as follows:

9                           ~~FACTS AND~~ <u>NATURE OF THE CASE</u>

10      ~~1.      This dispute arises from Defendant's (1) violation of Racketeering~~

11  ~~Influenced and Corrupt Organization (RICO) Act 18 U.S.C. § 1962(a) – Acquiring~~

12  ~~an Interest in an Enterprise by Use of Income; (2) violation of RICO 18 U.S.C. §~~

13  ~~1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise; (3)~~

14  ~~violation of RICO 18 U.S.C. § 1962(c) – Conducting the Affairs of an Enterprise;~~

15  ~~(4) violation of RICO 18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of~~

16  ~~an Enterprise; (5) tortious interference with Boxer-Manager Contract between Mr.~~

17  ~~Heredia and boxer, Mr. Joseph "JoJo" Diaz, Jr. ("Mr. Diaz") (6) tortious~~

18  ~~interference with promotion-manager contract between Mr. Heredia and GBP, (7)~~

19  ~~inducing breach of Boxer-Manager Contract between the Mr. Heredia and Mr.~~

20  ~~Diaz, (8) intentional interference with prospective economic relations, (9)~~

21  ~~negligent interference with prospective economic relations, (10) tortious~~

22  ~~interference with Boxer-Manager contract between the Mr. Heredia and boxer, Mr.~~

23  ~~Luis Feliciano ("Mr. Feliciano"), and (11) breach of implied covenant of good~~

24  ~~faith and fair dealing concerning the promotion-manager contract between Mr.~~

25  ~~Heredia and GBP.~~

26      ~~2.      Mr. Moses Heredia is a duly licensed boxing manager.~~

27      ~~3.      Mr. Joseph "JoJo" Diaz, Jr. is a professional south paw boxer of~~

28

1   Mexican decent and was the IBF super featherweight champion. A title he lost

2   after failing to make weight for the bout on February 13, 2021. He is currently

3   interim WBC lightweight world champion after his bout on July 9, 2021.

4   　　　4.　　Mr. Diaz is represented by VGC, LLP, a law firm. VGC, LLP is also

5   acting in concert with MTK / MTK USA to manage Mr. Diaz's professional

6   boxing career.

7   　　　5.　　GBP is a properly registered and licensed boxing promotion company

8   operating within the State of California. GBP and Mr. Heredia have done business

9   with each other for nearly ten years.

10   　　　6.　　MTK, a Dubai, UAE, and British based company, holds itself out as

11   the "biggest force in business of boxing" in its capacity as a boxing management

12   and promotional company. Mr. Gibson works for MTK.

13   　　　7.　　MTK USA is a Delaware based limited liability company and upon

14   information and belief is a subsidiary of MTK. More information concerning the

15   nature of MTK USA's relationship with MTK will be known after a reasonable

16   opportunity for further investigation or discovery.

17   　　　8.　　MTK was co-founded and is in part owned and controlled by Mr.

18   Daniel Kinahan, a noted member of Ireland's notorious Kinahan Cartel, also

19   known as the Kinahan Organized Crime Group ("KOCG") by law enforcement

20   officials. More information concerning the nature of Mr. Kinahan's involvement in

21   MTK will be known after a reasonable opportunity for further investigation or

22   discovery.

23   　　　9.　　Mr. Heredia managed Mr. Diaz, pursuant to a Boxer-Manager

24   Contract, ID No. M-2017-0006, dated February 23, 2017. This contact was

25   properly executed on the two-page preapproved from in the presence of Mr. Larry

26   Ervin, a representative of the California State Athletic Commission

27   ("Commission"), and later endorsed by Commission after review on February 24,

28

　　　　　　　　　　　　SECOND AMENDED
　　　　　　　　　　　　　　-3-
THIRD AMENDED COMPLAINT—3

1  2017. This contract was originally set to expire on February 22, 2022. However,

2  the actions of the Defendants in this case caused the relationship between Mr.

3  Heredia and Mr. Diaz to sour and become irreparable. Mr. Heredia learned that Mr.

4  Diaz had signed an agreement with MTK / MTK USA. This document is titled as a

5  "business advisory agreement," however, MTK / MTK USA and its employees and

6  agents with the assistance of VGC, LLP provided management services to Mr.

7  Diaz, arranged two professional boxing bouts sanctioned by GBP, and caused Mr.

8  Diaz to stop communicating with Mr. Heredia. The long-standing relationship

9  between Mr. Heredia and Mr. Diaz ended on August 4, 2020 when that agreement

10  was signed.

11      10. Mr. Heredia asked for that agreement. Mr. Diaz, his counsel, VGC,

12  LLP, nor MTK / MTK USA provided the agreement to Mr. Heredia or his counsel.

13  Mr. Heredia moved for arbitration pursuant to the language of the Boxer-Manager

14  Contract. After some delay, the arbitration was held on June 10, 2021. The

15  Executive Officer of the Commission found the parties could not resolve their

16  differences during the arbitration. In the arbitration decision the Executive Director

17  canceled the Boxer-Manager Contract effective July 10, 2021.

18      1.   **Background** Mr. Heredia has known Mr. Diaz since he competed as

19  an amateur boxer prior to his qualification for the 2012 Summer Olympics. After

20  Mr. Diaz completed in the 2012 summer Olympic Games in London, he became a

21  professional boxer. Mr. Heredia managed Mr. Diaz's boxing career for almost a

22  decade. During this time, Mr. Heredia brought Mr. Diaz three world championship

23  bouts and negotiated the 2017 promotion agreement with GBP.

24      12.1. The Promotion Agreement Term Sheet with GBP was signed on

25  March 22, 2017. The promotion agreement is valid for five years and expires on

26  March 21, 2022. In the terms of the promotion agreement negotiated by Mr.

27  Heredia, Mr. Diaz received a $150,000 signing bonus and two bouts shortly after

28  <center>SECOND AMENDED</center>
<center>-4-</center>

THIRD AMENDED COMPLAINT—4

1  the signing of the agreement with purses of $150,000 and $200,000. The Executive
2  Director of the Commission stated in his decision that this promotion agreement
3  was "lucrative" for Mr. Diaz. The promotion agreement also contained a net
4  proceeds clause should Mr. Diaz be the "A" side of a main event bout on Pay-Per-
5  View (PPV).

6      13.   The promotion agreement contains a no assignment clause for the
7  boxer among other provisions which states: "Neither the benefits nor the duties of
8  Boxer [Mr. Diaz] under this Agreement may be assigned or transferred for any
9  reason." The promotion agreement also requires Mr. Diaz to list his
10  representatives, if any. Mr. Diaz listed Moses Heredia and Ralph Heredia, Moses
11  brother, as his representatives.

12      14.   Mr. Diaz fought ten bouts pursuant to the Boxer-Manager Contract
13  dated February 23, 2017 and his promotion agreement dated March 22, 2017.
14  There were no issues with the relationship for over three years. However, after
15  MTK / MTK USA induced the breach of the agreement, Mr. Diaz breached the
16  Boxer-Manager Contract language for the tenth bout on February 13, 2021 by not
17  gaining the permission of his boxing manager, Mr. Heredia, and as he failed to pay
18  the 18% management fee to Mr. Heredia. Mr. Diaz breached the Boxer-Manager
19  Contract again on July 9, 2021 by not gaining the permission of his boxing
20  manager, Mr. Heredia, and as he failed to pay the 18% management fee to Mr.
21  Heredia. These breaches by Mr. Diaz have been addressed in the arbitration at the
22  Commission that occurred on June 10, 2021.
23      15.1.  The bouts on February 13, 2021 and July 9, 2021 were negotiated in
24  part by MTK / MTK USA and their employees and agents and VGC, LLP. MTK,
25  MTK USA, Mr. Kinahan, Mr. Gibson nor VGC, LLP possess the proper licensure
26  to perform either management or promotional services in California. MTK, Mr.
27  Kinahan, Mr. Gibson nor VGC, LLP hold no authority to perform management
28

functions in the State of California. Further, U.S. law prohibits one company from providing both management and promotion services. *See* 15 U.S.C. § 6308.

16.    "Manager" under California law, in relevant part:
"means any person who does any of the following: (a) By contract, agreement, or other arrangement with any person, undertakes or has undertaken to represent in any way the interest of any professional boxer, or martial arts fighter in procuring, or with respect to the arrangement or conduct of, any professional contest in which boxer or fighter is to participate as a contestant; (b) Directs or controls the professional boxing or martial arts activities of any professional boxer or martial arts fighter ... ," Cal. Bus. & Prof. Code § 18628.

17.    On August 4, 2020, MTK USA signed what is titled and purported to be a business advisory agreement with Mr. Diaz unbeknownst to Mr. Heredia. Plaintiff became aware of the signing though a text message sent by Mr. Diaz to Mr. Ralph Heredia, Plaintiff's brother, on August 9, 2020 and later through press releases and social media on August 12, 2020. Mr. Diaz texted Ralph Heredia on August 9, 2020 stating: "I signed an advisory deal with MTK, it's being Announced tomorrow. I'm doing this for my career and feel like it's the best choice. It's time for a change. [flexed arm emoji]." Thereafter Plaintiff and Ralph Heredia called Mr. Diaz, but Mr. Diaz did not respond and stopped communicating with Mr. Heredia.

18.1.    Per the terms of the MTK USA purported business advisory agreement, MTK USA advanced $100,000 to Mr. Diaz upon execution of the agreement. This advance is to be repaid to MTK USA in three installments of $33,333.33. Each installment is due after Mr. Diaz's next three bouts. The purported business advisory agreement states MTK USA is Mr. Diaz's sole and exclusive business advisor.

THIRD AMENDED COMPLAINT—6

19.1.   Mr. Heredia asked Mr. Steve Bash to investigate this agreement. Mr. Bash is an attorney duly licensed in California that has assisted Mr. Heredia in the past. Mr. Bash got the phone number and called Mr. Robert Yalen, the CEO of MTK on or about August 13, 2020. Mr. Bash wanted to determine MTK and MTK USA's intention with this agreement. During the phone call, Mr. Yalen claimed not to have knowledge of the MTK USA agreement with Mr. Diaz but stated he would inquire into it. However, Mr. Yalen is the signatory for MTK USA on the August 4, 2020 agreement and is quoted in a press release dated August 12, 2020 stating "We are honoured to welcome a boxing superstar in world champion JoJo Diaz to the team. His amazing record speaks for itself and he's one of the best pound for pound boxers in the world, so to have him sign with MTK Global is a massive statement of intent in terms of our expansion into America. He currently holds the IBF super-featherweight belt, and we're determined to help him build on that great success."

20.   On August 14, 2020, Mr. James Greeley of VGC, LLP, ("VGC") a law firm, reached out to Mr. Bash stating that Mr. Yalen asked him to get in touch. Mr. Greeley stated he represented Mr. Diaz. Thereafter they had a call to discuss MTK's intention. Mr. Bash requested a copy of the MTK USA agreement which was not provided. The MTK USA agreement was finally disclosed during the arbitration on June 10, 2021.

21.   Mr. Diaz signed the MTK USA purported business advisory agreement and ceased communication with Mr. Heredia he breached the Boxer Manager Contract signed on February 23, 2017. Without the MTK USA agreement and no communication from Mr. Diaz, Mr. Heredia sought to confirm his rights under the Boxer Manager Contract. The terms of the Boxer Manager Contract require that any dispute be submitted for arbitration within two weeks after the origin of the dispute. In accordance with this provision, on August 20, 2020, Mr.

1   Heredia filed an arbitration request with the Commission with respect to Mr.

2   Diaz's breach of contract pursuant to the terms of the Boxer-Manager Contract and

3   relevant statutory and regulatory provisions.

4       22.1.   The Boxer-Manager Contract states, in relevant part: "Boxer [Mr.

5   Diaz] Agrees … that Boxer will not, during the term of this agreement, take or

6   engage in any boxing contests, exhibitions or training exercises without first

7   having obtained the written permission of Manager [Mr. Heredia] to do so." The

8   Commission accepted the arbitration request, however, due to COVID-19 the

9   arbitration did not take place until June 10, 2021.

10      23.1.   On August 20, 2020 at around 8:00 pm, Mr. Greeley emailed Mr.

11  Bash asking for a phone call. On August 21, 2020, Mr. Bash responded that Mr.

12  Heredia requested not to have any further communications until the MTK USA

13  agreement is provided. A few hours later, Mr. Greeley responded stating various

14  claims against Mr. Heredia and requesting to see all offers from GBP. Shortly

15  thereafter, Mr. Bash responded by providing the information from GBP. During

16  this email exchange Mr. Greeley's rhetoric continued to increase. At some point

17  after this email Mr. Greeley instructed GBP to communicate with him as Diaz's

18  legal counsel—and not Mr. Heredia—and by September 14, 2020, Mr. Greeley

19  instructed Mr. Bash to tell Mr. Heredia not to have any communications with

20  Golden Boy that purport to be on Mr. Diaz's behalf. Shortly thereafter, on October

21  7, 2020, a complaint by Mr. Diaz was filed and litigation ensued. *See* Docket #

22  5:20-cv-02332-JWH-KK (C.D. Cal.).

23      24.   VGC, MTK's proxy and or surrogate, in coordination with or on

24  behalf of MTK also stated in that lawsuit that Mr. Ralph Heredia is the manager of

25  Mr. Diaz and that Mr. Moses Heredia was a "paper manager." VGC did so with

26  full knowledge and disregard for Mr. Diaz's contractual obligations and without

27  compliance with any of the laws or regulations that provide the authority to do so.

28

1   VGC also abandoned this position during the arbitration on June 10, 2021 as
2   memorialized by the decision of the arbitrator.

3       25.1.   VGC in coordination with MTK also began to negotiate upcoming
4   bouts with GBP's counsel and directed GBP's counsel to speak to Mr. Paul Gibson
5   from MTK to arrange bouts for Mr. Diaz. VGC directed counsel for GBP to work
6   with MTK and Mr. Paul Gibson. On November 11, 2020, VGC sent an email
7   discussing the terms of a bout between Mr. Diaz and his mandatory Russian
8   contender, among other things. In this email, VGC states, "I would suggest a call
9   between the business teams at MTK and Golden Boy to discuss Mr. Diaz's future.
10  Please let me know who the appropriate contact would be at Golden Boy. Paul
11  Gibson would take the call on behalf of MTK." No individual in VGC or MTK is
12  licensed to perform boxing management functions in the State of California. *See*
13  Cal. Bus. & Prof. Code § 18628; *see generally* 15 U.S.C. §§ 6301-6313.

14      26.1.   VGC and MTK did this despite knowing that Mr. Diaz had a valid
15  Boxer-Manager Contract with Mr. Heredia. More information concerning the
16  nature of the interactions between VGC, MTK, and GBP will be known after a
17  reasonable opportunity for further investigation or discovery.

