# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

MOSES HEREDIA, and
HEREDIA BOXING
    MANAGEMENT, INC.,

        Plaintiffs,

   v.

MTK GLOBAL SPORTS
    MANAGEMENT, LLC;
GOLDEN BOY PRODUCTIONS,
    INC.;
VGC, LLP;
PAUL D. GIBSON;
DANIEL KINAHAN;
GOLDEN BOY PROMOTIONS,
    INC.; and
MTK GLOBAL USA, LLC,

        Defendants.

Case No. 5:20-cv-02618-JWH-KKx

**ORDER GRANTING MOTIONS TO SET ASIDE ENTRIES OF DEFAULT [ECF Nos. 71 & 73]**

Before the Court are two motions:

- the motion of Defendant MTK Global Sports Management, LLC to set aside the entry of default against it;[1] and
- the motion of Defendant Daniel Kinahan likewise to set aside the entry of default against it.[2]

The Court finds these matters appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[3] the Court orders that both Motions are **GRANTED**, as set forth herein.

## I. BACKGROUND[4]

This case involves a dispute between a boxing manager and several entities and individuals who are accused of interfering with the manager's relationships with his fighters.[5] Because the Court need rule on only the narrow issue of the propriety of MTK Global and Kinahan remaining in default, the Court need not recount the factual allegations, with which the parties are now quite familiar.[6]

---

[1] Def.'s Mot. to Set Aside Entry of Default (the "MTK Motion") [ECF No. 71].

[2] Def.'s Mot. to Set Aside Entry of Default (the "Kinahan Motion") [ECF No. 73].

[3] The Court considered the following papers: (1) the MTK Motion (and its attachments); (2) Pl.'s Opp'n to the MTK Motion (the "MTK Opposition") (including its attachments) [ECF No. 76]; (3) Def.'s Reply in Supp. of the MTK Motion (the "MTK Reply") [ECF No. 79]; (4) the Kinahan Motion (and its attachments); (5) Pl.'s Opp'n to the Kinahan Motion (the "Kinahan Opposition") (including its attachments) [ECF No. 80]; and (6) Def.'s Reply in Supp. of the Kinahan Motion (the "Kinahan Reply") [ECF No. 81].

[4] Kinahan filed a number of evidentiary objections to the Kinahan Opposition. *See* Def.'s Objs. (the "Objections") [ECF No. 82]. The Court does not rely on the evidence to which Kinahan objects. Accordingly, the objections are **OVERRULED** as moot.

[5] *See generally* Second Am. Compl. (the "Second Amended Complaint") [ECF No. 43].

[6] *See* Order Re: Mots. to Dismiss & Mot. to Compel Arbitration [ECF No. 83].

The Clerk of the Court entered default against MTK Global and Kinahan in February 2022.[7] MTK Global and Kinahan filed the instant MTK Motion and Kinahan Motion the next month, and both Motions are fully briefed. In April 2022, Plaintiff Moses Heredia amended his complaint for the third time.[8]

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a "court may set aside an entry of default for good cause . . . ."  Fed. R. Civ. P. 55(c).  "The district court has discretion to determine whether a party demonstrates 'good cause.'" *Yan v. Gen. Pot, Inc.*, 78 F. Supp. 3d 997, 1003 (N.D. Cal. 2015) (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).  That discretion "is particularly broad where a party seeks to set aside an entry of default rather than a default judgment." *Id.* at 1004 (citing *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 944-45 (9th Cir. 1986)).

To determine whether good cause exists, a district court must first determine—as a threshold matter—whether the moving defendant was properly served.  *See Haynes v. Bank of Am.*, 2009 WL 10680849, at *1 (C.D. Cal. Aug. 5, 2009) (citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 202 (9th Cir. 1988)).  If service was proper, the district court must then consider three factors: "(1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the plaintiff."  *Yan*, 78 F. Supp. 3d at 1004.  That "standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  At the same time, "judgment by default is a drastic step

---

[7]  *See* Default by Clerk [ECF No. 65]; Default by Clerk [ECF No. 66].
[8]  *See* Third Amended Complaint (the "<u>Amended Complaint</u>") [ECF No. 85].

appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (quotation and citations omitted).

