|  |  |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES HEREDIA, and HEREDIA BOXING MANAGEMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; GOLDEN BOY PRODUCTIONS, INC.; VGC, LLP; PAUL D. GIBSON; DANIEL KINAHAN; GOLDEN BOY PROMOTIONS, INC.; and MTK GLOBAL USA, LLC,<br><br>Defendants. | Case No. 5:20-cv-02618-JWH-KKx<br><br>**ORDER REGARDING MOTIONS TO DISMISS [ECF Nos. 53 & 67] AND MOTION TO COMPEL ARBITRATION [ECF No. 54]** |

This case involves a dispute between a boxing manager and several entities and individuals who are accused of interfering with the manager's relationships with his fighters. Presently before the Court are three motions:

- the unopposed motion of Plaintiff Moses Heredia to dismiss Defendant Golden Boy Promotions, Inc. from certain counts of the complaint;[1]
- Golden Boy's motion to dismiss Heredia's second amended complaint;[2] and
- Golden Boy's motion to compel arbitration.[3]

The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[4] the Court orders that the Heredia Motion is **GRANTED**, Golden Boy's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and Golden Boy's Arbitration Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

**A. Procedural History**

Heredia and co-Plaintiff Heredia Boxing Management, Inc. commenced this action in late 2020. Plaintiffs dismissed Defendant Golden Boy Productions, Inc.[5] and Defendant VGC, LLP in March 2021. In July 2021,

---

[1] Pl.'s Mot. to Dismiss (the "Heredia Motion") [ECF No. 67].
[2] Def.'s Mot. to Dismiss (the "Motion to Dismiss") [ECF No. 53].
[3] Def.'s Mot. to Compel Arbitration (the "Arbitration Motion") [ECF No. 54].
[4] The Court considered the following papers: (1) Second Am. Compl. (the "Amended Complaint") [ECF No. 43]; (2) the Heredia Motion; (3) the Arbitration Motion (including its attachments); (4) Pl.'s Opp'n to the Arbitration Motion (the "Arbitration Opposition") [ECF No. 58]; (5) Def.'s Reply in Supp. of the Arbitration Motion [ECF No. 59]; (6) the Motion to Dismiss (including its attachments); (7) Pl.'s Opp'n to the Motion to Dismiss (the "MTD Opposition") [ECF No. 57]; and (8) Def.'s Reply in Supp. of the Motion to Dismiss [ECF No. 60].
[5] Not to be confused with Golden Boy Promotions, Inc., which is the movant on the instant Motion to Dismiss and Arbitration Motion.

Heredia filed the operative Amended Complaint as the sole plaintiff.[6] In addition to Golden Boy, the remaining Defendants are MTK Global Sports Management, LLC ("MTK Sports Management"); Paul D. Gibson; Daniel Kinahan; and MTK Global USA, LLC ("MTK USA"). It does not appear that Heredia has accomplished service of process on Gibson.

Heredia's Amended Complaint contains the following 11 claims:

- violation of Racketeering Influenced and Corrupt Organization ("RICO") Act 18 U.S.C. § 1962(a)—Acquiring an Interest in an Enterprise by Use of Income (against MTK Sports Management, Kinahan, and Gibson);
- violation of RICO 18 U.S.C. § 1962(b)—Acquiring or Maintaining an Interest in or Control of an Enterprise (against MTK Sports Management, Kinahan, and Gibson);
- violation of RICO 18 U.S.C. § 1962(c)—Conducting the Affairs of an Enterprise (against MTK Sports Management, Kinahan, and Gibson);
- violation of RICO 18 U.S.C. § 1962(d)—Conspiracy to Conduct the Affairs of an Enterprise (against MTK Sports Management, Kinahan, and Gibson);
- tortious interference with Boxer-Manager Contract between Heredia and Diaz (against MTK Sports Management, MTK USA, Gibson, and Golden Boy);
- tortious interference with promotion-manager contract between Heredia and Golden Boy (against MTK Sports Management and MTK USA);
- inducing breach of Boxer-Manager Contract between the Heredia and Diaz (against MTK Sports Management, MTK USA, and Golden Boy);

---

[6] Accordingly, Plaintiff Heredia Boxing Management, Inc. is **DISMISSED** from this action. Some papers filed after the Amended Complaint still list Heredia Boxing Management as a plaintiff, despite the fact that it is not party to the Amended Complaint. As appropriate, the Court interprets certain references to "plaintiff" or "plaintiffs" as pertaining solely to Moses Heredia.

- intentional interference with prospective economic relations (against MTK Sports Management, MTK USA, and Golden Boy);
- negligent interference with prospective economic relations (against MTK Sports Management, MTK USA, and Golden Boy);
- tortious interference with Boxer-Manager Contract between Heredia and Feliciano (against Golden Boy); and
- breach of implied covenant of good faith and fair dealing concerning the promotion-manager contract between Heredia and Golden Boy (against Golden Boy).[7]

Golden Boy filed its Motion to Dismiss and its Arbitration Motion in September 2021, and both motions are fully briefed. Heredia filed his unopposed Heredia Motion in March 2022.

**B.    Factual Allegations**

This case arises out of a contract dispute between Heredia and the boxers (and non-parties) Joseph Diaz, Jr. and Luis Feliciano.[8] The facts as alleged in the Amended Complaint are as follows:

Heredia was Diaz's boxing manager for nearly a decade.[9] In February 2017, Diaz and Heredia entered into a so-called Boxer-Manager Contract (the "Management Contract").[10] The next month, Heredia negotiated a promotion agreement between Golden Boy and Diaz (the "Promotion Agreement").[11] The Promotion Agreement was for a five-year term, and it was set to expire in March 2022.[12]

---

[7]   *Id.* at ¶ 1.
[8]   *See, e.g.*, Amended Complaint ¶ 1.
[9]   *Id.* at ¶ 11.
[10]  *Id.* at ¶ 14.
[11]  *Id.* at ¶¶ 11 & 12.
[12]  *Id.* at ¶ 12.

The Promotion Agreement has a no-assignment clause that states: "Neither the benefits nor the duties of Boxer [*i.e.*, Diaz] under this Agreement may be assigned or transferred for any reason."[13] Diaz listed Plaintiff Moses Heredia and Ralph Heredia—Moses' brother—as Diaz's representatives.[14]

Three years later, on August 4, 2020,[15] Diaz signed a "business advisory agreement" with Defendant MTK USA (the "MTK Agreement").[16] Five days after that, Diaz texted Ralph Heredia, stating "I signed an advisory deal with MTK, it's being Announced [*sic*] tomorrow. I'm doing this for my career and feel like it's the best choice. It's time for a change. [flexed arm emoji]."[17] Thereafter, the Heredia brothers called Diaz, but Diaz did not answer.[18] In response, Steve Bash—an attorney with whom Heredia had previously worked—called Robert Yalen—the CEO of MTK USA—to ask about the MTK Agreement.[19] During the call, Yalen claimed that he did not have knowledge of the MTK Agreement. Yalen made that claim despite the facts that he is a signatory to the MTK Agreement and that he spoke to the press about it.[20] On August 14, James Greeley—an attorney from the law firm (and now-dismissed defendant) VGC, LLP—reached out to Bash at Yalen's request.[21] Greeley claimed to represent Diaz.[22]

---

[13] *Id.* at ¶ 13.
[14] *Id.*
[15] Unless otherwise noted, all dates are in 2020.
[16] Amended Complaint ¶ 17.
[17] *Id.*
[18] *Id.*
[19] *Id.* at ¶ 19.
[20] *Id.*
[21] *Id.* at ¶ 20.
[22] *Id.*

Under the MTK Agreement, MTK USA was to advance $100,000 to Diaz, to be repaid in three installments of $33,333.33, due after Diaz's next three bouts.[23] The MTK Agreement also provides that MTK USA is Diaz's sole and exclusive business advisor.[24]

The Management Contract between Diaz and Heredia provides that Diaz "will not, during the term of this agreement, take or engage in any boxing contests, exhibitions or training exercises without first having obtained the written permission of Manager [*i.e.*, Heredia] to do so."[25] Accordingly, Heredia responded to the news regarding Diaz's purported entry into the MTK Agreement by invoking the arbitration clause in the Management Contract and commencing an arbitration proceeding with the California State Athletic Commission (the "Boxing Commission").[26] The Boxing Commission accepted Heredia's arbitration request, but, due to the COVID-19 pandemic, the arbitration proceeding did not take place until June 2021.[27]

On the same day that Heredia invoked the arbitration clause, Greeley emailed Bash requesting a phone call. Bash responded that Heredia would not communicate with MTK USA until MTK USA provided him with a copy of the MTK Agreement.[28] The next day, Greeley requested to see all offers from Golden Boy.[29] After Bash provided the information from Golden Boy, Greeley instructed Golden Boy that Greeley was serving as Diaz's legal counsel and that Golden Boy should communicate only with Greeley, and not with Heredia.[30] By

---

[23] *Id.* at ¶ 18.
[24] *Id.*
[25] *Id.* at ¶ 22.
[26] *Id.* at ¶ 21.
[27] *Id.*
[28] *Id.* at ¶ 23.
[29] *Id.*
[30] *Id.*

September, Greeley had instructed Bash to tell Heredia not to communicate with Golden Boy on Diaz's behalf. In October, Diaz filed his complaint against Ralph Heredia and Heredia Boxing Management in the related case *Joseph Diaz Jr. v. Ralph Heredia, et al.*[31]

VGC, acting in coordination with MTK Sports Management, began negotiating upcoming bouts with Golden Boy.[32] Those negotiations commenced even though no VGC or MTK Sports Management employee is licensed to perform boxing management functions in California and even though VGC and MTK Sports Management knew about the Management Agreement between Diaz and Heredia.[33] Ultimately, Gibson—an MTK Sports Management employee—personally negotiated the terms of a bout between Diaz and Shavkatdzhon Rakhimov. That bout took place in February 2021.[34] Defendants also negotiated for a second bout for Diaz in July 2021.[35] Golden Boy did not include Heredia in those negotiations.[36]

Ultimately, the negotiations for the February 2021 bout did not benefit Diaz.[37] The bout's payment structure was in line with the Promotion Agreement that Heredia previously negotiated with Golden Boy.[38] However, Diaz failed to make weight for the bout, which meant that Rakhimov was not required to fight Diaz.[39] Gibson negotiated directly with Rakhimov's managers and promoters to pay additional funds from Diaz's purse to allow the fight to

---

[31] *See* Docket, Case No. 5:20-cv-02332-JWH-KK (C.D. Cal.).
[32] Amended Complaint ¶ 25.
[33] *Id.* at ¶¶ 25 & 26.
[34] *Id.* at ¶ 27.
[35] *Id.*
[36] *Id.* at ¶ 38.
[37] *Id.* at ¶ 35.
[38] *Id.*
[39] *Id.* at ¶ 36.

proceed.[40] After the fight, Diaz, advised by Greeley, instructed Golden Boy not to pay Heredia his 18% management fee. Golden Boy—which had an oral agreement with Heredia to pay management fees directly from Diaz's purse—did not pay Heredia after the bout.[41]

The purse for the July 9, 2021, bout was set for $500,000. During the arbitration proceeding in June 2021, the Boxing Commission's Executive Director[42] "foreshadowed" that Heredia would receive 18% of the purse for that bout. Shortly thereafter, Golden Boy—in coordination with VGC, MTK Sports Management, and MTK USA—presented to the Boxing Commission an altered bout agreement that provided for a purse that was significantly less than $500,000.[43] The Boxing Commission rejected the altered bout agreement, and, in its July 10, 2021, arbitration decision, the Boxing Commission ordered Golden Boy to withhold $90,000 from Diaz's purse for the July 9 bout.[44]

In the arbitration proceeding, the Boxing Commission found that the relationship between Diaz and Heredia was irreparably harmed, and it canceled the remainder of the Management Contract.[45] In total, Diaz fought 10 bouts pursuant to the Management Contract and Promotion Agreement. The first alleged breach of the Management Contract took place with respect to the tenth bout.[46]

Heredia alleges that Golden Boy had a habit of sabotaging the relationships between Heredia and his boxers by, among other things, failing to

---

[40] *Id.*
[41] *Id.* at ¶ 39.
[42] It appears that the Executive Director of the Boxing Commission served as the arbitrator.
[43] Amended Complaint ¶ 28.
[44] *Id.*
[45] *Id.* at ¶ 40.
[46] *Id.* at ¶ 14.

provide market rates to his boxers.[47]  Heredia specifically alleges that Golden Boy engaged in the same behavior with respect to Feliciano.[48]

According to Heredia, Golden Boy representatives tried to convince Feliciano to leave Heredia and to enter into a contract with another manager.[49]  Heredia responded by speaking with Golden Boy executives, who promised that Golden Boy would discontinue its attempts to poach Feliciano from Heredia.[50]  Golden Boy quickly reneged on that promise, and its representatives resumed their efforts to encourage Feliciano to leave Heredia.[51]  Although Feliciano never breached his contract with Heredia, Heredia alleges that Golden Boy's communications caused Heredia additional work and complications.[52]

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr*

---

[47]  *Id.* at ¶¶ 42 & 43.
[48]  *Id.* at ¶ 49.
[49]  *Id.* at ¶ 50.
[50]  *Id.* at ¶ 51.
[51]  *Id.* at ¶ 53.
[52]  *Id.* at ¶ 170.

*v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

### B. Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### C. Motion to Compel Arbitration

Pursuant to the Federal Arbitration Act (the "FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)), "arbitration is a matter of contract

and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Because the FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed,' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and emphasis omitted) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

In evaluating the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts," *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

### III. DISCUSSION

#### A. The Heredia Motion

Heredia requests that the Court: (1) dismiss with prejudice his ninth claim with respect to Golden Boy; and (2) dismiss with prejudice the entirety of his tenth claim for relief.[53]

---

[53] *See generally* Heredia Motion. Heredia asserts his ninth claim for relief—for negligent interference with prospective economic relations—against MTK Sports Management, MTK USA, and Golden Boy. Heredia asserts his tenth claim for relief—for tortious interference with the Boxer-Manager Contract between Heredia and Feliciano—against only Golden Boy.

To support his Motion, Heredia avers that: (1) he has reached a confidential settlement with Golden Boy with respect to those claims for relief;[54] (2) Golden Boy's counsel consents to the request;[55] and (3) he complied with the conference-of-counsel requirement imposed by L.R. 7-3.[56]

In the absence of opposing papers from Golden Boy, or from any other defendant, the Court will **GRANT** the Heredia Motion. *See* L.R. 7-12 ("[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . ."); *see also Hartranft v. Encore Cap. Grp., Inc.*, 2021 WL 2473951, at *10 (S.D. Cal. June 16, 2021) ("where a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived"). Heredia's ninth claim for relief with respect to Golden Boy, as well as Heredia's tenth claim for relief in its entirety, are **DISMISSED with prejudice**. That dismissal leaves Heredia's fifth, seventh, eighth, and eleventh claims remaining for the Court to address.

### B. Golden Boy's Motion to Dismiss

Golden Boy asks the Court to dismiss all six of the claims for relief that Heredia has asserted against it—Heredia's fifth, seventh, eighth, ninth, tenth, and eleventh claims.[57] Because the Court already dismissed Heredia's ninth and tenth claims with respect to Golden Boy, the Court need address only the fifth, seventh, eighth, and eleventh claims.

---

[54] *Id.* at 2:4-5. Throughout the Heredia Motion, Heredia refers to "the complaint." The Court assumes that Heredia is referring to the Amended Complaint.

[55] *Id.* at 2:9-11.

[56] Pl.'s Notice of Motion (the "Notice") [ECF No. 67] 2:11-17. Heredia neither consecutively paginated the Notice and the Motion nor did he file them as separate documents. Accordingly, and confusingly, ECF No. 67 has two first, second, and third pages.

[57] *See generally* Motion to Dismiss.

1. **Interference-Related Claims**

The parties agree that "for purposes of a motion to dismiss, the elements of [tortious interference with contract; inducing breach of contract; and intentional interference with prospective economic relations] are essentially the same."[58] Accordingly, the Court can and will analyze Heredia's fifth (tortious interference with contract), seventh (inducing breach of contract), and eighth (intentional interference with prospective economic relations) claims for relief against Golden Boy together.

Under California law, the elements of a claim for tortious interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat'l Maint., Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). The tort of inducing a breach of contract is "a species of intentional interference with contractual relations[,]" and it has the same elements. *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 585 (2003). A claim for intentional interference with prospective economic advantage "has essentially the same elements as a claim for intentional interference with contractual relations, but additionally requires proof that the defendant not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*, 675 F. App'x 725, 726 (9th Cir. 2017).

---

[58] MTD Opposition 2:18-19; *see also* Motion to Dismiss 4:26-27.

To state a claim for each of those torts, a plaintiff "must allege . . . that the contract would otherwise have been performed" but for the alleged misconduct. *Id.* (quoting *Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1117, 1196 (2011)); *see also Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 2018 WL 6444899, at *5 (C.D. Cal. Nov. 16, 2018) ("Plaintiff likewise fails to sufficiently allege that the . . . agreements would not have been breached or disrupted but for the alleged interference") (citing *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997 (1977)). A third party cannot be liable for those torts when the contractual relationship had already "soured" to the point that a contract would not have been performed prior to the alleged third-party misconduct. *Stereoscope*, 675 F. App'x at 726 (dismissing a claim because the relationship between the two contracted parties "soured months before" the alleged third-party misconduct).

Here, the parties disagree over whether Heredia alleges sufficiently that the contract would have been performed but for Golden Boy's actions.[59] Golden Boy argues that Heredia and Diaz's relationship had "irreparably soured" by August 2020, which was months before Golden Boy's alleged misconduct.[60] Heredia disputes that characterization, but he fails to cite an excerpt from his Amended Complaint that supports his argument persuasively.[61]

According to the Amended Complaint, Diaz signed the MTK Contract in August 2020, at which point Diaz told Heredia's brother that it was "time for a change," and Diaz stopped communicating with Heredia.[62] The Amended Complaint alleges no misconduct or interference by Golden Boy before that exchange. Despite Heredia's argument to the contrary, it does not matter that

---

[59] *Compare* Motion to Dismiss 5:23-7:12 *with* MTD Opposition 2:23-7:22.
[60] Motion to Dismiss 7:7-10.
[61] *See, e.g.*, MTD Opposition 6:21-7:2.
[62] Amended Complaint ¶ 17.

*Heredia* was still ready and willing to perform his contractual obligations;[63] Diaz appears to have decided to breach the Management Contract before Golden Boy's alleged misconduct.

Because Heredia has not alleged that the contract between Heredia and Diaz would have been performed but for Golden Boy's conduct, Heredia has failed to state a claim against Golden Boy. Heredia's fifth, seventh, and eighth claims against Golden Boy are **DISMISSED with leave to amend**.

**2.     Implied Covenant of Good Faith and Fair Dealing**

In his eleventh claim for relief, Heredia alleges that Golden Boy breached the implied covenant of good faith and fair dealing when it:

> prevented Plaintiff from receiving a payment of $90,000 (or $72,000 as reduced due to the weight failure) from the bout on February 13, 2021. [Golden Boy] and Mr. Heredia had an oral agreement that management fees are paid directly from the purse of a bout. This ***oral agreement*** concerning the promotion contract existed for the duration of this contract between Mr. Heredia and [Golden Boy]. Further, [Golden Boy] undermined the contract by negotiating directly with Mr. Gibson and MTK [Sports Management] instead of Mr. Heredia. [Golden Boy] has discretionary power affecting [Heredia]. In this instance, [Golden Boy] did not exercise that power in good faith. [Golden Boy] unfairly frustrated [Heredia's] right to receive the benefits of the agreement made.[64]

Golden Boy argues that Heredia's eleventh claim must fail because Heredia "does not identify any specific contractual obligations" that Golden Boy breached or frustrated.[65]

---

[63]   *See* MTD Opposition 5:12-14.
[64]   Amended Complaint ¶ 178 (emphasis added).
[65]   Motion to Dismiss 9:16-17.

"In order to state a claim for breach of an implied covenant of good faith and fair dealing, the ***specific contractual obligation*** from which the implied covenant of good faith and fair dealing arose must be alleged." *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1048 (C.D. Cal. 2015) (quotation and citation omitted) (emphasis added). "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010).

Here, Heredia avers that Golden Boy breached the implied covenant of good faith and fair dealing by not paying Heredia 18% of Diaz's purse from the February 2021 bout.[66] Golden Boy argues that Heredia fails to state a claim because he "does not allege *any* specific contractual terms that purportedly require [Golden Boy] to pay [Heredia] that amount."[67] Golden Boy is incorrect. Heredia alleges that he and Golden Boy had:

> an oral agreement concerning disbursement of the manager fees. This agreement states that management fees are paid directly from the purse of a bout. After negotiating with Mr. Gibson and MTK [Sports Management], [Golden Boy] did not follow oral agreement and prevented a $90,000.00 payment, or a $72,000.00 payment as reduced by the weight failure, due to [Heredia].[68]

Later in the Amended Complaint, when discussing his eleventh claim for relief, Heredia refers to that oral agreement.[69] Accordingly, Golden Boy's Motion to Dismiss is **DENIED** with respect to the eleventh claim.

---

[66] Amended Complaint ¶ 178.
[67] Motion to Dismiss 10:10-12 (emphasis in original).
[68] Amended Complaint ¶ 39.
[69] *Id.* at ¶ 178.

### C. Golden Boy's Arbitration Motion

As discussed above, the Court dismisses Heredia's ninth and tenth claims against Golden Boy. Accordingly, the Court analyzes Golden Boy's Arbitration Motion with respect to only Heredia's fifth, seventh, eighth, and eleventh claims.

#### 1. Interference-Related Claims

Golden Boy argues that even if Heredia states a legally cognizable claim against Golden Boy, "any such claims would be subject to arbitration pursuant to the terms of the promotional contract" between Heredia, Golden Boy, and Diaz, as well as the promotional contract between Heredia, Golden Boy, and Feliciano.[70] Golden Boy's argument is premised on the contention that Heredia's "claims against [Golden Boy] plainly have a significant relationship to the promotional contracts[.]"[71] In his Opposition, Heredia avers that "none of the counts alleged against Golden Boy concern a dispute under any Golden Boy written promoter contract."[72]

Claims five, seven, and eight pertain to contracts between Heredia and either Diaz or Feliciano.[73] The contracts to which Heredia and Golden Boy are parties do not "encompass[] the dispute at issue." *Cox*, 533 F.3d at 1119. Accordingly, the Arbitration Motion is **DENIED** with respect to those claims.

#### 2. Implied Covenant of Good Faith and Fair Dealing

Claim eleven references a written promoter contract with Golden Boy.[74] Heredia contends that "the gravamen of this Count is not the written promoter contract. Rather, the Second Amended Complaint specifically alleges that

---

[70] Arbitration Motion 1:11-14.
[71] *Id.* at 1:19-20.
[72] Arbitration Opposition 1:13-14.
[73] *See generally* Amended Complaint.
[74] *See id.* at ¶ 175.

Mr. Heredia and [Golden Boy] had an oral agreement for payment of certain fees."[75] But those fees were payable only because of the existence of the Promotion Agreement between Heredia, Golden Boy, and Diaz.[76]

The Promotion Agreement unmistakably contains an arbitration clause:

> ***Any dispute, controversy or claim arising out of or relating to this Agreement***, including the formation, interpretation, breach or termination thereof, ***including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration*** in accordance with the JAMS Commercial Arbitration Rules before a single arbitrator who shall be selected by the parties to the arbitration and who shall be a retired judge or justice.[77]

The arbitration provision in the Promotion Agreement covers all disputes "arising out of or relating to" the contract. This language "is broad and far reaching." *Chiron*, 207 F.3d at 1131. The provision "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (finding that a provision encompassing all disputes "arising in connection with this Agreement" is to be interpreted "expansively" and "liberally").

While the arbitration clause is not so broad as to reach Heredia's fifth, seventh, eighth, ninth, and tenth claims, it is broad enough to reach his eleventh claim for relief. Accordingly, the Arbitration Motion is **GRANTED** with respect to Heredia's eleventh claim for relief for breach of the implied covenant of good faith and fair dealing. Golden Boy requests that the Court stay the

---

[75] Arbitration Opposition 3:10-14.
[76] *See* Amended Complaint ¶¶ 12-15.
[77] Decl. of Ricardo P. Cestero in Supp. of the Arbitration Motion [ECF No. 54-1], Ex. 3 at 12 (emphasis added).

claims that are subject to mandatory arbitration.[78] Because the Court finds that only claim eleven is subject to mandatory arbitration, and because that claim is not central to the resolution of this case, the Court concludes that dismissal of that claim without prejudice is appropriate. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 637 (9th Cir. 1988) (upholding a district court's *sua sponte* dismissal of a complaint when the moving party sought only a stay). Accordingly, the eleventh claim is **DISMISSED without prejudice**. If he chooses to do so, Heredia may pursue that claim through an appropriate arbitration proceeding.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Plaintiff Heredia Boxing Management, Inc. is **DISMISSED** from this action.

2. The Heredia Motion is **GRANTED**. Heredia's ninth claim for relief is **DISMISSED with prejudice** with respect to Golden Boy. Heredia's tenth claim for relief is **DISMISSED with prejudice**.

3. Golden Boy's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Heredia's fifth, seventh, and eighth claims for relief against Golden Boy are **DISMISSED with leave to amend**. Golden Boy's Motion to Dismiss is **DENIED** with respect to Heredia's eleventh claim for relief.

4. Golden Boy's Arbitration Motion is **GRANTED in part** and **DENIED in part**. Golden Boy's Arbitration Motion is **DENIED** with respect to Heredia's fifth, seventh, and eighth claims for relief. Golden Boy's Arbitration Motion is **GRANTED** with respect to Heredia's eleventh claim for relief. Heredia's eleventh claim is **DISMISSED without prejudice**. If Heredia

---

[78] *See, e.g.*, Arbitration Motion 7:16-20.

desires to pursue his eleventh claim for relief, he is **DIRECTED** to do so through an appropriate arbitration proceeding.

5. Heredia is **DIRECTED** to file an amended pleading, if at all, no later than April 29, 2022. If Heredia chooses to file an amended pleading, then he is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Second Amended Complaint that provides the Court with a redline version that shows the amendments. If Heredia fails to file his amended pleading by April 29, 2022, then the Court will **DISMISS** Heredia's fifth, seventh, and eighth claims for relief against Golden Boy **with prejudice**.

6. Defendants are **DIRECTED** to answer or otherwise respond to Heredia's operative complaint no later than May 13, 2022.

**IT IS SO ORDERED.**

Dated: April 11, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE