Rajan O. Dhungana (SBN: 297794)
   rdhungana@fedpractice.com
Eric S. Montalvo (*Pro Hac Vice*)
   emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905
*Attorneys for Plaintiff*
Moses Heredia

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Eastern Division)

| | |
|---|---|
| MOSES HEREDIA,<br><br>Plaintiff,<br>vs.<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; and DANIEL KINAHAN,<br><br>Defendants. | Case No.: 5:20-cv-02618-JWH-KKx<br><br>**JOINT RULE 26(f) REPORT**<br><br>Scheduling Conference: October 21, 2022 at 11:00 a.m.<br><br>Courtroom: 9D<br>Judge: Hon. John W. Holcomb |

**TO THE HONORABLE JUDGE JOHN W. HOLCOMB**:

Plaintiff Moses Heredia hereby submits his "Joint" Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and this Court's Order. [ECF 115]. No opposing parties are available to meet and confer with undersigned counsel because they either have not been served (Paul Gibson) or re-served (MTK Global Sports Management, LLC; Daniel Kinahan), or new counsel has not entered an appearance and the party is not allowed to appear pro se (MTK Global USA, LLC). Accordingly, Mr. Heredia submits this Joint Rule 26(f) Report individually, by the deadline for its joint submission.

**1. Statement of the Case:**

(a) Plaintiffs' Statement: This case arises from efforts undertaken by Defendant Daniel Kinahan[1] and his associates to establish what are purported to be "legitimate businesses," such as MTK Global and MTK USA, as a front to launder criminal proceeds from Kinahan's international criminal enterprise, the Kinahan Organized Crime Group ("KOCG"), which they would then use to improperly poach boxers from their duly-licensed managers. The result of this scheme, which Heredia alleges were Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, was that Kinahan and his associates used their extraordinary but ill-gotten financial resources and violent reputations to bully their way into the world of professional boxing.

After pillaging the European boxing market, Kinahan set his sights on doing the same in the United States. One of Kinahan and his associates' first U.S. acquisition targets was Joseph P. Diaz Jr. ("Diaz"), a then-recently-crowned world champion boxer in a lucrative weight class who was managed by Heredia and who had strong marketability and profitability potential. They found an ally in boxing promotion firm Golden Boy.

Golden Boy had become increasingly hostile to Heredia given Heredia's

---

[1] Golden Boy has been dismissed without prejudice per the Court's order that the arbitrability of Plaintiff's claims against Golden Boy must be determined by the arbitrator. [ECF 116]

fierce negotiations on Diaz's behalf to maximize Diaz' payday from each bout. Golden Boy had unsuccessfully attempted to induce fighters to leave Heredia's team, and this was raised with Golden Boy leadership prior to Kinahan's entry into the U.S. boxing market. Despite Heredia having had an exclusive boxer-manager contract with Diaz, the Defendants, none of whom were California licensed boxer managers, lured Diaz away from Heredia, interfering with the boxer-manager contract between them, ultimately to Heredia's financial, professional, and reputational detriment.

Defendants MTK Global, Kinahan, and Gibson all are reported to have connections with organized crime; Kinahan is alleged by the U.S. Department of Treasury to be operating a transnational criminal organization, and along with KOCG, is a Specially Designated National ("SDN") by the Office of Foreign Assets Control ("OFAC"). Kinahan is a narco-terrorist wanted on at least two continents and is reportedly hiding in Dubai, United Arab Emirates, a country without an extradition treaty with the United States. Days after Kinahan was put on the SDN list, MTK Global and MTK USA announced they were ceasing operations.

Heredia seeks compensatory and punitive damages, and recovery of his attorneys' fees, against the defendants for RICO violations, tortious interference with contract, inducing breach of contract, intentional interference with prospective economic relations, and negligent interference with prospective economic relations.

(b) Defendants' Statement:

**2. Subject Matter Jurisdiction:**

Plaintiff's Position:

This Court has subject-matter jurisdiction over the RICO counts pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over California state law claims under 28 U.S.C. § 1367(a), because the California state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Defendants' Position:

**3. Legal Issues:**

Plaintiff's Position:

The key legal issues are:

1. <u>First Cause of Action – RICO § 1962(a) – Acquiring an interest in an enterprise by use of income</u>: Whether any or all of Defendants MTK, MTK USA, Kinahan, and Gibson acquired an interest in an enterprise, or established the operation of an enterprise, using income acquired through a pattern of racketeering activity ("PORA") or collection of an unlawful debt;

2. <u>Second Cause of Action – RICO § 1962(b) – Acquiring or maintaining an interest in or control of an enterprise</u>: Whether any or all of Defendants MTK, MTK USA, Kinahan, and Gibson acquired or maintained an interest in an enterprise using income acquired through a PORA or collection of an unlawful debt;

3. <u>Third Cause of Action – RICO § 1962(c) –Conduct the affairs of the enterprise</u>: Whether any or all of Defendants MTK, MTK USA, Kinahan, and Gibson directly or indirectly performed any actions that involve the acts, functions, or duties related to the operation or management of an enterprise, through a PORA or collection of unlawful debt;

4. <u>Fourth Cause of Action – RICO § 1962(d) – Conspiracy to conduct the affairs of an enterprise</u>: Whether any or all of Defendants MTK, MTK USA, Kinahan, and Gibson conspired to violate RICO §§ 1962 (a), (b), or (c);

5. <u>Fifth Cause of Action – Tortious interference with contract – Boxer Manager Contract</u>: Whether any or all of Defendants MTK, MTK USA, Gibson, and GBP tortiously interfered with Plaintiff's exclusive Boxer-Manager Contract with non-party Joseph Diaz, Jr., by instructing Mr. Diaz

to order GBP[2] to withhold from Plaintiff monies lawfully due Plaintiff under the Boxer-Manager Contract, and when such funds were withheld; when they impugned Plaintiff's reputation, integrity, character, and competence through the media including social media; when they interfered further with Plaintiff's relationship with Mr. Diaz; and through other actions;

6. <u>Sixth Cause of Action – Tortious interference with contract – Promoter-Manager Contract</u>: Whether either or both of Defendants MTK and MTK USA tortiously interfered with the Promotion-Manager Contract between Diaz and GBP, to which Plaintiff was a third-party beneficiary, when they directed GBP not to engage with Plaintiff on any bouts under Diaz's contract with Plaintiff, thus disrupting the Promoter-Manager Contract, and interfering in Plaintiff's Boxer-Manager Contract with Diaz.

7. <u>Seventh Cause of Action – Inducing breach of contract – Boxer-Manager Contract</u>: Whether any or all of Defendants MTK, MTK USA, and GBP[3] intentionally caused Mr. Diaz to breach his Boxer-Manager Contract with Plaintiff when one or more of them instructed Mr. Diaz to order GBP not to pay Plaintiff his contractually-require 18% management fee from the February 13, 2021 and July 9, 2021 bouts, and when the management fees were not paid from the February bout and were only paid from the July bout after Plaintiff won an arbitration award against Mr. Diaz on, among other things, Mr. Diaz's non-payment of the July bout management fees;

8. <u>Eighth Cause of Action – Intentional Interference with Prospective Economic Relations</u>: Whether any or all of Defendants MTK, MTK USA, and GBP[4] intentionally interfered in the economic relationship between

---

[2] Plaintiff's claims against GBP have been dismissed without prejudice pending a determination of arbitrability by an arbitrator.
[3] Plaintiff's claims against GBP have been dismissed without prejudice pending a determination of arbitrability by an arbitrator.
[4] Plaintiff's claims against GBP have been dismissed without prejudice pending a determination of arbitrability by an arbitrator.

4

Plaintiff and Mr. Diaz that likely would have resulted in an economic benefit to Plaintiff when one or more of them instructed Mr. Diaz to order GBP not to pay Plaintiff his contractually-required 18% management fee from the February 13, 2021 and July 9, 2021 bouts, and when the management fees were not paid from the February bout and were only paid from the July bout after Plaintiff won an arbitration award against Mr. Diaz on, among other things, Mr. Diaz's non-payment of the July bout management fees, and when any or all of said Defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself; and

9. <u>Ninth Cause of Action – Negligent interference with prospective economic relations</u>: Whether either or both of Defendants MTK and MTK USA negligently interfered in the economic relationship between Plaintiff and Mr. Diaz that likely would have resulted in an economic benefit to Plaintiff when one or more of them failed to act with reasonable care when they instructed Mr. Diaz to order GBP not to pay Plaintiff his contractually-required 18% management fee from the February 13, 2021 and July 9, 2021 bouts, and when the management fees were not paid from the February bout and were only paid from the July bout after Plaintiff won an arbitration award against Mr. Diaz on, among other things, Mr. Diaz's non-payment of the July bout management fees.

Unusual legal issues:

1. Kinahan is an SDN and the subject of up to a $5 million reward from the U.S. State Department for information leading to his arrest and/or conviction. Although he is reportedly hiding, Plaintiff's counsel is confident that he will be served in this matter.

2. As an SDN, all Kinahan's property and interests in property that are in the United States or in the possession or control of U.S. persons must be blocked and reported to OFAC. Counsel believes that this may slow but

not prevent seizure of Kinahan's assets, pursuant to a default judgment or after a merits hearing.

3. MTK Global reportedly has "ceased operations." It is unclear whether this includes dissolution of the entity. Through appropriate discovery of related entities and persons, Plaintiff intends to determine whether individuals or another entity may be an appropriate substitute.

Defendant's Position:

**4. Parties, Evidence, etc.:**

Plaintiff's Parties and Witnesses:

    a. Moses Heredia (Plaintiff)
    b. Daniel Kinahan (Defendant)
    c. MTK Global Sports Management, LLC representative (Defendant)
    d. MTK Global USA, LLC representative (Defendant)
    e. Paul Gibson (Defendant)
    f. Golden Boy Promotions, Inc. representative (dismissed Defendant)
    g. Joseph Diaz, Jr. (witness)
    h. Ralph Heredia (witness)
    i. Bob Arum (witness)
    j. Bob Yalen (witness)
    k. Witnesses identified by any other party or revealed through discovery

Defendants' Parties and Witnesses:

Plaintiff's Key Documents:

1. Moses Heredia Boxing Manager License;
2. February 23, 2017 Boxer-Manager Contract No. 2017-0006 and the February 24, 2017 "Notice of Approved Contract" from the California State Athletic Commission signed by Heather Jackson of the California State Athletic Commission;
3. March 2017 emails concerning the new Promotion Contract Term Sheet;

4. March 22, 2017 Promotion Contract Term Sheet among Diaz, Golden Boy, and Moses Heredia;

5. Emails concerning the Tevin Farmer bout between Roberto Diaz of Golden Boy and the Heredias;

6. Pictures of the cut above Diaz' eye post-Farmer bout;

7. Medical documents and emails concerning Diaz' recovery post Farmer bout;

8. News stories concerning the California State Athletic Commission's decision concerning COVID-19;

9. August 12, 2020 public announcement by MTK Global concerning its signing of Diaz;

10. Screenshots from MTK Global;

11. Press releases from MTK Global;

12. Declaration of Moses Heredia;

13. Text message from Diaz to Moses Heredia on July 24, 2020;

14. Declaration of Ralph Heredia;

15. Relevant text messages to Ralph Heredia;

 a. November 26, 2019 text concerning Diaz' response to Golden Boy's tactics over the Farmer bout;

 b. February 2020 text from Mike Powers offering a $150,000 loan;

 c. March 2020 Drug Test administered by Diaz Sr. (and test interpretation materials);

 d. July 14, 2020 text from Diaz in response to not having to fight the rematch with Tevin Farmer;

 e. August 3, 2020 text from Diaz requesting $2,500 and request to go over current outstanding debt;

 f. August 9, 2020 text from Diaz stating signed a deal with MTK Global;

 g. March 15, 2021 inadvertent text from Diaz seeking illegal drugs;

16. October 2018 Email communications between Diaz and Ralph Heredia concerning Diaz' gambling addiction;

17. Invoices and Communications with Dr. Steve Brown;

18. July 17, 2020 text from Breezh Nunez;
19. Declaration of Lynnay Navarette;
20. Check paid to Steve Martin to represent Diaz in hearing for protective order concerning Navarette;
21. August 20, 2020 Request for Arbitration submitted by Moses Heredia;
22. November 9, 2020 email from VGC to Golden Boy;
23. Public Announcement concerning Diaz' February 13, 2021 bout against Shavkatdzhon Rakhimov;
24. News story concerning Diaz failing to make weight for the February 13, 2021 bout;
25. September 9, 2019 email from Diaz requesting a $245,000 loan in exchange for 30% management fees;
26. August 31, 2020 email from Mark St. Pierre of Closers Corp, LLC;
27. Diaz' arrest and court records;
28. Bout accounting;
29. Debt accounting with receipts;
30. Press concerning MTK's management of Diaz;
31. DAZN article concerning the Rakhimov bout;
32. Transcript of arbitration proceedings in "In the Matter of the Arbitration of Contract Dispute Between MOSES HEREDIA, Manager, and JOSEPH DIAZ, JR., Boxer;"
33. MTK Business advisory agreement signed by Diaz; and
34. Record(s) of the $100,000 payment from an MTK Defendant to Diaz to induce Diaz to breach his boxer-manager agreement with Moses Heredia.
35. Heredia's exhibits in the arbitration
36. Diaz's exhibits in the arbitration

Defendants' Key Documents:

**5. Damages:**

Plaintiff's Position:

Plaintiff seeks compensatory and punitive damages, as well as the recovery of his attorneys' fees, an amount of which will be determined at trial. The realistic range of provable damages will be based on the loss of income and reputational damages suffered by Plaintiff as a result of the Defendants' conduct. The RICO violations authorize treble damages, which Plaintiff will vigorously pursue.

Defendants' Position:

**6. Insurance:**

Plaintiff's Position:

Plaintiff has identified no policy of insurance that may provide coverage in this matter.

Defendants' Position:

**7. Motions:**

Plaintiff's Position:

Plaintiff expects to move for an entry of default and a default judgment against any Defendant that does not answer or otherwise timely respond to the Complaint or who fails to defend itself. After discovery, Plaintiff may determine that a motion for summary judgment is appropriate.

Defendants' Position:

**8. Manual for Complex Litigation:**

The Parties do not anticipate utilizing the Manual for Complex Litigation.

**9. Status of Discovery:**

Plaintiff's Position:

Plaintiff will make his Rule 26(a) Initial Disclosures within thirty days of a Defendant responding or otherwise answering the complaint. Limited settlement discussions have occurred but have not been successful.

**10. <u>Discovery Plan</u>:**

    Plaintiff's Plan:

    a. No changes to the Rule 26(a) disclosures need be made.

    b. Subjects on which discovery may be needed:

        1. For the RICO-related claims, discovery will be required on the source of funding that Kinahan used to establish and control the MTK entities, including taking appropriate judicial notice of facts already established elsewhere; the relevant Defendants' acts on behalf of the other; their control of the MTK entities; their state of mind; damages suffered by Plaintiff; any other issues that may develop through discovery and investigation.

        2. For the state law claims, discovery will be required on the non-Kinahan Defendants' orders to Diaz to instruct GBP to withhold money from Heredia; their knowledge of the contracts at issue; their communications surrounding Diaz's entry into the "business advisory agreement" with MTK; their state of mind; damages suffered by Plaintiff; any other issues that may develop through discovery and investigation.

    c. Discovery need not be conducted in phases or otherwise limited beyond the limits already established in the Federal Rules of Civil Procedure and the Local Rules.

    d. No discovery limitations need be changed or imposed beyond the limits already established in the Federal Rules of Civil Procedure and the Local Rules.

    e. Plaintiff does not anticipate that the Court will need to enter other discovery-related orders, except possibly a Protective Order should one become necessary.

Defendants' Plan:

## 11. Discovery Cut-Off:

The Parties propose a discovery cut-off date of September 1, 2023.

## 12. Expert Discovery:

The Parties propose expert witness disclosures (initial) be disclosed by October 27, 2023, and expert disclosure (rebuttal) by December 1, 2023. The Parties propose a cut-off date for expert witness discovery of January 5, 2024.

## 13. Dispositive Motions:

Plaintiff's Motions: Plaintiff anticipates that he may bring a motion for entry of default and a default judgment against any Defendant who does not answer or otherwise timely respond to the Complaint. After discovery is completed, Plaintiff will evaluate whether to file a motion for summary judgment.

Defendants' Motions:

## 14. Settlement /Alternative Dispute Resolution (ADR):

Although the Parties have attempted to resolve their disputes, no discussions have been successful to date. The Parties are open to participating in ADR through the Court Mediation Panel.

## 15. Trial Estimate:

The trial of this matter will be by the court with a jury. The Parties have not completed sufficient discovery to realistically know the length of the trial but anticipate that the trial of this matter will take approximately seven to ten days. Plaintiff anticipates calling approximately fifteen to twenty witnesses. Defendants anticipate calling approximately _____ witnesses.

## 16. Trial Counsel:

Plaintiff: Eric Montalvo and Rajan O. Dhungana

Defendant MTK Global Sports Management, LLC:

Defendant MTK USA, LLC:

Defendant Daniel Kinahan:

Defendant Paul Gibson:

**17. Independent Expert or Master:**

The appointment of a master is not necessary at this time.

**18. Timetable:**

Please see Exhibit "A", which is attached hereto for the Parties' proposed timetable (Schedule of Pretrial and Trial Dates form).

**19. Amending Pleadings and Adding Parties:**

Plaintiff's Position:

Plaintiff does not currently intend to amend its Third Amended Complaint or add parties but reserves the right to seek leave of Court to do so in the future.

Defendants' Position:

**20. Other Issues:**

Plaintiff's Position:

Unusual legal issues:

1. Kinahan and Gibson are outside the United States. Kinahan is in hiding. Service on these individual defendants may take longer than for a defendant located in the United States, given the more complex procedures involved. Plaintiff's counsel is diligently and persistently moving forward on service of process, some of which has been delayed due to modified rules at the applicable consulates, and at the U.S. State Department, regarding in-person visits.

2. Service on the foreign corporate defendants is complicated by the same set of considerations as for the individual foreign defendants. There may also be some additional investigation necessary to determine the status of the corporate entity. Plaintiff's counsel is diligently conducting said investigation and factoring it into the service protocol to expedite it as much as possible.

3. Kinahan is an SDN and the subject of up to a $5 million reward from the U.S. State Department for information leading to his arrest and/or conviction. Although he is reportedly hiding, Plaintiff's counsel is confident that he will be served in this matter.

4. As an SDN, all Kinahan's property and interests in property that are in the United States or in the possession or control of U.S. persons must be blocked and reported to OFAC. Counsel believes that this may slow but not prevent seizure of Kinahan's assets, pursuant to a default judgment or after a merits hearing.

5. MTK Global reportedly has "ceased operations." It is unclear whether this includes dissolution of the entity. Through appropriate discovery of related entities and persons, Plaintiff intends to determine whether individuals or another entity may be an appropriate substitute.

Defendants' Position:

**21. Consent to Proceed Before Magistrate Judge:**

Counsel for Plaintiff has considered whether a Magistrate Judge of this Court should conduct any and all necessary proceedings and order the entry of judgment in this matter pursuant 28 U.S.C. § 636(c) and General Order 12-01. Plaintiff does not consent to the assignment of this matter to a Magistrate Judge.

Dated: October 7, 2022

Respectfully submitted,            **FEDERAL PRACTICE GROUP**

By: _____

Rajan O. Dhungana
Eric S. Montalvo
*Attorneys for Plaintiff*
Moses Heredia

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), this signatory attests that none of the other parties has appeared through counsel or has been dismissed without prejudice by the Court, so no consent to filing by any other party is possible.

By:_____
Rajan O. Dhungana

## EXHIBIT A: SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

| | |
|---|---|
| **Case No.:** | 5:20-cv-02618-JWH-KKx |
| **Case Name:** | *Moses Heredia v. MTK Global Sports Management, LLC, et al.* |

| Event | Plaintiff's Request month/day/year | Defendants' Request month/day/year | Court's Order |
|---|---|---|---|
| **X** Jury Trial *or* ☐ Bench Trial **(Monday at 9:00 a.m.)** Length: 7-10 days | March 4, 2024 | | |
| Final Pretrial Conference [L.R. 16] **(Friday−17 days before trial date)** | Feb. 16, 2024 | | |
| Hearing on Motions *in Limine* **(Friday−7 days before Final PTC)** | Feb. 9, 2024 | | |
| Last Date to Hear Non-Discovery Motions | Jan. 12, 2024 | | |
| Last Date to Conduct Settlement Conference | Jan. 26, 2024 | | |
| All Discovery Cut-Off (including hearing all discovery motions) | Sept. 1, 2023 | | |
| Expert Disclosure (Rebuttal) | Dec. 1, 2023 | | |
| Expert Disclosure (Initial) | Oct. 27, 2023 | | |

ADR [L.R. 16-15] Settlement Choice:

☒   Attorney Settlement Officer Panel

☐   Private Mediation (Plaintiff's Choice)

☐   Magistrate Judge (Defendants' Choice)

15

JOINT REPORT OF MEETING UNDER RULE 26(f)

**CERTIFICATE OF SERVICE**

    I, Rajan O. Dhungana, hereby certify that on October 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

Dated: October 7, 2022                 By: _____
                                                     Rajan O. Dhungana