

# S.C.P.A.G.

## ALICANTE / ALACANT



ADMINISTRACION
DE JUSTICIA

| SECCIÓN 2 | SECCIÓ 2 |
|---|---|
| Actos de comunicación | Actes de comunicació |

Av. Aguilera, 53 Planta 1ª 03007– ALICANTE/ALACANT
☎ 9659-35778  ☎ 9656-94085  🖷 :965936134 @: scag_a.comunicaconali@gva.es



Ministerio de Justicia    ENTRADA 13/03/2023 10:41:05
Of. Aten. Ciudadano y Reg Gra. Min. Justicia    REGAGE23e00015629186

## **OFICIO**

Adjunto remito Comisión rogatoria 46/23, S/Ref. 393/2023-NPC procedente de Estados Unidos de América, cumplimentada con resultado positivo.

En Alicante a 9 de marzo de 2023.

EL LETRADO DE LA ADMINISTRACIÓN DE JUSTICIA



**MINISTERIO DE JUSTICIA. SUBDIRECCION GENERAL DE**

**COOPERACIÓN JURIDICA INTERNACIONAL. COMISIONES**

**ROGATORIAS.**

**C/SAN BERNARDO NÚM. 62. 28071-MADRID.**



GENERALITAT
VALENCIANA

S.C.P.A.G. **1**
ALICANTE·ALACANT

**Ex. A**

Nº 46/23



**MINISTERIO DE JUSTICIA**

| SECRETARÍA DE ESTADO DE JUSTICIA |
|---|
| DIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA INTERNACIONAL Y DERECHOS HUMANOS |
| SUBDIRECCIÓN GENERAL DE COOPERACIÓN JURÍDICA INTERNACIONAL |

O   F   I   C   I   O

**Juzgado Decano**

**Avda. Aguilera, 53**
**03007 Alicante/Alacant (Alicante/Alacant), España**

S/REF.

N/REF.          0000000393/2023-NPC

FECHA          02/03/2023

ASUNTO:          INCOACIÓN

Adjunto se remite solicitud de auxilio judicial internacional procedente de las autoridades de Estados Unidos De America, relativa a **D./Dª Paul D. Gibson** para la practica de diligencias en España, con el ruego de que se dirija a las autoridades competentes. En concreto se solicita notificación.

Esta solicitud se realiza sobre la base del Convenio relativo a la notificación o traslado en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial, hecho en La Haya el 15 de noviembre de 1965.

Se ruega informe del curso dado a la presente solicitud, a fin de comunicarlo a las autoridades requirentes, aprovechando la ocasión para agradecerle su colaboración.

Madrid a 02/03/2023

POR LA AUTORIDAD CENTRAL

SECCIÓN ACTOS DE COMUNICACIÓN
REGISTRO
- 6 MAR. 2023
ALICANTE

Playa — 1330

C/ SAN BERNARDO, 62
28071 – MADRID
TEL.: 913902269-2381–2280
FAX: 91 390 24 75
e-mail:rogatoriascivil@mjusticia.es

```
Fecha: 03/03/23 [08:36:39 CET]
De: ROGATORIAS CIVIL <rogatoriascivil@mjusticia.es>
Para: "'Decano Alicante (scag_a.generalesali@gva.es)'" <scag_a.generalesali@gva.es>
Asunto: SOLICITUD CR N.REF: 393/2023-NPC
```

Buenos días,

Adjunta se remite comisión rogatoria procedente de las autoridades de Estados Unidos para su ejecución.

Se comunica que esta solicitud sólo se remitirá por correo electrónico.

Ruego acusen recibo de este mensaje a esta dirección de correo electrónico.

Muchas gracias por su colaboración.

Un cordial saludo.

La Autoridad Central Española JCS

Subdirección Gral. Cooperación Jurídica Internacional

Ministerio de Justicia

c/San Bernardo, 62

28071 Madrid

rogatoriascivil@mjusticia.es

*Este correo electrónico y, en su caso, cualquier fichero adjunto al mismo, contiene información de carácter confidencial exclusivamente dirigida a su destinatario o destinatarios y está protegido por el artículo 18.3 de lo Constitución Española, que garantizo el secreto de las comunicaciones. Si usted considera que ha recibido este correo electrónico por error (por el asunto, por el remitente o por cualquier otra causa), le informamos que cualquier revisión, alteración, impresión, copia o transmisión de este mensaje o de cualquier fichero adjunto está prohibida en virtud de lo legislación vigente. En tal caso, se ruego que lo destruya y notifique el error a lo dirección electrónica del remitente.*

*This email and, where appropriate, any file attached to it, contains confidential information exclusively addressed to its recipient or recipients and is protected by article 18.3 of the Spanish Constitution, which guarantees the secrecy of communications. If you believe that you have received this email in error (because of the subject line, the sender or for any other reason), we inform you that any revision, alteration, printing, copying or transmission of this message or any attached file is prohibited in under current legislation. In this case, please destroy it and report the error to the sender's email address.*



**Process** Server One
*Serving your legal papers quickly and cost-effectively*

LITIGATION SUPPORT • PROCESS SERVICE • INVESTIGATIONS
555 ANTON BOULEVARD, SUITE 150
COSTA MESA, CALIFORNIA 92626
TELEPHONE: (855) 493-3463
*Info@ProcessServerOne.com*

January 23, 2023

Ministerio de Justicia
a Mrs. Suaiaia / Sec. Giv. Int. ...

ENTRADA 02/02/2023 09:59:47
REGAGE236000008B3934
(stamp text)

0 2 FEB° 2023

Subdirección General de Cooperación Jurídica Internacional
Ministerio de Justicia
c/ San Bernardo N° 62
28071 MADRID, Spain
Phone: +34 91 390 23 86 / 44 11

Dear Sir or Madam,

We are submitting the enclosed documents as a request for service under The Hague Convention in Spain.

1) A signed USM94, in duplicate
2) The documents to be served, in duplicate, in English and Spanish

Should any further documents be required, or should there be any issue with the enclosed, please contact the undersigned.

We very much appreciate your assistance in this matter.

Thank you

Numan Amjad

Process Server One

# PETICIÓN
# A LOS FINES DE NOTIFICACIÓN O TRASLADO EN EL EXTRANJERO DE UN DOCUMENTO JUDICIAL O EXTRAJUDICIAL

REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
*DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ÉTRANGER D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

### Convenio relativo a la Notificación o Traslado en el Extranjero de Documentos Judiciales y Extrajudiciales en Materia Civil o Comercial,
### firmado en La Haya, el 15 de noviembre de 1965.

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.*

| Identidad y dirección del requirente | Dirección de la autoridad destinataria |
|---|---|
| Identity and address of the applicant | Address of receiving authority |
| *Identité et adresse du requérant* | *Adresse de l'autorité destinataire* |
| Numan Amrad  Process Server One | Subdirección General de Cooperación |
| Under authority from: | Jurídica Internacional |
| Rajan O  Dhungana | Ministerio de Justicia |
| Federal Practice Group | c/ San Bernardo Nº 62 |
| 431 N Brookhurst St. Suite 130, Anaheim, CA 92301. | 28071 MADRID |
| USA, Phone. +1 (310) 795-6905 | Spain |

El requirente infrascrito tiene el honor de remitir – en doble ejemplar – a la autoridad destinataria los documentos enumerados, rogándole, conforme al artículo 5 del Convenio antes citado, haga remitir sin demora un ejemplar al destinatario, a saber:

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.
*Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:*

> **(identidad y dirección)**
> (identity and address) / *(identité et adresse)*
> Paul D. Gibson
> Unit 34, Block E, Calle Clara, Campoamor Zalea Golf Alicante, Spain
>
> C/ CLARA CAMPOAMOR, Nº 14, BW-34

| ☒ | a) | Según las formas legales (artículo 5, párrafo primero, letra a)* |
|---|---|---|
|   |   | in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention* |
|   |   | *selon les formes légales (article 5, alinéa premier, lettre a)* |
| ☐ | b) | Según la forma particular siguiente (artículo 5, párrafo primero, letra b)* |
|   |   | in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)* |
|   |   | *selon la forme particulière suivante (article 5, alinéa premier, lettre b):* |
| ☐ | c) | En su caso, por simple entrega al interesado (artículo 5, párrafo segundo)* |
|   |   | by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)* |
|   |   | *le cas échéant, par remise simple (article 5, alinéa 2)* |

Se ruega a esa autoridad envíe o haga enviar al requirente un ejemplar del documento – y de sus anexos* – con el certificado adjunto.

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with the attached certificate.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes* - avec l'attestation ci-jointe.*

### Enumeración de los documentos
List of documents / *Énumération des pièces*

- Summons, Civil Cover Sheet, Complaint

* Si procede
  If appropriate / *S'il y a lieu*

| Hecho en Costa Mesa, CA, USA | Firma y / o sello |
|---|---|
| Done at / Fait à | Signature and/or stamp / *Signature et / ou cachet* |
| el 23rd Day of January 2023 | |
| Le / le | |

## CERTIFICADO
### CERTIFICATE
### ATTESTATION

**La autoridad infrascrita tiene el honor de certificar, conforme al artículo 6 de dicho Convenio,**
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

☐ **1. que la petición ha sido ejecutada***
that the document has been served *
que la demande a été exécutée *

| — **el (fecha):** | |
|---|---|
| the (date) / (le) (date) | |
| — **en (localidad, calle, número):** | |
| at (place, street, number) / à (localité, rue, numéro) | |

| — **en una de las formas siguientes previstas en el artículo 5:** | |
|---|---|
| in one of the following methods authorised by Article 5 | |
| dans une des formes suivantes prévues à l'article 5 | |

| ☐ | *a)* | **según las formas legales (artículo 5, párrafo primero, letra *a)***  in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention* selon les formes légales (article 5, alinéa premier, lettre a)* | |
|---|---|---|---|
| ☐ | *b)* | **según la forma particular siguiente*:**  in accordance with the following particular method*  selon la forme particulière suivante* | |
| ☐ | *c)* | **por simple entrega***  by delivery to the addressee, if he accepts it voluntarily*  par remise simple* | |

**Los documentos mencionados en la petición han sido entregados a:**
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

| **Identidad y calidad de la persona:**  Identity and description of person  Identité et qualité de la personne | |
|---|---|

| **Vínculos de parentesco, subordinación u otros, con el destinatario del documento:**  Relationship to the addressee (family, business or other):  Liens de parenté, de subordination ou autres, avec le destinataire de l'acte | |
|---|---|

☐ **2. que la petición no ha sido ejecutada, en razón a los hechos siguientes*:**
that the document has not been served, by reason of the following facts*:
que la demande n'a pas été exécutée, en raison des faits suivants*:

| | |
|---|---|

☐ **Conforme al artículo 12, párrafo 2, de dicho Convenio, se ruega al requirente el pago o reembolso de los gastos cuyos detalles figuran en la declaración adjunta*.**
In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*.

### Anexos
Annexes / Annexes

| **Documentos reenviados:**  Documents returned  Pièces renvoyées | |
|---|---|
| **En su caso, los documentos justificativos de la ejecución:**  In appropriate cases, documents establishing the service:  Le cas échéant, les documents justificatifs de l'exécution:  * Si procede  * if appropriate / s'il y a lieu | |

| **Hecho en** _____  Done at / Fait à | **Firma y / o sello**  Signature and/or stamp / Signature et / ou cachet |
|---|---|
| **el** _____  the / le | |

# AVISO
## WARNING
### AVERTISSEMENT

**Identidad y dirección del destinatario**
Identity and address of the addressee
Identité et adresse du destinataire
**Paul D. Gibeon**
Unit 34, Block E, Calle Clara, Campoamor Zalea Golf Alicante, Spain

## IMPORTANTE

**EL DOCUMENTO ADJUNTO ES DE NATURALEZA JURÍDICA Y PUEDE AFECTAR SUS DERECHOS Y OBLIGACIONES. LOS "ELEMENTOS ESENCIALES DEL DOCUMENTO" LE PROPORCIONAN INFORMACIÓN SOBRE SU NATURALEZA Y OBJETO. NO OBSTANTE, ES INDISPENSABLE LEER ATENTAMENTE EL TEXTO DEL DOCUMENTO. PUEDE REQUERIR ASISTENCIA JURÍDICA.**

**SI SUS RECURSOS SON INSUFICIENTES, INFÓRMESE SOBRE LA POSIBILIDAD DE OBTENER ASISTENCIA JUDICIAL O ASESORAMIENTO JURÍDICO EN SU PAÍS O EN EL PAÍS DE ORIGEN DEL DOCUMENTO.**

**LAS SOLICITUDES DE INFORMACIÓN SOBRE LA POSIBILIDAD DE OBTENER ASISTENCIA JUDICIAL O ASESORAMIENTO JURÍDICO EN EL PAÍS DE ORIGEN DEL DOCUMENTO PUEDEN DIRIGIRSE A:**

IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE "SUMMARY OF THE DOCUMENT TO BE SERVED" WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO

TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À

https://www.calbar.ca.gov/Public/Need-Legal-Help/Free-Legal-Help

**Se recomienda que las menciones impresas en esta nota se redacten en francés y en inglés y, en su caso, además, en otra lengua o en otra de las lenguas oficiales del Estado de origen del documento. Los espacios en blanco podrían completarse en la lengua del Estado al que deba remitirse el documento, en francés o en inglés.**

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State in which the document is to be sent, or in English or French.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et, le cas échéant, en outre, dans la langue ou dans l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'État où doit le document doit être adressé, soit en langue française, soit en langue anglaise.

Oficina Permanente, noviembre de 2011

## ELEMENTOS ESENCIALES DEL DOCUMENTO
SUMMARY OF THE DOCUMENT TO BE SERVED
*ÉLÉMENTS ESSENTIELS DE L'ACTE*

Convenio relativo a la Notificación o Traslado en el Extranjero de Documentos Judiciales y Extrajudiciales en materia Civil o Comercial, **firmado en La Haya, el 15 de noviembre de 1965 *(articulo 5, párrafo cuarto)*.**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Nombre y dirección de la autoridad requirente:** Name and address of the requesting authority: *Nom et adresse de l'autorité requérante :* | Numan Amjad Process Server One, Under authority from: Rajan O. Dhungana Federal Practice Group 431 N Brookhurst St, Suite 130, Anaheim, CA 92801, USA. Phone: +1 (310) 795-6905 |
| **Identidad de las partes\*:** Particulars of the parties\* *Identité des parties\** | Plaintiff, Moses Heredia Defendant; Paul D. Gibson |

\* Si procede, identidad y dirección de la persona interesada en la remisión del documento.
*If appropriate, identity and address of the person interested in the transmission of the document.*
*S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*

☒ **DOCUMENTO JUDICIAL \*\***
JUDICIAL DOCUMENT\*\*
*ACTE JUDICIAIRE\*\**

| | |
|---|---|
| **Naturaleza y objeto del documento:** Nature and purpose of the document *Nature et objet de l'acte* | Summons, Civil Cover Sheet, Complaint |
| **Naturaleza y objeto del procedimiento y, en su caso, cuantía del litigio:** Nature and purpose of the proceedings and, when appropriate, the amount in dispute *Nature et objet de l'instance, le cas échéant, le montant du litige* | Civil claim |
| **Fecha y lugar de comparecencia\*\*:** Date and Place for entering appearance\*\* *Date et lieu de la comparution\*\** | N/a |
| **Autoridad judicial que ha dictado la decisión\*\*:** Court which has given judgment\*\* *Juridiction qui a rendu la décision\*\** | N/a |
| **Fecha de la decisión\*\*:** Date of judgment\*\* *Date de la décision\*\** | N/a |
| **Indicación de los plazos que figuran en el documento\*\*:** Time limits stated in the document\*\* *Indication des délais figurant dans l'acte\*\** | Within 21 days after service |

\*\* Si procede
*If appropriate / s'il y a lieu*

☐ **DOCUMENTO EXTRAJUDICIAL \*\***
EXTRAJUDICIAL DOCUMENT\*\*
*ACTE EXTRAJUDICIAIRE\*\**

| | |
|---|---|
| **Naturaleza y objeto del documento:** Nature and purpose of the document *Nature et objet de l'acte* | ——— |
| **Indicación de los plazos que figuran en el documento\*\*:** Time limits stated in the document\*\* *Indication des délais figurant dans l'acte\*\** | ——— |

\*\* Si procede
*If appropriate / s'il y a lieu*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

MOSES HEREDIA,

*Plaintiff(s)*

v.

Civil Action No. 5:20-CV-02618-JWH (KKx)

MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; and DANIEL KINAHAN

*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Paul D. Gibson
Zalea Golf Alicante
Calle Clara Campoamor 14, Bungalow 34, Block E
03540 Alicante (Alacant), Spain

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Rajan O. Dhungana
Federal Practice Group
431 N Brookhurst St. Suite 130
Anaheim, CA 92801
rdhungana@fedpractice.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:     1/20/2023

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 5:20-CV-02618-JWH (KKx)

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Case 5:20-cv-026 18-JWH-KK Document 1 Filed 01/29/22 Page 1 of 3 Page ID #:1431

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ )<br><br>MOSES HEREDIA | DEFENDANTS ( Check box if you are representing yourself ☐ )<br><br>MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY MOSES MEREDIA PROMOTIONS, INC.; PAUL D. GIBSON; and DANIEL KINAHAN |
|---|---|
| (b) County of Residence of First Listed Plaintiff  San Bernardino<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY) |
| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.<br><br>Rajan Q. Dhungana (SBN: 297794), FEDERAL PRACTICE GROUP, 14481 Aspen Street, Hesperia, CA 92344 (310) 795-6905 | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |

| II. BASIS OF JURISDICTION (Place an X in one box only.) | | III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only<br>(Place an X in one box for plaintiff and one for defendant) | | | | |
|---|---|---|---|---|---|---|
| | | | PTF | DEF | | PTF DEF |
| ☐ 1. U.S. Government Plaintiff | ☒ 3. Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 ☐ 4 |
| | | Citizen of Another State | ☐ 2 | ☐ 3 | Incorporated and Principal Place of Business in Another State | ☐ 5 ☐ 5 |
| ☐ 2. U.S. Government Defendant | ☐ 4. Diversity (Indicate Citizenship of Parties in Item III) | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

| IV. ORIGIN (Place an X in one box only.) | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1. Original Proceeding | ☐ 2. Removed from State Court | ☐ 3. Remanded from Appellate Court | ☐ 4. Reinstated or Reopened | ☐ 5. Transferred from Another District (Specify) | ☐ 6. Multidistrict Litigation - Transfer | ☐ 8. Multidistrict Litigation - Direct File |

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Racketeering Influenced and Corrupt Organization (RICO) Act 18 U.S.C. §§ 1961-1968. Violation of RICO statute.

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 530 General | ☐ 835 Patent - Abbreviated New Drug Application |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | **Other:** | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | **SOCIAL SECURITY** |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 861 HIA (1395ff) |
| ☒ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 862 Black Lung (923) |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 485 Telephone Consumer Protection Act | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine<br>☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment<br>☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 367 Health Care/Pharmaceutical Personal Injury | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 899 Admin. Procedures Act/Review or Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (10/20) | **CIVIL COVER SHEET** | Page 1 of 3

Case 5:20-cv-02618-JWH-KK   Document 25-1   Filed 04/28/22   Page 2 of 3   Page ID #:1432

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? | YES. Your case will initially be assigned to the Southern Division. |
|---|---|---|
| ☐ Yes  ☒ No | check one of the boxes to the right ➡ | ☐ Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | check one of the boxes to the right ➡ | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | check one of the boxes to the right ➡ | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | check one of the boxes to the right ➡ | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of plaintiffs who reside in this district reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☒ | ☐ |
| Indicate the location(s) in which 50% or more of defendants who reside in this district reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes  ☒ No | ☒ Yes  ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | EASTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | | ☐ Yes  ☒ No |

Case 5:20-cv-02618-JWH-KK   Document 85-1   Filed 04/29/22   Page 3 of 3   Page ID #:1433

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed in this court?

☐ NO   ☒ YES

If yes, list case number(s):   5:20-cv-02332-JWH-KK

Civil cases are related when they (check all that apply):

☒ A. Arise from the same or a closely related transaction, happening, or event;

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

A civil forfeiture case and a criminal case are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE:  04/29/22

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

Caso 5:20-cv-02618-JWH-KK Documento 85-1 Presentado 04/29/22 Página 1 de 3 ID de página #:1431

## TRIBUNAL DE DISTRITO DE ESTADOS UNIDOS, DISTRITO CENTRAL DE CALIFORNIA

### CARÁTULA DE CASO CIVIL

| I. (a) DEMANDANTES (Indique la casilla si un solo representa un caso asunto) | DEMANDADOS (Marque la casilla si un solo representa una usted marque) |
|---|---|
| MOSES HEREDIA | MTK GLOBAL SPORTS MANAGEMENT, LLC, MTK GLOBAL, USA, LLC; GOLDEN BOY MOSES HEPEDIA PROMOTIONS; PAUL D GIBSON; y DANIEL KINAHAN |
| (b) Condado de residencia del demandante indicado en primer lugar: San Bernardino *(EXCEPTO EN CASOS DE DEMANDANTES DE LOS EE. UU.)* | Condado de residencia del demandado indicado en primer lugar: *(SOLO EN CASOS DE DEMANDADOS DE LOS EE. UU.)* |
| (c) Abogados (nombre, dirección y número de teléfono) Si se está representando a usted mismo, brinde la misma información. | Abogados (nombre, dirección y número de teléfono) Si se está representando a estos mismos, brinde la misma información. |
| Rajan D. Dhungana (SBN: 297942), FEDERAL PRACTICE GROUP, 14481 Aspen Street, Hesperia, CA 92344 (300) 755-6305 | |

### II. FUNDAMENTO DE LA JURISDICCIÓN (Coloque una X solo en una casilla.)

| | | | |
|---|---|---|---|
| ☐1. Gobierno de los EE. UU. Demandante | ☒3. Cuestión federal (el gobierno de los EE. UU. no es una parte) | | |
| ☐2. Gobierno de los EE. UU. demandado | ☐4. Diversidad (indicar la ciudadanía de las partes en el punto III) | | |

### III. CIUDADANÍA DE LAS PARTES PRINCIPALES – lolopara casos de diversidad (Coloque una X en una casilla para el demandante y en otra para el demandado)

| | DEM | DDO | | DEM | DDO |
|---|---|---|---|---|---|
| Ciudadano de este estado | ☐1 | ☐1 | Ciudadano o una deuda o sucursal es en su estado | ☐4 | ☐4 |
| Ciudadano de otro estado | ☐2 | ☐2 | Constituida y constituida en su estado es en otro estado | ☐5 | ☐5 |
| Ciudadano o sujeto de un país extranjero | ☐3 | ☐3 | Nación extranjera | ☐6 | ☐6 |

### IV. ORIGEN (Coloque una X solo en una casilla.)

| | | | | | |
|---|---|---|---|---|---|
| ☒1. Proceso original | ☐2. Retirada del Tribunal Estatal | ☐3. Remitido por el Tribunal de Apelación | ☐4. Reinstaurado o reabierto | ☐5. Transferido de otro distrito (especificar) | ☐6. Litigio de múltiples distritos – Transferencia |
| | | | | ☐6. Litigio de múltiples distritos – litigio directo | |

### V. SOLICITUDES REALIZADAS EN LA DEMANDA: SOLICITUD DE JUICIO POR JURADO ☒ Sí ☐ No  (Marque "Sí" únicamente si se solicita en la demanda)

**ACCIÓN DE CLASE conforme a la Norma 23 de Civ. Fed. 23** ☐ Sí ☒ No    **MONTO SOLICITADO EN LA DEMANDA:**

### VI. CAUSA DE ACCIÓN (Cite la Norma Civil de los EE. UU. conforme a la cual está iniciando la acción y escriba una breve declaración de la causa. No cite normas jurisdiccionales a menos que sea por diversidad).

Ley de Organizaciones Corruptas e Influenciadas por Actividades Ilegales (RICO), artículos 1961-1968 del título 18 del U.S.C. Violación de la Ley de la Ley RICO

### VII. TIPO DE ACCIÓN (Coloque una X solo en una casilla.)

| OTRAS NORMAS | CONTRACTUAL | CONT. SOBRE BIENES INMUEBLES | INMIGRACIÓN | SOLICITUDES DE PERSONAS EN PRISIÓN | DERECHOS DE PROPIEDAD INTELECTUAL |
|---|---|---|---|---|---|
| ☐375 Ley de Reclamos Falsas | ☐110 Seguro | ☐240 Delitos o cuasidelitos civiles sobre tierras | ☐462 Solicitud de naturalización | *Hábeas Corpus:* ☐463 Detenido extranjero | ☐820 Derechos de autor |
| ☐376 Qui Tam (31 USC 3729(a)) | ☐120 Asuntos marítimos | ☐245 Responsabilidad extracontractual del propietario | ☐465 Otras acciones de inmigración | ☐510 Solicitud de anulación de condena | ☐830 Patentes |
| ☐400 Distribución estatal | ☐130 Ley Miller | ☐290 Todo otro relacionado con bienes inmuebles | **DELITO O CUASIDELITO CIVIL: INMUEBLES** | ☐530 General | ☐835 Patente– nuevo fármaco |
| ☐410 Antimonopolio | ☐140 Títulos de crédito | | ☐370 Otro fraude | ☐535 Pena de muerte *Otros:* | ☐840 Marca registrada |
| ☐430 Bancos y banca | ☐150 Cobro de pagos en exceso y ejecución de sentencia | **DELITO O CUASIDELITO CIVIL: SOBRE BIENES PERSONALES** | ☐371 Veracidad en préstamos | ☐540 Mandamiento/Otro | ☐880 Ley de Defensa de Secretos |
| ☐450 Tarifas de la ICC/comercio/etc. | ☐151 Ley de Medicare | ☐310 Aeronave | ☐380 Otros daños a bienes personales | ☐550 Derechos civiles | Comerciales (DTSA) |
| ☐460 Deportación | ☐152 Cobro de préstamo estudiantil en mora (exc. vet.) | ☐315 Responsabilidad por producto de aeronave | ☐385 Responsabilidad por producto | ☐555 Condiciones de encarcelamiento | **SEGURIDAD SOCIAL** |
| ☐470 Organizaciones corruptas e influenciadas por actividades ilegales | ☐153 Cobro de pagos en exceso de beneficios para veteranos | ☐320 Agresión, difamación y calumnias | **CONFISCACIÓN/SANCIÓN** | ☐560 Condiciones de detención civil | ☐861 HIA (1395ff) |
| ☐480 Crédito al consumidor | ☐160 Demandas de accionistas | ☐330 Ley Federal de Responsabilidad del Empleador | ☐625 Incautación de bienes relacionados con drogas, Art. 881 del Título 21 del USC | **LABORAL** | ☐862 Pulmón Negro (923) |
| ☐485 Ley de Protección de Consumidores telefónicos | ☐190 Contractual | ☐340 Marítimo | ☐690 Otros | ☐710 Ley de Estándar en horas de Trabajo | ☐863 DIWC/DIWW (405 (g)) |
| ☐490 TV por cable/satelital | ☐195 Responsabilidad contractual por producto | ☐345 Responsabilidad por producto defectuoso sobre asuntos marítimos | **CONCURSOS Y QUIEBRAS** | ☐720 Relaciones Obrero-Patronales | ☐864 SSID, Título XVI |
| ☐850 Títulos valores/Commodities/Asuntos cambiarios | ☐196 Franquicia | ☐350 Vehículo automotor | ☐423 Apelación Art. 158 del Título 28 del USC | ☐740 Ley de Trabajo Ferroviario | ☐865 RSI (405 (g)) |
| ☐890 Otras acciones legales | **BIENES INMUEBLES** | ☐355 Responsabilidad por producto defectuoso vehículo automotor | ☐423 Retiro, Art. 157 del Título 28 del USC | ☐751 Ley de Licencia Familiar y Médica | **ACCIONES FOR IMPUESTOS FEDERALES** |
| ☐891 Actos agrícolas | ☐210 Expropiación de tierras | ☐360 Otros daños personales | **DERECHOS CIVILES** | ☐790 Otra litigio laboral | ☐870 Impuestos (demandante o demandado de los EE. UU.) |
| ☐893 Asuntos ambientales | ☐220 Ejecución hipotecaria | ☐362 Lesiones personales– Negligencia médica | ☐440 Otros derechos civiles | ☐791 Ley de Seguridad de Ingresos de Jubilación de Empleados | ☐871 IRS–Tercero, Art. 7609 del Título 26 del USC |
| ☐895 Ley de Libertad de Información | ☐230 Alquiler, locación y desalojo | ☐365 Lesiones personales– Responsabilidad por productos defectuosos | ☐441 Votación | | |
| ☐896 Arbitraje | ☐240 Delitos sobre bienes inmuebles | ☐367 Responsabilidad por productos defectuosos por lesiones personales relacionadas con asistencia médica | ☐442 Empleo | | |
| ☐899 Ley de Procedimiento Administrativo/Revisión de apelación de decisión de un organismo | ☐245 Responsabilidad extracontractual sobre productos | ☐368 Responsabilidad por productos defectuosos por lesiones personales con asbesto | ☐443 Vivienda/Adaptaciones | | |
| ☐950 Constitucionalidad de las Normas Estatales | | | ☐445 Ley de Estadounidenses con Discapacidades – Empleo | | |
| | | | ☐446 Ley de Estadounidenses con Discapacidades – Otro | | |
| | | | ☐448 Educación | | |

---

**PARA USO EXCLUSIVO DE LA OFICINA:**    Número de caso:

CV-71 (10/20)    **CARÁTULA DE CASO CIVIL**    Página 1 de 3

Caso 5:20-cv-02618-JWH-KK Documento 85-1 Presentado 04/29/22 Página 2 de 3 ID de página #:1431

**TRIBUNAL DE DISTRITO DE ESTADOS UNIDOS, DISTRITO CENTRAL DE CALIFORNIA**
**CARÁTULA DE CASO CIVIL**

VIII. COMPETENCIA TERRITORIAL: Sus respuestas a las siguientes preguntas determinarán la división del Tribunal a la que se asignará inicialmente este caso. Esta asignación inicial está sujeta a cambios, de conformidad con las Órdenes Generales del Tribunal, una vez que el Tribunal revise su Demanda o Notificación de Retiro.

| PREGUNTA A: ¿Fue retirado este caso del tribunal estatal?<br>☐ Sí ☒ No | | EL CASO ESTATAL SE ENCONTRABA EN TRÁMITE EN EL CONDADO DE: | LA DIVISIÓN INICIAL EN CACD ES: |
|---|---|---|---|
| Si la respuesta es "no", pase a la pregunta D. Si la respuesta es "sí", marque la casilla a la derecha que corresponda, ingrese la división correspondiente en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. | | ☐ Los Ángeles, Ventura, Santa Bárbara o San Luis Obispo | Oeste |
| | | ☐ Orange | Sur |
| | | ☐ Riverside o San Bernardino | Este |

| PREGUNTA B: ¿Son los Estados Unidos o uno de sus organismos o empleados un DEMANDANTE en esta acción?<br>☐ Sí ☒ No | B.1. El 50% o más de los demandados que residen en el distrito, ¿reside en el condado de Orange? | ☐ Sí. Su caso se asignará inicialmente a la División Sur. Ingrese "Sur" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. |
|---|---|---|
| | *Marque una de las casillas a la derecha* → | ☐ NO. Continúe con la pregunta B.2 |
| Si la respuesta es "no", pase a la pregunta C. Si la respuesta es "sí", responda la pregunta B.1.1 la derecha. | B. ¿El 50% o más de los demandados que residen en el distrito, ¿reside en el condado de Riverside o San Bernardino? (Considere los dos condados juntos)<br>*Marque una de las casillas a la derecha* → | ☐ Sí. Su caso se asignará inicialmente a la División Este. Ingrese "Este" en respuesta a la pregunta E que se encuentra más adelante y continúe allí. |
| | | ☐ NO. Su caso se asignará inicialmente a la División Oeste. Ingrese "Oeste" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. |

| PREGUNTA C: ¿Son los Estados Unidos o uno de sus organismos o empleados un DEMANDADO en esta acción?<br>☐ Sí ☒ No | C.1. El 50% o más de los demandantes que residen en el distrito, ¿reside en el condado de Orange? Marque una de las casillas a la derecha | ☐ Sí. Su caso se asignará inicialmente a la División Sur. Ingrese "Sur" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. |
|---|---|---|
| | | ☐ NO. Continúe con la pregunta C.2. |
| Si la residencia es "no", pase a la pregunta D. Si la respuesta es "sí", responda la pregunta C.1 a la derecha. | C.2. El 50% o más de los demandantes que residen en el distrito, ¿reside en el condado de Riverside o San Bernardino? (Considere los dos condados juntos)<br>*Marque una de las casillas a la derecha* → | ☐ Sí. Su caso se asignará inicialmente a la División Este. Ingrese "Este" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. |
| | | ☐ NO. Su caso se asignará inicialmente a la División Oeste. Ingrese "Oeste" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. |

| PREGUNTA D: ¿Lugar de los demandantes y los demandados? | A. Condado de Orange | B. Condado de Riverside o San Bernardino | C. Condado de Los Ángeles, Ventura, Santa Bárbara o San Luis Obispo |
|---|---|---|---|
| Indique el (los) lugar(es) donde reside el 50% o más de los demandantes que residen en este distrito. (Marque No si dos o más es ciertas en blanco si ninguna de estas opciones es aplicable). | ☐ | ☒ | ☐ |
| Indique el (los) lugar(es) donde reside el 50% o más de los demandados que residen en este distrito. (Marque Nada o dos o más demandantes son ciertas si ninguna de estas opciones es aplicable). | ☐ | ☐ | ☒ |

| D.1. ¿Hay al menos una respuesta en la columna A? | D.2. ¿Hay al menos una respuesta en la columna B? |
|---|---|
| ☐ Sí ☒ No | ☒ Sí ☐ No |
| Si la respuesta es "sí", su caso se asignará inicialmente a la DIVISIÓN SUR. | Si la respuesta es "sí", su caso se asignará inicialmente a la DIVISIÓN ESTE. |
| Ingrese "Sur" en respuesta a la pregunta E que se encuentra más adelante y continúe desde allí. | Ingrese "Este" en respuesta a la pregunta E que se encuentra más adelante. |
| Si la respuesta es "no", pase a la pregunta D.2 a la derecha. → | Si la respuesta es "NO", su caso se asignará a la DIVISIÓN OESTE.<br>Ingrese "Oeste" en respuesta a la pregunta E que se encuentra más adelante ↓ |

| PREGUNTA E: ¿División inicial? | DIVISIÓN INICIAL EN CACD |
|---|---|
| Ingrese la división inicial determinada por las preguntas A, B, C o D anteriores: | ESTE |

| PREGUNTA F: ¿Condados del sorte? |
|---|
| El 50% o más de los demandantes o demandados en este distrito, ¿reside en los condados de Ventura, Santa Bárbara o San Luis Obispo? ☐ Sí ☒ No |

Caso 5:20-cv-02618-JWH-KK Documento 85-1 Presentado 04/29/22 Página 3 de 3 ID de página #:1431

**TRIBUNAL DE DISTRITO DE ESTADOS UNIDOS, DISTRITO CENTRAL DE CALIFORNIA**

**CARÁTULA DE CASO CIVIL**

**IX(a). CASOS IDÉNTICOS:** ¿Se ha presentado esta acción previamente en este tribunal?   ☒ No   ☐ Sí

Si la respuesta es "sí", indicue el (los) número(s) de caso:_____

**IX(b). CASOS RELACIONADOS:** ¿Está relacionado este caso (según se define a continuación) con un caso civil o penal previamente presentado en este tribunal?   ☐ No   ☒ Sí

Si la respuesta es "sí", indique el (los) número(s) de caso: 5-20-cw-02332-JWH-KK

Los **casos civiles** están relacionados cuando (marque todas las que se apliquen):

☒ A. Surgen de la misma operación, hecho o evento, u otro muy relacionado;

☒ B. Requieren de la determinación de las mismas cuestiones de derecho o de hecho, u otras muy relacionadas; o

☒ C. Por otros motivos, implicarían una duplicación sustancial del trabajo si diferentes jueces entendieran en los casos.

**Nota:** El hecho de que los casos puedan involucrar la misma patente, marca registrada o derecho de autor no es, en sí mismo, suficiente para considerar que los casos están relacionados.

Un caso de **confiscación civil y un caso penal** están relacionados cuando (marque todas las que se apliquen):

☐ A. Surgen de la misma operación, hecho o evento, u otro muy relacionado;

☐ B. Requieren de la determinación de las mismas cuestiones de derecho o de hecho, u otras muy relacionadas; o

☐ C. Involucrarían a uno o más demandados del caso penal en común y supondrían una duplicación sustancial del trabajo si diferentes jueces entendieran en los casos.

---

**X. FIRMA DEL ABOGADO (O LITIGANTE QUE SE REPRESENTA A SÍ MISMO):** [Firma ilegible] FECHA: 04/29/22

**Notificación a los abogados/las partes:** La Norma Local 3-1 requiere la presentación de esta Carátula de Caso Civil. Este Formulario CV-71 y la información contenida en el presente no reemplazan ni complementan la presentación y la notificación de los escritos iniciales u otros documentos que la ley exija, con excepción de lo dispuesto por las normas judiciales locales. Para obtener instrucciones más detalladas, consulte la hoja de instrucciones por separado (CV-071A).

---

Clave para los códigos estadísticos relacionados con los casos de seguridad social:

| Código para tipo de acción | Abreviatura | Declaración sustantiva de causa de acción |
|---|---|---|
| 861 | HIA | Todos los reclamos por beneficios del seguro médico (Medicare) en virtud de la Parte A del Título 18 de la Ley de Seguridad Social, y modificatorias. Además, incluye reclamos de hospitales, centros de enfermería especializada, etc., por la certificación como proveedores de servicios conforme al programa. (Art. 1935FF(b) del Título 42 del USC). |
| 862 | BL | Todos los reclamos por beneficios de pneumoconiosis conforme a la Parte B del Título 4 de la Ley Federal de Salud y Seguridad en Minas de Carbón de 1969. (Art. 923 del Título 30 del USC). |
| 863 | DIWC | Todos los reclamos presentados por trabajadores asegurados por beneficios del seguro por discapacidad en virtud del Título 2 de la Ley de Seguridad Social, y modificatorias; además de todos los reclamos presentados por beneficios del seguro infantil basados en una discapacidad. (Art. 405 (g) del Título 42 del USC). |
| 863 | DIWW | Todos los reclamos presentados por beneficios del seguro de viudez basados en una discapacidad conforme al Título 2 de la Ley de Seguridad Social, y modificatorias. (Art. 405 (g) del Título 42 del USC). |
| 864 | SSID | Todos los reclamos por pagos de seguridad de ingresos complementarios basados en una discapacidad, presentados en virtud del Título 16 de la Ley de Seguridad Social, y modificatorias. |
| 865 | RSI | Todos los reclamos por beneficios de retiro (vejez) y supervivientes conforme al Título 2 de la Ley de Seguridad Social, y modificatorias. (Art. 405 (g) del Título 42 del USC). |

Case 5:20-cv-02618-JWH-KK Document 85 Filed 04/29/22 Page 1 of 43 Page ID #:1388

Rajan O. Dhungana (SBN: 297794)
rdhungana@fedpractice.com
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905

Eric S. Montalvo (*Pro Hac Vice*)
emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, DC 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053

1
2
3
4
5
6
7
8
9
10
11

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Eastern Division)

| | |
|---|---|
| MOSES HEREDIA, | Case No.: 5:20-cv-02618-JWH-KKx |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| vs. | |
| | **DEMAND FOR JURY TRIAL** |
| MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. GIBSON; and DANIEL KINAHAN, | |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

# S.C.P.A.C



**ADMINISTRACION DE JUSTICIA**

## ALICANTE / ALACANT

| SECCIÓN 2 | SECCIÓ 2 |
|---|---|
| Actos de comunicación | Actes de comunicació |

Av. Aguilera, 53 Planta 1ª 03007- ALICANTE/ALACANT
☎ 9659-35778  ☎ 9656-94085  🖷 :965936184 @: scag_a.comunicaconali@gva.es

**ACUERDO. - / ACORD. -**
**DIRECTOR D. ROMÁN HUERTAS NAFRÍA**

En Alicante/ A Alacant,06/03/2023

Dada cuenta y por recibido la anterior comisión rogatoria, regístrese en los libros informáticos correspondientes y practíquese las diligencias en el mismo interesadas y una vez verificado, repórtese por el mismo conducto de su recibo dejando nota suficiente.

Lo acuerdo y firmo, doy fe.

Donada conta i per rebut l'anterior comisió rogatoria, registre's en els llibres informàtics correspondents i practique's les diligències en el mateix interessades i una vegada verificat, reporte's pel mateix conducte del seu rebut deixant nota suficient.

Ho acorde i firme, En done fe.

DIRECTOR DEL SCPAG DE ALICANTE



GENERALITAT VALENCIANA

1  Rajan O. Dhungana (Número del Colegio de
   Abogados del Estado: 297794)
2  rdhungana@fedpractice. com
   Federal Practice Group
3  14481 Aspen Street
   Hesperia, CA 92344
4  Teléfono: (310) 795-6905
5

6  Eric S. Montalvo *(Pro Hac Vice)*
   emontalvo@fedpractice.com
7  Federal Practice Group
   1750 K Street, N.W., Suite 900
8  Washington, DC 20006
   Teléfono: (202) 862-4360
9  Fax: (888) 899-6053
10

11 **TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**

12

13 **DISTRITO CENTRAL DE CALIFORNIA**

14 **(División Este)**

15 | MOSES HEREDIA, | Caso N.º: 5:20-cv-02618-JWH-KKx |
16 | Demandante, | **TERCERA DEMANDA AMPLIADA** |
17 | vs. | |
18 | | **SOLICITUD DE JUICIO POR JURADO** |
19 | MTK GLOBAL SPORTS MANAGEMENT, LLC; MTK | |
20 | GLOBAL USA, LLC; GOLDEN BOY PROMOTIONS, INC.; PAUL D. | |
21 | GIBSON; y DANIEL KINAHAN, | |
22 | | |
23 | Demandados. | |

24

25

26

27

28

1

TERCERA DEMANDA AMPLIADA

Caso 5:20-cv-02618-JWH-KK Documento 85 Presentado el 04/29/22 Página 2 de 40 ID de página n.º: 13888

El Demandante, el Sr. Moses Heredia (en adelante, "Sr. Heredia" o "Demandante") presenta esta Demanda contra los Demandados, MTK Global Sports Management, LLC (en adelante, "MTK"), MTK Global USA, LLC (en adelante, "MTK USA"), Golden Boy Promotions, Inc. (en adelante, "Golden Boy"), el Sr. Paul D. Gibson (en adelante, "Sr. Gibson") y el Sr. Daniel Kinahan (en adelante, "Sr. Kinahan") (conjuntamente, "Demandados"), y alega, en virtud de sus propios conocimientos y actos, así como de la información y las creencias que tiene sobre todos los demás asuntos, lo siguiente:

## NATURALEZA DEL CASO

1. Este caso, en esencia, surge de un esfuerzo realizado por el Sr. Kinahan para presentarse a sí mismo y a sus asociados como empresarios legítimos mediante el establecimiento de "negocios legítimos", como sus diversas y enumeradas empresas de boxeo, que incluyen MTK USA y MTK Global, para lavar ganancias ilegales y usar esas ganancias para "robar" luchadores de los promotores y mánagers debidamente autorizados, con sus extraordinarios recursos financieros y "reputaciones" de abrirse camino de manera agresiva en el mundo del boxeo profesional. La infusión de dinero en efectivo en el mundo del boxeo profesional tomó por asalto a la industria, y el Sr. Kinahan y sus negocios asociados pronto se convirtieron en una fuerza mundial para tener en cuenta. Uno de sus negocios, MTK, después de saquear el mercado europeo, fijó su mirada en los Estados Unidos. El Sr. Kinahan y sus sustitutos tenían como objetivo la adquisición del Sr. Joseph Diaz (el "Sr. Diaz"), un campeón mundial recientemente coronado que era un luchador en una categoría de peso lucrativa y que tenía un gran potencial de comercialización y rentabilidad. MTK encontró un aliado para esta adquisición en Golden Boy. Golden Boy y sus agentes, en particular Robert Diaz y su abogado, se habían vuelto cada vez más hostiles con el Sr. Heredia debido a sus feroces posiciones de negociación tomadas en nombre del Sr. Diaz y sus otros boxeadores para garantizar que las bolsas de pelea fueran proporcionales a su valor y no en línea con el enfoque de Golden Boy de asignar la menor cantidad posible de la bolsa al luchador para maximizar la rentabilidad de Golden Boy. Golden Boy había intentado históricamente y sin éxito inducir a los boxeadores a abandonar el equipo del Sr. Heredia, que se formó con el liderazgo de Golden Boy antes de la entrada del Sr. Kinahan al mercado estadounidense.

2

2.     Durante ocho años, el Sr. Heredia dirigió la carrera boxística del Sr. Díaz, que culminó con la victoria del Sr. Díaz en un campeonato mundial. A pesar de que el Sr. Heredia tenía un contrato exclusivo de boxeador-mánager con el Sr. Díaz, los Demandados, la mayoría de los cuales no tenían autorización como mánagers, tal como lo exige la ley de California, alejaron al Sr. Díaz del management del Sr. Heredia e interfirieron en el contrato de boxeador-mánager entre el Sr. Heredia y el Sr. Díaz, en última instancia en detrimento financiero y profesional del Sr. Heredia.

3.     Los demandados MTK, el Sr. Kinahan y el Sr. Gibson tienen conexiones con el crimen organizado; el gobierno de los Estados Unidos alega que el Sr. Kinahan, en particular, está operando una "Organización Criminal Transnacional" y, recientemente, fue designado "nacional especialmente designado". Sus acciones en este caso son violaciones a la Ley de Organizaciones Corruptas e Influenciadas por Actividades Ilegales (RICO) y le otorgan el derecho al Sr. Heredia a obtener una indemnización por daños que sea tres veces superior al importe del daño.

## PARTES

4.     El Demandante, Moses Heredia, es una persona que vive en el Condado de San Bernardino, en California.

5.     El Demandado, MTK Global Sports Management, LLC es una entidad comercial en Dubái, Emiratos Árabes Unidos, cuyo número de licencia es 785135 y tiene su oficina registrada en PO Box 454833, Oficina Postal de Al Barsha, Dubái, Emiratos Árabes Unidos. MTK Global Sports Management, LTD es una filial de propiedad de MTK Global Sports Management, LLC, que opera fuera del Reino Unido, y su principal sede comercial se encuentra en 20-22 Wenlock Road, Londres, Inglaterra, N1 7GU. El 20 de abril de 2022 o alrededor de esa fecha, y debido a sus conexiones con el Sr. Kinahan, MTK anunció que dejaría de operar por completo a fines de abril de 2022.

6.     El demandado MTK Global USA, LLC es una sociedad de responsabilidad limitada (*limited liability company*) de Delaware, con un agente registrado, Paracorp Incorporated, con domicilio en 2140 S Dupont HWY, Camden, DE 19934. Según lo que se informa y cree, MTK controla MTK USA.

3

7. El Demandado, Golden Boy Promotions, Inc., es una corporación de California cuya sede principal se encuentra ubicada en 626 Wilshire Blvd. Suite 350, Los Ángeles, CA 90017.

8. El Demandado, Paul D. Gibson es Director de Estrategia de MTK y vive en Alicante, en la Comunidad Valenciana en España.

9. El Demandado, Daniel Kinahan es cofundador y propietario de MTK y vive en Dubái, en los Emiratos Árabes Unidos.

10. El 11 de abril de 2022, la Oficina de Control de Activos Extranjeros (OFAC) del Departamento del Tesoro de los EE. UU. designó al Grupo de Crimen Organizado Kinahan (KOGC) como una "Organización Criminal Transnacional" y designó al Sr. Kinahan, junto con varios otros miembros del KOCG, como "nacionales especialmente designados". Estados Unidos acusó al KOGC de contrabandear a Europa narcóticos mortales, incluida cocaína, y lo declaró como "una amenaza para toda la economía lícita a través de su función en el lavado internacional de dinero".

11. En un comunicado, EE. UU. dijo que el Sr. Kinahan dirige las operaciones diarias de la organización. Como parte de las sanciones, la OFAC prohibió a cualquier persona o compañía estadounidense trabajar con el Sr. Kinahan o un miembro del KOGC.

12. El gobierno de los Estados Unidos ofreció una recompensa de $5 millones por cada información que conduzca a la "destrucción financiera" del KOGC o al arresto y la condena de sus tres líderes, incluido el Sr. Kinahan.

13. Todos y cada uno de los Demandados fueron los agentes, servidores, empleados, empresas conjuntas, socios, filiales y/o co-conspiradores de cada uno de los Demandados y, al realizar o dejar de realizar los actos que se alegan en el presente documento, cada Demandado actuó de forma individual, así como a través de y en conformidad con la presunta capacidad previa, en el curso y alcance de dicha agencia, empleo, empresa conjunta, sociedad, filial y/o conspiración.

4

## COMPETENCIA Y JURISDICCIÓN

14.    Este Tribunal tiene competencia en razón de la materia sobre esta acción, de acuerdo con el § 1964(c) del título 18 del U.S.C., y el § 1331 del título 28 del U.S.C.

15.    La jurisdicción es apropiada en este distrito judicial, de acuerdo con el § 1965 del título 18 del U.S.C., y el § 1391 del título 28 del U.S.C., debido a que una parte sustancial de los hechos o las omisiones que dieron lugar a este reclamo se produjeron en este distrito. Los demandados MTK, el Sr. Gibson y el Sr. Kinahan realizan negocios sustanciales en este distrito judicial, tienen contactos mínimos sustanciales con este distrito judicial o se acogieron intencionalmente a los beneficios y las protecciones de la ley de California a través de la promoción, la venta, la comercialización y la prestación de servicios en California. Asimismo, la jurisdicción es apropiada en este distrito judicial de acuerdo con el § 1391 del título 28 del U.S.C., dado que el Demandado GBP está sujeto a jurisdicción personal en este distrito judicial y reside en este distrito.

## LEYES FEDERALES Y DE CALIFORNIA

16.    En virtud de la ley federal, el término mánager de boxeo significa "una persona que recibe una retribución por su servicio como agente o representante de un boxeador". *Consulte* el § 6301 del título 15 del U.S.C.

17.    De acuerdo con la ley de California, el término mánager de boxeo significa "cualquier persona que... se compromete a... representar de alguna forma el interés de cualquier boxeador profesional... ". Código de Negocios y Profesiones de California, § 18628. Un mánager de boxeo debe estar debidamente autorizado dentro del Estado de California para desempeñar sus funciones en virtud de la ley. Consulte el Código de Negocios y Profesiones de California. § 18642; § 216 del título 4 del CCR.

18.    En virtud de la ley federal, el término promotor de boxeo significa "la persona principalmente responsable de la organización, promoción y producción de un combate de boxeo profesional". § 6301 del título 15 del U.S.C.

19.    En conformidad con la ley de California, el término promotor de boxeo significa "una corporación, sociedad, asociación, persona u otra organización que dirija, celebre o dé un concurso, combate o exhibición de boxeo o artes marciales". Código de Negocios y Profesiones de California. § 18622.

5

TERCERA DEMANDA AMPLIADA

20.   La ley federal crea un "cortafuegos" entre los mánagers y los promotores con el fin de proteger al boxeador. § 6308 del título 15 del U.S.C.

21.   Al igual que con los mánagers, los promotores están obligados a tener una licencia. Código de Negocios y Profesiones de California, § 18641; consulte también el § 213 del título 4 del CCR.

22.   Un promotor autorizado puede hacer negocios con otros promotores autorizados. Código de Negocios y Profesiones de California, § 18668.

23.   Las violaciones a la Ley Federal de Seguridad del Boxeo Profesional de 1996 (PBSA), en su forma enmendada por la Ley de Reforma del Boxeo de Muhammad Ali (la "Ley Ali") conlleva sanciones civiles y penales. Consulte en general el § 6309 del título 15 del U.S.C. La política pública detrás del esquema legislativo, entre otras cosas, es garantizar la transparencia con respecto a cómo un boxeador recibe sus ingresos.

## BREVE EXPOSICIÓN DE LOS HECHOS

### A.   El Sr. Diaz y el Sr. Heredia tenían una relación de boxeador-mánager exitosa y duradera.

24.   El Sr. Heredia conoce al Sr. Diaz desde que el Sr. Diaz competía como boxeador amateur antes de su clasificación para los Juegos Olímpicos de Verano de 2012. Después de que el Sr. Diaz compitiera en los Juegos Olímpicos de Verano de 2012 en Londres, se convirtió en boxeador profesional.

25.   El Sr. Heredia dirigió la carrera boxística del Sr. Diaz durante casi una década. Durante este tiempo, el Sr. Heredia le organizó al Sr. Diaz tres peleas de campeonato mundial y negoció el Acuerdo de Promoción de 2017 con GBP.

26.   Diaz y GBP firmaron el Acuerdo de Promoción el 22 de marzo de 2017. El Acuerdo de Promoción venció el 21 de marzo de 2022.

27.   Los términos del Acuerdo de Promoción le otorgaron al Sr. Diaz una bonificación por firmar de $150.000 y le garantizaron dos peleas con bolsas de $150.000 y $200.000 poco después de la firma del acuerdo.

28.   En su laudo arbitral posterior, el Director Ejecutivo de la Comisión Atlética del Estado de California (la "Comisión") declaró que este Acuerdo de Promoción era "lucrativo" para el Sr. Diaz. El Acuerdo de Promoción también contenía una cláusula de ingresos netos en caso de que el Sr. Diaz fuera el lado "A" de una pelea de evento principal en Pay-Per-View (PPV).

6

29.     El Acuerdo de Promoción contenía una cláusula de "no cesión" para el boxeador, que decía: "Ni los beneficios ni los deberes del Boxeador [el Sr. Díaz] en virtud de este Acuerdo pueden cederse o transferirse por motivo alguno".

30.     El Acuerdo de Promoción también requería que el Sr. Díaz indicara a sus representantes, si los había. El Sr. Díaz mencionó a Moises Heredia y Ralph Heredia.

31.     El Sr. Díaz peleó diez combates bajo la dirección del Sr. Heredia, de conformidad con un Contrato de Boxeador-Mánager con fecha del 23 de febrero de 2017 (el "Contrato de 2017") y su Acuerdo de Promoción con fecha del 22 de marzo de 2017. En todo momento pertinente a esta Demanda, el Contrato de 2017 entre el Sr. Heredia y el tercero, el Sr. Díaz, era válido. La existencia de este Contrato de 2017 era de conocimiento público, figuraba en el sitio web de la Comisión, y todos los Demandados sabían sobre el Contrato de 2017. No hubo problemas con la relación durante más de tres años, hasta que los Demandados en este caso alejaron al Sr. Díaz del management del Sr. Heredia.

**B.     El Sr. Kinahan, a través de MTK y sus afiliadas, está profundamente conectado con el boxeo profesional y también es un narcoterrorista internacional, quien recientemente fue sancionado por el gobierno de los Estados Unidos como consecuencia de su participación en actividades delictivas, incluido el lavado de dinero, y que también resultaron en la incautación de los activos del Sr. Kinahan por parte de los Emiratos Árabes Unidos.**

32.     MTK fue cofundada por el Sr. Kinahan. Se alega que el Sr. Kinahan dirige las operaciones diarias del Grupo de Crimen Organizado Kinahan ("KOCG") en Irlanda. El KOCG supuestamente es responsable, entre otras cosas, de diversos asesinatos, tráfico de drogas y lavado de dinero (actividades delictivas). Se cree que el KOCG es uno de los carteles criminales más grandes de Europa. Las fuerzas policiales creen que el Sr. Kinahan inició varias entidades comerciales legítimas para lavar ganancias obtenidas ilícitamente de actividades delictivas, lo que resultó en que algunas de ellas ya estén incluidas en una lista sancionada.

7

TERCERA DEMANDA AMPLIADA

1     Como consecuencia de la sanción del Sr. Kinahan, toda persona o compañía que realice

2     negocios con él y sus entidades puede ser objeto de las mismas consecuencias; MTK

3     Global ha sufrido un éxodo completo de luchadores y relaciones comerciales que resultaron

4     en su decisión de cesar sus operaciones a fines de abril de 2022. Se conocerá más

5     información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de

    dinero tras una oportunidad razonable de investigación o descubrimiento.

6         33.     La policía cree que el Sr. Kinahan inició MTK para lavar las ganancias

7     ilegales de las actividades delictivas. Se conocerá más información sobre la naturaleza de la

8     participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable

9     de investigación o recabación de pruebas (*discovery*).

10         34.     El Sr. Kinahan es buscado para ser interrogado por diversas agencias de

    cumplimiento por las actividades homicidas del KOCG. Aproximadamente el 16 de

11     septiembre de 2018, la oficina de Aduanas y Protección Fronteriza (CBP) de Estados

12     Unidos prohibió al Sr. Kinahan y a unos otros 26 miembros del KOCG el ingreso a Estados

13     Unidos por motivos relacionados con el narco-terrorismo.

14         35.     En 2016, el Sr. Kinahan huyó de Irlanda a Dubái, Emiratos Árabes Unidos,

    después de que una pelea de boxeo que él promocionó terminara violentamente en el

15     Regency Hotel en Dublín, Irlanda. Durante la pelea de boxeo, diversos hombres armados

16     enmascarados dispararon armas AK-47 contra la multitud, con lo que asesinaron a una

17     persona y lesionaron a varias otras. Este tiroteo fue un presunto atentado contra la vida del

18     Sr. Kinahan por parte de una familia delictiva rival.

19         36.     El 11 de abril de 2022, la Oficina de Control de Activos Extranjeros (OFAC)

20     del Departamento del Tesoro de los EE. UU. designó al Grupo de Crimen Organizado

21     Kinahan como una "Organización Criminal Transnacional" y designó al Sr. Kinahan, junto

    con varios otros miembros del KOCG, como "nacionales especialmente designados".

22         37.     La OFAC acusó al KOGC de contrabandear a Europa narcóticos mortales,

23     incluida cocaína, y lo declaró como "una amenaza para toda la economía lícita a través de

24     su función en el lavado internacional de dinero".

25

26

27

28                               8

38.    En un comunicado, la OFAC dijo que el Sr. Kinahan dirige las operaciones diarias de la organización.

39.    Como parte de las sanciones, la OFAC prohibió a cualquier persona o compañía estadounidense trabajar con el Sr. Kinahan o un miembro del KOGC. Estados Unidos ofreció una recompensa de 55 millones por cada información que conduzca a la "destrucción financiera" del KOGC o al arresto y la condena de cada uno de sus líderes, incluido el Sr. Kinahan.

40.    Los Emiratos Árabes Unidos (EAU) se han sumado a lo que ahora se ha convertido en una investigación global sobre la vida y los delitos del Sr. Kinahan. Los Emiratos Árabes Unidos congelaron todos los activos identificados del Grupo de Crimen Organizado Kinahan y emitieron sanciones contra el Sr. Kinahan y sus socios conocidos: su padre Christopher Vincent 'Christy' Kinahan Sr. y su hermano Christy Jr.

41.    Las compañías estadounidenses ya tienen prohibido realizar negocios con el Sr. Kinahan y los otros seis nombrados como miembros clave del KOCG, junto con tres compañías identificadas.

42.    Los EAU han adoptado las mismas medidas, lo que tendrá un gran impacto en lo que se ha convertido en una escena de boxeo en crecimiento en Dubái. Por ejemplo, el Sr. Kinahan desarrolló una relación con una incipiente empresa de promoción de los EAU llamada "Probellum". Probellum celebró recientemente un evento de dos noches en marzo de 2022, al que asistieron el Sr. Kinahan y Rai Taimoor Khan, el Ministro Provincial de Asuntos de la Juventud, Deportes, Arqueología y Turismo de Punjab.

43.    Khan tuiteó fotos que tomó con el Sr. Kinahan y su asociada Sandra Vaughan, y mencionó una reunión con "Probellum acerca de la alineación de la visión sobre el boxeo para Punjab y cómo hacer que este deporte sea más grande para nuestra juventud. Espero recibir a Daniel en Lahore para analizar la primera pelea internacional de Pakistán con los boxeadores extranjeros de clase mundial InshAllah. Compartiré más información en las próximas semanas".

9

44.　Vaughan adquirió MTK Global de Matthew Macklin, amigo cercano de Kinahan y exretador al título de peso mediano en 2017. La compañía era conocida como MGM Marbella en ese momento, antes de ser renombrada como MTK ("Mack The Knife", por el apodo de Macklin en el ring).

45.　Vaughan asumió el cargo de directora ejecutiva y lo dejó en 2020, aunque ella y Kinahan siguen teniendo una buena relación y son lo suficientemente influyentes como para que el Ministro Provincial de Punjabi crea que representaron a Probellum en su reunión.

46.　El asunto fue admitido por los funcionarios de Probellum como una clasificación errónea, una vez que la OFAC anunció sus sanciones contra el Sr. Kinahan.

**C.　El Sr. Kinahan controla MTK y sus afiliadas.**

47.　MTK ha afirmado que cortó lazos con el Sr. Kinahan en 2017. Esta afirmación es desmentida por la reacción casi inmediata de la palabra del boxeo a la sanción del Sr. Kinahan por la OFAC.

48.　MTK USA pudo haber sido la parte contratante con el Sr. Díaz, pero todas las interacciones con respecto a sus peleas y los asuntos del Sr. Díaz fueron dirigidas por el personal de MTK, incluido Paul Gibson, tal como se refleja en los intercambios de correos electrónicos entre VGC y Golden Boy.

49.　A los pocos días de la designación del Sr. Kinahan como "nacional especialmente designado" por la OFAC y a pesar de que el Sr. Kinahan negó conexiones con cualquier entidad de MTK codemandada, el mundo del boxeo ha dejado al Sr. Kinahan y a la codemandada MTK por saber que su conexión continua con el Sr. Kinahan y sus negocios pondrían en peligro su libertad y sus intereses financieros.

50.　De hecho, poco después de la designación del Sr. Kinahan como "nacional especialmente designado", la codemandada MTK anunció en su sitio web, www.mtkglobal.com: "Dado que los principales promotores ahora nos han informado que romperán todos los lazos con MTK y ya no trabajarán con nuestros luchadores, hemos tomado la difícil decisión de cesar las operaciones para finales de este mes".

10

51. En una entrevista exclusiva con una organización de noticias irlandesa, el fundador y presidente de Top Rank, el Sr. Bob Arum, dijo: "Todos sabemos qué era MTK y quién lo controlaba, y, una vez que Estados Unidos hablara con tanta fuerza como lo hizo, ninguna persona involucrada en el boxeo iba a tener algo que ver con ellos".

52. Cuando se le preguntó si el Sr. Kinahan, según su conocimiento, continúa involucrado en la operación de MTK, el Sr. Arum dijo: "Cien por ciento. Él la fundó. Es su empresa". Además, el Sr. Arum agregó: "Él puede decir lo que quiera. Sé con certeza, por algunas de las cosas que hizo, que era su compañía, más allá de lo que digan los libros".

53. El Sr. Arum había hecho negocios con el Sr. Kinahan y MTK, pero cortó los lazos con ambos después de las designaciones del Sr. Kinahan y del KOCG, realizadas por la OFAC el 11 de abril de 2022.

54. A pesar de las pruebas convincentes de que el Sr. Kinahan dirigía u operaba MTK, el Sr. Kinahan declaró ante este Tribunal lo contrario, bajo pena de falso testimonio, el 14 de marzo de 2022, cuando declaró: "No trabajo ni soy empleado de MTK Global Sports Management, LLC., MTK Global USA, LLC, Golden Boy Productions, Inc., Golden Boy Promotions, Inc., VGC, LLP o Paul D. Gibson". [ECF 73-1]

**D. MTK, sus afiliadas y el Sr. Kinahan lavaron las ganancias de las actividades delictivas del Sr. Kinahan y el KOCG para pagar el dinero a través de MTK y MTK USA con el fin de ayudar a alejar al Sr. Díaz del management del Sr. Heredia.**

55. El 4 de agosto de 2020, MTK USA, a través de un empleado de MTK, firmó lo que se titula y pretende ser un acuerdo de asesoría comercial con el Sr. Díaz, sin el conocimiento del Sr. Heredia. El Sr. Heredia se enteró de la firma a través de un mensaje de texto enviado por el Sr. Díaz al Sr. Ralph Heredia, el hermano del Sr. Heredia, el 9 de agosto de 2020, y luego a través de comunicados de prensa y redes sociales el 12 de agosto de 2020. El Sr. Díaz le envió un mensaje de texto a Ralph Heredia el 9 de agosto de 2020, donde decía: "Firmé un acuerdo de asesoría con MTK, se anunciará mañana. Estoy haciendo esto por mi carrera y siento que es la mejor opción. Es tiempo de un cambio. [Emoji de brazo flexionado]".

11

1   Esto fue un acto intencional de los Demandados MTK, MTK USA, el Sr. Kinahan y el Sr.
2   Gibson, diseñado para inducir un incumplimiento o la interrupción de la relación
3   contractual entre el Sr. Heredia y el Sr. Diaz, y, de hecho, violó o interrumpió la relación
4   contractual entre el Sr. Heredia y el Sr. Díaz. De lo contrario, el Contrato de 2017 se habría
5   cumplido, de no haber sido por la conducta indebida que se ha alegado de estos
    Demandados.

6       56.     En virtud de los términos del presunto acuerdo de asesoría comercial de
7   MTK USA con el Sr. Diaz, MTK USA adelantó $100,000 al Sr. Diaz al momento de la
8   firma del acuerdo. Se cree que estos fondos son ganancias de actividades delictivas,
9   generadas por el Sr. Kinahan y su KOCG, lavadas a través de MTK, el Sr. Kinahan y su
    KOCG.

10      57.     En todo momento pertinente, MTK recibió u obtuvo el dinero utilizado para
11  pagar al Sr. Diaz, ya sea directa o indirectamente, a partir de un patrón de actividades
12  ilegales por el lavado realizado por el Sr. Kinahan de las ganancias provenientes de sus
13  actividades delictivas y las del KOCG. Se conocerá más información sobre la naturaleza de
14  la participación del Sr. Kinahan en MTK tras una oportunidad razonable de investigación o
    descubrimiento.

15      58.     MTK está asociada al Sr. Daniel Kinahan y su KOCG. El KOCG es una
16  asociación de hecho que opera uno de los carteles criminales y operaciones de lavado de
17  dinero más grandes de Europa, según diversas agencias policiales. El Sr. Kinahan cofundó
18  MTK con Matthew "Mack The Knife" (Mack el navaja) Mackline. El Sr. Kinahan concibió
19  y cofundó MTK en un intento de lavar las ganancias ilícitas provenientes de actividades
20  delictivas, con un aparente negocio legal. En este momento, no tenemos indicios de que el
    Sr. Macklin haya participado a sabiendas en ninguna de las actividades empresariales
21  delictivas del Sr. Kinahan. Él, junto con muchos otros profesionales del boxeo, está bajo el
22  escrutinio de las autoridades estadounidenses y, recientemente, se le denegó la entrada a los
23  Estados Unidos como consecuencia de las recientes acciones del Tesoro de los EE. UU.
24  contra el Sr. Kinahan y su KOCG. Se conocerá más información sobre la naturaleza de la
    participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable
25  de investigación o descubrimiento.

26

27

28                                          12

59.   MTK obtuvo o recibió dinero, directa o indirectamente, de las actividades delictivas y el lavado de dinero a través de su asociación con el Sr. Kinahan. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK tras una oportunidad razonable de investigación o descubrimiento.

60.   En todo momento pertinente a esta tercera Demanda ampliada, el Sr. Kinahan continuó organizando combates de boxeo que involucraban a luchadores de MTK. Estos combates fueron solventados por el dinero obtenido de la actividad delictiva del Sr. Kinahan y el KOCG, y estas sumas provinieron de las ganancias de la actividad delictiva del Sr. Kinahan y el KOCG, que luego se lavaron a través de MTK, bajo la apariencia de gastos comerciales legítimos. MTK luego utilizó este dinero para intentar obtener más luchadores y concertar más peleas para que más ganancias de actividades delictivas pudieran lavarse a través de lo que aparentaba ser un negocio legítimo.

61.   Las ansias de MTK por obtener nuevos boxeadores respaldó las necesidades de lavado de dinero del KOCG. Estas ansias llevaron a MTK al mercado estadounidense y a la interferencia en los asuntos del Sr. Díaz y el Sr. Heredia. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK tras una oportunidad razonable de investigación o descubrimiento.

62.   MTK se involucró en un patrón de actividad ilegal al acercarse a varios luchadores estadounidenses y ofrecerles acuerdos similares de "asesoría comercial". Se conocerá más información sobre la naturaleza de la entrada de MTK al mercado de boxeo estadounidense tras una oportunidad razonable de investigación o descubrimiento.

63.   MTK continúa participando en actividades delictivas y de lavado de dinero a través de su asociación con el Sr. Kinahan.

Estos actos posiblemente se repitan en el futuro. MTK promocionó en su sitio web que es una de las fuerzas más grandes en el boxeo y alienta a niños tan jóvenes como de 15 años a firmar contratos con ellos para tener bajo su control más y más boxeadores y, así, continuar la operación de lavado de dinero. Esto incluye un impulso para convertirse en un participante dominante en Estados Unidos, en la medida que MTK continúa su expansión en Estados Unidos. Se conocerá más información sobre la naturaleza de la entrada de MTK al mercado de boxeo estadounidense tras una oportunidad razonable de investigación o recabación de pruebas.

13

TERCERA DEMANDA AMPLIADA

64.    MTK ha participado como mandante en el patrón de actividades ilegales. MTK cometió o asistió, incitó, orientó, comandó, indujo o procuró la comisión de diversos actos previos que forman un patrón de actividades ilegales. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK tras una oportunidad razonable de investigación o descubrimiento.

65.    También, MTK voluntariamente causó que se cometieran dos o más supuestos actos previos que constituyen el patrón de actividades ilegales. MTK cometió estos actos previos con intención o conocimiento. MTK sabe que el Sr. Kinahan está involucrado en actividades delictivas y de lavado de dinero y, sin embargo, MTK sigue asociada al Sr. Kinahan y hace negocios regularmente con el Sr. Kinahán. Además, MTK en sí participaba de actos previos cuando ofreció estos fondos ilícitos al Sr. Diaz.

66.    MTK utiliza los ingresos o ganancias derivados de actividades ilícitas para adquirir, conservar u operar una empresa. Una "empresa" puede estar compuesta por una persona, sociedad, corporación, asociación u otra entidad legal. Aquí, MTK ha intentado adquirir un interés en el Sr. Joseph Diaz, como boxeador profesional. MTK le proporcionó al Sr. Diaz $100.000 para inducirlo a incumplir su contrato con el Demandante, sin la debida licencia o autoridad contractual o legal. Estos fondos derivan directa o indirectamente de actividades ilegales según se describió previamente.

67.    MTK recibe los fondos directa o indirectamente del Sr. Kinahan que se derivan de actividades ilegales, como las actividades delictivas y el lavado de dinero. MTK en sí lava las ganancias ilícitas del emprendimiento de actividades delictivas del KOCG. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento.

14

68.     MTK participa en el comercio interestatal e internacional. Se trata de una entidad comercial extranjera que opera en los Estados Unidos, principalmente en California. MTK utiliza y abusa del derecho estadounidense en un intento de obtener un punto de apoyo en un mercado lucrativo para continuar con sus operaciones de lavado de dinero. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o recabación de pruebas (*discovery*).

Los actos de MTK, el Sr. Kinahan y el Sr. Gibson han causado daños al Demandante: utilizaron ingresos ilegales lavados para dañar al Demandante.

E.    **MTK USA, con MTK y GBP, alejó indebidamente al Sr. Díaz del management del Sr. Heredia y negoció peleas ilegales para el Sr. Díaz.**

69.    El 4 de agosto de 2020, MTK USA, a través de un empleado de MTK, firmó lo que se titula y pretende ser un acuerdo de asesoría comercial con el Sr. Díaz, sin el conocimiento del Sr. Heredia. Esto fue un acto intencional del Demandado GBP, diseñado para inducir un incumplimiento o la interrupción de la relación contractual entre el Sr. Heredia y el Sr. Díaz, y, de hecho, violó o interrumpió la relación contractual entre el Sr. Heredia y el Sr. Díaz. De lo contrario, el Contrato de 2017 se habría cumplido, de no haber sido por la conducta indebida que se ha alegado de este Demandado.

70.    El Sr. Heredia se enteró de la firma a través de un mensaje de texto enviado por el Sr. Díaz al Sr. Ralph Heredia, el hermano del Sr. Heredia, el 9 de agosto de 2020, y luego a través de comunicados de prensa y redes sociales el 12 de agosto de 2020. El Sr. Díaz le envió un mensaje de texto a Ralph Heredia el 9 de agosto de 2020, donde decía: "Firmé un acuerdo de asesoría con MTK, se anunciará mañana. Estoy haciendo esto por mi carrera y siento que es la mejor opción. Es tiempo de un cambio. [Emoji de brazo flexionado]".

71.    Posteriormente, el Sr. Heredia y Ralph Heredia llamaron al Sr. Díaz, pero el Sr. Díaz no respondió y dejó de comunicarse con el Sr. Heredia.

15

TERCERA DEMANDA AMPLIADA

72.     Después de que el Sr. Diaz firmara el acuerdo de "asesoría comercial", GBP y una firma de abogados, VGC, LLP ("VGC"), negociaron para que el Sr. Diaz participara en una defensa del título el 13 de febrero de 2021. Los correos electrónicos y las cartas entre GBP y VGC de noviembre de 2010 demuestran que ciertas personas de estas entidades estaban negociando en forma directa, al tiempo que excluyeron al Sr. Heredia de las negociaciones, a pesar de que el Contrato de 2017 era válido y estaba en plena vigencia y efecto en ese momento.

73.     El Sr. Heredia no participó en la programación del combate y no proporcionó su permiso por escrito para la pelea, a pesar de que el Contrato de 2017 obligaba a que se hiciera. El Sr. Diaz no logró obtener el peso antes de la pelea y fue despojado de su título.

74.     Aunque la pelea se llevó a cabo según lo programado, el Sr. Diaz tuvo que pagar una multa de $100,000 (el 20% de la bolsa) por no tener el peso. La pelea terminó en empate, lo que llevó el récord de Diaz a 33-1-1. Según el Contrato de 2017, Heredia debería haber recibido el 18% ($72,000) de la bolsa reducida del Sr. Diaz por la pelea.

75.     El Sr. Diaz aún no le ha pagado al Sr. Heredia la suma requerida, y el Sr. Heredia ha tenido que iniciar una acción judicial en el estado de California para hacer cumplir esta parte del laudo arbitral.

76.     Si bien el Contrato de 2017 aún era válido y estaba en plena vigencia y efecto entre el Sr. Heredia y el Sr. Diaz, GBP negoció otra pelea para el Sr. Diaz, esta vez el 9 de julio de 2021.

77.     Dado que GBP prohibió que el Sr. Heredia se comunicara con su luchador, el Sr. Diaz, el Sr. Heredia tampoco participó en la programación de esta pelea y no brindó el permiso por escrito requerido para la pelea.

78.     La bolsa del Sr. Diaz para la pelea del 9 de julio de 2021 era de $500,000. Según el Contrato de 2017, Heredia tenía derecho al 18% ($90,000) de la bolsa del Sr. Diaz por la pelea.

79.     En un arbitraje por el incumplimiento del Contrato de 2017 por parte del Sr. Diaz, el árbitro decidió a favor del Sr. Heredia. El Sr. Diaz no pagó al Sr. Diaz [SIC] esa suma hasta 10 días después de que lo ordenara el laudo arbitral.

16

80.     Durante el proceso de arbitraje, GBP, en coordinación con VGC y MTK/MTK USA, presentó un acuerdo de pelea alterado a la Comisión, por un monto significativamente inferior a los $500.000, en un esfuerzo por reducir el monto de pago al Sr. Heredia. La Comisión rechazó este intento de interferir en el Contrato de 2017 y desaprobó el acuerdo de pelea alterado.

81.     En su decisión del 10 de julio de 2021, el Director Ejecutivo finalmente ordenó a GBP que retuviera $90.000 de la bolsa del Sr. Díaz, que era el 18% del pago total de $500.000 por la pelea al Sr. Díaz.

82.     Los combates del 13 de febrero de 2021 y el 9 de julio de 2021 fueron negociados en parte por MTK/MTK USA y sus empleados y agentes, y VGC, Ni MTK, ni MTK USA, ni el Sr. Kinahan, ni el Sr. Gibson ni VGC poseen la licencia adecuada para prestar servicios de management o promoción de boxeo en California.

83.     Estas declaraciones también violaron la ley federal de los EE. UU., que prohíbe que determinadas compañías presten servicios de management y promoción de boxeo. *Consulte* el § 6308 del título 15 del U.S.C.

84.     Como se detalla más adelante, en virtud de los términos del presunto acuerdo de "asesoría comercial" de MTK USA con el Sr. Díaz, MTK USA adelantó $100.000 al Sr. Díaz al momento de la firma del acuerdo. Se cree que estos fondos son ganancias lavadas provenientes de actividades delictivas realizadas por el Sr. Kinahan y su KOCG.

85.     El presunto acuerdo de asesoría comercial establece que MTK USA es el único y exclusivo asesor comercial del Sr. Díaz.

86.     El presunto acuerdo de asesoría comercial de MTK y MTK USA con el Sr. Díaz, en apariencia, solo se trata de una asesoría comercial. Sin embargo, las acciones del Sr. Gibson, MTK/MTK USA y VGC demuestran que, en realidad, se trata de un contrato de management de boxeo. El Sr. Paul Gibson, un empleado de MTK, negoció directamente los términos de una pelea entre el Sr. Díaz y otro luchador, el Sr. Shavkatdzhon Rakhimov, el 13 de febrero de 2021. Además, estos Demandados negociaron y organizaron un segundo combate el 9 de julio de 2021.

17

TERCERA DEMANDA AMPLIADA

87.     El Sr. Heredia le pidió al Sr. Steve Bash, un abogado debidamente autorizado en California, que investigara este acuerdo de "asesoría comercial".

88.     El Sr. Bash llamó al Sr. Bob Yalen, Director Ejecutivo de MTK, el 30 de agosto de 2020. El Sr. Yalen afirmó no tener conocimiento del acuerdo de MTK USA con el Sr. Diaz, pero afirmó que lo investigaría.

89.     Sin embargo, el Sr. Yalen es el signatario de MTK USA en el acuerdo del 4 de agosto de 2020 y se cita en un comunicado de prensa del 12 de agosto de 2020, que dice: "Nos sentimos honrados de dar la bienvenida al equipo a una superestrella del boxeo, el campeón mundial JoJo Diaz. Su increíble récord habla por sí mismo y es uno de los mejores boxeadores libra por libra del mundo, por lo que tenerlo en MTK Global es una declaración de intenciones masiva en términos de nuestra expansión en los Estados Unidos. Actualmente, posee el cinturón de peso súper pluma de la IBF, y estamos decididos a ayudarlo a crecer sobre ese gran éxito".

90.     El 14 de agosto de 2020, el Sr. James Greeley de VGC se acercó al Sr. Bash y le dijo que el Sr. Yalen le pidió que se pusiera en contacto. El Sr. Greeley declaró que representaba al Sr. Diaz. Luego, tuvieron una llamada para conversar sobre la intención de MTK. El Sr. Bash solicitó una copia del acuerdo de MTK USA, que no se proporcionó.

91.     El 20 de agosto de 2020, alrededor de las 8:00 p. m., el Sr. Greeley le envió un correo electrónico al Sr. Bash para coordinar una llamada telefónica. El 21 de agosto de 2020, el Sr. Bash respondió que el Sr. Heredia solicitó no tener más comunicaciones hasta que se proporcionara el acuerdo de MTK USA.

92.     Unas horas más tarde, el Sr. Greeley respondió; indicó varios reclamos contra el Sr. Heredia y solicitó ver todas las ofertas realizadas por GBP. Poco después, el Sr. Bash respondió y proporcionó la información de GBP. Durante este intercambio de correos electrónicos, la retórica del Sr. Greeley siguió aumentando. En algún momento después de este correo electrónico, el Sr. Greeley le indicó a GBP que se comunicara con él como asesor legal de Diaz, y no con el Sr. Heredia; para el 14 de septiembre de 2020, el Sr. Greeley le ordenó al Sr. Bash que le dijera al Sr. Heredia que no tuviera ninguna comunicación con Golden Boy, que pretendiera ser en nombre del Sr. Diaz.

18

TERCERA DEMANDA AMPLIADA

93.   VGC abandonó esta posición durante el arbitraje el 10 de junio de 2021, según consta en la decisión del árbitro.

94.   Poco tiempo después, el 7 de octubre de 2020, se presentó una denuncia por parte del Sr. Díaz y se inició un litigio. Consulte el Expediente N.º 5:20-cv-02332-JWH-KK (C.D. Cal.).

95.   El acuerdo de "asesoría comercial" de MTK USA finalmente se reveló durante el arbitraje el 10 de junio de 2021.

96.   Cuando el Sr. Díaz firmó el presunto acuerdo de asesoría comercial de MTK USA y dejó de comunicarse con el Sr. Heredia, incumplió el Contrato de 2017.

97.   Sin el acuerdo de MTK USA y sin comunicación del Sr. Díaz, el Sr. Heredia buscó confirmar sus derechos en virtud del Contrato de 2017. Los términos del Contrato de 2017 requerían que cualquier disputa se sometiera a arbitraje dentro de las dos semanas posteriores al origen de la disputa.

98.   De conformidad con esta disposición, el 20 de agosto de 2020, el Sr. Heredia presentó una solicitud de arbitraje ante la Comisión con respecto al incumplimiento contractual del Sr. Díaz de conformidad con los términos del Contrato de 2017 y las disposiciones legales y reglamentarias pertinentes.

99.   El Contrato de 2017 establece, en la parte pertinente: "El Boxeador [el Sr. Díaz] acuerda... que el Boxeador no participará, durante la vigencia de este acuerdo, en ningún concurso, exhibición o ejercicio de entrenamiento de boxeo sin haber obtenido primero el permiso por escrito del Mánager [el Sr. Heredia] para hacerlo".

100.   La Comisión aceptó la solicitud de arbitraje; sin embargo, debido a las demoras perpetuadas por el Sr. Díaz, el arbitraje no se llevó a cabo hasta el 10 de junio de 2021.

101.   El árbitro determinó que el Contrato de 2017 entre el Sr. Heredia y el Sr. Díaz era válido, y se ordenó al Sr. Díaz que pagara al Sr. Heredia sus honorarios completos de management por los dos combates antes mencionados que se negociaron sin su asistencia.

19

TERCERA DEMANDA AMPLIADA

102.  Uno de esos pagos se realizó, aunque tarde y frente a un escrutinio significativo por parte de la comisión de California, y el segundo aún no se ha realizado. El Sr. Greely informó a la Comisión del Estado de California que no tenían autoridad para exigir la orden de pago de conformidad con la decisión de arbitraje (no apelada por Diaz), que la Comisión de California rechaza, y el Sr. Heredia no tuvo otras opciones para cobrar estas sumas; recientemente, tuvo que iniciar una acción de cumplimiento en el estado de California para intentar cobrar ese segundo pago adeudado por el Sr. Diaz.

103.  Durante el arbitraje del 10 de junio de 2021, el Director Ejecutivo de la Comisión determinó que la relación del Sr. Diaz y el Sr. Heredia se vio dañada de una manera irreparable.

104.  El 10 de julio de 2021, el Director Ejecutivo, mediante su decisión, canceló el resto del Contrato 2017 debido a la naturaleza irreparable de la relación. El Sr. Heredia se ha visto perjudicado por la finalización anticipada de este contrato.

105.  La finalización anticipada no habría ocurrido si MTK y MTK USA no hubieran inducido el incumplimiento del Contrato de Boxeador-Mánager y si GBP no hubiera facilitado o permitido que MTK, MTK USA y el Sr. Gibson sustituyeran a los mánagers del Sr. Diaz.

106.  VGC, como representante de MTK o MTK USA, negoció combates para el Sr. Diaz mientras el Contrato de 2017 estaba en plena vigencia y efecto legal, usurpando el rol del Sr. Heredia como mánager exclusivo y legal del Sr. Diaz en ese momento.

107.  Por ejemplo, en un correo electrónico del 11 de noviembre de 2020, de VGC a GBP, VGC afirma: "Recibimos su carta. Por supuesto, presentaremos cualquier oferta legítima al Sr. Diaz. Una oferta legítima contiene, al menos, los siguientes elementos: (1) un oponente; (2) una bolsa; (3) una fecha; y (4) una ubicación. A su nota, le falta la mitad de estos elementos; en su lugar, da un marco de tiempo indefinido de dos meses para una pelea, sin una ubicación establecida. Esta propuesta es un pretexto destinado a crear la ilusión de cumplimiento contractual donde no lo existe".

108.  Ninguna persona en VGC o MTK tiene licencia para desempeñar funciones de mánager de boxeo en el estado de California. Consulte Código de Negocios y Profesiones de California, § 18628; consulte en general los §§ 6301 6313 del título 15 del U.S.C.

20

TERCERA DEMANDA AMPLIADA

109.    Estas acciones, por parte de MTK, del Sr. Kinahan, y MTK USA, a través de VGC, son servicios de management por definición, según lo definido por el §18628 del Código de Negocios y Profesiones de California, y fueron tomadas con respecto al Sr. Diaz, en violación del Contrato de 2017.

110.    VGC y MTK hicieron esto a pesar de saber que el Sr. Diaz tenía un contrato válido de boxeador-mánager con el Sr. Heredia. Se conocerá más información sobre la naturaleza del intercambio entre VGC, MTK y GBP tras una oportunidad razonable de investigación o recabación de pruebas (*discovery*).

### F. El Sr. Diaz ordenó a Golden Boy que retuviera los fondos obtenidos legalmente por el Sr. Heredia y adeudados a él.

111.    GBP y el Sr. Heredia tienen una larga historia. Han trabajado juntos durante varios años. Sin perjuicio de su relación comercial de tantos años y el conocimiento de GBP de las violaciones a la ley de MTK. GBP negoció con MTK, para su propio beneficio financiero, como si MTK fuera el mánager del Sr. Diaz, en violación de la Ley de Reforma del Boxeo de Muhammad Ali.

112.    El Sr. Diaz y GBP anunciaron combates para el Sr. Diaz el 13 de febrero de 2021 y el 9 de julio de 2021. Estos combates se basaron en el acuerdo promocional de 2017 con GBP que el Sr. Heredia había negociado previamente para el Sr. Diaz. Esta es otra instancia en la que MTK y GBP han trabajado juntos y excluyeron intencionalmente al Sr. Heredia del proceso, a pesar de que él era el mánager de boxeo exclusivo y legal del Sr. Diaz.

113.    El pago en relación con los combates de boxeo es un proceso bifurcado. Antes de la pelea en sí, el promotor y el boxeador se encuentran, sin el mánager del boxeador, y el boxeador le indica al promotor que entregue cheques a los miembros de su equipo, incluido su mánager. El promotor retiene los cheques hasta después del combate, momento en el cual el promotor entrega los cheques a los beneficiarios correspondientes.

114.    Según el Contrato de 2017, el Sr. Heredia debería haber recibido el 18% ($72,000) de la bolsa reducida del Sr. Diaz por la pelea del 13 de febrero de 2021. MTK, MTK USA y el abogado del Sr. Diaz le aconsejaron al Sr. Diaz que instruyera a GBP que no liberase los fondos que el Sr. Diaz le debía legalmente al Sr. Heredia en virtud del Contrato de 2017 y de conformidad con la Hoja de Términos de Promoción entre GBP, Diaz y Heredia. El Sr. Diaz aún no le ha pagado al Sr. Heredia la suma requerida, y el Sr.

21

1    Heredia ha tenido que iniciar una acción judicial en el estado de California para hacer
2    cumplir esta parte del laudo arbitral.

3         115.    Si bien el Contrato de 2017 aún era válido y estaba en plena vigencia y efecto
4    entre el Sr. Heredia y el Sr. Díaz, GBP negoció otra pelea para el Sr. Díaz, esta vez el 9 de
5    julio de 2021. Dado que GBP prohibió que el Sr. Heredia se comunicara con su luchador, el
     Sr. Díaz, el Sr. Heredia tampoco participó en la programación de esta pelea y no brindó el
6    permiso por escrito requerido para la pelea. La bolsa del Sr. Díaz para la pelea del 9 de julio
7    de 2021 era de $500,000. Según el Contrato de 2017, el Sr. Heredia tenía derecho al 18%
8    ($90,000) de la bolsa del Sr. Díaz por la pelea. Como consecuencia de la interferencia de
9    los Demandados, el Sr. Díaz ordenó a GBP que no pagara al Sr. Heredia los honorarios de
10   management que le correspondían legalmente en virtud del Contrato de 2017. El Sr. Díaz
     no pagó al Sr. Díaz [SIC] esa suma hasta 10 días después de que lo ordenara el laudo
11   arbitral. Al Sr. Heredia no le quedó más opción que iniciar una acción judicial de
12   cumplimiento en el estado de California contra el Sr. Díaz para cobrar esta suma, que
13   corresponde legalmente al Sr. Heredia, en virtud del Contrato de 2017 y el laudo arbitral.

14        116.    Los Demandados han realizado durante años una campaña para arruinar la
     reputación del Sr. Heredia en la comunidad a través de mentiras, sustitutos, acusaciones
15   descaradamente falsas y quejas frívolas o legalmente insostenibles.

16        117.    Los daños han sido importantes. El Sr. Heredia estaba en negociaciones con,
17   al menos, diez posibles atletas olímpicos internacionales, campeones mundiales y
18   boxeadores amateur, que eran agentes libres sin contrato con ningún mánager, en un intento
19   por aprovechar su éxito sin precedentes de tener dos campeones mundiales, incluido uno
     local durante varios años, algo que se considera un "unicornio" en el mundo del boxeo.
20
          118.    Estas acciones se llevaron a cabo estratégicamente para tener un impacto
21   devastador en el Sr. Heredia, particularmente a la luz de los Juegos Olímpicos de Verano de
22   2021, que es un periodo de reclutamiento importante para que los mánagers de boxeo
23   atraigan nuevos talentos. La naturaleza difamatoria y la estrategia agresiva financiada por
24   los demandados para preservar su posición y eliminar al único mánager cuyo éxito era una
     amenaza para ellos le ha costado al Sr. Heredia millones en el reclutamiento de luchadores.
25
          119.    GBP incumplió sus obligaciones contractuales con respecto al acuerdo de
26   promoción de 2017 con respecto al Demandante.

27        120.    MTK, MTK USA, sus agentes y GBP interfirieron abierta y notoriamente en
28                                           22

     TERCERA DEMANDA AMPLIADA

1 el contrato de management de boxeo entre el Sr. Díaz y el Sr. Heredia. Además, MTK,
2 MTK USA y GBP hicieron que el Sr. Díaz incumpliera el Contrato de 2017 con el Sr.
3 Heredia en, al menos, dos ocasiones distintas.

4 El personal de MTK firmó el "acuerdo de asesoría comercial" de MTK USA. Esto
5 sugiere que es una ficción legal que MTK y MTK USA tuvieran una existencia corporativa
6 distinta. El hecho de que exista dicha unidad de participación y titularidad entre MTK y
7 MTK USA sugiere, además, que las personerías jurídicas separadas de las compañías ya no
8 existen y que, si los actos de MTK USA se tratan como propios, se produciría un resultado
9 inequitativo, ya que MTK podría protegerse injustamente de su responsabilidad ante los
10 malos actos que ha cometido en este caso. **CAUSAS DE ACCIÓN**

**PRIMERA CAUSA DE ACCIÓN**

11 **RICO § 1962(a) - Adquisición de una participación en una empresa mediante el
12 uso de los ingresos** (Contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson)

13 121. Los Demandantes incorporan mediante referencia y vuelven a afirmar cada
14 una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su
15 totalidad.

16 122. MTK es una empresa que se dedica al comercio interestatal y cuyas
17 actividades lo afectan. MTK es una empresa de management y promoción de boxeo
18 internacional, y participa de la comercialización de eventos de boxeo y de otros deportes de
19 lucha a través de la televisión e internet. MTK opera en varios mercados, entre los que se
20 encuentra este distrito judicial. MTK se encuentra asociada con el Sr. Kinahan, y el Sr.
21 Gibson es el director de estrategia de MTK. Se conocerá más información sobre la
22 naturaleza de la participación del Sr. Kinahan en MTK tras una oportunidad razonable de
investigación o descubrimiento.

23 123. MTK derivó ingresos, directa o indirectamente, de un patrón de actividades
24 ilegales. Principalmente, mediante la asociación de MTK con el Sr. Kinahan y el KOCG,
25 MTK ha aceptado ingresos provenientes de actividades delictivas y el lavado de dinero.
26 Cualquier inversión realizada por o por medio del Sr. Kinahan es necesariamente un
ingreso derivado, directa o indirectamente, de actividades delictivas y el lavado de dinero.
Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en
27 MTK y el lavado de dinero tras una oportunidad razonable de investigación o
descubrimiento. A decir verdad, estos actos ocurrieron más de una vez, están relacionados

28 23

entre ellos y son continuos tanto en virtud de la teoría de continuidad cerrada como de la teoría de continuidad abierta, dado que la relación entre MTK y el KOCG se estableció a lo largo del tiempo y es probable que se repita en el futuro.

124.    MTK utilizó e invirtió ingresos que eran derivados de un patrón de actividades ilegales en una empresa interestatal. Específicamente, MTK era cofundador, junto con el Sr. Daniel Kinahan que, según se informa, es el líder del KOCG en Irlanda. El KOCG es conocido por varios gobiernos, incluso por el gobierno de los Estados Unidos, por participar del narcoterrorismo, actividades delictivas y lavado de dinero. MTK declara que no posee lazos con el Sr. Kinahan. No obstante, a pesar de que los lazos oficiales en los documentos se hayan roto, el Sr. Kinahan aún influye y controla MTK. Desde el 16 de noviembre de 2020, se informa que MTK aún se encuentra asociada con el Sr. Daniel Kinahan. MTK recibió ingresos del Sr. Daniel Kinahan y del KOCG que eran derivados de un patrón de actividades ilegales en una empresa interestatal. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento. Posteriormente, MTK utilizó dicho ingreso derivado de un patrón de actividades ilegales para adquirir intereses en el Sr. Joseph "JoJo" Díaz, una persona física. Las empresas pueden estar formadas por personas.

125.    La actividad ilegal descrita anteriormente constituye un patrón de actividades ilegales en conformidad con el § 1961(5) del título 18 del U.S.C.

126.    MTK participó como mandante en el patrón de actividades ilegales. MTK, a sabiendas del KOCG y las actividades delictivas y de lavado de dinero del Sr. Kinahan, ayudó e instigó al KOCG y al Sr. Kinahan, o conspiró con ellos, para permitirles utilizar a MTK como una fachada para el lavado de dinero. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento. MTK recibió ingresos derivados de hechos controvertidos, directa o indirectamente, y luego invirtió esos ingresos en la adquisición de un interés del Sr. Joseph Díaz, Jr., una empresa que participa en el comercio interestatal e internacional.

127.    Como resultado directo y próximo de las actividades ilegales de MTK y las violaciones al § 1962(a) del título 18 del U.S.C., el Demandante se ha visto perjudicado con respecto a sus negocios y bienes, en lo siguiente: El Demandante tiene un contrato de boxeador-mánager de representación exclusiva con el Sr. Díaz. El ingreso que MTK

24

1    invierte en el Sr. Díaz perjudica directamente la relación comercial entre el Demandante y

2    el Sr. Díaz, y provocó que este dejase de comunicarse con el Demandante, lo que resultó en

3    que varios servicios previamente contratados en el management del Sr. Díaz se echaran a

4    perder. Además, la interferencia ha perjudicado la reputación del negocio y el fondo de

5    comercio de los Demandantes, así como sus relaciones comerciales futuras. Los boxeadores

6    mexicanos-estadounidenses también poseen la mayor cantidad de empates en el boxeo. La

7    pérdida del título de campeón mundial afecta su permanencia en la comunidad del

8    management del boxeo y entre los promotores de boxeo.

8        · 128.    POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia

9    contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson por lo siguiente: daños, daños cuya

10   indemnización sea tres veces superior al importe del daño, honorarios de abogados

11   razonables y los costos de iniciar la acción judicial.

11                       **SEGUNDA CAUSA DE ACCIÓN**

12   **RICO § 1962(b) – Adquisición o conservación de la participación o el control de**

13                                    **una empresa**

14         (Contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson)

15   129.   Los Demandantes incorporan mediante referencia y vuelven a afirmar cada

16   una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su

16   totalidad.

17   130.   MTK es una empresa que se dedica al comercio interestatal y cuyas

18   actividades lo afectan.

19   131.   MTK adquirió y conservó participaciones y el control de la empresa a través

20   de un patrón de actividades ilegales. Específicamente, el 12 de agosto de 2020, MTK le

21   proporcionó al Sr. Joseph Díaz, Jr., un adelanto de $100,000 a cambio de firmar lo que

22   pretende ser un acuerdo de asesoría comercial, en violación del contrato de boxeador-

22   mánager vigente, firmado entre el Sr. Díaz y el Demandado.

23   132.   El Sr. Díaz es una persona y a todas las personas se las considera

24   "empresas".

25   133.   El anticipo que MTK le proporcionó al Sr. Díaz era derivado, directa o

26   indirectamente de hechos controvertidos relacionados con actividades delictivas y el lavado

27   de dinero, tal como se describió anteriormente. MTK está asociada y conspira con el Sr.

27   Kinahan y el KOCG, uno de los carteles criminales más grandes de Europa. Se conocerá

28                                      25

1    más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el
2    lavado de dinero tras una oportunidad razonable de investigación o recabación de pruebas
3    (*discovery*). MTK sigue conservando su interés en el Sr. Díaz y, recientemente, publicó un
4    mensaje en Twitter sobre un próximo combate requerido por el título, que se realizará el 13
5    de febrero de 2021, entre el Sr. Díaz y el Sr. Shavkatdzhon Rakhimov. Este combate fue
6    programado recientemente sin que hubiese contribución por parte del Demandante ni
7    comunicación con él. Además, MTK sostiene en su sitio web que el Sr. Díaz es uno de
     "sus" boxeadores.

8        134.   La actividad ilegal descrita anteriormente constituye un patrón de actividades
9    ilegales en conformidad con el § 1961(5) del título 18 del U.S.C.

10       135.   MTK ha adquirido y conservado, directa o indirectamente, su participación y
11   control de la empresa a través del patrón de actividades ilegales descrito anteriormente, en
     violación del § 1962(b) del título 18 del U.S.C.

12       136.   Como resultado directo y próximo de las actividades ilegales de MTK y las
13   violaciones al § 1962(b) del título 18 del U.S.C., el Demandante se ha visto perjudicado con
14   respecto a sus negocios y bienes, en lo siguiente: El Demandante tiene un contrato de
     boxeador-mánager de representación exclusiva con el Sr. Díaz. El ingreso que MTK
15   invierte en el Sr. Díaz perjudica directamente la relación comercial entre el Demandante y
16   el Sr. Díaz, y provocó que este dejase de comunicarse con el Demandante, lo que resultó en
17   que varios servicios previamente contratados en el management del Sr. Díaz se echaran a
18   perder. Además, la interferencia ha perjudicado la reputación del negocio y el fondo de
19   comercio de los Demandantes, así como sus relaciones comerciales futuras. Los boxeadores
20   mexicanos-estadounidenses también poseen la mayor cantidad de empates en el boxeo. La
     pérdida del título de campeón mundial afecta su permanencia en la comunidad del
21   management del boxeo y entre los promotores de boxeo.

22       137.   POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia
23   contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson por lo siguiente: daños, daños cuya
24   indemnización sea tres veces superior al importe del daño, honorarios de abogados
     razonables y los costos de iniciar la acción judicial.

25

26

27

28                                          26

TERCERA DEMANDA AMPLIADA

# TERCERA CAUSA DE ACCIÓN

### RICO § 1962(c) - Dirigir los asuntos de una empresa

(Contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson)

138.    Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su totalidad.

139.    MTK es una empresa que se dedica al comercio interestatal y cuyas actividades lo afectan.

140.    El Grupo de Crimen Organizado Kinahan (KOCG) es una asociación de hecho. Consulte Boyle v. United States, 556 Estados Unidos 938, 94546 (2009) (que cita a United States v. Turkette, 452 Estados Unidos 576, 580 (1981)). El KOCG es una empresa que se dedica al comercio interestatal y cuyas actividades lo afectan.

141.    El presunto líder del KOCG, el Sr. Daniel Kinahan, cofundó MTK, un negocio de fachada para los procedimientos ilícitos de lavado derivados de actividades delictivas. Asimismo, MTK y el KOCG formaron una asociación de hecho para promover este esquema. Cuantos más boxeadores pertenezcan a MTK, esto le permite a KOCG lavar más dinero derivado de actividades delictivas. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento.

142.    MTK está asociada con o fue empleada por la empresa asociada de hecho MTK/KOCG. MTK se encuentra asociada con el KOCG tal como se describe anteriormente, debido a su relación con el Sr. Daniel Kinahan. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento.

143.    MTK aceptó, dirigió y participó en la conducción de los asuntos de la empresa asociada de hecho MTK/KOCG a través de un patrón de actividades ilegales y con el fin ilícito de interferir intencional y tortuosamente en el contrato de boxeador-mánager del Demandante. Específicamente, MTK, a través de su asociación con el KOCG, ha estado utilizando ingresos derivados, directa o indirectamente, de las actividades ilícitas del KOCG, entre las que se incluyen actividades delictivas y el lavado de dinero. MTK utilizó este ingreso derivado del KOCG para proporcionarle un adelanto de $100,000 al Sr. Díaz por su próxima bolsa. MTK lo hizo para invertir o adquirir una participación en el Sr. Díaz

37

como boxeador profesional, tal como se describe anteriormente. MTK también se beneficia de esas transacciones, ya que recibe dinero adicional. Dicho de otra forma, MTK puede reinvertir las ganancias de la empresa asociada de hecho MTK/KOCG para seguir creciendo y expandiéndose. Al hacerlo, MTK se convierte en un gran protagonista de la industria del boxeo y destruye operaciones familiares más pequeñas como la del Demandante.

144. MTK sabe que el KOCG está involucrado en actividades delictivas y el lavado de dinero.

145. En conformidad con su plan, y con el fin de promoverlo, la asociación de hecho MTK/KOCG ha cometido múltiples actos relacionados con actividades delictivas y el lavado de dinero. Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o descubrimiento.

146. Las actividades delictivas y el lavado de dinero mencionados anteriormente constituyen un patrón de actividades ilegales en virtud del § 1961(5) del título 18 del U.S.C.

147. MTK ha dirigido y participado, directa o indirectamente, en la dirección de los asuntos de la empresa asociada de hecho MTK/KOCG a través del patrón de actividades ilegales descrito anteriormente, en violación del § 1962(b) del título 18 del U.S.C.

"Con el fin de "participar, directa o indirectamente, en la dirección de los asuntos de dicha empresa,' uno debe tener alguna participación en la dirección de esos asuntos. De hecho, la palabra "participar" deja claro que la responsabilidad en virtud de la RICO no se limita a los principales responsables de los asuntos de la empresa y, tal como reza la frase "directa o indirectamente", se deja claro que la responsabilidad en virtud de la RICO no se limita a aquellos que tienen un cargo formal en la empresa, pero se requiere alguna participación en la dirección de los asuntos de la esta.

Reves v. Ernst & Young, 507 Estados Unidos 170, 179 (1993); consulte también Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1281 (Circuito 11, 2006) ("... un demandado en virtud de la RICO debe "dirigir" o "participar" en los asuntos de alguna empresa más grande y no solo en sus propios asuntos"). Se conocerá más información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o recabación de pruebas (*discovery*).

28

148. Como resultado directo y próximo de las actividades ilegales de MTK, el Sr. Kinahan y el Sr. Gibson y las violaciones al § 1962(c) del título 18 del U.S.C., el Demandante se ha visto perjudicado en sus negocios y bienes, en lo siguiente: El Demandante tiene un contrato de boxeador-mánager de representación exclusiva con el Sr. Díaz. La dirección de MTK/KOCG de la empresa asociativa de hecho interfiere de forma directa con esta relación contractual. Esta interferencia ha perjudicado la relación comercial entre el Demandante y el Sr. Díaz, interfirió con otros contratos de boxeo y provocó que el Sr. Díaz dejase de comunicarse con el Demandante, lo que resultó en que varios servicios previamente contratados en el management del Sr. Díaz se echaran a perder. Además, la interferencia ha perjudicado la reputación del negocio y el fondo de comercio de los Demandantes, así como sus relaciones comerciales futuras. Los boxeadores de etnia mexicana son los que más atraen en la profesión del boxeo y la pérdida de un campeón · mundial del boxeo mexicano tiene amplias repercusiones negativas en los esfuerzos de contratación y retención del Sr. Heredia y su habilidad para negociar con empresas promocionales, lo que se demuestra además con la disposición de GBP para ignorar su posición contractual a pesar de los varios años de relación profesional.

149. POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson por lo siguiente: daños, daños cuya indemnización sea tres veces superior al importe del daño, honorarios de abogados razonables y los costos de iniciar la acción judicial.

## CUARTA CAUSA DE ACCIÓN

### RICO § 1962(d) – Conspiración para dirigir los asuntos de una empresa
(Contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson)

150. Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su totalidad.

151. Tal como se estableció anteriormente, MTK aceptó y conspiró para violar el § 1962(a) (b) and (c) del título 18 del U.S.C. Específicamente, MTK conspiró con la empresa asociada de hecho KOCG para: (1) usar o invertir los ingresos derivados de un patrón de actividades ilícitas en una empresa interestatal (§ 1962(a)); (2) adquirir y conservar la participación en el Sr. Díaz como boxeador profesional, a través de un patrón de actividades ilícitas (§ 1962(b)); y (3) dirigir y participar en la dirección de los asuntos de

29

la empresa asociativa de hecho MTK/KOCG a través del patrón de actividades ilícitas §
1962(c)). Se conocerá más información sobre la naturaleza de la participación del Sr.
Kinahan en MTK y el lavado de dinero tras una oportunidad razonable de investigación o
descubrimiento.

152. MTK ha conspirado de forma intencional y ha aceptado, directa e
indirectamente, usar o invertir ingresos derivados de un patrón de actividades ilícitas en una
empresa interestatal, adquirir o conservar la participación en la empresa a través de un
patrón de actividades ilícitas y dirigir y participar en la dirección de los asuntos de la
empresa asociada de hecho MTK/KOCG a través de un patrón de actividades ilícitas.

153. MTK conocía que los hechos controvertidos de su parte eran parte de un
patrón de actividades ilegales y aceptó cometer aquellos actos para promover los planes
descritos anteriormente. Esa conducta constituye una conspiración para violar el § 1962(a),
(b) and (c) del título 18 del U.S.C., y el § 1962(d) del título 18 del U.S.C. Se conocerá más
información sobre la naturaleza de la participación del Sr. Kinahan en MTK y el lavado de
dinero tras una oportunidad razonable de investigación o descubrimiento.

154. Como resultado directo y próximo de la conspiración de MTK y los actos
evidentes para fomentar la conspiración, y las violaciones al § 1962(d) del título 18 del
U.S.C., el Demandante se ha visto perjudicado en sus negocios y bienes, en lo siguiente: El
Demandante tiene un contrato de boxeador-mánager de representación exclusiva con el Sr.
Diaz. La dirección de MTK/KOCG de la empresa asociativa de hecho interfiere de forma
directa con esta relación contractual.

155. El ingreso que MTK invierte en el Sr. Diaz perjudica directamente la relación
comercial entre el Demandante y el Sr. Diaz, y provocó que este dejase de comunicarse con
el Demandante, lo que resultó en que varios servicios previamente contratados en el
management del Sr. Diaz se echaran a perder. Además, la interferencia ha perjudicado la
reputación del negocio y el fondo de comercio de los Demandantes, así como sus relaciones
comerciales futuras. Los boxeadores mexicanos-estadounidenses también poseen la mayor
cantidad de empates en el boxeo. La pérdida del título de campeón mundial afecta su
permanencia en la comunidad del management del boxeo y entre los promotores de boxeo.

156. POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia
contra MTK, MTK USA, el Sr. Kinahan y el Sr. Gibson por lo siguiente: daños, daños cuya
indemnización sea tres veces superior al importe del daño, honorarios de abogados

30

1 | razonables y los costos de iniciar la acción judicial.

2 | ## QUINTA CAUSA DE ACCIÓN

3 | ### Interferencia tortuosa con el contrato de boxeador-mánager

(Contra MTK, MTK USA, el Sr. Gibson y GBP)

4 |

5 | 157. Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su

6 | totalidad.

7 | 158. En todos los momentos pertinentes, hubo un Contrato de Boxeador-Mánager

8 | (Contrato de 2017) entre el Sr. Heredia y un tercero, el Sr. Joseph Díaz, Jr. Este contrato se

9 | firmó el 23 de febrero de 2017 ante la Comisión Atlética del Estado de California y habría

10 | durado cinco años, pero el 10 de julio de 2021 fue cancelado por el Director Ejecutivo de la Comisión. Durante todo el tiempo pertinente, este contrato fue válido y exigible.

11 | 159. Cada demandado conocía el Contrato de 2017 entre el Sr. Heredia y el Sr.

12 | Díaz, que requería que se le pagara al Sr. Heredia el 18% de los ingresos de combate del Sr.

13 | Díaz como honorarios de management.

14 | 160. Como consecuencia de la interferencia de los Demandados, el Sr. Díaz

15 | ordenó a GBP que no le pagara al Sr. Heredia los honorarios de management que le correspondían legalmente en dos ocasiones distintas: una en relación con una pelea del 13

16 | de febrero de 2021 y otra en relación con una pelea del 9 de julio de 2021.

17 | 161. MTK, MTK USA, el Sr. Gibson y GBP realizaron actos intencionales

18 | diseñados para inducir un incumplimiento o una interrupción de la relación contractual

19 | entre el Sr. Heredia y el Sr. Díaz al instruirle al Sr. Díaz que ordenara a GBP retener del Sr. Heredia sus honorarios de management del 18% exigidos por contrato, por la pelea del 13

20 | de febrero de 2021, que el Sr. Díaz aún no ha pagado, y la pelea del 9 de julio de 2021, que

21 | el Sr. Heredia no recibió hasta 10 días después de que lo ordenara el laudo arbitral.

22 | 162. MTK, MTK USA, el Sr. Gibson y GBP, de hecho, incumplieron o

23 | interrumpieron la relación contractual entre el Sr. Heredia y el Sr. Díaz al retener del Sr.

24 | Heredia sus honorarios de management del 18%, exigidos por contrato por la pelea del 13

25 | de febrero de 2021, que el Sr. Díaz aún no ha pagado, y la pelea del 9 de julio de 2021, que el Sr. Heredia no recibió hasta 10 días después de que lo ordenara el laudo arbitral.

26 | 163. De no haber sido por las acciones de interferencia de MTK, MTK USA, el

27 | Sr. Gibson y GBP, el pago de los honorarios por los combates del Sr. Heredia, adeudados a

28 | 31

TERCERA DEMANDA AMPLIADA

él en virtud del Contrato de 2017, se habría realizado a tiempo.

164.    Las acciones de MTK, MTK USA, el Sr. Gibson y GBP causaron daños al Sr. Heredia, ya que le instruyeron al Sr. Díaz que ordenara a GBP retener el dinero adeudado por contrato al Sr. Heredia por el Sr. Díaz, lo que provocó que el Sr. Heredia perdiera el uso de los fondos que se le debían legalmente durante el tiempo que fueron retenidos de manera ilegal, por la pelea del 9 de julio de 2021 y, hasta el día de hoy, por la pelea del 13 de febrero de 2021. Además, las acciones de MTK, MTK USA, el Sr. Gibson y GBP han perjudicado al Sr. Heredia de otras maneras.

165.    Por ejemplo, el Sr. Heredia perdió la supervisión del Sr. Díaz, el boxeador que representaba. Se está manchando la imagen del Sr. Heredia en las redes sociales y se ha perdido la confianza en sus negocios, ya que otros ven sus derechos y contratos como si estuvieran pisoteados por MTK, MTK USA, el Sr. Gibson y GBP. Además, la relación del Sr. Heredia con otros boxeadores que actualmente tienen contratos con ellos se ha visto obstruida. La relación comercial del Sr. Heredia con GBP también se ha visto afectada negativamente.

166.    Además, las acciones de MTK, MTK USA, el Sr. Gibson y GBP aseguraron el deterioro de esta relación personal y profesional notablemente exitosa y de larga data entre el Sr. Heredia y el Sr. Díaz, lo que desencadenó la necesidad de un arbitraje, que luego resultó en una adjudicación porcentual reducida por combates, por parte de la Comisión de California, que tuvo que equilibrar los ingresos futuros del luchador con los derechos contractuales exigibles que existían, tal como se refleja en el laudo arbitral. Tal como lo confirma el Arbitraje, estos daños adicionales están directamente relacionados con el daño irreparable a esta relación, que fue causado por este grupo de asaltantes corporativos que actuaron sin ninguna autoridad contractual o legal para realizar negocios dentro de cualquier jurisdicción y, en particular, el estado de California.

167.    Las conductas de MTK, MTK USA y sus agentes, incluidos el Sr. Gibson y VGC, y de GBP fueron los factores sustanciales en el daño causado al Demandante. Si no fuera por la interferencia de MTK, MTK USA, el Sr. Gibson y GBP, el contrato del Demandante con el Sr. Díaz no hubiese tenido interferencias y los daños no se hubieran causado. La conducta de MTK, MTK USA, el Sr. Gibson y GBP es un factor sustancial en el daño causado al Demandante.

168.    POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia

32

contra los demandados por lo siguiente: daños, daños cuya indemnización sea tres veces
superior al importe del daño, honorarios de abogados razonables y los costos de iniciar la
acción judicial, todo por un importe que se determinará en la etapa oral del juicio.

### SEXTA CAUSA DE ACCIÓN

#### Interferencia tortuosa con el contrato de promoción-mánager

#### (Contra MTK y MTK USA)

169.  Los Demandantes incorporan mediante referencia y vuelven a afirmar cada
una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su
totalidad.

170.  En todo momento pertinente, hubo un contrato de promoción de boxeo entre
el Demandado GBP y el Sr. Joseph Diaz, Jr. El Demandante también firmó este contrato
como representante del Sr. Diaz y es un tercero beneficiario. Este contrato se firmó el 22 de
marzo de 2017 y tiene una duración de cinco años.

171.  Este contrato es válido y aplicable.

172.  La conducta de MTK y MTK USA, así como la colusión de GBP, evitó el
cumplimiento o hizo que el cumplimiento de este contrato fuera más costoso o difícil. El Sr.
Diaz no se comunicó con el Sr. Heredia cuando MTK y MTK USA organizaron con GBP
una pelea obligatoria por el título el 13 de febrero de 2021 y otra el 9 de julio de 2021.
MTK y MTK USA son "ajenos" a este contrato y son responsables en derecho por su
interferencia intencional. La conducta de MTK y MTK USA incluye ordenar a GBP que no
se comunicara con el Sr. Heredia, el mánager de boxeo del Sr. Diaz.

173.  Estas acciones causaron tiempo y gastos adicionales al Sr. Heredia para
contratar abogados y hacer valer sus derechos. El Sr. Heredia no puede cumplir con su
función como representante de boxeo del Sr. Diaz y negociar combates en nombre del Sr.
Diaz.

174.  MTK y MTK USA tuvieron la intención de interrumpir el cumplimiento de
este contrato o sabían que la interrupción del cumplimiento era un hecho o que
sustancialmente sucedería.

175.  El Sr. Joseph Diaz ya no se comunica con el Sr. Heredia en lo que respecta a
su carrera como boxeador.

176.  MTK afirma ser una "empresa" o un "asesor comercial" para el Sr. Diaz; sin
embargo, MTK y MTK USA no se comunican con el Sr. Heredia. En cambio, MTK y

33

TERCERA DEMANDA AMPLIADA

MTK USA están desempeñando funciones de management para el Sr. Diaz y tratando de ponerse en el lugar del Sr. Heredia como representante del boxeador en virtud del acuerdo de promoción.

177. MTK no tiene licencia ni está calificado como mánager de boxeo según lo exige la ley de California.

178. Como consecuencia de la interferencia de los Demandados, el Sr. Diaz ordenó a GBP que no pagara al Sr. Heredia los honorarios de management que le correspondían legalmente en virtud del Contrato de Boxeador-Mánager por la pelea del 13 de febrero de 2021. MTK, MTK USA y sus agentes desean que esta interrupción suceda, ya que su meta es que el Sr. Diaz se convierta en uno de sus boxeadores. Con dicho fin, deben destruir, a través de cualquier medio disponible, el contrato válido y existente entre el Sr. Diaz, GBP y el Sr. Heredia.

179. El Sr. Heredia ha sufrido daños por las acciones de MTK y MTK USA. El Sr. Heredia no tiene supervisión alguna del boxeador que está dirigiendo. MTK y MTK USA se han insertado como representantes del boxeador y han desplazado al Sr. Heredia. Además, la relación del Sr. Heredia con otros boxeadores que actualmente tienen contratos con ellos se ha visto obstruida. La relación comercial del Demandante con GBP también se vio afectada negativamente.

180. La conducta de MTK y MTK USA fueron factores sustanciales en causar daño al Demandante. Si no fuera por la interferencia de MTK y MTK USA, el rol del Demandante como el representante del Sr. Diaz en virtud del contrato de promoción no hubiese tenido interferencias y los daños no se hubieran causado.

### SÉPTIMA CAUSA DE ACCIÓN

#### Inducir al incumplimiento de contrato de boxeador-mánager

#### (Contra MTK, MTK USA y GBP)

181. Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su totalidad.

182. Los Demandados MTK y MTK USA intencionalmente causaron que el Sr. Joseph Diaz, Jr. incumpliera su contrato de boxeador-mánager con el Sr. Heredia.

183. En todo momento pertinente, existió un Contrato de Boxeador-Mánager (el "Contrato de 2017") entre el Sr. Heredia y un tercero, el Sr. Joseph Diaz, Jr. Este contrato

34

TERCERA DEMANDA AMPLIADA

Caso 5:20-cv-02618-JWH-KK Documento 85 Presentado el 04/29/22 Página 35 de 40 ID de página n.º: 13886

se firmó el 23 de febrero de 2017 ante la Comisión Atlética del Estado de California y habría durado cinco años, pero el 10 de julio de 2021 fue cancelado por el Director Ejecutivo de la Comisión. Durante todo el tiempo pertinente, este contrato fue válido y exigible.

184.    MTK, MTK USA y GBP sabían que este contrato existía y que requería que el Sr. Heredia recibiera el 18% de los ingresos por el combate del Sr. Diaz como honorarios de management.

185.    Como consecuencia de la interferencia de los Demandados, el Sr. Diaz ordenó a GBP que no le pagara al Sr. Heredia los honorarios de management que le correspondían legalmente en dos ocasiones distintas: una en relación con una pelea del 13 de febrero de 2021 y otra en relación con una pelea del 9 de julio de 2021.

186.    MTK, MTK USA, el Sr. Gibson y GBP realizaron actos intencionales diseñados para inducir un incumplimiento o una interrupción de la relación contractual entre el Sr. Heredia y el Sr. Diaz al instruirle al Sr. Diaz que ordenara a GBP retener del Sr. Heredia sus honorarios de management del 18% exigidos por contrato, por la pelea del 13 de febrero de 2021, que el Sr. Diaz aún no ha pagado, y la pelea del 9 de julio de 2021, que el Sr. Heredia no recibió hasta 10 días después de que lo ordenara el laudo arbitral.

187.    MTK, MTK USA, el Sr. Gibson y GBP, de hecho, incumplieron o interrumpieron la relación contractual entre el Sr. Heredia y el Sr. Diaz al retener del Sr. Heredia sus honorarios de management del 18%, exigidos por contrato por la pelea del 13 de febrero de 2021, que el Sr. Diaz aún no ha pagado, y la pelea del 9 de julio de 2021, que el Sr. Heredia no recibió hasta 10 días después de que lo ordenara el laudo arbitral.

188.    De no haber sido por las acciones de interferencia de MTK, MTK USA, el Sr. Gibson y GBP, el pago de los honorarios por los combates del Sr. Heredia, adeudados a él en virtud del Contrato de 2017, se habría realizado a tiempo.

189.    Las acciones de MTK, MTK USA, el Sr. Gibson y GBP causaron daños al Sr. Heredia, ya que le instruyeron al Sr. Diaz que ordenara a GBP retener el dinero adeudado por contrato al Sr. Heredia por el Sr. Diaz, lo que provocó que el Sr. Heredia perdiera el uso de los fondos que se le debían legalmente durante el tiempo que fueron retenidos de manera ilegal, por la pelea del 9 de julio de 2021 y, hasta el día de hoy, por la pelea del 13 de febrero de 2021.

190.    Además, las acciones de MTK, MTK USA, el Sr. Gibson y GBP han

35

TERCERA DEMANDA AMPLIADA

perjudicado al Sr. Heredia de otras maneras. Por ejemplo, el Sr. Heredia perdió la supervisión del Sr. Díaz, el boxeador que representaba. Se está manchando la imagen del Sr. Heredia en las redes sociales y se ha perdido la confianza en sus negocios, ya que otros ven sus derechos y contratos como si estuvieran pisoteados por MTK, MTK USA, el Sr. Gibson y GBP.

191.   Además, la relación del Sr. Heredia con otros boxeadores que actualmente tienen contratos con ellos se ha visto obstruida. La relación comercial del Sr. Heredia con GBP también se ha visto afectada negativamente. Las conductas de MTK, MTK USA y sus agentes, incluidos el Sr. Gibson y VGC, y de GBP fueron los factores sustanciales en el daño causado al Demandante. Si no fuera por la interferencia de MTK, MTK USA, el Sr. Gibson y GBP, el contrato del Demandante con el Sr. Díaz no hubiese tenido interferencias y los daños no se hubieran causado. La conducta de MTK, MTK USA, el Sr. Gibson y GBP es un factor sustancial en el daño causado al Demandante.

192.   La conducta de MTK, MTK Global y GBP es un factor sustancial en el daño causado al Demandante. Una persona no tiene justificación para inducir a otro a incumplir un contrato simplemente porque son la competencia de una de las partes del contrato y buscan ampliar su propia ventaja económica a expensas de la otra parte.

193.   POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia contra los demandados por lo siguiente: daños, daños cuya indemnización sea tres veces superior al importe del daño, honorarios de abogados razonables y los costos de iniciar la acción judicial, todo por un importe que se determinará en la etapa oral del juicio.

## OCTAVA CAUSA DE ACCIÓN

### Interferencia intencional con las relaciones económicas prospectivas

### (Contra MTK, MTK USA y GBP)

194.   Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertara aquí en su totalidad.

195.   Los Demandados MTK, MTK USA y GBP interfirieron intencionalmente en las relaciones económicas entre el Sr. Heredia y el Sr. Joseph Díaz, Jr., que probablemente hubieran resultado en un beneficio económico para el Sr. Heredia. Es decir, el Sr. Heredia tenía un contrato con el Sr. Díaz para management de boxeo y, debido a su interferencia, los Demandados MTK, MTK USA y GBP han afectado la relación futura entre el Sr. Díaz

36

TERCERA DEMANDA AMPLIADA

1  y el Sr. Heredia, así como la capacidad del Sr. Heredia para atraer a otros boxeadores
2  prometedores.

3      196.  En todos los momentos pertinentes, hubo un Contrato de Boxeador-Mánager
4  (Contrato de 2017) entre el Sr. Heredia y un tercero, el Sr. Joseph Díaz, Jr. Este contrato se
5  firmó el 23 de febrero de 2017 ante la Comisión Atlética del Estado de California y habría
6  durado cinco años, pero el 10 de julio de 2021 fue cancelado por el Director Ejecutivo de la
  Comisión. Durante todo el tiempo pertinente, este contrato fue válido y exigible.

7      197.  MTK, MTK USA y GBP sabían que este contrato existía y que requería que
8  el Sr. Heredia recibiera el 18% de los ingresos por el combate del Sr. Díaz como honorarios
9  de management. Como consecuencia de la interferencia de los Demandados, el Sr. Díaz
10  ordenó a GBP que no le pagara al Sr. Heredia los honorarios de management que le
11  correspondían legalmente en dos ocasiones distintas: una en relación con una pelea del 13
  de febrero de 2021 y otra en relación con una pelea del 9 de julio de 2021.

12      198.  MTK, MTK USA y GBP realizaron actos intencionales diseñados para
13  inducir un incumplimiento o una interrupción de la relación contractual entre el Sr. Heredia
14  y el Sr. Díaz al instruirle al Sr. Díaz que ordenara a GBP retener del Sr. Heredia sus
15  honorarios de management del 18% exigidos por contrato, por la pelea del 13 de febrero de
16  2021 y la pelea del 9 de julio de 2021, que el Sr. Heredia no recibió hasta 10 días después
  de que lo ordenara el laudo arbitral.

17      199.  MTK, MTK USA y GBP, de hecho, incumplieron o interrumpieron la
18  relación contractual entre el Sr. Heredia y el Sr. Díaz al retener del Sr. Heredia sus
19  honorarios de management del 18%, exigidos por contrato por la pelea del 13 de febrero de
20  2021, que el Sr. Díaz aún no ha pagado, y la pelea del 9 de julio de 2021, que el Sr. Heredia
21  no recibió hasta 10 días después de que lo ordenara el laudo arbitral. Las acciones de MTK,
22  MTK USA y GBP al violar o interrumpir la relación contractual entre el Sr. Heredia y el Sr.
23  Díaz no solo interfirieron en las expectativas del Sr. Heredia, sino que los demandados se
24  involucraron en una conducta que fue ilícita por alguna medida legal distinta del hecho de
25  interferencia en sí mismo, por ejemplo, al instruir al Sr. Díaz que ordenara a GBP retener
  los fondos obtenidos legalmente por el Sr. Heredia y adeudados a él, lo que causó un daño
  financiero y de reputación al Sr. Heredia.

26      200.  De no haber sido por las acciones de interferencia de MTK, MTK USA y
27  GBP, el pago de los honorarios del Sr. Heredia por los combates, adeudados a él en virtud

28                  37

TERCERA DEMANDA AMPLIADA

1  del Contrato de 2017, se habría realizado a tiempo, y el Sr. Heredia habría podido atraer a

2  otros boxeadores a su management, lo que le habría permitido obtener honorarios de

3  management adicionales.

4     201.   Las acciones de MTK, MTK USA, el Sr. Gibson y GBP causaron daños al

5  Sr. Heredia, ya que le instruyeron al Sr. Diaz que ordenara a GBP retener el dinero

5  adeudado por contrato al Sr. Heredia por el Sr. Diaz, lo que provocó que el Sr. Heredia

6  perdiera el uso de los fondos que se le debían legalmente durante el tiempo que fueron

7  retenidos de manera ilegal, por la pelea del 9 de julio de 2021 y, hasta el día de hoy, por la

8  pelea del 13 de febrero de 2021.

9     202.   Además, las acciones de MTK, MTK USA, el Sr. Gibson y GBP han

   perjudicado al Sr. Heredia de otras maneras. Por ejemplo, el Sr. Heredia perdió la

10 supervisión del Sr. Diaz, el boxeador que representaba. Se está manchando la imagen del

11 Sr. Heredia en las redes sociales y se ha perdido la confianza en sus negocios, ya que otros

12 ven sus derechos y contratos como si estuvieran pisoteados por MTK, MTK USA y GBP.

13    203.   Además, la relación del Sr. Heredia con otros boxeadores que actualmente

14 tienen contratos con ellos se ha visto obstruida. Aún más, la capacidad del Sr. Heredia para

15 atraer nuevos boxeadores prometedores se ha visto obstaculizada por esta interferencia, lo

   que podría costarle los honorarios de management de los boxeadores que optaron por no

16 firmar con él. Finalmente, la relación comercial del Sr. Heredia con GBP también se ha

17 visto afectada en forma negativa.

18    204.   Las conductas de MTK, MTK USA y sus agentes, incluido VGC, y de GBP

19 fueron los factores sustanciales en el daño causado al Demandante. Si no fuera por la

   interferencia de MTK, MTK USA, el Sr. Gibson y GBP, el contrato del Demandante con el

20 Sr. Diaz no hubiese tenido interferencias y los daños no se hubieran causado. La conducta

21 de MTK, MTK USA y GBP es un factor sustancial en el daño causado al Demandante.

22    205.   POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia

23 contra los demandados por lo siguiente: daños, daños cuya indemnización sea tres veces

24 superior al importe del daño, honorarios de abogados razonables y los costos de iniciar la

   acción judicial, todo por un importe que se determinará en la etapa oral del juicio.

25

26

27

28                                  38

   TERCERA DEMANDA AMPLIADA

## NOVENA CAUSA DE ACCIÓN

### Interferencia negligente en posibles relaciones económicas

(Contra MTK y MTK USA)

206.  Los Demandantes incorporan mediante referencia y vuelven a afirmar cada una de las acusaciones contenidas en los párrafos anteriores como si se insertaran aquí en su totalidad.

207.  MTK USA y MTK saben o deberían haber sabido de la relación.

208.  MTK USA y MTK saben o deberían haber sabido que esta relación se interrumpiría si no actuaban con un cuidado razonable.

209.  MTK USA y MTK no actuaron con cuidado razonable.

210.  MTK USA y MTK se han involucrado en conductas ilícitas, que incluye, entre otras, inducir un incumplimiento contractual, la interferencia ilícita en un contrato y violaciones de la autoridad legal con respecto al management de boxeo.

211.  La relación del Sr. Heredia con el Sr. Diaz ha sido interrumpida por las acciones de MTK USA y MTK.

212.  La conducta ilícita de MTK USA y MTK es un factor sustancial en el daño causado al Sr. Heredia.

213.  Esta conducta ilícita ha resultado en un daño financiero para el Sr. Heredia, que incluye la pérdida de los honorarios de management del Sr. Diaz.

### PETICIÓN DE RESARCIMIENTO

POR LO TANTO, el Demandante solicita que este Tribunal dicte sentencia y una decisión contra los Demandados por lo siguiente:

1.  Daños compensatorios por un monto a ser determinado en el juicio;

2.  Daños triples por un monto a ser determinado en el juicio;

3.  Intereses previos y posteriores a la sentencia a la tasa máxima permitida por la ley;

4.  Honorarios razonables de abogados;

5.  Costos del juicio; y

6.  Todas las demás reparaciones adicionales que el Tribunal pueda considerar justas y apropiadas.

7.  Se requiere se establezca una fecha para el juicio.

39

TERCERA DEMANDA AMPLIADA

1    Fecha: 29 de abril de 2022        Se presenta respetuosamente,

2                             */s/ Rajan O. Dhungana*

3                             Rajan O. Dhungana (Número del Colegio de
Abogados del Estado: 297794)

4                             FEDERAL PRACTICE GROUP
14481 Aspen Street

5                             Hesperia, CA 92344
Teléfono: (310) 795-6905

6                             rdhungana@fedpractice. Com

7

8                             */s/ Eric S. Montalvo*
Eric S. Montalvo (Pro Hac Vice)

9                             FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900

10                           Washington, D.C. 20006
Teléfono: (202) 862-4360

11                           Fax: (888) 899-6053
emontalvo@fedpractice.com

12

13                           *Abogados del Demandante,*

14                           Moses Heredia

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          40

TERCERA DEMANDA AMPLIADA



AMERICAN LANGUAGE SERVICES

*Making the World Smaller*

## CERTIFICATION OF TRANSLATION
AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENTS

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached  English
  into      Spanish       documents. The documents are referred to as:

  "MOSES HEREDIA vs MKT GLOBAL SPORTS MANAGEMENT, LLC - CASE NO.: 5:20-cv-02618-
  JWH-KKX - THIRD AMENDED COMPLAINT DEMAND FOR JURY TRIAL - MOSES HEREDIA"

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that
  such translations are, to the best of their knowledge and belief, true and accurate translations
  in      Spanish       of the corresponding      English      documents.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is
  true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and
  omissions in the translation of the attached documents.

- Executed on this      Twentieth      day of      January      , 2023 at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

*ata* MEMBER

Member # 244954

1849 SAWTELLE BLVD. SUITE 600       ·LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

**CALIFORNIA JURAT**                                    GOVERNMENT CODE § 8202

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___LOS ANGELES___

Subscribed and sworn to (or affirmed) before me on

this __20th__ day of ___January___, 20__23__, by
    *Date*       *Month*      *Year*

(1) _____REUBEN TRUJEQUE_____

NANCY ZUNIGA
COMM. #2360765
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 11, 2025

(and (2)_____).
            *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____

*Place Notary Seal and/or Stamp Above*             *Signature of Notary Public*

──────────── OPTIONAL ────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
MOSES HEREDIA vs MTK GLOBAL SPORTS MANAGEMENT, LLC - CASE
NO.: 5:20-cv-02618-JWH-KKX - THIRD AMENDED COMPLAINT

Title or Type of Document: _____DEMAND FOR JURY TRIAL - MOSES HEREDIA'_____

Document Date: ____See attached_____ Number of Pages: ___43___

Signer(s) Other Than Named Above: _____

©2019 National Notary Association



AMERICAN LANGUAGE SERVICES

*Making the World Smaller*

## CERTIFICATION OF TRANSLATION
AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENTS

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached  English into    Spanish    documents. The documents are referred to as:

  "MOSES HEREDIA vs MKT GLOBAL SPORTS MANAGEMENT, LLC - CASE NO.. 5:20-cv-02618-JWH-KKX - THIRD AMENDED COMPLAINT DEMAND FOR JURY TRIAL - MOSES HEREDIA"

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translations are, to the best of their knowledge and belief, true and accurate translations in    Spanish    of the corresponding    English    documents.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached documents.

- Executed on this    Twentieth    day of    January    , 2023 at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

ata MEMBER
American Translators Association

Member # 244464

1849 SAWTELLE BLVD. SUITE 600     LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

**CALIFORNIA JURAT**                                    GOVERNMENT CODE § 8202

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  LOS ANGELES

Subscribed and sworn to (or affirmed) before me on

this __20th__ day of ___January___ 20_23_, by
       *Date*              *Month*        *Year*

(1) _____ REUBEN TRUJEQUE _____

[and (2) _____ ),
                        *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.

Signature _____
                    *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

NANCY ZUNIGA
COMM. #2360765
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 11, 2025

_____ OPTIONAL _____

*Completing this information can deter alteration of the document or*
*fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
MOSES HEREDIA vs MKT GLOBAL SPORTS MANAGEMENT, LLC - CASE
NO.: 5:20-cv-02618-JWH-KKX - THIRD AMENDED COMPLAINT
Title or Type of Document: _____ DEMAND FOR JURY TRIAL - MOSES HEREDIA"

Document Date: ___See attached_____ Number of Pages: ___43~

Signer(s) Other Than Named Above: _____

©2019 National Notary Association



# S.C.I. A.G.

## ALICANTE / ALACANT

| SECCIÓN 2 | SECCIÓ 2 |
|---|---|
| Actos de comunicación | Actes de comunicació |

JUZGADO DE     N.º     DE  CALIFORNIA.

AUTOS: **COMISIÓN ROGATORIA**    N.º  46  / 23

---

## - DILIGENCIA DE COMUNICACIÓN -

( TRASLADO,ENTREGA Y EN SU CASO, NOTIFICACIÓN, EMPLAZAMIENTO, CITACIÓN  O REQUERIMIENTO )

En Alicante a _____ 7 _____ de ___ marzo ___ de 2023

Yo el/la funcionario/a de la Sección 2ª del SCPAG de Alicante, me constituí en el domicilio indicado como de _Paul D. Gibson_

sito en _Clase Campoamor, Nº 14, Bº - 34_

de esta localidad a fin de practicar la presente diligencia de comunicación acordada en el procedimiento anteriormente mencionado.

Hallando a _el mismo. DNI E-Y 154459-T_
le hice entrega _tercera Demanda ampliada y solicitud_
_de juicio por jurado ante el tribunal de distrito_
_de Estados Unidos. Distrito Central de California._
_El citado solicita se le entregue copia en inglés_

Lo que se entrega en sobre cerrado y hecha la prevención sobre el carácter reservado de los datos personales contenidos y su no comunicación n difusión conforme a la Ley Orgánica 3/2018, de 5 de diciembre de Protección de Datos Personales y garantía de derechos digitales y demás normativa complementaria.

Leída la presente la encuentra conforme, firmando en prueba de su recibo, de todo lo cual CERTIFICO.

EL/LA  HALLADO/A           EL/LA FUNCIONARIO/A



ADMINISTRACION
DE JUSTICIA

# S.C.P.A.G.

## ALICANTE / ALACANT

| SECCIÓN 2 | SECCIÓ 2 |
|---|---|
| Actos de comunicación | Actes de comunicació |

Av. Aguilera, 53 Planta 1ª 03007- ALICANTE/ALACANT
☎ 9659-35778   ☎ 9656-94085   ✆ :965936184 @: scag_a.comunicaconali@gva.es

**ACUERDO. - / ACORD. -**
**DIRECTOR D. ROMÁN HUERTAS NAFRÍA**

En Alicante/ A Alacant,09/03/2023.

Habiéndose cumplimentado la Comisión rogatoria núm. 46/23, procedente de Estados Unidos de América, con resultado positivo en la persona del buscado, Paul D. Gibson, devuélvase por el conducto de su recibo.



DIRECTOR DEL SCPAG DE ALICANTE



GENERALITAT
VALENCIANA

**Translation Services USA LLC**

11 Broadway, Suite 552, New York, NY 10004
Phone: (800) 790-3680, Fax: (212) 537-6674

*Translated from Spanish*

# S.C.P.A.G.

## ALICANTE

**SECTION 2**
**Acts of communication**

| COURT OF | N° | OF CALIFORNIA |
|---|---|---|
| ORDER: ROGATORY COMMISSION | | N° 46 / 23 |

## -  COMMUNICATION PROCEDURE  -

(TRANSFER, DELIVERY AND, IF APPLICABLE, NOTIFICATION, SUMMONS, CITATION OR REQUEST)

In Alicante on _____ March _____ 7, _____ 2023 _____

I, the official of Section 2 of the SCPAG of Alicante, constituted myself at the address indicated as of _____ Paul D. Gibson.

located at ___ Clare Campoamor, No. 14, BW-34 _____

of this locality, in order to practice the present communication procedure agreed upon in the previously mentioned procedure.

Finding __ the same NIE-41544597-T _____

I delivered <u>third expanded lawsuit and request for trial by jury before the District Court of the United States. Central District of California. The aforementioned requests a copy in English.</u>

This is delivered in a sealed envelope and prevention made on the reserved nature of personal data contained and its non-communication or dissemination in accordance with Organic Law 3/2018, of December 5, on the Protection of Personal Data and guarantee of digital rights and other complementary regulations.

Having read this document, they agree, signing as proof of receipt, all of which I CERTIFY.

*[Original signed]*                                         *[Original signed]*

THE FOUND                                                   THE OFFICIAL

*Page 1 of 3*

**Translation Services USA LLC**

11 Broadway, Suite 552, New York, NY 10004
Phone: (800) 790-3680, Fax: (212) 537-6674

*Translated from Spanish*

| | |
|---|---|
| | <div align="center"># S.C.P.A.G.<br>## ALICANTE</div> |
| **JUSTICE**<br><br>**ADMINISTRATION** | **SECTION 2**<br>**Acts of communication**<br>**Av. Aguilera, 53 Planta  1° 03007-ALICANTE**<br>**9659-35778 9656-94085 965936184 scag_a.comunicaconali@gva.es** |
| | **AGREEMENT.-**<br><br>**DIRECTOR Mr. ROMÁN HUERTAS NAFRÍA**<br><br><br>In Alicante, 03/09/2023.<br><br><br>Having completed the Rogatory Commission number 46/23, from the United States of America, with a positive result in the person of the wanted, Paul D. Gibson, please return through your receipt.<br><br><br><br><div align="center">[Original signed and sealed]<br>DIRECTOR OF ALICANTE SCPAG</div> |
| VALENCIAN<br><br>GENERALITAT | |

**Translation Services USA LLC**

11 Broadway, Suite 552, New York, NY 10004

Phone: (800) 790-3680, Fax: (212) 537-6674

# Translation Certification

| Translation of "Legal Document" from **Spanish** to **English** language |
| --- |

We, Translation Services USA LLC, a professional translation company, hereby certify that the above-mentioned document has been translated by an experienced and qualified professional translator and that, in our best judgment, the translated text truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Translation Services USA LLC assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

Kavita Ramgahan, Project Coordinator

Translation Services USA LLC

Dated:   August 4, 2023

| Notarization: |
| --- |
| Sworn and subscribed before me this date  August 4, 2023 |
| _____, New York, New York |
| (Notary Public) |