**BEFORE AN ARBITRATOR**
**STATE ATHLETIC COMMISSION**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

| | |
|---|---|
| **In the Matter of the Arbitration of Contract Dispute Between:**<br><br>**MOSES HEREDIA, Manager,**<br><br>and<br><br>**JOSEPH DIAZ, JR., Boxer** | **DECISION OF THE ARBITRATOR** |

## INTRODUCTION

On June 10, 2021, this matter came before Andrew Foster, Executive Officer for the California State Athletic Commission (Commission). Mr. Foster, acting in his official capacity, was duly appointed by the Commission to arbitrate the contract dispute between Moses Heredia (Manager) and Joseph Diaz, Jr. (Boxer). The Boxer-Manager contract (generally referred to herein as "the Contract") in dispute was executed by the parties on February 23, 2017.

The arbitration convened by videoconference at approximately 10:15 a.m. on June 10, 2021, pursuant to written notice to all parties. (See Exhibit 1, Notice of Arbitration)  Manager was present and represented by attorney Eric Montalvo of the Federal Practice Group. Boxer was present and represented by attorney James Greeley of VGC, LLP. The following witnesses were duly sworn and provided testimony at the arbitration hearing: Joseph Diaz, Jr., Moses Heredia,

Ralph Heredia, and Steven Bash. All evidentiary exhibits submitted by the parties were received without objection.

This decision is based on the arbitrator's consideration of the parties' briefs, the documentary and testimonial evidence presented, and pertinent legal authority.

## **LICENSURE OF BOXER AND MANAGER**

Manager is, and was at all times relevant to this arbitration, a boxing manager, duly licensed by the Commission. Boxer is, and was at all times relevant to this arbitration, a boxer, also duly licensed by the Commission. (See Exhibits 2 & 3, CSAC license certifications.)

## **JURISDICTION**

Professional Boxing is regulated in California by Business and Professions Code (Code) section 18600, et seq., known as the Boxing Act, and California Code of Regulations, title 4, section 220, et seq., which are the duly enacted regulations that supplement the legislature's statutory framework.

Code section 18613 provides, in pertinent part:

> (a) (1) The commission shall appoint a person exempt from civil service who shall be designated as an executive officer and who shall exercise the powers and perform the duties delegated by the commission and vested in him or her by this chapter. The appointment of the executive officer is subject to the approval of the Director of Consumer Affairs.

Code section 18855 provides:

> The commission shall recognize and enforce contracts between boxers or martial arts fighters and managers and between boxers or martial arts fighters and licensed clubs. Contracts shall be executed on printed forms approved by the commission. The commission may recognize or enforce a contract not on its printed form if entered into in another jurisdiction. No other contract or agreement may be recognized or enforced by the commission. All disputes between the parties to the contract, including the validity of the contract, shall be arbitrated by the commission pursuant to the provisions of the contract. Subject to Section 227 of Title 4 of the California Code of Regulations, a person who seeks arbitration of a contract shall send a written request to the commission's headquarters and to the office of the Attorney General. The commission may seek cost recovery related to arbitration proceedings from the parties subject to the proceedings.

California Code of Regulations, title 4, section 221, subdivision (b), states in pertinent part:

> All disputes between the parties to the contract, including the validity of the contract, shall be arbitrated pursuant to the provisions of the contract.

Additionally, paragraph C.4 of the Contract states, in pertinent part, that "[a]ll controversies arising between the parties hereto, including but not limited to controversies concerning the validity and/or enforceability of this contract, shall be submitted to arbitration . . ." and "the decision of the arbitrator shall be final and binding upon the parties hereto and each of them bound thereby." (See Exhibit 4, 2017 Boxer-Manager Contract.)

## THE CONTRACT

Boxer and Manager entered into the Contract on February 23, 2017. The Contract was memorialized on a standard preprinted form approved by the Commission. It was executed in the presence of Commission representative Larry Ervin and was approved by the Commission as Contract ID M-2017-0006 on February 24, 2017. The term of the Contract is five (5) years and has an expiration date of February 22, 2022.

Pursuant to Section A.2 of the Contract, Manager is to receive 18% of Boxer's purse for all fights taking place during the lifetime of the contract. In addition, the Contract requires Boxer to attend all training, exercising, and other necessary work as Manager might require. Boxer also agrees not to accept or engage in any boxing contests, exhibitions, or training exercises without written permission from Manager. (Sections A.3-6.) Among other things, Manager agrees to guarantee at least two (2) fights per year and to use his best efforts to secure remunerative boxing contests and to act in the best interests of Boxer (Sections B.1-2.)

## HISTORY OF THE PARTIES' RELATIONSHIP

Boxer and Manager first became acquainted with each other in the lead-up to the 2012 Olympics in London. Boxer was attempting to qualify for the U.S. men's boxing team, and Manager and his brother, Ralph Heredia, took an interest in Boxer and supported him in his efforts. At that time, Manager was licensed by the Commission and had experience working with

other fighters. After Boxer successfully made the U.S. men's boxing team, Manager traveled to London to watch Boxer participate and assisted Boxer's parents with their travel expenses to the Olympics.

After competing in the Olympics, Boxer was interested in becoming a professional boxer. Manager and his brother had become close with Boxer and his family over the preceding year, and on September 4, 2012, Boxer signed a purported Boxer-Manager contract with the Manager and his brother. (See Exhibit 5, 2012 Boxer-Manager Contract.) Under the terms of the five-year agreement, the Heredias would receive 20% of Boxer's fight purses. The agreement did not guarantee Boxer a minimum amount of earnings or bouts per year. Although it is clear the parties believed that they were contractually obligated to each other under the 2012 agreement, the purported Boxer-Manager Contract was not a valid Boxer-Management Contract because the parties failed to have the agreement executed before a Commission representative or approved by the Commission in writing as required by California Code of Regulations, title 4, section 222.[1]

Nonetheless, over the next four years, the parties appear to have honored the terms of their 2012 agreement. Manager helped negotiate a lucrative promotional deal with Golden Boy Promotions (Golden Boy) and also worked to obtain product endorsement deals for Boxer. Boxer dedicated himself to becoming a world-class professional fighter, amassing an undefeated 23-0 record and establishing himself as one of the top-ranked featherweights by the World Boxing Council (WBC), the World Boxing Organization (WBO) and the International Boxing Federation (IBF). Over this time, the relationship between Boxer, Manager and Ralph Heredia appears to have been strong and cooperative.

In February 2017, the parties took action to terminate the 2012 agreement that they believed was valid in order for Boxer and Manager to enter into an entirely new agreement which contained different terms (i.e., the Contract). On February 23, 2017, the parties met with

---

[1] The Commission has no record of Ralph Heredia holding a manager license in 2012. At the arbitration hearing, however, Manager produced what was purported to be a copy of Ralph Heredia's manager license from 2012. Because the reason for the discrepancy between the Commission's records and the exhibit offered by Manager has not been established, and because the 2012 agreement was not valid regardless of Ralph Heredia's licensure status, the arbitrator makes no determination as to whether the 2012 agreement was also invalid due to Ralph Heredia signing the agreement.

Commission representative Larry Ervin to execute a Release of Contract that expressly released the parties from any further liability or obligation under the 2012 agreement. (See Exhibit 6, Release of Contract.) That same day, in the presence of Boxer's father and Commission representative Ervin, who reviewed the Contract with the parties prior to its execution, Boxer and Manager executed the Contract at issue in this arbitration. Under the terms of the Contract, Manager is to receive 18% of Boxer's fight purses and Boxer is guaranteed at least two (2) fights per year. More importantly, the Contract was approved in writing by the Commission and duly recorded in the Commission's records as Contract ID No. M-2017-0006.

After the Contract was signed, Boxer and Manager's relationship appears to have remained strong and cooperative. Manager helped Boxer negotiate another highly advantageous promotion contract with Golden Boy that included a $150,000 signing bonus, bouts on high-profile fight cards and lucrative incentive provisions. For his part, Boxer continued to train diligently and win fights. Although he sustained one loss in May 2018, Boxer won his next four fights, and by late 2019, Manager was negotiating with Golden Boy to secure Boxer an opportunity to challenge for the IBF super featherweight title. The title bout took place on January 30, 2020, and Boxer won by unanimous decision. Although Boxer won the fight in convincing fashion, he suffered a significant laceration above his left eye. This injury coupled with the COVID-19 pandemic derailed planning and preparation for Boxer's next fight.

## THE DISPUTE

It is unclear at exactly what point the relationship between Boxer and Manager began to deteriorate, but Boxer's decision to enter into a contractual relationship with MTK Global USA, LLC (MTK Global) in August 2020 appears to have represented a tipping point. According to its public website, MTK Global provides "unrivalled expertise in boxer management, relations, training, and event promotions." MTK Global is not licensed by the Commission as a manager or promotor in the State of California. With the precise nature of the contractual relationship between Boxer and MTK Global uncertain to Manager, Manager sought more information about the agreement. After Boxer effectively ceased communication with Manager and MTK Global issued a press release that failed to clarify Manager's understanding of the agreement, Manager

filed a request for arbitration with the Commission, asserting that Boxer had breached the 2017 Boxer-Manager Contract by signing the MTK Global agreement.

On paper, it appears that the MTK Global agreement was a "business advisory" deal focused on maximizing Boxer's business and sponsorship activities outside the ring. If so, it would seem that the MTK Global agreement could have coexisted with the Boxer-Manager Contract without conflict. Unfortunately, however, neither party's actions during this time were conducive to salvaging their longstanding relationship. Boxer cut off communication with Manager and also failed to provide information about the MTK Global agreement sufficient to assuage Manager's concerns. Manager's conduct was also damaging to the relationship. Although Manager's request for arbitration can be viewed as a reasonable response to the situation given his lack of information about the MTK Global agreement, his decision to file a separate legal action under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act served to hasten the demise of Boxer and Manager's relationship. The RICO action took aim not only at MTK Global but also at Boxer's attorneys (VGC, LLP) and Boxer's longtime promotor, Golden Boy. The inclusion of Golden Boy in the now-dropped lawsuit appears to have been particularly misguided in that, regardless of Boxer's dispute with Manager, Golden Boy had an obligation to try to find Boxer, who was then the IBF super featherweight champion, a suitable fight. Thereafter, the relationship continued to deteriorate, as Boxer filed a lawsuit against Manager's brother, Ralph Heredia.

Nonetheless, Golden Boy scheduled Boxer to engage in a title defense on February 13, 2021. Manager was not involved in scheduling the fight and did not provide his written permission for the bout. Boxer failed to make weight prior to the fight, and was stripped of his title. Although the fight went forward as scheduled, Boxer was required to pay a $100,000 penalty (20% of his purse) for missing weight. The fight ended in a draw, taking Boxer's record to 33-1-1. Per the Contract, Manager should have received 18% ($72,000) of Boxer's reduced purse from the fight. To date, Boxer has not paid Manager the $72,000.

Boxer is currently scheduled to fight on July 9, 2021. Having no lines of communication with Boxer, Manager was also not involved in scheduling this fight and did not provide his

written permission for the bout. Boxer's purse for the July 9, 2021 fight is $500,000. Per the Contract, Manager is entitled to 18% ($90,000) of Boxer's purse from this fight.

Further, per the Contract, Manager is entitled to receive 18% of Boxer's fight purses for any future bouts that take place during the life of the contract. By its terms, the Contract does not expire until February 22, 2022. The contract is also subject to possible extension because of the 2020 boxing shutdown caused by the COVID-19 pandemic.

## THE PARTIES' POSITIONS

Manager asserts that Boxer breached the Contract by entering into the August 2020 contract with MTK Global, by becoming uncooperative and non-communicative with Manager, and by failing to pay Manager 18% ($72,000) of Boxer's purse from the February 13, 2021 fight. Manager seeks the $72,000 from the February 2021 fight and 18% of the purse from the July 9, 2021 fight, plus 18% of Boxer's purse for all future fights taking place prior to the expiration of the Contract. Manager also asserts that that the Contract term should be extended by sixteen (16) months due to Boxer's significant injury, the pandemic shutdown, and Boxer's lack of cooperation and communication since August 2020. Finally, Manager seeks repayment from Boxer for alleged loans and advances in the amount of $46,114.88.

Boxer's primary argument is that the Contract is not valid because it violates the so-called "seven year rule" for personal service contracts established by Labor Code section 2855. Boxer also argues that the contract should be deemed invalid as a matter of public policy because Manager's brother allegedly circumvented the regulatory process by functioning as a manager despite being unlicensed and not being a party to the Contract. Lastly, Boxer asserts that the Contract should be invalidated because Manager materially breached the contract in a variety ways, as detailed below.

## VALIDITY AND FUTURE OF CONTRACT

The Contract entered into by Boxer and Manager on February 23, 2017, is a valid and enforceable contract. The parties were both duly licensed by the Commission at the time of contract; the parties utilized the appropriate preprinted and approved form to memorialize the agreement; the term of the Contract did not exceed five (5) years; the contract called for manager

7

to receive less than 33 1/3 percent of Boxer's gross earnings; a Commission representative was present for the execution of the Contract; and the Commission formally approved and recorded the contract in its files. Accordingly, the Contract satisfied the requirements of California Code of Regulations, title 4, sections 220 through 222,[2] for purposes of validity and enforcement.

As explained below, Boxer breached the Contract when he failed to pay Manager after the February 13, 2021 fight. Further, because Boxer both accepted and engaged in that fight without the written permission of Manager, Boxer also breached Section A.6 of the Contract. Boxer again breached Section A.6 of the Contract when he accepted the July 9, 2021 fight.

<u>Labor Code Section 2855 Does Not Prohibit Enforcement of the Contract</u>

Boxer's argument that enforcement of the Contract would violate Labor Code section 2855 is unavailing. In essence, Boxer argues that because the term of 2012 agreement and the term of Contract total more than seven years when combined, the Contract cannot be enforced pursuant to Labor section 2855. Labor Code 2855 prohibits enforcement of an otherwise valid contract when that contract obligates an employee to perform services in excess of seven years. Boxer's assertion that the 2012 agreement and the Contract should be viewed as a single, uninterrupted contract is not persuasive. As discussed above (and as argued by Boxer himself), the 2012 agreement was not a valid Boxer-Manager Contract because it was not executed in compliance with Rule 222. Although the parties may have considered themselves bound by the 2012 agreement, the terms were not enforceable and at no time was Boxer actually legally obligated to serve under it. Therefore, the restrictions set forth in Labor Code 2855 are immaterial with respect to the purported 2012 agreement, which was invalid on its face.

Furthermore, even if the 2012 agreement had been valid, there would be insufficient grounds to find that the 2017 Contract is not enforceable. Boxer's principal legal argument of the seven-year rule relies heavily on an unreported case: *De la Hoya v. Top Rank, Inc.*, No. CV 00-10450-WMB, 2001 WL 34624886 (C.D. Cal. Feb. 6, 2001.) In contrast to the situation in this matter, the contract in *De la Hoya* did not involve separate successive agreements. Rather, in the

---

[2] Pertinent Commission regulations under title 4 of the California Code of Regulations are sometimes referred to herein as "Rules."

*De la Hoya* case, there was a single contract that had been amended and extended in excess of seven years without interruption. That situation is not present in this case. Here, the parties took action to formally sever any and all contractual obligations they believed they had with respect to the 2012 agreement. (See Exhibit 6, Release of Contract.) As such, there can be no question that for a period of time, however brief, Boxer was fully released from any and all obligations that he mistakenly believed he had under the 2012 agreement. Thereafter, Boxer voluntarily and knowingly signed the 2017 Contract in the presence of his father and Commission representative Ervin.

It should be noted that the situation here is far more indicative of separate and distinct contracts than the contracts at issue in the well-worn case of *Manchester v. Arista Records, Inc.* (C.D. Cal. 1981.) 1981 U.S. Dist. LEXIS 18642. In *Manchester*, the court found that a one-year option contract that had been negotiated and executed in the middle of the original contract, and which would become operable at the conclusion of the original contract, should be viewed as a separate and distinct contract rather than an extension. In dismissing singer Melissa Manchester's argument that the option contract must be viewed as an extension of the original contract because it had been entered into before the expiration of the original agreement, the court ruled that such a construction would unreasonably "prevent an employee from entering into a new contract with his or her current employer until after the completion of all obligations between them." Id. at 18. Here, when Boxer and Manager entered into the Contract, they had no preexisting, legally binding contractual obligations to each other because the 2012 agreement was invalid, and any obligations they mistakenly believed they had owing to the 2012 agreement were terminated in their own minds as a result of the signed release.

Finally, as Boxer acknowledges in his declaration, the parties engaged in genuine negotiations prior to entering into the Contract. The fact that the parties engaged in negotiations that resulted in the Contract containing materially different terms from the 2012 agreement further confirms that the Contract was not a mere extension of the 2012 agreement but was

///

///

instead a separate and distinct contractual relationship. For these reasons, the seven year rule set forth in Labor Code section 2855 does not prohibit enforcement of the Contract.

*The Contract Is Not Invalidated Because of Ralph Heredia's Relationship with Boxer*

Boxer also asks the Commission to void the Contract because of Ralph Heredia's involvement in Boxer's career. In his brief to the arbitrator, Boxer claims that the Contract should be invalidated because Ralph Heredia was his true and exclusive manager, and Manager participated in that role in name only. (Diaz Brief, page 9.) Boxer's brief further asserts that "[a]t no time has [Manager] provided [Boxer] meaningful management services." Id. The evidence does not support Boxer's unequivocal statements on this issue, and in fact, Boxer abandoned these assertions at the hearing when counsel for Boxer openly acknowledged that Manager did provide management services to Boxer. In addition, contrary to statements made in his declaration, Boxer admitted in his testimony that he did not have full knowledge of the extent to which Manager had worked to negotiate advantageous deals with Golden Boy on his behalf. Testimony from Manager, Ralph Heredia and Steven Bash, along with documentary evidence presented to the arbitrator, further establish that Manager ably fulfilled his duties to Boxer under the Contract.

Nonetheless, Boxer posits that the Commission should refuse to enforce the Contract on public policy grounds because Ralph Heredia performed the services of a manager even though he is unlicensed and is not a party to the Contract. Boxer points out that, under Section C.6 of the Contract, Manager certified and promised to the Commission (and to Boxer) that no other person or party would in any way share or participate in the Boxer's earnings or Manager's portion of those earnings. According to Boxer, Manager perpetrated a fraud on the Commission with respect to this provision because he knew that Ralph Heredia would be sharing in Manager's portion of Boxer's earnings. Boxer fails to note that under Section C.6 he pledged the very same certification and promise to the Commission (and to Manager). The reality is that if Ralph Heredia's role in the management of Boxer's career warranted disclosure to the Commission, both parties failed to make that disclosure because both parties were well aware of that role. Furthermore, if as Boxer claims, he has always considered Ralph Heredia to be his true manager,

10

it is disconcerting that Boxer would be willing to submit for Commission approval a Boxer-Manager Contract that concealed information or contained misleading information about the true parties. Under such circumstances, it would be wholly inequitable to sanction Manager by voiding the Contract, thereby providing a windfall to Boxer. Boxer cannot now use Ralph Heredia's participation in Manager's activities to his advantage when he undoubtedly shared in the parties' mutual obligation to provide truthful representations to Commission.[3] *See* Civil Code § 3517 ("No one can take advantage of his own wrong."); *Moriarty v. Carlson* (1960) 184 Cal.App.2d 51, 55; *Camp v. Jeffer, Mangels, Butler &Marmaro* (1995) 35 Cal.App.4th 620, 638; *Kendall-Jackson Winery, Ltd. V. Superior Court* (1999) 76 Cal.App.4th 970, 979.

<u>The Contract Is Not Invalidated Due to Alleged Material Breaches by Manager</u>

Boxer's argument that the Contract should be invalidated because of material breaches by Manager is also unconvincing. Boxer cites six (6) purported breaches by Manager that he believes warrant invalidation of the Contract. None of the breaches claimed by Boxer support such action.

Boxer's first breach of contract claim asserts that Manager wrongfully took 20% of his earnings instead of the 18% that Boxer had bargained for in the Contract. This allegation was simply not substantiated by Boxer, and no serious attempt to substantiate it was ever made. Accordingly, Boxer's first breach of contract claim does not provide grounds to nullify the Contract. Boxer's second breach of contract claim is also unavailing. Boxer asserts that Manager breached the Contract in a manner warranting invalidation because he failed to provide an accounting within 30 days of Boxer's request in violation of Contract Section B.4. Boxer's request for an accounting was made on April 6, 2021. By that date, however, Boxer had already materially breached the Contract by failing to pay Manager after the February 13, 2021 fight. Therefore, Manager's failure to provide a timely accounting under section B.4 of the Contract can be viewed as justified. *See Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 [one party's

---

[3] The arbitrator's determination that the Contract should not be invalidated because of potential misrepresentations to the Commission by both parties does not exclude the possibility of disciplinary action if so warranted. However, disciplinary actions are separate and distinct proceedings from arbitrations, and they afford a number of due process protections, such as the right to appeal, that are not afforded to the parties in this binding arbitration.

material breach of contract may relieve the other party from its duty to perform under a contract.] Furthermore, while it appears to be true that Manager failed to provide an accounting within 30 days of being requested to do so, ultimately Manager did provide an accounting. (*See* Heredia Exhibit Nos. 31-32). For these reasons, Boxer's second claim for breach of contract does not provide adequate grounds for voiding the Contract.

For his third breach of contract claim, Boxer alleges that Manager failed to satisfy his obligation to obtain fights for Boxer because he has not secured a fight for Boxer since the January 2020 title bout. As previously noted, the evidence indicates that Boxer was unable to fight for a period of time in 2020 due to a serious laceration above his left eye. In addition, the COVID-19 pandemic caused a shutdown of all boxing events in California for a period of time and continued to present major difficulties for the sport throughout the year. While these events obviously justify Manager's inability to obtain fights for Boxer, the biggest impediment to Manager being able to secure fights was Boxer's refusal to communicate with Manager. Manager testified that Boxer halted all communications after Boxer signed the MTK Global deal in August 2020. Further, Manager maintains that Boxer and his representatives instructed Golden Boy not to deal with Manager in scheduling fights. Although counsel for Boxer had the opportunity to challenge these and other assertions by Manager on cross-examination, counsel for Boxer chose not to do so. In short, the evidence presented clearly indicates that Manager's failure to obtain fights for Boxer over the course of the past year does not represent a material breach of his contractual obligations.

The fourth breach of Contract claim upon which Boxer seeks to have the Contract invalidated concerns purported loans made to Boxer. Among other things, evidence on this issue was provided in the form of witness testimony, text messages from Boxer requesting money, and canceled checks. The evidence indicates that Ralph Heredia routinely provided money to Boxer, upon Boxer's request, to help pay for a variety of Boxer's living expenses. However, Ralph Heredia is not a party to the Contract. This obvious fact, which is clear from the face of the Contract, was argued by Boxer himself in his pending lawsuit against Ralph Heredia and the court in that matter naturally agreed. Therefore, Ralph Heredia is not in a position to have

breached the Contract. To the extent that Manager also provided money to Boxer to assist with Boxer's living expenses, Manager's failure to comply with Rule 224 does not amount to a material breach of the Contract, but it does mean that the arbitrator will not consider Manager's request for reimbursement related to any such loans. Manager's failure to comply with Rule 224 also has the potential to serve as grounds for discipline; however, as previously noted, this arbitration is not a disciplinary action.

Boxer's fifth breach of contract claim also involves Ralph Heredia, not Manager. The evidence indicates that Ralph Heredia purchased a vehicle for Boxer but title to the vehicle was kept in Ralph Heredia's name. Boxer claims that, although he repaid Ralph Heredia for the purchase, Ralph Heredia repossessed the vehicle. This dispute is a component of Boxer's lawsuit against Ralph Heredia and does not involve Manager, who is not a named party in that civil lawsuit. For these reasons, the repossession of Boxer's automobile does not constitute a breach of contract by Manager.

The sixth claimed breach upon which Boxer seeks to have the Contract voided relates to Manager's RICO action against MTK Global, VGC, LLP and Golden Boy, et al. In putting forth his argument, Boxer asserts that Manager also "sued Mr. Diaz" but this claim is incorrect. (Diaz Brief, page 12.) Manager's decision to bring a lawsuit against various entities and individuals in response to the MTK Global agreement and based on his belief that he was being frozen out of dealings with Boxer may have been misguided, but it did not constitute a material breach of the Contract.

*Findings as to Manager's Arguments*

Boxer's signing of the MTK Global agreement did not constitute a breach of contract. On paper, the agreement is a business advisory deal that, if performed by the parties within the parameters of its terms, could have coexisted with the Contract without conflict.

As previously discussed, Boxer did breach the Contract by accepting and engaging in the February 13, 2021 fight without written consent from Manager and by failing to pay 18 percent of the purse to Manager per the Contract. Boxer further breached the Contract by accepting the July 9, 2021 fight without obtaining Manager's written consent. Manager is owed and deserves

damages related to these two fights because Boxer committed these breaches while the Contract was valid and enforceable.[4]

Manager also seeks reimbursement in the amount of $46,114.88 for loans or advances he purportedly made to Boxer. Rule 224 sets forth the procedures by which Managers are obligated to follow in the event that they wish to provide monetary advances to Boxers. The purpose of this rule is to protect boxers from having their earnings wrongfully diminished as a result of dubious advances claimed by managers. Manager plainly failed to follow the strictures of Rule 224 with respect to monetary advances that he provided to Boxer. Therefore, the arbitrator will not consider Manager's request for reimbursement.

Lastly, Manager seeks to have the Contract extended for a period of sixteen (16) months, arguing that Boxer's injury in 2020, the pandemic, and Boxer's recalcitrance warrant such an extension. Concomitantly, Manager asks that he be given 18% of Boxers purse for all fights that occur during the lifetime of the extended Contract. It is important to note that Manager seeks this lengthy extension of the Contract despite the fact that Manager readily acknowledges that his relationship with Boxer has been "irreparably" damaged. As such, it is clear that Manager's request to extend his contractual relationship with Boxer is entirely incongruous with his own understanding of the state of that relationship. Because both parties agree that the relationship is irreparable, the Contract will not be extended.

Furthermore, while the Commission strives to uphold agreements between boxers and managers whenever possible, where conditions exist that it is in the best interest of boxing to sever those contractual ties, the Commission must take such action. Given the parties' mutual belief that the relationship cannot be salvaged, and in light of the facts and circumstances surrounding this dispute, the arbitrator finds that it is in the best interest of boxing to terminate the Boxer-Manager Contract.

///

///

---

[4] As indicated in the Order, Boxer will be permitted to pay these damages over time rather than in lump sum.

# ORDER

WHEREFORE, THE FOLLOWING ORDER is made:

1. Damages are awarded to Manager for Boxer's breach of contract. The total arbitration award is $162,000, which constitutes 18% of Boxer's earnings from the February 13, 2021 fight and the July 9, 2021 fight.

2. The Commission may assist in the execution of this Order by withholding $90,000 (18%) of Boxer's earnings from the July 9, 2021 fight, and if necessary thereafter, by withholding up to 4% of Boxer's purse from each of Boxer's next three (3) fights, until the balance of the arbitration award has been paid.

3. If after three (3) fights subsequent to the July 9, 2021 fight, the arbitration award has not been fully satisfied through the withholdings described above, no additional withholdings will be made, and Manager shall not be entitled to further recovery.

4. If for any reason Boxer fails to participate in three (3) additional fights by January 1, 2023, no additional withholdings will be made, and Manager shall not be entitled to further recovery.

5. If the Commission is provided documentation that the arbitration award has been satisfied in full by other means or that Boxer and Manager have agreed that the award will be satisfied by other means, said withholdings will not be made.

6. Boxer-Manager Contract ID No. M-2017-0006, dated February 23, 2017, is hereby canceled, effective July 10, 2021.

This decision shall become effective on <u>July 9, 2021</u>.

DATE:

*Andy Foster*
Andrew Foster, Executive Officer
Arbitrator
California State Athletic Commission