18      27.    MTK and MTK USA's purported business advisory agreement with
19  Mr. Diaz is seemingly only about business advisements. However, the actions of
20  Mr. Gibson, MTK / MTK USA and VGC facts show this is a boxing management
21  contract. Mr. Paul Gibson, an MTK employee directly negotiated the terms of a
22  bout between Mr. Diaz and Mr. Shavkatdzhon Rakhimov on February 13, 2021.
23  Further, Defendants negotiated for and arranged a second bout on July 9, 2021.

24      28.    The purse for the July 9, 2021 bout was set at $500,000 prior to the
25  June 10, 2021 arbitration. At the arbitration, the Executive Director foreshadowed
26  his upcoming decision and stated that Mr. Heredia will get 18% of this purse as
27  management fees. However, after the arbitration, when the Defendants were on full

28

1   notice of the Executive Director's intent, GBP in coordination with VGC and MTK
2   / MTK USA presented an altered bout agreement to the Commission for a
3   significantly lower amount than the $500,000 in an effort to reduce the amount of
4   the payout to Heredia. The Commission rejected this attempt to interfere with the
5   Boxer-Manager Contract and disapproved the altered bout agreement. In his
6   decision on July 10, 2021, the Executive Director ordered GBP to withhold
7   $90,000 from Mr. Diaz's purse.

8        29.    MTK and MTK USA's actions are definitional management services
9   as defined by Cal. Bus. & Prof. Code §18628 provided to Mr. Diaz in violation of
10  the Boxer-Manager Contract dated February 23, 2017.

11       30.    All attempts to resolve this matter with MTK have been met with
12  hostility.

13                          **Golden Boy's Role**

14       31.    GBP did two things: 1) GBP worked with VGC and MTK / MTK
15  USA to facilitate Mr. Diaz's bouts despite being placed on full notice that neither
16  VGC, nor MTK / MTK USA have lawful authority to conduct and/or engage in the
17  management of Mr. Diaz through either contract or proper licensure, and 2) GBP
18  has engaged in a pattern and practice of soliciting fighters to come to GBP friendly
19  managers and drive them away from Mr. Heredia.

20            *Golden Boy's Facilitation of MTK / MTK USA and VGC*

21       32.    GBP and Mr. Heredia have a long history. They have been working
22  together for several years. Notwithstanding their long business relationship and
23  GBP's knowledge of MTK's violations of the law, GBP has negotiated with MTK
24  as if MTK was the manager of Mr. Diaz in violation of the Muhammad Ali Boxing
25  Reform Act for its own financial gain.

26       33.    Mr. Gibson of MTK personally negotiated bouts between Mr. Diaz
27  and another fighter which is in direct violation of the Boxer-Manager Contract

28                          SECOND AMENDED
                                  -10-
    THIRD AMENDED COMPLAINT   10

1   between Mr. Diaz and Mr. Heredia.

2       34.    Through these negotiations, MTK and Mr. Diaz, advised by VGC,

3   arranged for a bout on February 13, 2021 against Mr. Shavkatdzhon Rakhimov.

4       35.    The bout's payment structure was in accordance with the promotion

5   agreement negotiated by Mr. Heredia. No deviation from the promotion agreement

6   occurred. Because of MTK's involvement and their purported $100,000 advance to

7   Mr. Diaz. Mr. Diaz was in a worse financial position.

8       36.    Prior to the February 13, 2021 bout, Mr. Diaz failed to make weight in

9   his first and mandatory title defense. Because of the weight difference, Mr.

10  Rakhimov was not required to fight Mr. Diaz. Mr. Gibson from MTK however

11  negotiated directly with Mr. Rakhimov's managers and promoters to pay additional

12  monies from Mr. Diaz's purse to have the fight occur. These negotiations are in

13  direct violation of the Boxer-Manager Contract and violate the statutory and

14  regulatory scheme enacted by the State of California. This also resulted in Mr.

15  Diaz having to forfeit his champion status regardless of how the fight went.

16  Further, Mr. Diaz had to pay fines to the Commission of $100,000 thereby

17  reducing the purse from $500,000 to $400,000.

18      37.    Further, Mr. Diaz, advised and aided by Mr. James Greeley of VGC

19  instructed GBP not to pay Mr. Heredia the 18% management fee per the Boxer-

20  Manager Contract.

21      38.    GBP negotiated and worked with Mr. Paul Gibson and MTK for this

22  bout and did not communicate with Mr. Heredia.

23      39.    Mr. Heredia and GBP have an oral agreement concerning

24  disbursement of the manager fees. This agreement states that management fees are

25  paid directly from the purse of a bout. After negotiating with Mr. Gibson and

26  MTK, GBP did not follow oral agreement and prevented a $90,000.00 payment, or

27  a $72,000.00 payment as reduced by the weight failure, due to Plaintiff.

28

40.1.   During the arbitration on June 10, 2021, the Executive Director of the Commission found that Mr. Diaz and Mr. Heredia's relationship was irreparably harmed. On July 10, 2021, the Executive Director through his decision canceled the remainder of the Boxer-Manager Contract due to the irreparable nature of the relationship. Mr. Heredia has been harmed by the early termination of this contract. The early termination would not have occurred if MTK and MTK USA did not induce the breach of the Boxer-Manager Contract and GBP did not facilitate or allow MTK, MTK USA, and Mr. Gibson to substitute as Mr. Diaz's managers.

1.      This case, at its core, arises from an effort undertaken by Mr. Kinahan to present himself and his associates as legitimate business persons through the establishment of "legitimate businesses" such as his various and numbered boxing concerns to include MTK USA and MTK Global, to launder criminal proceeds, and use those proceeds to "steal" fighters from the duly licensed promotors and managers using their extraordinary financial wherewithal and "reputations" to bully their way into the world of professional boxing.  The infusion of cash into the world of professional boxing took the industry by storm and Mr. Kinahan and his associated businesses soon became a global the force to be reckoned with.  One of his businesses, MTK, after pillaging the European market then set its sights on the United States.  Mr. Kinahan and his surrogates targeted for acquisition Mr. Joseph Diaz ("Mr. Diaz"), a recently-crowned world champion who was a fighter in a lucrative weight class and who had strong marketability and profitability potential. MTK found an ally for this acquisition in Golden Boy.  Golden Boy and its agents, in particular Robert Diaz and his counsel, had become increasingly hostile to Mr. Heredia given his fierce negotiation positions taken on behalf of Mr. Diaz and their other fighters to ensure fight purses were commensurate with their value and not in line with Golden Boy's approach to allocate the least amount of the purse possible to the fighter so that Golden Boy's profitability was maximized.  Golden Boy had

1  historically and unsuccessfully attempted to induce fighters to leave Mr. Heredia's

2  team, which was raised with Golden Boy leadership prior to Mr. Kinahan's entry

3  into the U.S. market.

4  For eight years, Mr. Heredia managed Mr. Diaz' boxing career, culminating in Mr.

5  Diaz winning a world championship.  Despite Mr. Heredia having had an exclusive

6  boxer-manager contract with Mr. Diaz, the Defendants, most of whom were not

7  licensed as a managers as required under California law, lured Mr. Diaz away from

8  Mr. Heredia's management, interfering with the boxer-manager contract between

9  Mr. Heredia and Mr. *Golden Boy's Practice of Attempting to Solicit Fighters*

10  2.     GBP attempted to poach fighters from Mr. Diaz, ultimately to Mr.

11  Heredia's financial and professional detriment.

12  3.     Defendants MTK, Mr. Kinahan, and Mr. Gibson all have connections

13  with organized crime; Mr. Kinahan, in particular, is alleged by the United States

14  Government to be operating a "Transnational Criminal Organization" and was

15  recently designated as a Specially Designated National.  Their actions in this case

16  are violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act

17  and entitle Mr. Heredia to treble damages.

18  41.     **Heredia.** Mr. Heredia always negotiated hard to get the best possible

19  deal for the boxers he manages.

20  42.     GBP failed to provide market rate bouts to the boxers managed by Mr.

21  Heredia or to not put boxers managed by Mr. Heredia in career advancing fights,

22  or on fight cards that would garner significant media attention. GBP deliberately

23  and intentionally frustrated the careers of fighters managed by Mr. Heredia by

24  failing to secure fights opportunities as required under the promotional agreements

25  for these fighters which caused damages to Mr. Heredia.

26  43.     GBP sandbagged fighters managed by Mr. Heredia. Then GBP would

27  solicit these fighters to leave Mr. Heredia and join another manager. GBP created a

28

1   contentious and conflicting relationship between Mr. Heredia and the boxers he
2   managed because they were not getting the fights they believed they deserved.
3   GBP used this rift to try and poach fighters and get them signed with managers that
4   are more favorable to GBP. More information concerning the nature of GBP's
5   actions concerning fighters managed by Mr. Heredia will be known after a
6   reasonable opportunity for further investigation or discovery.
7        44.    GBP did not want to give Mr. Diaz a shot at the super featherweight
8   title in a bout between Mr. Diaz and Mr. Tevin Farmer. Mr. Roberto Diaz from
9   GBP attempted to state that Mr. Heredia and his brother Ralph turned down a fight
10  with the Mr. Tevin Farmer. However, this was a complete falsity.
11       45.    In order to ensure that Mr. Diaz's interests were protected, Mr.
12  Heredia talked to representatives from Mr. Joseph Markowski of DAZN and Eddie
13  Hearn of Matchroom. He then sent an email including the representatives from
14  DAZN and Matchroom to Mr. Roberto Diaz from GBP and stated that Mr. Joseph
15  Diaz never turned down the Farmer fight.
16       46.    Only after this level of advocacy and showing that GBP did not want
17  this fight to occur, did the fight actually occur. GBP wanted to put up fighters from
18  other managers that did not negotiate as aggressively as Mr. Heredia.
19       47.    However, this was not the only incident of an attempt at poaching a
20  fighter or offering below market rate or lower-class fights to boxers managed by
21  GBP.
22       48.    As stated above, Mr. Diaz and GBP have advertised bouts for Mr.
23  Diaz on February 13, 2021 and on July 9, 2021. This is yet another time MTK and
24  GBP have worked together and intentionally excluded Mr. Heredia – Mr. Diaz's
25  boxing manager.
26       49.    GBP did this not just with Mr. Diaz. GBP did this with many the
27  fighters managed by Mr. Heredia to include Mr. Luis Feliciano.
28                        SECOND AMENDED
                          -14-
    THIRD AMENDED COMPLAINT – 14

50.     In August 2019 through the spring of 2020, GBP employees, including an individual name Mr. Ernie Gabon, approached Mr. Luis Feliciano. These conversations were not about anything to do with the promotion agreement between Mr. Feliciano and GBP. Rather they wanted to pry Mr. Feliciano away from Mr. Heredia and have him sign with another manager that is more favorable to GBP.

51.     In response to this, Mr. Heredia spoke to Mr. Oscar De La Hoya, the Chairman and CEO of GBP and Mr. Eric Gomez, President of GBP, and told him to stop attempting to poach his fighters. Mr. De La Hoya and Mr. Eric Gomez who assured them that it would not continue.

52.     But it did. After MTK induced Mr. Diaz to breach his contract, GBP believed the time was right to attempt to poach fighters from Mr. Heredia again.

53.     Once again, GBP targeted Mr. Feliciano. In several communications on November 17, Dec 1, Dec 11, and Dec 16, of 2020, Mr. Gabon of GBP, made overtures to Mr. Feliciano and attempted to sow doubt in the mind of Mr. Feliciano and encouraged him to leave Mr. Heredia. This not only interferes with the Boxer-Manager Contract between Mr. Feliciano but also causes harm to Mr. Heredia in other ways. Mr. Heredia is a third-party beneficiary to the promotion agreements as his management fee is directly tied to the purses of the boxers he manages.

54.     This is also within the context of a deliberate course of activity to suppress Mr. Feliciano's opportunities, set him up for failure, and demand lower purse amounts without any business justification.

55.     The audio messages in November and December followed difficult negotiations that failed to secure an agreement.

56.     Promoters are to deal with the Manager and what GBP should have done is communicate with either Mr. Heredia or have GBP's counsel communicate with Mr. Heredia's counsel. The communications from Mr. Gabon to Mr. Feliciano

1  directly are interference, particularly under the circumstances of the relationship
2  between Mr. Diaz and the Mr. Heredia and the breach with MTK.

3  ## PARTIES

4  57.4.  Plaintiff Moses Heredia is an individual residing in San Bernardino
5  County, California.

6  5.  Defendant MTK Global Sports Management, LLC, is a Dubai, UAE
7  business entity with license number 785135 and having its registered office at PO
8  Box 454833, Al Barsha Post Office, Dubai, United Arab Emirates. MTK Global
9  Sports Management, LTD, is a wholly owned subsidiary of MTK Global Sports
10  Management, LLC operating out of the United Kingdom with its principal place of
11  business at 20-22 Wenlock Road, London, England, N1 7GU. MTK stands for
12  "Mack the Knife." MTK recently changed its name to Global Promotion
13  Management LTD in the United Kingdom. However, MTK still is operating and
14  doing business as "MTK Global." *See* https://mtkglobal.com/. On or about April
15  20, 2022, and because of its connections with Mr. Kinahan, MTK announced that it
16  was completely shutting down at the end of April, 2022.

17  59.6.  Defendant MTK Global USA, LLC is a Delaware limited liability
18  company, with a registered agent, Paracorp Incorporated, at 2140 S Dupont HWY,
19  Camden, DE 19934. Upon information and belief, MTK controls MTK USA.

20  60.7.  Defendant Golden Boy Promotions, Inc., is a California corporation
21  with its principal place of business at 626 Wilshire Blvd, Suite 350, Los Angeles,
22  CA 90017.

23  61.8.  Defendant Paul D. Gibson is MTK's Chief Strategy Officer and an
24  individual residing in Alicante, Valencian Community, Spain.

25  62.9.  Defendant Daniel Kinahan is a co-founder and owner of MTK and an
26  individual residing in Dubai, UAE.

27  10.  On April 11, 2022, the U.S. Treasury Department's Office of Foreign

28

Assets Control (OFAC) designated the Kinahan Organized Crime Group (KOGC), as a "Transnational Criminal Organization," and designated Mr. Kinahan, along with several other KOCG members, as Specially Designated Nationals. The U.S. accused the KOGC of smuggling deadly narcotics, including cocaine, to Europe, and declared it "a threat to the entire licit economy through its role in international money laundering."

11.     In a statement, the U.S. said Mr. Kinahan runs the day-to-day operations of the organization. As part of the sanctions, OFAC prohibited any U.S. persons or businesses from working with Mr. Kinahan or any member of the KOGC.

12.     The United States Government offered a $5 million reward each for information that will lead to the "financial destruction" of the KOGC or the arrest and conviction of its three leaders, including Mr. Kinahan.

63.13. Each and every Defendant was the agent, servant, employee, joint venture, partner, subsidiary, and/or co-conspirator of each other Defendant, and in performing or failing to perform the acts alleged herein each Defendant was acting individually as well as through and in the foregoing alleged capacity within the course and scope of such agency, employment, joint venture, partnership, subsidiary, and/or conspiracy.

## JURISDICTION AND VENUE

64.14. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

65.15. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. Defendants MTK, Mr. Gibson, and Mr. Kinahan do substantial business in this judicial district, hashave substantial minimum contacts with this judicial district, and/or intentionally availed itself of

the benefits and protections of California law through the promotion, sale, marketing, and provision of services in California~~; *See* 18 U.S.C. § 1965 ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."). Further, Venue is.~~  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant GBP is subject to personal jurisdiction in this judicial district and ~~reside~~resides in this district.

## FEDERAL AND CALIFORNIA LAW

16.   Under ~~Federal~~federal law, the term "boxing manager" means a "person who receives compensation for service as an agent or representative of a boxer." *See* 15 U.S.C. § 6301.

~~66.~~17.Under California law, the term "boxing manager" means, "any person who … undertakes … to represent in any way the interest of any professional boxer … ." Cal. Bus. & Prof. Code § 18628. A boxing manger must be properly licensed within the State of California to execute his/her duties under the law. *See* Cal. Bus. & Prof. Code § 18642; 4 CCR § 216.

18.   Under ~~Federal~~federal law, the term "boxing promoter" means "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. § 6301.

19.   Under California law, the term "boxing promoter" means "a corporation, partnership, association, individual, or other organization which conducts, holds, or gives a boxing or martial arts contest, match, or exhibition." Cal. Bus. & Prof. Code § 18622.

20.   Federal law creates a "firewall" between managers and promoters in order to protect the boxer. 15 U.S.C. § 6308. ~~Like~~

21.   As with ~~a manager contract~~managers, promoters are required to have

a license. Cal. Bus. & Prof. Code § 18641; *see also* 4 CCR § 213.

67.22.A licensed promoter may do business with other licensed promoters. Cal. Bus. & Prof. Code § 18668.

68.23.Violations of the federal Professional Boxing Safety Act of 1996 (PBSA), as amended by the Muhammad Ali Boxing Reform Act of 2000 ("Ali Act") carry with it civil and criminal penalties. *See, generally,.* 15 U.S.C. § 6309.The public policy behind the statutory scheme, *inter alia*, is to ensure transparency with respect to how a boxer receives income.

## INTERFERENCE

## MTK and MTK USA presented **BRIEF STATEMENT OF FACTS**

69.  **Mr. Diaz** with an offending management agreement, titled as a purported business advisory agreement that was signed on or about August 4, 2020.

70.  MTK and/or its agents engaged in direct negotiations with GBP in full disregard for **and** Mr. Diaz's contractual obligations and the federal and state laws governing the profession of boxing.

71.  MTK and GBP have interfered to the point of scheduling two bouts. One on February 13, 2021 between Mr. Diaz and his mandatory contender without any input from or communication with or the consent of Mr. **Heredia**. The second bout occurred on July 9, 2021 between Mr. Diaz and Mr. Javier Fortuna. This bout was scheduled without involvement or the consent of Mr. Heredia.

72.  MTK, MTK USA, or VGC further advised or directed Mr. Diaz to direct GBP not to pay Mr. Heredia the contractual payment of 18%.

73.  GBP negotiated with Mr. Paul Gibson and MTK in creating the February 13, 2021 bout and did not communicate with Mr. Heredia.

74.  Further, due to Mr. Diaz's failure to make weight MTK and Mr. Gibson negotiated with the management/promotion team for Mr. Shavkatdzhon

Rakhimov in order to keep the fight scheduled.

75.   GBP also aided and assisted with these negotiations and worked with MTK and Mr. Gibson as if they were Mr. Diaz's managers in complete disregard for Plaintiff's valid, enforceable, and exclusive management contract with Mr. Diaz.

76.   GBP negotiated with MTK and its employees and agents in creating the July 9, 2021 bout and did not communicate with Mr. Heredia.

77.   MTK runs an operation out of the Dubai Economic Zone, as discussed below, and is overseen by Mr. Daniel Kinahan who also resides in Dubai, UAE. More information concerning the nature of Mr. Kinahan's involvement in MTK will be known after a reasonable opportunity for further investigation or discovery.

### A. MTK and MTK USA are interfering with Plaintiff's **had a long-standing and successful** boxer-manager **relationship.**

24.   Mr. Heredia has known Mr. contract between Mr. Heredia and Mr. Diaz and interfering with Plaintiff's promotion contract with GBP. Mr. Heredia is a third-party beneficiary of the promotion agreement. MTK is acting as Mr. Diaz's boxing manager and excluding Mr. Heredia. Mr. Heredia is listed as the representative for Mr. Diaz on the Golden Boy promotion agreement. MTK is directly negotiating with GBP, Mr. Diaz's boxing promoter. Both GBP and MTK are excluding Mr. Heredia from conversations and negotiations involving Mr. Diaz since Mr. Diaz competed as an amateur boxer prior to his qualification for the 2012 Summer Olympics. After Mr. Diaz completed in the 2012 Summer Olympic Games in London, he became a Diaz. professional boxer.

78.   Mr. Heredia managed Mr. Diaz's boxing career for almost a decade. During this time, Mr. Heredia brought Mr. Diaz three world championship bouts and negotiated the VGC facilitated this by coordinating between GBP and MTK regarding negotiations including direct negations which directly benefit MTK and

1  GBP.

2      79.   MTK is flooding the U.S. marketplace for the purpose of cornering

3  the professional boxing market in an identical approach taken in Europe, further

4  exacerbated by disrespecting US law and tortuously interfering with contracts with

5  impunity, violating the Ali Act firewall provisions, and not obtaining the required

6  licensure or complying with the various statutory requirements associated the roles

7  of manager and promoter. MTK has in the past few months signed over eight US

8  boxers and several dozen across the globe. MTK states it is a global management

9  and promotion company but is having boxers sign management agreements using

10  the title "advisory" in an unguarded attempt to avoid legal scrutiny without basis in

11  statutory law. However, MTK's agreements are management or promotion

12  agreements based on the applicable definitions and MTK's conduct.

13      80.   MTK and MTK USA interfered by providing a financial inducement

14  to Mr. Diaz. MTK provided a $100,000 advance to Mr. Diaz which is repayable

15  over his next three bouts. This advance is essentially a loan to Mr. Diaz which

16  impacts his future earnings and mortgages his future away, which is why the

17  Federal Government and the State of California created statutes and regulations to

18  protect boxers. *George Foreman Associates, Ltd. v. Foreman*, 389 F.Supp 1308,

19  1314 (1974) ("The statutes and regulations indicate a clear purpose to safeguard

20  boxers against the temptation to mortgage their futures in exchange for relatively

21  meager present consideration.").

22      81.   GBP has disregarded its contractual obligations with respect to the

23  2017 promotional agreement with respect to Plaintiff. Further, GBP has contacted

24  at least one other boxer managed by Mr. Heredia, Luis Feliciano, on multiple

25  occasions as recently as December 16, 2020 in violation and disregard of other

26  agreements. This interference is a byproduct of MTK's trampling on Plaintiff's

27  rights—something that GBP is allowing and attempting to profit from.

28

25.   ~~This tortious and unlawful activities continue unto present day.~~ 2017
Promotion Agreement with GBP.

26.   Diaz and GBP signed the Promotion Agreement on March 22, 2017.
The Promotion Agreement expired on March 21, 2022.

27.   The terms of the Promotion Agreement provided Mr. Diaz with a
$150,000 signing bonus and guaranteed two bouts with purses of $150,000 and
$200,000 shortly after the signing of the agreement.

28.   In his later arbitration award, the Executive Director of the California
State Athletic Commission ("Commission") stated that this Promotion Agreement
was "lucrative" for Mr. Diaz. The Promotion Agreement also contained a net
proceeds clause should Mr. Diaz be the "A" side of a main event bout on Pay-Per-
View (PPV).

29.   The Promotion Agreement contained a "no assignment" clause for the
boxer, which stated: "Neither the benefits nor the duties of Boxer [Mr. Diaz] under
this Agreement may be assigned or transferred for any reason."

~~82.~~   The Promotion Agreement also required Mr. Diaz to list his
representatives, if any. Mr. Diaz listed Moses Heredia and Ralph Heredia~~Diaz to
include a bout on July 9, 2021 where Mr. Diaz fought Javier Fortuna.~~

~~83.   MTK, MTK USA, their agents, and GBP are openly and notoriously
interfering with the boxing management contract between Mr. Diaz and Mr.
Heredia and the boxing promotional contract between Mr. Diaz, Mr. Heredia, and
GBP. Further, MTK and MTK USA caused Mr. Diaz to breach his Boxer-Manager
contract with Mr. Heredia.~~

~~**FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS**~~

30.   .

31.   Mr. Diaz fought ten bouts under Mr. Heredia's management, pursuant
to a Boxer-Manager Contract dated February 23, 2017 ("2017 Contract") and his

Promotion Agreement dated March 22, 2017. At all times relevant to this Complaint, the 2017 Contract between Mr. Heredia and third-party Mr. Diaz was valid.  The existence of this 2017 Contract was public knowledge, being listed on the Commission's website, and all Defendants knew of the 2017 Contract.  There were no issues with the relationship for over three years, until the Defendants in this case lured Mr. Diaz away from Mr. Heredia's management.

**B. Mr. Kinahan, through MTK and its affiliates, is deeply connected to professional boxing and is also an international narco-terrorist, who has recently been sanctioned by the United States Government as a result of his involvement in criminal activity to include money laundering, and which also resulted in the seizure of Mr. Kinahan's assets by the United Arab Emirates.**

32.    MTK was co-founded by Mr. ~~Daniel~~ Kinahan. Mr. ~~Daniel~~ Kinahan is ~~known as~~alleged to run the ~~head~~day-to-day operations of ~~the~~ Kinahan Organized Crime Group ("KOCG") in Ireland. The KOCG is allegedly responsible for*, inter alia,* several murders, drug trafficking, and money laundering~~.~~ (criminal activity). The KOCG is believed to be one of Europe's biggest ~~drug~~criminal cartels. Law enforcement ~~experts believe~~believes that Mr. ~~Daniel~~ Kinahan started various legitimate business entities to launder ill-gotten gains from criminal activity resulting in some of them already being placed on a sanctioned list. As a result of Mr. Kinahan's being sanctioned, any person or business engaging in business with him and his entities may be subject to the same consequences; MTK Global has suffered from a complete exodus of fighters and business to business relationships resulting in their decision to cease operations as of the end of April, 2022.  More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further

investigation or discovery.

33.     Law enforcement believes that Mr. Kinahan started MTK to launder
ill-gotten gains from ~~drug trafficking.~~criminal activity . More information
concerning the nature of Mr. Kinahan's involvement in MTK and money
laundering will be known after a reasonable opportunity for further investigation or
discovery.

84.34.Mr. ~~Daniel~~ Kinahan is wanted for questioning by several law
enforcement agencies due to the murderous activities of the KOCG. On or about
September 16, 2018, the United States Customs and Border Protection (CBP)
banned Mr. Kinahan and roughly 26 other members of the KOCG from entering
America due to narco-terrorism concerns. *~~See e.g.~~*
~~https://www.thetimes.co.uk/article/america-bans-the-kinahan-crime-family-~~
~~r7bbbntll; https://www.thesun.ie/news/5456085/cartel-boss-daniel-kinahan-~~
~~banned-us-placed-on-list-narco-terrorists/.~~

85.35.In 2016, Mr. Kinahan fled Ireland to Dubai, UAE after a boxing
match he promoted ended in violence at the Regency Hotel in Dublin, Ireland.
During that boxing match, several masked gunmen fired AK-47s into the crowd,
~~killed~~killing one person~~,~~ and ~~injured~~injuring several more. This shooting ~~is~~was an
alleged ~~to be a plot to kill~~attempt on Mr. ~~Kinahan~~Kinahan's life by a rival crime
family. *~~See e.g. https://www.ringtv.com/603461-buzz-and-scrutiny-build-~~*
~~regarding-mtk-global-and-daniel-kinahan/.~~

36.     On April 11, 2022, the U.S. Treasury Department's Office of Foreign
Assets Control (OFAC) designated the Kinahan Organized Crime Group as a
"Transnational Criminal Organization," and designated Mr. Kinahan, along with
several other KOCG members, as Specially Designated Nationals.

37.     OFAC accused the KOGC of smuggling deadly narcotics, including
cocaine, to Europe, and declared it "a threat to the entire licit economy through its

role in international money laundering."

38.     In a statement, OFAC stated that Mr. Kinahan runs the day-to-day operations of the organization.

39.     As part of the sanctions, OFAC prohibited any U.S. persons or businesses from working with Mr. Kinahan or any member of the KOGC.  The U.S. has offered a $5 million reward each for information that will lead to the "financial destruction" of the KOGC or the arrest and conviction of each of its leaders, including Mr. Kinahan.

40.     The United Arab Emirates (UAE) has joined in what has now become a global investigation into the life and accused crimes of Mr. Kinahan.  The UAE froze all identified assets of the Kinahan Organized Crime Group along with issuing sanctions on Mr. Kinahan as well as his known associates: his father Christopher Vincent 'Christy' Kinahan Sr., and his brother Christy Jr.

41.     U.S. businesses are already forbidden from conducting business with Mr. Kinahan and the six others named as key members of the KOCG, along with three identified businesses.

42.     UAE has taken the same measures, which will greatly impact what has become a growing boxing scene in Dubai. For example, Mr. Kinahan developed a relationship with a fledgling UAE promotional company called "Probellum."  Probellum recently held a two-night event in March 2022 attended by Mr. Kinahan as well as Rai Taimoor Khan, the Provincial Minister of Punjab for Youth Affairs, Sports, Archaeology and Tourism.

43.     Khan tweeted pictures he took with Mr. Kinahan and associate Sandra Vaughan, and mentioning a meeting with "Probellum on aligning vision on boxing for Punjab & how to make this sport bigger for our youth. Looking forward to hosting Daniel in Lahore to discuss Pakistan's first International fight with foreign world class boxers InshAllah. Will share more info in the upcoming weeks."

44.   Vaughan purchased MTK Global from Matthew Macklin – Kinahan's close friend and a former middleweight title challenger – in 2017. The company was known as MGM Marbella at the time before being renamed to MTK ("Mack The Knife," after Macklin's ring moniker).

45.   Vaughan assumed the role of CEO before stepping down from the position in 2020, though she and Kinahan remain at least friendly, and influential enough for the Punjabi provincial minister to believe they represented Probellum in their meeting.

46.   The matter was admitted by Probellum officials as a mistaken classification once OFAC announced its sanctions against Mr. Kinahan.

### C. Mr. Kinahan controls MTK and its affiliates.

47.   MTK has claimed that it cut ties with Mr. Kinahan in 2017.  This claim is belied by the boxing word's near-immediate reaction to Mr. Kinahan's being sanctioned by OFAC.

48.   MTK USA may have been the contracting party with Mr. Diaz but all of the interactions regarding his fights and Mr. Diaz's matters were directed by MTK personnel to include Paul Gibson as reflected in emails exchanges between VGC and Golden Boy.

49.   Within days OFAC's designation of Mr. Kinahan as a Specially Designated National, and despite Mr. Kinahan denying connections to any co-defendant MTK entity, the boxing world has dropped Mr. Kinahan and co-defendant MTK knowing that their continued connection to Mr. Kinahan and his businesses would endanger their liberty and financial interests.

50. Indeed, shortly after Mr. Kinahan's designation as a Specially Designated National, co-defendant MTK announced on its website, www.mtkglobal.com, "Since leading promoters have now informed us that they will be severing all ties with MTK and will no longer work with our fighters, we

1    have taken the difficult decision to cease operations at the end of this month."

2         51.    In an exclusive interview with an Irish news organization, Top Rank

3    founder and chairman Mr. Bob Arum said: "We all know what MTK was and who

4    controlled it and once the US spoke as forcefully as they did, nobody involved in

5    boxing was going to have anything to do with them."

6         52.    Asked if Mr. Kinahan, to his knowledge, continues to be involved in

7    running MTK, Mr. Arum stated: "A hundred per cent. He founded it, it's his

8    company." Mr. Arum further added, "He can say what he wants, I know for fact

9    from some of the stuff that he did, that it was his company – whatever the books

10   said."

11        53.    Mr. Arum had done business with Mr. Kinahan and MTK but he cut

12   ties with both after OFAC's April 11, 2022 designations of Mr. Kinahan and the

13   KOCG.

14        54.    Despite the strong evidence that Mr. Kinahan ran or operated MTK,

15   Mr. Kinahan represented to this Court otherwise under penalty of perjury on March

16   14, 2022, stating, "I do not work for and am not employed by MTK Global Sports

17   Management, LLC, MTK Global USA, LLC, Golden Boy Productions, Inc.,

18   Golden Boy Promotions, Inc., VGC, LLP, or Paul D. Gibson." [ECF 73-1]

19        **D. MTK, its affiliates, and Mr. Kinahan laundered  proceeds from**

20        **Mr. Kinahan's and KOCG's criminal activities to pay the**

21        **money through MTK and MTK USA to help lure Mr. Diaz**

22        **away from Mr. Heredia's management.**

23        86.   55.    On August 4, 2020, MTK USA, through an employee of MTK,

24   signed what is titled and purported to be a business advisory agreement with Mr.

25   Diaz, unbeknownst to Mr. Heredia.  Mr. Heredia became aware of the signing

26   though a text message sent by Mr. Diaz to Mr. Ralph Heredia, Mr. Heredia's

27   brother, on August 9, 2020 and later through press releases and social media on

28

August 12, 2020. Mr. Diaz texted Ralph Heredia on August 9, 2020 stating: "I
signed an advisory deal with MTK, it's being Announced tomorrow. I'm doing this
for my career and feel like it's the best choice. It's time for a change. [flexed arm
emoji]."  This was an intentional act by Defendants MTK, MTK USA, Mr.
Kinahan, and Mr. Gibson designed to induce a breach or disruption of the
contractual relationship between Mr. Heredia and Mr. Diaz, and it did in fact
breach or disrupt the contractual relationship between Mr. Heredia and Mr. ~~Mr.~~
~~Daniel Kinahan is currently living in Dubai, UAE where he continues to arrange~~
~~boxing matches and act in a management capacity to MTK. *See e.g.*~~
~~https://www.insider.com/tyson fury splits from reputed drugs boss daniel~~
~~kinahan 2020 6; https://www.sportscasting.com/what we know about tyson furys~~
~~advisor daniel kinahan a suspected 1 1 billion drug lord/. More information~~
~~concerning the nature of Mr. Kinahan's involvement in MTK will be known after a~~
~~reasonable opportunity for further investigation or discovery.~~

~~87.   The Racketeering Influenced and Corrupt Organizations (RICO) Act~~
~~allows for a wronged plaintiff to sue in civil court for damages. *See* 18 U.S.C. §~~
~~1964.~~

Diaz.  The 2017 Contract would otherwise have been performed but for
these Defendants' alleged misconduct.

56.   Per the terms of the MTK USA purported business advisory
agreement with Mr. Diaz, MTK USA advanced $100,000 to Mr. Diaz upon
execution of the agreement. These funds are believed to be the proceeds of
criminal activity generated by Mr. Kinahan and his KOCG, laundered through
MTK, Mr. Kinahan, and his KOCG.

57.   At all relevant times MTK received or obtained the money used to pay
Mr. Diaz, either directly or indirectly from a pattern of racketeering activity by Mr.
Kinahan's laundering of proceeds from his and his KOCG's  criminal activities.

1  More information concerning the nature of Mr. Kinahan's involvement in MTK

2  will be known after a reasonable opportunity for further investigation or discovery.

3  88.   58.   . More information concerning the nature of Mr. Kinahan's

4  involvement in MTK will be known after a reasonable opportunity for further

5  investigation or discovery. MTK is associated with Mr. Daniel Kinahan and the

6  Kinahan Organized Crime Group ("KOCG").his KOCG. The KOCG is an

7  association-in-fact that operates one of Europe's largest drug traffickingcriminal

8  cartels and money laundering networksoperations according to several law

9  enforcement agencies. Mr. Kinahan co-founded MTK with Matthew "Mack The

10  Knife" Macklin. Mr. Mr. Kinahan co-founded MTK with Matthew "Mack The

11  Knife" Macklin. Mr. Kinahan conceived and co-founded MTK in an attempt to

12  launder illicit proceeds from drug traffickingcriminal activity through a seemingly

13  lawful business. At this time we have no indication that Mr. Macklin knowingly

14  participated in any of Mr. Kinahan's criminal enterprise activity. He, along with

15  numerous other boxing professionals, is under scrutiny by U.S. authorities was

16  recently denied entry into the United States as a result of the U.S. Treasury's recent

17  actions against Mr. Kinahan and his KOCG.  More information concerning the

18  nature of Mr. Kinahan's involvement in MTK and money laundering will be

19  known after a reasonable opportunity for further investigation or discovery.

20  89.   However, this attempt failed in 2016 when during a boxing match

21  promoted by Mr. Kinahan ended in violence as a rival crime family, believed to be

22  the Hutch Family, began shooting the crowd. In the aftermath of that shooting and

23  feeling the pressure from several law enforcement agencies, Mr. Kinahan fled from

24  Ireland to Dubai, UAE and continued to operate MTK by creating the Dubai, UAE

25  wing of MTK. In 2017, MTK made attempts on paper to sever the ties between

26  MTK and Mr. Kinahan. However, recent reports — as recent as November 2020 —

27  still indicate that Mr. Kinahan is running MTK from Dubai, UAE. *See e.g.*

28

1  https://www.belfasttelegraph.co.uk/news/northern-ireland/barry-mcguigan-in-
2  warning-to-boxing-over-kinahan-grip-after-frampton-case-39750316.html.59.
3       MTK received or obtained money, either directly or indirectly, from
4  criminal activity  and money laundering through its association with Mr. Kinahan.
5  More information concerning the nature of Mr. Kinahan's involvement in MTK
6  will be known after a reasonable opportunity for further investigation or discovery.
7       "Racketeering activity" is an act that violates certain statutes enumerated in
8  18 U.S.C. § 1961. "Racketeering activity" is also called a "predicate act." *See*
9  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.
10  2005). Drug trafficking and money laundering are both listed in 18 U.S.C. § 1961.
11  Here, MTK received or obtained money, either directly or indirectly, from drug
12  trafficking and money laundering through its association with Mr. Kinahan. More
13  information concerning the nature of Mr. Kinahan's involvement in MTK will be
14  known after a reasonable opportunity for further investigation or discovery. Mr.
15  Kinahan continues to arrange boxing 60.     At all times relevant to this third
16  amended Complaint, Mr. Kinahan continued to arrange boxing matches that
17  involved MTK fighters. These matches that involve MTK fighters. These matches
18  are were steeped in money obtained from drug trafficking and money laundering.
19  MTK Mr. Kinahan's and KOCG's criminal activity  and these monies were
20  siphoned off Mr. Kinahan's and KOCG's criminal activity  proceeds and then
21  useslaundered through MTK as what are presented as legitimate business expenses.
22  MTK then used this money to attempt to bring in more fighters and arrange more
23  fights so that more drug traffickingcriminal activity  proceeds can be laundered
24  through what appears tocould be laundered through what appeared to be a
25  legitimate business.
26       61.    MTK's thirst for new boxers supportssupported the KOCG's
27  money laundering needs. This thirst has brought MTK to the US market and to the
28

1    interference with Mr. Diaz and Mr. Heredia. More information concerning the

2    nature of Mr. Kinahan's involvement in MTK will be known after a reasonable

3    opportunity for further investigation or discovery.

4         90.    Diaz and Plaintiff. More information concerning the nature of Mr.

5    Kinahan's involvement in MTK will be known after a reasonable opportunity for

6    further investigation or discovery.

7         91.    A "62.        MTK engaged in a pattern of racketeering activity"

8    means that a defendant, such as MTK, committed at least two distinct predicate

9    acts. "Distinct" does not have to mean different types. A pattern of racketeering

10   activity must include related predicate acts. Predicate acts are "related" to one

11   another if they have the same or similar purposes, results, participants, victims, or

12   methods. Here, MTK has approached by approaching several US fighters and

13   offered similar "marketing advisor" arrangements. More information concerning

14   the nature of MTK's entry into the U.S. boxing market will be known after a

15   reasonable opportunity for further investigation or discovery. MTK sometimes

16   does this with the knowledge and consent of the fighters boxing manager. On other

17   occasions, such as this current dispute, it is a hostile attempt to peel a boxer or

18   sport fighter away from his or her managers. MTK holds Mr. Diaz out on its

19   website as one of its boxers and has publicly tweeted about the February 13, 2021

20   mandatory title defense bout. This bout was apparently arranged between MTK

21   and GBP, both of whom have not included Mr. Diaz's manager, Mr. Heredia in the

22   conversation.

23        A pattern of 63.        MTK's racketeering activity also requires predicate acts

24   showing "continuity." Continuity can be demonstrated in two ways. The first is

25   "close-ended" continuity where the related predicate acts extend over a substantial

26   period of time. The second is "open-ended" continuity where the related predicate

27   acts do not occur over a substantial period of time but are likely to be repeated in

28

1  the future. Here, MTK continues to involve itself in ~~drug trafficking~~criminal

2  activity and money laundering through its association with Mr. Kinahan.

3  ~~92.~~   These acts are likely to be repeated in the future. MTK

4  ~~advertises~~advertised on its website that it is one of the biggest forces in boxing and

5  is encouraging children as young as 15 to sign up with them to get more and more

6  boxers in ~~their grasps~~its control to continue the money laundering operation. This

7  also includes a drive to become a dominant player in the United States as MTK

8  continues its expansion into the United States. More information concerning the

9  nature of MTK's entry into the U.S. boxing market will be known after a

10  reasonable opportunity for further investigation or discovery.

11  64.   MTK has participated as a principal in the pattern of racketeering

12  activity. MTK either committed or aided, abetted, counseled, commanded,

13  induced, or procured the commission of several predicate acts that form a pattern

14  of racketeering activity. More information concerning the nature of Mr. Kinahan's

15  involvement in MTK will be known after a reasonable opportunity for further

16  investigation or discovery.

17  ~~93.~~   65.   MTK also willfully caused the commission of two or more

18  alleged predicate acts that make up the pattern of racketeering activity. MTK

19  committed these predicate acts with intent or knowledge. MTK knows that Mr.

20  Kinahan is involved in ~~drug trafficking~~criminal activity and money laundering and

21  yet MTK still associates with Mr. Kinahan and does business regularly with Mr.

22  Kinahan. Further, MTK itself is engaged in predicate acts when it ~~proved~~provided

23  these illicit funds to Mr. Diaz.

24  ~~94.~~   66.   MTK uses the income or proceeds derived from the

25  racketeering activity to acquire, maintain, or operate an enterprise. An "enterprise"

26  may consist of an individual, partnership, corporation, association, or other legal

27  entity. Here, MTK has attempted to acquire an interest in Mr. Joseph Diaz, as a

28

professional boxer. MTK provided Mr. Diaz $100,000 to induce him to breach his contract with Plaintiff without proper licensure, contractual, or lawful authority. These funds are directly or indirectly derived from racketeering activity as described above. ~~MTK receives funds directly or indirectly from Mr. Kinahan which are derived from racketeering activity such as drug trafficking and money laundering. MTK itself is laundering the illicit proceeds of the KOCG drug trafficking enterprise. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.~~

67.    MTK receives funds directly or indirectly from Mr. Kinahan, which are derived from racketeering activity such as criminal activity  and money laundering. MTK itself is laundering the illicit proceeds of the KOCG criminal activity  enterprise. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

~~95.~~ 68.    MTK is engaged in interstate and foreign commence. ~~They are~~It is a foreign business entity operating in the United States, namely California. MTK is using and abusing US law in an attempt to gain a foothold in a lucrative market to continue ~~their~~its money laundering operation. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

The acts of MTK, Mr. Kinahan, and Mr. Gibson have caused damage to Plaintiff.~~ MTK:~~ they used laundered ~~racketeering income to injure Plaintiff.~~ ~~To establish standing~~

### E. MTK USA, with MTK and GBP, improperly lured Mr. Diaz from Mr. Heredia's management and unlawfully negotiated bouts for ~~a civil RICO claim, four factors must~~ Mr. Diaz.

69.    On August 4, 2020, MTK USA, through an employee of MTK, signed what is titled and purported to be satisfied: a business advisory agreement with Mr. Diaz, unbeknownst to Mr. Heredia. This was an intentional act by Defendant GBP designed to induce a breach or disruption of the contractual relationship between Mr. Heredia and Mr. Diaz, and it did in fact breach or disrupt the contractual relationship between Mr. Heredia and Mr. Diaz.  The 2017 Contract would otherwise have been performed but for the Defendant's alleged misconduct.

70.    Mr. Heredia became aware of the signing though a text message sent by Mr. Diaz to Mr. Ralph Heredia, Mr. Heredia's brother, on August 9, 2020 and later through press releases and social media on August 12, 2020. Mr. Diaz texted Ralph Heredia on August 9, 2020 stating: "I signed an advisory deal with MTK, it's being Announced tomorrow. I'm doing this for my career and feel like it's the best choice. It's time for a change. [flexed arm emoji]."

71.    Thereafter Mr. Heredia and Ralph Heredia called Mr. Diaz, but Mr. Diaz did not respond and stopped communicating with Mr. Heredia.

72.    After Mr. Diaz signed the "business advisory" agreement, GBP and a law firm, VGC, LLP ("VGC") negotiated for Mr. Diaz to engage in a title defense on February 13, 2021. Emails and letters between GBP and VGC in November 2010 demonstrate that individuals from these entities were directly negotiating, while cutting out Mr. Heredia from the negotiations, despite the 2017 Contract being valid and in full force and effect at that time.

73.    Mr. Heredia was not involved in scheduling the fight and did not provide his written permission for the bout, despite the 2017 Contract requiring him to do so. Mr. Diaz failed to make weight prior to the fight and was stripped of his title.

74.    Although the fight went forward as scheduled, Mr. Diaz was required

to pay a $100,000 penalty (20% of his purse) for missing weight. The fight ended in a draw, taking Diaz' record to 33-1-1. Per the 2017 Contract, Heredia should have received 18% ($72,000) of Mr. Diaz' reduced purse from the fight.

75.     Mr. Diaz still has not paid Mr. Heredia that required sum, and Mr. Heredia has had to file a California state court action to enforce this portion of the arbitration award.

76.     While the 2017 Contract was still valid and in full force and effect between Mr. Heredia and Mr. Diaz, GBP negotiated another bout for Mr. Diaz, this one on July 9, 2021.

77.     With GBP freezing out Mr. Heredia from communicating with his fighter, Mr. Diaz, Mr. Heredia was also not involved in scheduling this fight and did not provide his required written permission for the bout.

78.     Mr. Diaz' purse for the July 9, 2021 fight was $500,000. Per the 2017 Contract, Heredia was entitled to 18% ($90,000) of Mr. Diaz' purse from the fight.

79.     In an arbitration over Mr. Diaz' breach of the 2017 Contract, the arbitrator decided in favor of Mr. Heredia.  Mr. Diaz did not pay Mr. Diaz that sum until 10 days after ordered to in the arbitration award.

80.     During the course of the arbitration process, GBP in coordination with VGC and MTK / MTK USA, presented an altered bout agreement to the Commission for a significantly lower amount than the $500,000 in an effort to reduce the amount of the payout to Mr. Heredia. The Commission rejected this attempt to interfere with the 2017 Contract and disapproved the altered bout agreement.

81.     In his decision on July 10, 2021, the Executive Director ultimately ordered GBP to withhold $90,000 from Mr. Diaz's purse, which was 18% of the full $500,000 bout payout to Mr. Diaz.

82.    The bouts on February 13, 2021 and July 9, 2021 were negotiated in part by MTK / MTK USA and their employees and agents and VGC. None of MTK, MTK USA, Mr. Kinahan, Mr. Gibson, nor VGC possesses the proper licensure to perform either boxing management or promotional services in California.

83.    These representations also violated US federal law, which prohibits one company from providing both boxing management and promotion services. *See* 15 U.S.C. § 6308.

84.    As detailed further below, per the terms of the MTK USA purported "business advisory" agreement with Mr. Diaz, MTK USA advanced $100,000 to Mr. Diaz upon execution of the agreement. Plaintiff mustThese funds are believed to be laundered proceeds of criminal activities conducted by Mr. Kinahan and his KOCG.

85.    The purported business advisory agreement states MTK USA is Mr. Diaz's sole and exclusive business advisor.

86.    MTK and MTK USA's purported business advisory agreement with Mr. Diaz is seemingly only about business advisements. However, the actions of Mr. Gibson, MTK / MTK USA and VGC show this is actually a boxing management contract. Mr. Paul Gibson, an MTK employee, directly negotiated the terms of a bout between Mr. Diaz and another fighter, Mr. Shavkatdzhon Rakhimov, on February 13, 2021. Further, these Defendants negotiated for and arranged a second bout on July 9, 2021.

87.    Mr. Heredia asked Mr. Steve Bash, an attorney duly licensed in California, to investigate this "business advisory" agreement.

88.    Mr. Bash called Mr. Bob Yalen, CEO of MTK on August 30, 2020. Mr. Yalen claimed not to have knowledge of the MTK USA agreement with Mr.

Diaz but stated he would inquire into it.

89.    However, Mr. Yalen is the signatory for MTK USA on the August 4, 2020 agreement and is quoted in a press release dated August 12, 2020 stating "We are honoured to welcome a boxing superstar in world champion JoJo Diaz to the team. His amazing record speaks for itself and he's one of the best pound for pound boxers in the world, so to have him sign with MTK Global is a massive statement of intent in terms of our expansion into America. He currently holds the IBF super-featherweight belt, and we're determined to help him build on that great success."

90.    On August 14, 2020, Mr. James Greeley of VGC reached out to Mr. Bash stating that Mr. Yalen asked him to get in touch. Mr. Greeley stated he represented Mr. Diaz. Thereafter they had a call to discuss MTK's intention. Mr. Bash requested a copy of the MTK USA agreement, which was not provided.

91.    On August 20, 2020 at around 8:00 pm, Mr. Greeley emailed Mr. Bash asking for a phone call. On August 21, 2020, Mr. Bash responded that Mr. Heredia requested not to have any further communications until the MTK USA agreement is provided.

92.    A few hours later, Mr. Greeley responded stating various claims against Mr. Heredia and requesting to see all offers from GBP. Shortly thereafter, Mr. Bash responded by providing the information from GBP. During this email exchange Mr. Greeley's rhetoric continued to increase. At some point after this email Mr. Greeley instructed GBP to communicate with him as Diaz's legal counsel—and not Mr. Heredia—and by September 14, 2020, Mr. Greeley instructed Mr. Bash to tell Mr. Heredia not to have any communications with Golden Boy that purport to be on Mr. Diaz's behalf.

93.    VGC abandoned this position during the arbitration on June 10, 2021 as memorialized by the decision of the arbitrator.

94.     Shortly thereafter, on October 7, 2020, a complaint by Mr. Diaz was filed and litigation ensued. *See* Docket No. 5:20-cv-02332-JWH-KK (C.D. Cal.).

95.     The MTK USA "business advisory" agreement was finally disclosed during the arbitration on June 10, 2021.

96.     When Mr. Diaz signed the MTK USA purported business advisory agreement and ceased communication with Mr. Heredia, he breached the 2017 Contract.

97.     Without the MTK USA agreement and no communication from Mr. Diaz, Mr. Heredia sought to confirm his rights under the 2017 Contract. The terms of the 2017 Contract required that any dispute be submitted for arbitration within two weeks after the origin of the dispute.

98.     In accordance with this provision, on August 20, 2020, Mr. Heredia filed an arbitration request with the Commission with respect to Mr. Diaz's breach of contract pursuant to the terms of the 2017 Contract and relevant statutory and regulatory provisions.

99.     The 2017 Contract states, in relevant part: "Boxer [Mr. Diaz] Agrees … that Boxer will not, during the term of this agreement, take or engage in any boxing contests, exhibitions or training exercises without first having obtained the written permission of Manager [Mr. Heredia] to do so."

100.    The Commission accepted the arbitration request, however, due to delays perpetuated by Diaz, the arbitration did not take place until June 10, 2021.

101.    The arbitrator found the 2017 Contract between Mr. Heredia and Mr. Diaz to be valid, and Mr. Diaz was ordered to pay Mr. Heredia his full management fees for the two aforementioned bouts that were negotiated without his assistance.

102.    One of those payments was made, albeit late and in the face of significant scrutiny by the California commission, and the second has not yet been

made.  Mr. Greely informed the California State Commission they were without authority to compel payment order pursuant to the Arbitration decision (not appealed by Diaz), which the California Commission rejects and Mr. Heredia was left with no other options to collect these sums, and recently had to file a California state enforcement action to attempt to collect that second payment owed to him by Mr. Diaz.

103.   During the arbitration on June 10, 2021, the Executive Director of the Commission found that Mr. Diaz and Mr. Heredia's relationship was irreparably harmed.

104.   On July 10, 2021, the Executive Director, through his decision, canceled the remainder of the 2017 Contract due to the irreparable nature of the relationship. Mr. Heredia has been harmed by the early termination of this contract.

105.   The early termination would not have occurred if MTK and MTK USA did not induce the breach of the Boxer-Manager Contract and GBP did not facilitate or allow MTK, MTK USA, and Mr. Gibson to substitute as Mr. Diaz's managers.

106.   (1) a "person"VGC, as MTK or MTK USA's proxy, negotiated bouts for Mr. Diaz while the 2017 Contract was in full legal force and effect, usurping Mr. Heredia's role as Mr. Diaz' lawful and exclusive manager at the time.

107.   For example, in a November 11, 2020 email from VGC to GBP, VGC states: "We received your letter. We will, of course, present any legitimate offer to Mr. Diaz. A legitimate offer contains at least the following elements: (1) an opponent; (2) who sustains injurya purse; (3) a date; (4) and a location. Your note is missing half of those, and instead gives an undefined two month timeframe for a bout with no location set. This overture is pretext meant to create the illusion of contractual compliance where it does not exist."

108.   No individual in VGC or MTK, nor Mr. Kinahan, is licensed to

1  perform boxing management functions in the State of California. *See* Cal. Bus. &

2  Prof. Code § 18628; *see generally* 15 U.S.C. §§ 6301-6313.

3      109.   These actions, by Mr. Kinahan's MTK and MTK USA, through VGC,

4  are definitional management services as defined by Cal. Bus. & Prof. to his or her

5  "business or property" (4) "by reason of" defendant's Code §18628 and were taken

6  with respect to Mr. Diaz in violation of the 2017 Contract.

7      110.   VGC and MTK did this despite knowing that Mr. Diaz had a valid

8  Boxer-Manager Contract with Mr. Heredia. More information concerning the

9  nature of the interactions between VGC, MTK, and GBP will be known after a

10  reasonable opportunity for further investigation or discovery.

11      **F.  Mr. Diaz instructed Golden Boy to withhold funds lawfully**

12          **earned by, and owed to, Mr. Heredia.**

13      111.   GBP and Mr. Heredia have a long history. 18 U.S.C. § 1962. Standing

14  depends on injury from the "conduct constituting the They have worked together

15  for several years. Notwithstanding their long business relationship and GBP's

16  knowledge of MTK's violations of the law, GBP has negotiated for its own

17  financial gain with MTK as if MTK was the manager of Mr. Diaz in violation of

18  the Muhammad Ali Boxing Reform Act.

19      112.   Mr. Diaz and GBP advertised bouts for Mr. Diaz on February 13,

20  2021 and on July 9, 2021. ," and each section of RICO has a different injury

21  requirement. Injury under § 1962(a) must stem from the investment of racketeering

22  income; injury These bouts were premised on the 2017 promotional agreement with

23  GBP that Mr. Heredia had previously negotiated for Mr. Diaz.  This is yet another

24  time MTK and GBP have worked together and intentionally frozen out Mr.

25  Heredia from the process, despite him being Mr. Diaz's lawful and exclusive

26  boxing manager.

27      113.   Payment in connection with boxing bouts is a bifurcated process.

28

Prior to the bout itself, the promoter and boxer meet, without the boxer's manager, and the boxer directs the promoter to cut checks to members of his team, including his manager.  The checks are held by the promoter until after the bout, at which time the promoter delivers the checks to the appropriate payees.

114.   Per the 2017 Contract, Mr. Heredia should have received 18% ($72,000) of Mr. Diaz' reduced purse from the February 13, 2021 bout.  MTK, MTK USA, and Mr. Diaz' counsel advised Mr. Diaz to instruct GBP not to release those funds that Mr. Diaz lawfully owed Mr. Heredia under the 2017 Contract and in accord with the Promotion Term Sheet between GBP, Diaz and Heredia.  Mr. Diaz still has not paid Mr. Heredia that required sum, and Mr. Heredia has had to file a California state court action to enforce this portion of the arbitration award.

115.   While the 2017 Contract was still valid and in full force and effect between Mr. Heredia and Mr. Diaz, GBP negotiated another bout for Mr. Diaz, this one on July 9, 2021. With GBP freezing out Mr. Heredia from communicating with his fighter, Mr. Diaz, Heredia was also not involved in scheduling this fight and did not provide his required written permission for the bout. Mr. Diaz' purse for the July 9, 2021 fight was $500,000.  Per the 2017 Contract, Mr. Heredia was entitled to 18% ($90,000) of Mr. Diaz' purse from the fight.  As a result of the Defendants' interference Mr. Diaz instructed GBP not to pay Mr. Heredia his lawfully-owed management fees under the 2017 Contract.  Mr. Diaz did not pay Mr. Diaz that sum until 10 days after ordered to in the arbitration award.  Mr. Heredia was left with no choice but to file a California state court enforcement action against Mr. Diaz to collect this sum, which is lawfully Mr. Heredia's under the 2017 Contract and the Arbitration award.

116.   The Defendants have engaged in a years-long campaign to ruin Mr. Heredia's reputation in the community through lies, surrogates, and blatantly false allegations, and frivolous/ legally unsupportable complaints.

117.   The damages have been significant.  Mr. Heredia was in negotiations with at least ten potential international Olympians, world champions, and amateur boxers that were free agents with no contract with any manager in an attempt to build on their unprecedented success of having two world champions, including one homegrown over several years – something that is considered a unicorn in the world of boxing.

118.   These actions were strategically undertaken to have a devasting impact upon Mr. Heredia particularly in light of the Summer Olympics of 2021, which is prime recruitment period for boxing managers to attract new talent to their stables.  The defamatory nature and aggressive strategy funded by defendants to preserve their position and take out the one manager whose success was a threat to them has cost Mr. Heredia millions in fighter recruitment.

119.   GBP has disregarded its contractual obligations with respect to the 2017 promotional agreement with respect to Plaintiff.§ 1962(b) must stem from the acquisition of an

120.   MTK, MTK USA, their agents, and GBP openly and notoriously interfered with the boxing management contract between Mr. Diaz and Mr. Heredia. Further, MTK, MTK USA, and GBP caused Mr. Diaz to breach the 2017 Contract with Mr. Heredia on at least two separate occasions.

96.   MTK personnel signed the MTK USA "business advisory agreement." This suggests that it is a legal fiction that MTK and MTK USA had a distinct corporate existence.  That there is such a unity of interest on or control over an enterprise; injury under § 1962(c) must stem from the predicateand ownership between MTK and MTK USA further suggests that the separate personalities of the corporations no longer exist and that, if the acts; and injury under § 1962(d) generally stems from the overt acts committed in furtherance of the conspiracy. Plaintiff has standing under all four sections of RICO as they are

1    ~~considered a "person" who has sustained an injury to his business by reason of the~~

2    ~~injuries described below.~~

3     of MTK USA are treated as those of it alone, an inequitable result would follow in

4    that MTK would be able to unfairly shield itself from liability for its misdeeds in

5    this case.   **CAUSES OF ACTION**

6                                       **FIRST CAUSE OF ACTION**

7    **RICO § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income**

8                    (Against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson)

9    ~~97.~~121.       Plaintiff incorporates by reference and realleges each and every

10   allegation contained in the paragraphs above as though fully set forth herein.

11   ~~98.~~0.   MTK is an enterprise engaged in and whose activities affect interstate

12   commerce. MTK is an international boxing management and promotion company

13   and engages in marketing boxing and other fighting sport events through television

14   and the internet. MTK is operating in several markets to include this judicial

15   district. MTK is associated with Mr. Kinahan and Mr. Gibson is MTK's chief

16   strategy officer. More information concerning the nature of Mr. Kinahan's

17   involvement in MTK will be known after a reasonable opportunity for further

18   investigation or discovery.

19   ~~99.~~0.   MTK derived income, directly or indirectly, from a pattern of

20   racketeering activity. Namely, through MTK's association with Mr. Kinahan and

21   the KOCG, MTK has accepted income from ~~drug trafficking~~criminal activity  and

22   money laundering. Any investment by or through Mr. Kinahan necessarily is

23   income derived, directly or indirectly, from ~~drug trafficking~~criminal activity  and

24   money laundering. More information concerning the nature of Mr. Kinahan's

25   involvement in MTK and money laundering will be known after a reasonable

26   opportunity for further investigation or discovery. Upon information and belief,

27   these acts have occurred more than once, are related to one another, and are

28

continuous under both the closed-end continuity theory and the open-ended

continuity theory as the relationship between MTK and the KOCG has been

established over time and is likely to be repeated into the future.

100.0. MTK used and invested income that was derived from a pattern of

racketeering activity in an interstate enterprise. Specifically, MTK was co-founded

my Mr. Daniel Kinahan who is the reported leader of the KOCG in Ireland. The

KOCG is known by several governments, including the United States Government

of engaging in narco-terrorism, drug traffickingcriminal activity , and money

laundering. MTK states that it has severed ties with Mr. Kinahan. However, while

official ties on paper may have been severed, Mr. Kinahan is still influencing and

controlling MTK. As recently as November 16, 2020 it is reported that MTK is

still associated with Mr. Daniel Kinahan. MTK received income from Mr. Daniel

Kinahan and the KOCG that was derived from a pattern of racketeering activity in

an interstate enterprise. More information concerning the nature of Mr. Kinahan's

involvement in MTK and money laundering will be known after a reasonable

opportunity for further investigation or discovery. MTK then used this income

derived from a pattern of racketeering activity to acquire an interest in Mr. Joseph

"JoJo" Diaz, Jr, an individual. Enterprises may consist of individuals.

101.0. The racketeering activity listed above constitutes a pattern of

racketeering activity pursuant to 18 U.S.C. § 1961(5).

102.0. MTK participated as a principle in the pattern of racketeering activity.

With knowledge of the KOCG and Mr. Kinahan's drug traffickingcriminal activity

and money laundering, MTK conspired with or aided and abetted the KOCG and

Mr. Kinahan to allow MTK to be used a front for money laundering. More

information concerning the nature of Mr. Kinahan's involvement in MTK and

money laundering will be known after a reasonable opportunity for further

investigation or discovery. MTK received income from the predicate acts, directly

or indirectly, and then invested that income in the acquisition of an interest in Mr. Joseph Diaz, Jr, an enterprise, which is engaged in interstate and international commerce.

103.0. As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiff and Mr. Diaz and has caused Mr. Diaz to stop communicating with Plaintiff resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promoters.

104.0. WHEREFORE, Plaintiff requests that this Court enter judgment against the MTK, MTK USA, Mr. Kinahan, and Mr. Gibson as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## SECOND CAUSE OF ACTION

## RICO § 1962(b) – Acquiring or Maintaining an Interest in or Control of an Enterprise

(Against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson)

105.0. Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

106.0. MTK is an enterprise engaged in and whose activities affect interstate commerce.

0.    MTK acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifically, on or about, August 12, 2020, MTK provided Mr. Joseph Diaz, Jr. with an advance of $100,000 in exchange signing for a purported business advisory agreement in violation of the current boxer-manager contract signed between Mr. Diaz and Plaintiff.

1.    Mr. Diaz is an individual and individuals are considered "enterprises."

107.2. The advance MTK provided Mr. Diaz was derived, directly or indirectly from the predicate acts of drug traffickingcriminal activity  and money laundering as described above. MTK is associated with and conspires with Mr. Kinahan and the KOCG which is one of Europe's largest drug trafficking criminal cartels. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery. MTK continues to maintain this interest in Mr. Diaz and recently tweeted about a February 13, 2021 mandatory title bout between Mr. Diaz and Mr. Shavkatdzhon Rakhimov. This bout was scheduled without input from or communication with Plaintiff. Further, MTK holds out on its website that Mr. Diaz is one of "their" boxers.

108.0. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

109.0. MTK has directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

110.0. As direct and proximate result of the MTK's racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The income MTK is investing into Mr. Diaz is directly causing harm to the business relationship between Plaintiff and Mr. Diaz and has

caused Mr. Diaz to stop communicating with Plaintiff resulting in several previously contracted for services in the management of Mr. Diaz to spoil. Further, the interference has caused harm to Plaintiff's business reputation and goodwill and interference with prospective commercial relations. Mexican American boxers also have the highest draw in the boxing sport. Loss of world champion affects their standing in the boxing management community and amongst boxing promoters.

111.0. WHEREFORE, Plaintiff requests that this Court enter judgment against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson as follows: actual damages, treble damages, reasonable attorney's fees, and the costs of bringing the suit.

## THIRD CAUSE OF ACTION
## RICO § 1962(c) – Conduct the Affairs of the Enterprise
(Against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson)

112.0. Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

113.0. MTK is an enterprise engaged in and whose activities affect interstate commerce.

114.0. The Kinahan Organized Crime Group (KOCG) is an association-in-fact. *See Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). The KOCG is an enterprise engaged in and whose activities affect interstate commerce.

115.0. The purported leader of the KOCG, Mr. Daniel Kinahan, co-founded MTK as a front business to launder illicit proceeds from drug trafficking.criminal activity . MTK and the KOCG have also formed an association-in-fact to further this scheme. The more boxers under MTK allows the KOCG to launder more money from drug trafficking.criminal activity . More information concerning the

nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

116.0. MTK is associated with or employed by the MTK/KOCG association-in-fact enterprise. MTK is associated with the KOCG as described above due to its relationship with Mr. Daniel Kinahan. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

117.0. MTK agreed to and did conduct and participate in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally and tortuously interfering with Plaintiff's boxer-manager contract. Specifically, MTK through its association with the KOCG has been using income derived, directly or indirectly, from KOCGs racketeering activities which include drug traffickingcriminal activity and money laundering. MTK used this income derived from the KOCG to provide Mr. Diaz an advance of $100,000 on his next bout. MTK did so to invest in or acquire an interest in Mr. Diaz as a professional boxer as described above. MTK also benefits from these transactions as MTK receives additional money. Stated another way, MTK is allowed to re-invest the profits of the MTK/KOCG association-in-fact enterprise to continue to grow and expand. In doing so, MTK is becoming a large player in the boxing industry and destroying smaller family run operations like Plaintiff's.

118.0. MTK knows that the KOCG is involved in drug traffickingcriminal activity and money laundering.

119.0. Pursuant to and in furtherance of their scheme, the MTK/KOCG association-in-fact committed multiple related acts of drug traffickingcriminal activity and money laundering. More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a

reasonable opportunity for further investigation or discovery.

120.0. The acts of ~~drug trafficking~~ criminal activity and money laundering set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

121.0. MTK has directly and indirectly conducted and participated in the conduct of the MTK/KOCG association-in-fact enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

> "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required."

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *See also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 (11th Cir. 2006) ("… a RICO defendant must 'conduct' or 'participate in' the affairs of some larger enterprise and not just its own affairs."). More information concerning the nature of Mr. Kinahan's involvement in MTK and money laundering will be known after a reasonable opportunity for further investigation or discovery.

122.0. As a direct and proximate result of the MTK, Mr. Kinahan, and Mr. Gibson's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in their business and property in that: Plaintiff has an exclusive management boxer-manager contract with Mr. Diaz. The conduct of the MTK/KOCG association-in-fact enterprise directly interferes with this contractual

relationship. This interference has caused harm to the business relationship
between Plaintiff and Mr. Diaz, interfered with other boxing contracts, and has
caused Mr. Diaz to stop communicating with Plaintiff resulting in several
previously contracted for services in the management of Mr. Diaz to spoil. Further,
the interference has caused harm to Plaintiff's business reputation and goodwill
and interference with prospective commercial relations. Boxers of Mexican
ethnicity are currently the highest draw in the profession of boxing and a loss of a
world champion Mexican boxer has wide ranging adverse impacts on the recruiting
and retention efforts of Mr. Heredia and his ability to negotiate with promotional
companies which is further demonstrated by GBP's willingness to ignore its
contractual standing despite several years of a professional relationship.

~~123.~~0. WHEREFORE, Plaintiff requests that this Court enter judgment
against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson as follows: actual
damages, treble damages, reasonable attorney's fees, and the costs of bringing the
suit.

## FOURTH CAUSE OF ACTION

### RICO § 1962(d) – Conspiracy to Conduct the Affairs of the Enterprise

(Against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson)

~~124.~~0. Plaintiff incorporates by reference and realleges each and every
allegation contained in the paragraphs above as though fully set forth herein.

~~125.~~0. As set forth above, the MTK agreed and conspired to violate 18
U.S.C. § 1962(a) (b) and (c). Specifically MTK conspired with the KOCG
association-in-fact enterprise to: (1) use or invest income that is derived from a
pattern of racketeering activity in an interstate enterprise (§ 1962(a)); (2) acquire or
maintain interests in the Mr. Diaz as a professional boxer through a pattern of
racketeering activity (§ 1962(b)); and (3) conduct and participate in the conduct of
the affairs of the MTK/KOCG association-in-fact enterprise through a pattern of

racketeering activity (§ 1962(c)). More information concerning the nature of Mr.
Kinahan's involvement in MTK and money laundering will be known after a
reasonable opportunity for further investigation or discovery.

0.    MTK has intentionally conspired and agreed to directly and indirectly
use or invest income that is derived from a pattern of racketeering activity in an
interstate enterprise, acquire or maintain interests in the enterprise through a
pattern of racketeering activity, and conduct and participate in the conduct of the
affairs of the MTK/KOCG association-in-fact enterprise through a pattern of
racketeering activity.

126.1.MTK knew that theirits predicate acts were part of a pattern of
racketeering activity and agreed to the commission of those acts to further the
schemes described above. That conduct constitutes a conspiracy to violate 18
U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d). More
information concerning the nature of Mr. Kinahan's involvement in MTK and
money laundering will be known after a reasonable opportunity for further
investigation or discovery.

127.0.As direct and proximate result of the MTK's conspiracy, the overt acts
taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d),
Plaintiff has been injured in their business and property in that: Plaintiff has an
exclusive management boxer-manager contract with Mr. Diaz. The conduct of the
MTK/KOCG association-in-fact enterprise directly interferes with this contractual
relationship. The income MTK is investing into Mr. Diaz is directly causing harm
to the business relationship between Plaintiff and Mr. Diaz and has caused Mr.
Diaz to stop communicating with Plaintiff resulting in several previously
contracted for services in the management of Mr. Diaz to spoil. Further, the
interference has caused harm to Plaintiff's business reputation and goodwill and
interference with prospective commercial relations. Mexican American boxers also

1   have the highest draw in the boxing sport. Loss of world champion affects their

2   standing in the boxing management community and amongst boxing promoters.

3          0.     The income MTK is investing into Mr. Diaz is directly causing harm

4   to the business relationship between Plaintiff and Mr. Diaz and has caused Mr.

5   Diaz to stop communicating with Plaintiff resulting in several previously

6   contracted for services in the management of Mr. Diaz to spoil. Further, the

7   interference has caused harm to Plaintiff's business reputation and goodwill and

8   interference with prospective commercial relations. Mexican American boxers also

9   have the highest draw in the boxing sport. Loss of world champion affects their

10  standing in the boxing management community and amongst boxing promoters.

11         128.1. WHEREFORE, Plaintiff requests that this Court enter judgment

12  against MTK, MTK USA, Mr. Kinahan, and Mr. Gibson as follows: actual

13  damages, treble damages, reasonable attorney's fees, and the costs of bringing the

14  suit.

## FIFTH CAUSE OF ACTION

### Tortious Interference with Contract – Boxer Manager Contract

(Against MTK, MTK USA, Mr. Gibson, and GBP)

18         129.157.     Plaintiff incorporates by reference and realleges each and every

19  allegation contained in the paragraphs above as though fully set forth herein.

20         130.158.     At all relevant times, an exclusive boxer managerthere was a

21  Boxer-Manager contract existed(2017 Contract) between Mr. Heredia and a third

22  party, Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before

23  the California State Athletic Commission and would have lasted five years, but on

24  July 10, 2021 was canceled by the Executive Director of the Commission.  During

25  all relevant times this contract was valid and enforceable.

26         159.   Each defendant knew of the 2017 Contract between Mr. Heredia and

27  Mr. Diaz and that it required Mr. Heredia to be paid 18% of Mr. Diaz' bout income

as a management fee.

160.   As a result of the Defendants' interference Mr. Diaz instructed GBP not to pay Mr. Heredia his lawfully-owed management fees on two separate occasions: once in connection with a February 13, 2021 bout, and once in connection with a July 9, 2021 bout.

161.   MTK, MTK USA, Mr. Gibson, and GBP performed intentional acts designed to induce a breach or disruption of the contractual relationship between Mr. Heredia and Mr. Diaz by instructing Mr. Diaz to order GBP to withhold from Mr. Heredia his contractually-required 18% management fee from the February 13, 2021 bout – which Mr. Diaz still has not paid – and from the July 9, 2021 bout, which Mr. Heredia was not paid until 10 days after the arbitration award ordered it.

162.   MTK, MTK USA, Mr. Gibson, and GBP did, in fact, breach or disrupt the contractual relationship between Mr. Heredia and Mr. Diaz by withholding from Mr. Heredia his contractually-required 18% management fee from the February 13, 2021 bout – which Mr. Diaz still has not paid –  and from the July 9, 2021 bout, which Mr. Heredia was not paid until 10 days after the arbitration award ordered it.

163.   But for MTK, MTK USA, Mr. Gibson, and GBP's actions in interfering, the payment of Mr. Heredia's bout fees, owed to him under the 2017 Contract, would have been timely performed.

164.   MTK, MTK USA, Mr. Gibson, and GBP's actions caused Mr. Heredia damages, by their instructing Mr. Diaz to order GBP to withhold from Mr. Heredia monies contractually-owed to him by Mr. Diaz, thus causing Mr. Heredia to lose the use of the funds that he was lawfully owed during the time that they were unlawfully withheld from him, for the July 9, 2021 bout, and to this day, for the February 13, 2021 bout.

131.   Further, MTK, MTK USA, Mr. Gibson, and GBP's actions have

harmed Mr. Heredia in other ways. MTK, MTK USA, and Mr. Gibson's conduct prevented performance or made the performance of this contract more expensive or difficult. Mr. Diaz did not to communicate with Mr. Heredia but instead enlisted MTK, MTK USA, and Mr. Gibson to arrange a mandatory title bout with GBP. This bout occurred on February 13, 2021. MTK, MTK USA, and Mr. Gibson are "strangers" to this contract and are liable in tort for their intentional interference. MTK, MTK USA, and Mr. Gibson's conduct includes directing a social media campaign where Mr. Diaz proclaims he is no longer with Mr. Heredia due to him being "toxic" and that he was "f***ing with" his money, arranging a title bout on February 13, 2021 intentionally excluding Mr. Heredia, and arranging another bout on July 9, 2021 intentionally excluding Mr. Heredia. Through this interference, Mr. Diaz did not make weight for the February 13, 2021 bout causing the purse of the bout to be fined by the Commission. This cost Mr. Diaz $100,000 and thereby reduced Plaintiff's management fee from $90,000 to $72,000. Further, because of this interference, Mr. Diaz was advised not to pay Mr. Heredia any of the 18% management fee. Mr. Diaz then lost his World Champion status that has the effect of reducing his prospects for future bouts. MTK, MTK USA, and Mr. Gibson also did not argue for the 70% net proceeds clause for PPV rights as listed in the promotion agreement with Golden Boy if Diaz is the "A" side of a main event bout on PPV. DAZN is a network and is a PPV venue. This could have resulted in a higher purse for Mr. Diaz and additional management fees for Plaintiff.

132.   As this interference is continuing, MTK, MTK USA, and Mr. Gibson have intentionally excluded Plaintiff from the negotiations concerning the July 9, 2021 bout against Mr. Javier Fortuna.

133.   Additionally, these actions have caused Mr. Heredia to incur additional time and expenses to include hiring counsel to assert his rights. Due to the interference, Mr. Heredia cannot simply contact Mr. Diaz to arrange the next

1   bout under the terms of the agreement as he did before the interference. Mr.

2   Heredia cannot negotiate bouts or purse amounts for Mr. Diaz. These actions have

3   made it nearly impossible for Mr. Heredia to fulfill their obligations under the

4   contract between Mr. Diaz and Plaintiff.

5       134.   GBP's conduct prevented performance or made the performance of

6   this contract more expensive or difficult. GBP negotiated directly with MTK, MTK

7   USA, and Mr. Gibson instead of discussing this bout with Plaintiff. Prior to the

8   bout on February 12, 2021, Mr. Diaz failed to make weight. This required

9   communications between the Commission, Mr. Rakhimov's management team and

10   promotion companies. GBP allowed MTK, MTK USA, and Mr. Gibson to handle

11   these discussions and intentionally excluded Mr. Heredia, the exclusive manager

12   for Mr. Diaz.

13       135.   MTK, MTK USA, and Mr. Gibson intended to disrupt the

14   performance of this contract and/or knew that disruption of performance as certain

15   or substantially certain to occur. Mr. Diaz no longer communicates with Mr.

16   Heredia concerning his boxing career. MTK and MTK USA claim to be a

17   "business" or "marketing advisor" for Mr. Diaz, however, MTK and MTK USA do

18   not communicate with Mr. Heredia in anyway. MTK, MTK USA, and Mr. Gibson

19   additionally are performing management roles under California and Federal law.

20   MTK and MTK USA's involvement lead Mr. Diaz to direct GBP not to pay Mr.

21   Heredia the contractual amount owed under the Boxer-Manager Contract for the

22   February 13, 2021 bout. MTK and MTK USA want this disruption to occur as their

23   goal is to have Mr. Diaz become one of their boxers. In order to do so, they must

24   destroy, through whatever means they have available, the valid and existing

25   contract between Mr. Heredia and Mr. Diaz.

26       136.165.   The Plaintiff has been harmed by the actions of MTK, MTK

27   USA, Mr. For example, Mr. Heredia lost oversight of Mr. Diaz, the boxer he

28

managed. Mr. Heredia~~Gibson, and GBP. Plaintiff does not have oversight of the boxer he manages. Plaintiff~~ is being smeared on social media and have lost business goodwill as others see their rights and contracts being trampled upon by MTK, MTK USA, Mr. Gibson, and GBP. Further, ~~Plaintiff's~~Mr. Heredia's relationship with other currently signed boxers has been hampered. ~~Plaintiff's~~Mr. Heredia's business relationship with GBP has also been negatively affected.

166.   Moreover, MTK, MTK USA, Mr. Gibson, and GBP's actions ensured the deterioration of this longstanding remarkably successful personal and professional relationship between Mr. Heredia and Mr. Diaz, which triggered the need for arbitration, which then resulted in a reduced fight percentage allocation by the California Commission, who had to balance the fighter's future income against the enforceable contractual rights that existed as reflected in the arbitration award. These additional damages are directly tied to the irreparable harm to this relationship, as confirmed by the Arbitration, that was committed by this group of corporate raiders who were acting without any contractual or lawful authority to conduct business within any jurisdiction and in particular the State of California.

~~137.~~167.    MTK, MTK USA, and their agents to include Mr. Gibson and VGC, and GBP's conduct were the substantial factors in causing Plaintiff's harm. But for the interference of MTK, MTK USA, Mr. Gibson and GBP, Plaintiff's contract with Mr. Diaz would not have been interfered with and harm would not have been caused. The conduct of MTK, MTK USA, Mr. Gibson, and GBP is the substantial factor in causing Plaintiff's harm.

168.   WHEREFORE, Plaintiff requests that this Court enter judgment against these defendants as follows: actual damages, reasonable attorney's fees, and the costs of bringing the suit, all in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Tortious Interference with Contract – Promoter-Manager Contract

(Against MTK and MTK USA)

~~138.~~169.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

170.   At all relevant times, there was a boxing promotion contract between Defendant GBP, and Mr. Joseph Diaz, Jr. Plaintiff also signed this agreement as a representative of Mr. Diaz and is a third-party beneficiary. This contract was signed on March 22, 2017 and lasts for five years.

171.   This contract is valid and enforceable.

172.   MTK and MTK USA's conduct and GBP's collusion prevented performance or made the performance of this contract more expensive or difficult. Mr. Diaz does not to communicate with Mr. Heredia as MTK and MTK USA arranged a mandatory title bout with GBP on February 13, 2021 and another bout on July 9, 2021. MTK and MTK USA are "strangers" to this contract and are liable in tort for their intentional interference. MTK and MTK USA's conduct includes directing GBP not to communicate with Mr. Heredia, Mr. Diaz's boxing manager.

~~139.~~173.   These actions have caused Mr. Heredia additional time and expenses to include hiring counsel to assert ~~their~~his rights. Mr. Heredia cannot fulfill his role as Mr. Diaz's boxing representative and negotiate bouts on Mr. Diaz's behalf.

174.   MTK and MTK USA intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur.

175.   Mr. Joseph Diaz no longer communicates with Mr. Heredia concerning his boxing career.

176.   MTK claims to be a "business" or "marketing advisor" for Mr. Diaz, however, MTK and MTK USA do not communicate with Mr. Heredia. Instead, MTK and MTK USA are performing management roles for Mr. Diaz and

attempting to step into the shoes of Mr. Heredia as the boxer's representative under the promotion agreement. Plaintiff notes that

177.   MTK is not licensed or qualified as a boxing manager as required by California law. MTK and MTK USA's coordinated efforts lead

140.178.   As a result of the Defendants' interference Mr. Diaz to directinstructed GBP not to pay Mr. Heredia the contractual amount his lawfully-owed management fees under the Boxer-Manager Contract for the February 13, 2021 bout. MTK, MTK USA, and their agents want this disruption to occur as their goal is to have Mr. Diaz become one of their boxers. In order to do so, they must destroy, through whatever means they have available, the valid and existing contract between Mr. Diaz, GBP and Mr. Heredia.

141.179.   Mr. Heredia has been harmed by the actions of MTK and MTK USA. Mr. Heredia does not have oversight of the boxer they arehe is managing. MTK and MTK USA have inserted themselves as the boxer's representative and have displaced Mr. Heredia. Further, Mr. Heredia's relationship with other currently signed boxers has been hampered. Plaintiff's business relationship with GBP has also been negatively affected.

142.180.   MTK and MTK USA's conduct are the substantial factors in causing Plaintiff's harm. But for the interference of MTK and MTK USA, Plaintiff's role as Mr. Diaz's representative under the promotion contract would not have been interfered with and harm would not have been caused.

### SEVENTH CAUSE OF ACTION

### Inducing Breach of Contract – Boxer-Manager Contract

(Against MTK, MTK USA, and GBP)

143.181.   Plaintiff incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

144.182.   Defendants MTK and MTK USA intentionally caused Mr.

1    Joseph Diaz, Jr. to breach his Boxer-Manager Contract with Mr. Heredia.

2         145.183.     At all relevant times, there was a Boxer-Manager Contract

3    (2017 Contract) between Mr. Heredia and a third party, Mr. Joseph Diaz, Jr. This

4    contract was signed on February 23, 2017 before the California State Athletic

5    Commission and would have lasted five years, but on July 10, 2021 was canceled

6    by the Executive Director of the Commission.  During all relevant times this

7    contract was valid and enforceable.  and lasts for five years. This contract is valid

8    and enforceable.

9         146.   MTK, MTK USA, and GBP knew that this contract existed.

10        147.184.     MTK, and MTK USA intended to cause Mr. Joseph Diaz, Jr. to

11   breach the Boxer-Manager Contract by providing him a $100,000 advance and a

12   purported business advisory agreement, which is, in essence and in practice, a

13   management contract. Separately, GBP intended to cause Mr. Diaz to breach the

14   Boxer-Manager Contract by negotiating with MTK and MTK USA instead of Mr.

15   Heredia for upcoming bouts. MTK and MTK USA's actions are purposefully

16   designed to have Mr. Diaz break his contract with Mr. Heredia. The intent of MTK

17   and MTK USA is clear: they want to sign Mr. Diaz as a client and in order to do so

18   must get him out of his current enforceable contracts. MTK and MTK USA are

19   involved only to breach the contract between Mr. Heredia and Mr. Diaz. In any

20   case, MTK and MTK USA certainly knew that the interference and inducement of

21   Mr. Diaz would result in a breach of contract. Separately, GBP continues to work

22   with MTK and MTK USA and provides all the incentive to MTK, MTK USA, and

23   Mr. Diaz to continue to breach the Boxer-Manager Contractthat it required Mr.

24   Heredia to be paid 18% of Mr. Diaz' bout income as a management fee.

25        174.   MTK, MTK USA, and GBP's conduct caused Mr. Joseph Diaz, Jr. to

26   breach the Boxer-Manager Contract. With MTK and MTK USA's encouragement

27   Mr. Joseph Diaz no longer communicates with Mr. Heredia concerning his boxing

28

1  career. MTK and MTK USA claim to be a "marketing advisor" for Mr. Diaz,

2  however, MTK and MTK USA does not communicate with Mr. As a result of the

3  Defendants' interference Mr. Diaz instructed GBP not to pay Mr. Heredia his

4  lawfully-owed management fees on two separate occasions: once in connection

5  with a February 13, 2021 bout, and once in connection with a July 9, 2021 bout.

6      186.   MTK, MTK USA, Mr. Gibson, and GBP performed intentional acts

7  designed to induce a breach or disruption of the contractual relationship between

8  Mr. Heredia and Mr. Diaz by instructing Mr. Diaz to order GBP to withhold from

9  Mr. Heredia his contractually-required 18% management fee from the February 13,

10  2021 bout – which Mr. Diaz still has not paid –  and from the July 9, 2021 bout,

11  which Mr. Heredia was not paid until 10 days after the arbitration award ordered

12  it..

13      187.   MTK, MTK USA, Mr. Gibson, and GBP did, in fact, breach or disrupt

14  the contractual relationship between Mr. Heredia and Mr. Diaz by withholding

15  from Mr. Heredia his contractually-required 18% management fee from the

16  February 13, 2021 bout – which Mr. Diaz still has not paid –  and from the July 9,

17  2021 bout, which Mr. Heredia was not paid until 10 days after the arbitration

18  award ordered it.

19      188.   But for MTK, MTK USA, Mr. Gibson, and GBP's actions in

20  interfering, the payment of Mr. Heredia's bout fees, owed to him under the 2017

21  Contract, would have been timely performed.

22      189.   MTK, MTK USA, Mr. Gibson, and GBP's actions caused Mr.

23  Heredia damages, by their instructing Mr. Diaz to order GBP to withhold from Mr.

24  Heredia monies contractually-owed to him by Mr. Diaz, thus causing Mr. Heredia

25  to lose the use of the funds that he was lawfully owed during the time that they

26  were unlawfully withheld from him, for the July 9, 2021 bout, and to this day, for

27  the February 13, 2021 bout.

28

1    148.  Further, MTK, MTK USA, Mr. Gibson, and GBP's actions have

2    harmed Mr. Heredia in anyway. MTK and MTK USA do communicate with other

3    boxing managers in similar arrangements. MTK and MTK USA's direction to Mr.

4    Diaz has caused there to be no communication with Mr. Heredia to include

5    communications concerning the bout that occurred on July 9, 2021.

6        190.  Mr. Heredia has been harmed by the actions of MTK, MTK USA, and

7    GBP. Mr. Heredia does not have ways.  For example, Mr. Heredia lost oversight of

8    Mr. Diaz, the boxer he manages and has not been paid the management fees per the

9    contract. Mr. managed. Mr. Heredia is being smeared on social media and hashave

10   lost business goodwill as others see their rights and contracts being trampled upon

11   by MTK and, MTK USA, Mr. Gibson, and GBP. .

12       149.191.    Further, Mr. Heredia's relationship with other currently signed

13   boxers has been hampered. Mr. Heredia's business relationship with GBP has also

14   been negatively affected by design.  MTK, MTK USA, and their agents to include

15   Mr. Gibson and VGC, and GBP's conduct were the substantial factors in causing

16   Plaintiff's harm. But for the interference of MTK, MTK USA, Mr. Gibson and

17   GBP, Plaintiff's contract with Mr. Diaz would not have been interfered with and

18   harm would not have been caused. The conduct of MTK, MTK USA, Mr. Gibson,

19   and GBP is the substantial factor in causing Plaintiff's harm

20       185.  But for the inducement of Mr. Diaz by MTK and MTK USA, Mr.

21   Diaz would not have breached his contract. If GBP did not condone this

22   inducement, Mr. Diaz would not have been induced to breach. The conduct of

23   MTK, MTK Global, and GBP are the substantial factors in causing Plaintiff's

24   harm. A person is not justified in inducing a breach of contract simply because

25   they are in competition with one of the parties to the contract and seeks to further

26   their own economic advantage at the expense of another.

27       193.  WHEREFORE, Plaintiff requests that this Court enter judgment

28

1  against these defendants as follows: actual damages, reasonable attorney's fees,
2  and the costs of bringing the suit, all in an amount to be determined at trial.

3  ## EIGHTH CAUSE OF ACTION

4  ### Intentional Interference with Prospective Economic Relations

5  (Against MTK, MTK USA, and GBP)

6  ~~151.~~194.     Plaintiff incorporates by reference and realleges each and every
7  allegation contained in the paragraphs above as though fully set forth herein.

8  ~~152.~~195.     Defendants MTK, MTK USA, and GBP intentionally interfered
9  with an economic relationship between Mr. Heredia and Mr. Joseph Diaz, Jr. that
10  probably would have resulted in an economic benefit to Mr. Heredia. Namely, Mr.
11  Heredia had a contract with Mr. Diaz for boxing management and due to the
12  interference Defendants MTK, MTK USA, and GBP have impacted the future
13  relationship between Mr. Diaz and Mr. ~~Heredia~~Heredia and Mr. Heredia's ability
14  to attract other promising boxers to his stable.

15  ~~153.   MTK and MTK USA knew of the relationship between Mr. Heredia~~
16  ~~and Mr. Diaz and yet offered Mr. Diaz a $100,000 advance in order to cause him to~~
17  ~~breach his contract with Mr. Heredia. Separately, GBP knew of the existing~~
18  ~~relationship as evidenced by the near decade long business relationship GBP has~~
19  ~~with Mr. Heredia. This also has affected the prospective relationship between Mr.~~
20  ~~Diaz and Mr. Heredia. MTK and MTK USA did these acts without the knowledge~~
21  ~~or consent of Mr. Heredia and did so with the intent of taking over as Mr. Diaz's~~
22  ~~manager. At all relevant times, Mr. Diaz was still under contract with Mr. Heredia.~~

23  ~~154.   MTK, MTK USA, and GBP engaged in specific conduct aimed at~~
24  ~~interfering with Mr. Heredia's business relationship with Mr. Diaz. MTK and~~
25  ~~MTK USA encouraged Mr. Diaz not to communicate Mr. Heredia, unlawfully~~
26  ~~inserted themselves as the managers for Mr. Diaz, and engaged in a social media~~
27  ~~smear campaign of Mr. Heredia. GBP has colluded with MTK and MTK USA and~~

28

negotiated bouts directly with MTK and MTK USA instead of Mr. Diaz's boxing manager   Mr. Heredia.

155.   By engaging in this conduct, MTK, MTK USA, and GBP intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

156.   The relationship has been disrupted and Mr. Diaz no longer communicates with or desires to be managed by Mr. Heredia.

157.   Mr. Heredia has been harmed by this interference.

158.   MTK, MTK USA, and GBP's conduct were the substantial factor in causing Mr. Heredia's harm. After Mr. Diaz became a world champion, MTK and MTK USA reached out to Mr. Diaz and offered him an advance of $100,000 in exchange for Mr. Diaz signing a purported business advisory agreement. This act caused the deterioration of the relationship between Mr. Diaz and Mr. Heredia and effected and continues to affect the prospective relationship between the parties. GBP continues to negotiate with MTK and MTK USA as evidenced by the July 9, 2021 bout.

196.   At all relevant times, there was a Boxer-Manager Contract (2017 Contract) between Mr. Heredia and a third party, Mr. Joseph Diaz, Jr. This contract was signed on February 23, 2017 before the California State Athletic Commission and would have lasted five years, but on July 10, 2021 was canceled by the Executive Director of the Commission.  During all relevant times this contract was valid and enforceable.

197.   MTK, MTK USA, and GBP knew that this contract existed, and that it required Mr. Heredia to be paid 18% of Mr. Diaz' bout income as a management fee. As a result of the Defendants' interference Mr. Diaz instructed GBP not to pay Mr. Heredia his lawfully-owed management fees on two separate occasions: once in connection with a February 13, 2021 bout, and once in connection with a July 9,

SECOND AMENDED
-63-
THIRD AMENDED COMPLAINT   63

1   2021 bout.

2   198.   MTK, MTK USA, and GBP performed intentional acts designed to

3   induce a breach or disruption of the contractual relationship between Mr. Heredia

4   and Mr. Diaz by their instructing Mr. Diaz to order GBP to withhold from Mr.

5   Heredia his contractually-required 18% management fee from the February 13,

6   2021 bout  and from the July 9, 2021 bout, which Mr. Heredia was not paid until

7   10 days after the arbitration award ordered it.

8   199.   MTK, MTK USA, and GBP did, in fact, breach or disrupt the

9   contractual relationship between Mr. Heredia and Mr. Diaz by withholding from

10  Mr. Heredia his contractually-required 18% management fee from the February 13,

11  2021 bout – which Mr. Diaz still has not paid – and from the July 9, 2021 bout,

12  which Mr. Heredia was not paid until 10 days after the arbitration award ordered it.

13  MTK, MTK USA, and GBP's actions in breaching or disrupting the contractual

14  relationship between Mr. Heredia and Mr. Diaz not only interfered with Mr.

15  Heredia's expectancy, but the defendants engaged in conduct that was wrongful by

16  some legal measure other than the fact of interference itself, for example, by

17  instructing Mr. Diaz to order GBP to withhold funds lawfully earned by, and owed

18  to, Mr. Heredia, this causing Mr. Heredia financial and reputational harm.

19  200.   But for MTK, MTK USA, and GBP's actions in interfering, the

20  payment of Mr. Heredia's bout fees, owed to him under the 2017 Contract, would

21  have been timely performed and Mr. Heredia would have been better able to attract

22  other boxers to his management stable, which would have earned him additional

23  management fees.

24  201.   MTK, MTK USA, Mr. Gibson, and GBP's actions caused Mr.

25  Heredia damages, by instructing Mr. Diaz to order GBP to withhold from Mr.

26  Heredia monies contractually-owed to him by Mr. Diaz, thus causing Mr. Heredia

27  to lose the use of the funds that he was lawfully owed during the time that they

28

1  were unlawfully withheld from him, for the July 9, 2021 bout, and to this day, for

2  the February 13, 2021 bout.

3      202.   Further, MTK, MTK USA, Mr. Gibson, and GBP's actions have

4  harmed Mr. Heredia in other ways.  For example, Mr. Heredia lost oversight of Mr.

5  Diaz, the boxer he managed. Mr. Heredia is being smeared on social media and has

6  lost business goodwill as others see their rights and contracts being trampled upon

7  by MTK, MTK USA, and GBP.

8      203.   Further, Mr. Heredia's relationship with other currently signed boxers

9  has been hampered.  Even more, Mr. Heredia's ability to attract new promising

10  boxers to his stable has been hampered by this interference, thus potentially costing

11  him management fees from his management of those boxers who elected not to sign

12  with him.  Finally, Mr. Heredia's business relationship with GBP has also been

13  negatively affected.

14      204.   MTK, MTK USA, and their agents to include VGC, and GBP's

15  conduct were the substantial factors in causing Plaintiff's harm. But for the

16  interference of MTK, MTK USA, Mr. Gibson and GBP, Plaintiff's contract with

17  Mr. Diaz would not have been interfered with and harm would not have been

18  caused. The conduct of MTK, MTK USA, and GBP is the substantial factor in

19  causing Plaintiff's harm.

20      205.   WHEREFORE, Plaintiff requests that this Court enter judgment

21  against these defendants as follows: actual damages, reasonable attorney's fees,

22  and the costs of bringing the suit, all in an amount to be determined at trial.

23              **NINTH CAUSE OF ACTION**

24      **Negligent Interference with Prospective Economic Relations**

25              (Against MTK, and MTK USA, and GBP))

26  159.206.   Plaintiff incorporates by reference and realleges each and every

27  allegation contained in the paragraphs above as though fully set forth herein.

28

1  160.   Mr. Heredia and GBP have an economic relationship that probably
2  would have resulted in an economic benefit to Mr. Heredia.

3  161.207.    GBP, MTK USA, and MTK know or should have known of the
4  relationship.

5  162.208.    GBP, MTK USA, and MTK know or should have known that
6  this relationship would be disrupted if they failed to act with reasonable care.

7  163.209.    GBP, MTK USA, and MTK failed to act with reasonable care.

8  164.210.    GBP, MTK USA, and MTK have engaged in wrongful conduct
9  through, *inter alia*, inducing breach of contract, tortious interference with contract,
10  violations of statutory authority with respect to boxing management.

11  165.211.    Mr. Heredia's relationship with Mr. Diaz and Mr. Feliciano
12  havehas been disrupted by GBP, MTK USA, and MTK's actions.

13  166.212.    GBP, MTK USA, and MTK's wrongful conduct are a
14  substantial factor in causing harm to Mr. Heredia.

15  167.   This wrongful conduct has resulted in financial harm to Mr. Heredia
16  to include loss of management fees from Mr. Diaz and lost business opportunity
17  and management fees relating to Mr. Feliciano.

18  **TENTH CAUSE OF ACTION**
19  **Tortious Interference with Contract – Boxer-Manager Contract Luis**
20  **Feliciano**
21  **(Against GBP)**

22  168.   Plaintiff incorporates by reference and realleges each and every
23  allegation contained in the paragraphs above as though fully set forth herein.

24  169.   At all relevant times, an exclusive boxer-manager contract existed
25  between Plaintiff and a third-party Mr. Luis Feliciano. This contract was signed on
26  March 23, 2017 before the California State Athletic Commission and lasts for five
27  years. This contract is valid and enforceable.

28

170.   GBP's conduct prevented performance or made the performance of this contract more expensive or difficult. GBP has made several communications to Mr. Feliciano through their employee Mr. Ernie Gabion. The communications started around August 2019. Mr. Heredia spoke to Mr. Gabion and stated not to contact Mr. Feliciano or any of his professional boxers directly and that any communications from GBP need to come to him, Mr. Heredia. In early March of 2020, Mr. Heredia reiterated this issue with Mr. Oscar De La Hoya, founder and CEO of GBP and Eric Gomez, President of GBP. Despite being under contract and despite these communications, on December 1, December 8, December 11, and December 16, 2020, Mr. Gabion called and left messages for Mr. Feliciano. In the December 11, 2020 message Mr. Gabion discusses talking with high ranking/c-suite GBP employees, Robert Diaz and Eric Gomez. On December 16, 2020, Mr. Gabion related Mr. Feliciano's message to Mr. Robert Diaz, that communications where going through counsel, and that "I see you and Golden Boy lasting for a long time." Further he provided Mr. Robert Diaz's number to Mr. Feliciano in order to get Mr. Robert Diaz's "perspective." These communications have caused Mr. Heredia additional work and caused the performance of the contract to be more expensive and complicated. GBP is a "stranger" to the boxer-manager contract and are liable in tort for their intentional interference. These actions have caused Mr. Heredia additional time and expenses to include hiring counsel to assert his rights. Mr. Heredia used additional time and effort to stop the interference, to console their boxer and quash any negative thoughts so that Mr. Feliciano can focus on his boxing career.

171.   GBP intended to disrupt the performance of this contract and/or knew that disruption of performance as certain or substantially certain to occur. GBP's communications are intended to sow doubt in Mr. Feliciano and the management he receives from Mr. Heredia. GBP wants this disruption to occur as their goal is to

1  cause Mr. Feliciano to breach or not renew his management contract with Mr.
2  Heredia.

3      172.  Mr. Heredia has been harmed by the actions of GBP. Mr. Heredia
4  fulfilled a firewall function between the promoter and the boxer which is being
5  trampled upon. Mr. Heredia's relationship with Mr. Feliciano has been negatively
6  affected.

7      173.  GBP's conduct is the substantial factors in causing Plaintiff's harm.
8  But for the interference of GBP, Plaintiff's contract with Mr. Feliciano would not
9  have been interfered with and harm would not have been caused. The conduct of
10  GBP is the substantial factor in causing Plaintiff's harm.

11                    **ELEVENTH CAUSE OF ACTION**

12        **Breach of Implied Covenant of Good Faith and Fair Dealing**

13                        (Against GBP)

14      174.  Plaintiff incorporates by reference and realleges each and every
15  allegation contained in the paragraphs above as though fully set forth herein.

16      175.  At all relevant times, there was a boxing promotion contract between
17  Mr. Heredia, Defendant GBP, and a third party Mr. Joseph Diaz, Jr. This contract
18  was signed on March 22, 2017 and lasts for five years. This contract is valid and
19  enforceable.

20      176.  Plaintiff did all, or substantially all the significant things that the
21  contract required them to do. Namely, manage the boxing career of Mr. Diaz and
22  act as his representatives.

23      177.  All conditions required for GBP's performance had occurred.

24      178.  GBP prevented Plaintiff from receiving a payment of $90,000 (or
25  $72,000 as reduced due to the weight failure) from the bout on February 13, 2021.
26  GBP and Mr. Heredia had an oral agreement that management fees are paid
27  directly from the purse of a bout. This oral agreement concerning the promotion

28

contract existed for the duration of this contract between Mr. Heredia and GBP.. Further, GBP undermined the contract by negotiating directly with Mr. Gibson and MTK instead of Mr. Heredia. GBP has discretionary power affecting Plaintiff. In this instance, GBP did not exercise that power in good faith. GBP unfairly frustrated Plaintiff's right to receive the benefits of the agreement made.

179.   By not following the customary way payments are conducted, GBP did not act fairly and in good faith.

180.213.     By not following the customary way payments are conducted, Plaintiff suffered harm by GBP conduct. Plaintiff has been deprived of $90,000.00 (or $72,000 as reduced due to the weight failure) since February 13, 2021.Diaz.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and an award against Defendants as follows:

1.      For compensatory damages in an amount to be determined at trial;

2.      For treble damages in an amount to be determined at trial;

3.      For pre- and post-judgment interest at the maximum rate allowed by law;

4.      For recovery of reasonable attorneys' fees;

5.      For the costs of the suit; and

6.      For such other and further relief as the Court deems just and proper.

7.      Jury trial is demanded.


Dated: July 16, 2021April 29, 2022                    Respectfully submitted,


                                        /s/ *Rajan O. Dhungana*
                                        Rajan O. Dhungana (SBN: 297794)
                                        FEDERAL PRACTICE GROUP
                                        14481 Aspen Street
                                        Hesperia, CA 92344

1    Telephone: (310) 795-6905
2    rdhungana@fedpractice.com

3    /s/ *Eric S. Montalvo*
4    Eric S. Montalvo (*Pro Hac Vice*)
     FEDERAL PRACTICE GROUP
5    1750 K Street, N.W., Suite 900
6    Washington, D.C. 20006
     Telephone: (202) 862-4360
7    Fax: (888) 899-6053
8    emontalvo@fedpractice.com

9    *Attorneys for Plaintiff*

10
11   _____   Moses Heredia

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28