### III. DISCUSSION

**A. Proper Service**

MTK Global and Kinahan both argue that Heredia failed to serve them properly. "It is axiomatic that a federal court does not have jurisdiction over a defendant if the defendant is not properly served." *Gaboratory, Inc. v. Gaboratory Int'l, Inc.*, 2008 WL 11406072, at *2 (C.D. Cal. Nov. 10, 2008) (citing cases). "[A]ny default entered following defective service of process **must be vacated**." *Id.* (emphasis added) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-86 (1988)). Once a defendant asserts that it was not served properly, "plaintiffs bear the burden of establishing that it was valid under Rule 4." *Id.* (citing *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Because Heredia fails to satisfy that burden with respect to either MTK Global or Kinahan, the Court discusses only the issue of proper service.

**1. The MTK Motion**

MTK Global is located in Dubai, United Arab Emirates.[9] "The UAE is not a party to the Hague Convention and the parties agree that no other internationally agreed upon means of service exist between the United States and the UAE." *Smallwood v. Allied Pickfords, LLC*, 2009 WL 3247180, at *12 (S.D. Cal. Sept. 29, 2009), *on reconsideration in part*, 2010 WL 11508273 (S.D. Cal. Feb. 5, 2010), and *aff'd sub nom. Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011).

The Federal Rules of Civil Procedure provide that a foreign corporation, partnership, or association must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

---

[9] *See* Decl. of Quentin Richard Reynolds in Supp. of the MTK Motion (the "Reynolds Declaration") [ECF No. 71-2] ¶ 2.

Fed. R. Civ. P. 4(h)(2). When no internationally agreed upon means of service exists—as is the case here—Rule 4(f)(2) applies. *See* Fed. R. Civ. P. 4(f)(2). Under Rule 4(f)(2), the method of service must be reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by . . .
>
>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt . . . .

*Id.*

Heredia contends that it served MTK Global properly.[10] Indeed, Heredia avers that he served MTK Global in three different ways, each of which supposedly suffices under UAE law.[11] However, based upon Heredia's own description of UAE law—provided through his process server, who is a UAE lawyer—none of those attempts at service suffices.

First, Heredia attempted to serve MTK Global via publication.[12] According to Heredia's process server, service through publication is permitted in the UAE only if the party "has no domicile, residence, place of business, fax, email or a postal address . . . ."[13] Here, MTK Global has a place of business, email, and postal address in the UAE.[14]

---

[10] MTK Opposition 2:11-12.
[11] Decl. of Jouslin Chibli Khairallah (the "Khairallah Declaration") [ECF No. 62] ¶¶ 6-8.
[12] *Id.* at ¶ 7.
[13] *Id.*
[14] *See* Reynolds Declaration ¶ 6.

Second, Heredia claims to have served MTK Global via courier.[15] Quentin Richard Reynolds, MTK Global's Head of Global Operations, declared under oath that "MTK global never received such documents at its registered office. Based on our investigation, it appears that the documents were delivered to the MTK Global DMCC branch office, which (although it shares the MTK name) is not legally connected to MTK Global."[16] Heredia provides no substantive rebuttal to Reynolds' claim that service was made to the wrong address; Heredia simply says that he "does not concede" the issue.[17] In the absence of any meaningful opposition, the Reynolds Declaration is dispositive.

Third, Heredia claims to have served MTK Global in October 2021 via email.[18] Heredia's process server did not, however, attach any October 2021 emails as exhibits to her declaration.[19] Instead, she attached as exhibits two emails that appear to have been sent in March 2021—five months before the summons was issued.[20] Reynolds, for his part, has been unable to locate any emails transmitting the summons.[21] In his MTK Opposition, Heredia attaches copies of emails that were purportedly transmitted in October 2021,[22] but he fails to authenticate them, so the Court does not consider them. *See* Fed. R. Evid. 901 & 902.

Heredia argues that the sworn declaration of his process server, a UAE lawyer, "stating that she emailed the summons on three different dates, should

---

[15] Khairallah Declaration ¶ 8.
[16] Reynolds Declaration ¶ 7.
[17] MTK Opposition 3:10.
[18] Khairallah Declaration ¶ 8.
[19] *See* Khairallah Declaration.
[20] *See* Khairallah Declaration, Ex. A [ECF No. 62-1].
[21] Reynolds Declaration ¶ 8.
[22] *See* MTK Opposition, Exs. B, C, & D.

be conclusive proof that those emails actually were sent."[23] The Court is not convinced. Heredia had two opportunities to submit ***proof*** that he caused those emails to be transmitted in a timely manner. On both occasions, he failed to do so. In light of that failure, and considering the conflicting sworn declarations of Reynolds and Khairallah, the Court finds that Heredia does not satisfy his burden of proving that he served MTK properly. Accordingly, the MTK Motion is **GRANTED**.

    2.  The Kinahan Motion

    Heredia does not contest that Kinahan is located in the UAE. Accordingly, service is governed by Rule 4(f). *See* Fed. R. Civ. P. 4(f). Heredia claims to have served Kinahan properly via publication, courier, and email.[24] However, Heredia's attempts to serve Kinahan fail for essentially the same reasons that his attempts to serve MTK Global fail.

    First, based upon Heredia's process server's description of UAE law, Heredia's attempt to serve Kinahan via publication fails. According to the process server, service via publication is not allowed when the defendant has a domicile or residence in the UAE.[25] While it is not clear that Kinahan does have a domicile or residence in the UAE, Kinahan does purport to be a UAE resident.[26] Because the burden is on Heredia to prove that service was proper, *see Brockmeyer* 383 F.3d at 801, and because Heredia makes no attempt to prove that Kinahan lacks a UAE residence or domicile, the Court finds that Heredia has failed to establish that service via publication was proper.

---

[23] MTK Opposition 4:13-15.
[24] Kinahan Opposition 2:25-3:1.
[25] Khairallah Declaration ¶ 7.
[26] Decl. of Daniel Kinahan in Supp. of the Kinahan Motion (the "Kinahan Declaration") [ECF No. 73-1] ¶ 2.

Second, Heredia avers that he served Kinahan via courier service to a UAE P.O. Box.[27] Kinahan declares that he has never used the P.O. Box at issue, nor has that mail receptacle ever been associated with him.[28] In the Kinahan Opposition, Heredia provides no evidence that the P.O. Box was associated with Kinahan beyond quoting his process server, who refers to the P.O. Box as Kinahan's "last known address."[29] Heredia fails to offer any support for his process server's conclusory statement.

Finally, Heredia's argument that he served Kinahan via email fails for the same reason that it fails with respect to MTK: Heredia's process server declares that she served Kinahan in October 2021, but the emails that she attaches to her declaration are from March 2021.[30] The process server submitted a separate declaration in support of the Kinahan Opposition, but, in that declaration, she does not mention any email.[31]

The Court finds that Heredia has failed to meet his burden of showing that Kinahan was served properly. Accordingly, the Kinahan Motion is **GRANTED**.

B.  **The Amended Complaint**

"The filing of an amended complaint supersedes the original complaint, which is treated thereafter as non-existent." *Liberty Media Holdings, LLC v. Hawaii Members of Swarm of Nov. 15, 2010 to Jan. 27, 2011, Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, 2012 WL 1377003, at *1 (D. Haw. Mar. 27, 2012), *report and recommendation adopted*, 2012 WL 1377000 (D. Haw. Apr. 18, 2012) (quotation omitted). The Clerk entered default with

---

[27] Kinahan Opposition 3:1.
[28] Kinahan Declaration ¶ 4.
[29] Kinahan Opposition 3:21.
[30] *Compare* Khairallah Declaration ¶ 8 *with* Khairallah Declaration, Ex. A.
[31] *See* Decl. of Jouslin Chibli Khairallah in Supp. of Kinahan Opposition [ECF No. 80-1].

respect to Heredia's Second Amended Complaint. "Because [Heredia's Second Amended Complaint] no longer performs any function, a default based on [that pleading] must also be rendered ineffectual and non-existent." *ThermoLife Int'l, LLC v. Sechel Holdings, Inc.*, 2015 WL 1521779, at *1 (D. Ariz. Apr. 3, 2015). Thus, even if the instant MTK Motion and Kinahan Motions lacked merit, the Clerk's entries of default would still be set aside.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The MTK Motion is **GRANTED**. The default entered against MTK Global on February 2, 2022, is hereby **SET ASIDE**.

2. The Objections are **OVERRULED** as moot.

3. The Kinahan Motion is **GRANTED**. The default entered against Kinahan on February 2, 2022, is hereby **SET ASIDE**.

**IT IS SO ORDERED**.

Dated: May 10, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE